MARC M. SELTZER (54534)
mselzer@susmangodfrey.com
STEVEN SKLAVER (237612)
ssklaver@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
Phone:  (310) 789-3100
Fax:      (310) 789-3150

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| LUIS PINO, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>CARDONE CAPITAL, LLC and GRANT CARDONE,<br><br>                Defendants. | Case No. 2:20-cv-8499<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

7591236v1/016789

## I.     NATURE OF THE ACTION

1.     This is a class action brought on behalf of all persons and entities who purchased interests in Cardone Equity Fund V, LLC ("Fund V") and Cardone Equity Fund VI, LLC ("Fund VI"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77(a), *et seq.*  As alleged below, defendants are responsible for false and misleading statements and omitting material facts in connection with Cardone Capital, LLC's public offerings of interests in Fund V and Fund VI. Specifically, defendants authorized or signed the offering statements and participated in making false and misleading "test the waters" communications that omitted material facts in connection with the public offerings of those interests.

2.     The public offerings were made under Regulation A of the Securities Act.  This complaint asserts claims under Section 12(a)(2) of the Securities Act, which provides buyers of securities an express remedy for material misrepresentations and omissions made by a seller or solicitor in connection with the offer or sale of an issuer's securities involving a prospectus or oral communications, and Section 15 of the Securities Act, which extends liability for the Section 12 claims to those who control the issuer.

3.     Defendant Cardone Capital, LLC ("Cardone Capital") provides real estate investment opportunities to the so-called "everyday investor" through real estate crowdfunding.  According to Cardone Capital's website, Cardone Capital "finds the deals, negotiates the purchase and financing, and closes the deal" and generates rental payments from creditworthy tenants to pay monthly cash distributions to investors.  Investors invest in Cardone Capital's equity funds, which have been formed to acquire interests in income earning real estate.

4.     Defendant Grant Cardone ("Cardone") is a sales trainer, entrepreneur, social media influencer, and author.  He is also CEO of Cardone Capital.

2

5.     Fund V and Fund VI are offered to both accredited and non-accredited investors.  A non-accredited investor is any investor who does not meet the income or net worth requirements specified by the Securities and Exchange Commission (SEC).  Under the SEC guidelines in effect at the time of the offerings, a non-accredited investor is anyone earning less than $200,000 annually with a total net worth of less than $1 million when their primary residence is excluded.

6.     Fund V claims to have set a world record when it was the first ever to raise $50 million via Regulation A using social media crowdfunding.  It began receiving subscriptions from investors on December 12, 2018.  On September 20, 2019, Fund V completed raising $50 million from over 2,200 individual investors. Fund VI is also a $50 million fund.  It began receiving subscriptions from investors on October 16, 2019. Fund VI closed on or around June 25, 2020.

7.     Cardone Capital and Grant Cardone targeted what they called the "everyday investor," soliciting investors to purchase interests in Fund V and Fund VI through social media.   These statements are considered "test the waters" communications, which are considered offers of securities and are subject to the anti-fraud provisions of the securities laws.  Cardone Capital and Grant Cardone made a number of false and misleading statements in connection with these "test the waters" communications.

8.     For example, Grant Cardone assured investors that their capital was "protected, waiting for appreciation," that he can "return to investors at least 2X-3X their investment" and that investing $100,000 would pay $500 in distributions monthly.

7591236v1/016789



9.      In one video, on September 17, 2019, Cardone advertised that if someone invested $220,000 in Cardone Capital funds, this would result in a $660,000 "position" in the fund.

10.     He claimed that investing $220,000 would allow investors to earn "about $12,000-$15,000 a year" in distributions.   In fact, this statement was materially false and misleading because there was no reasonable basis for this representation and investors' distributions have, in fact, been much lower than these amounts.

4

1    11.   Cardone also told potential investors that he expected to sell the

2   underlying real property in 5 to 7 years, at which point, he expected the $220,000

3   investment to be worth $660,000, "plus your cash flow."   These statements were

4   false and misleading because Cardone has no reasonable basis for claiming that a

5   given property will triple in value in 5 to 7 years.



16    12.   Cardone Capital further represented to potential investors that their

17  capital would be "safe" in Cardone Capital funds because "Cardone Capital is built

18  on real assets which are already established and stable in nature," without

19  sufficiently warning investors of the risks of investing in the real estate properites

20  in question.



13.     In addition to the foregoing "test the waters" communications, Cardone and Cardone Capital made materially false and misleading statements regarding (1) whether investors would obtain a 15% internal rate of return on their investments; (2) the amounts of monthly distributions they would receive; and (3) investors' debt obligations.

14.     Cardone and Cardone Capital also made materially false and misleading statements in the offering documents and omitted to state material facts relating to how the acquisition of properties to be owned by Fund V and Fund VI would be financed and the interest Cardone would charge the funds for loaning "the aggregate principal balance" to acquire those properties.

15.     By virtue of Section 12(a)(2) of the Securities Act, the making of material misstatements and omissions in offering documents and "test the waters" communications is prohibited.   In spite of their obligation to be truthful to investors, Cardone and Cardone Capital instead took advantage of investors.

## II.     JURISDICTION AND VENUE

16.     The claims asserted herein arise under section 12(a)(2) and section 15 of the Securities Act (15 U.S.C. §§ 77l(a)(2) and 77o).

17.     Jurisdiction is conferred by § 22 of the Securities Act (15 U.S.C. §§77v), and 28 U.S.C. §§ 1331 and 1337.

18.     Venue is proper in this district pursuant to § 22 of the Securities Act and 28 U.S.C. § 1391(a)(2) because false statements were made to plaintiff and other class members who reside in this district and acts giving rise to the violations complained of occurred in this district.

19.     In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mail.

7591236v1/016789

### III.   **THE PARTIES**

20.     Plaintiff Luis Pino is a resident of Inglewood, California.  Luis Pino purchased interests in Fund V and Fund VI and was damaged thereby.

21.     Defendant Cardone Capital, LLC is a limited liability company organized under the laws of the State of Delaware.  The principal executive offices of Cardone Capital, LLC are located at 18909 NE 29th Avenue, Aventura, FL 33180-2807.

22.     Defendant Grant Cardone was the CEO of Cardone Capital at all relevant times, including at the time of the Fund V and Fund VI public offerings.  As CEO, Cardone reviewed and approved, and participated in making, statements to investors, including statements in the offering statements.  Cardone is a resident of Florida.  Cardone signed or authorized the signing of the offering statements used to conduct the public offerings.

23.     On September 19, 2019, Grant Cardone advertised on his Instagram account that he was coming to Anaheim, California to market Cardone Capital.





24.     On September 21, 2019, plaintiff attended the "Breakthrough Wealth Summit" in Anaheim, California, hosted by Grant Cardone.   The Breakthrough Wealth Summit took place at the Hilton Anaheim, 777 West Convention Way, Anaheim, CA. 92802.

25.     According to the Cardone Capital investor portal, two days later, on September 23, 2019, plaintiff invested in Fund V.

26.     On September 25, 2019, Grant Cardone advertised on his Instagram page:   "Three cities today, finally home after 2 months.   #CardoneCapital

8

#Realestate," describing Grant Cardone's travels to market the Cardone Capital equity funds in connection with his tour.



27.    On September 26, 2019, the Cardone Capital Instagram account (@cardonecapitalofficial) advertised:  "I am proud to announce Cardone Equity Fund V is oversubscribed and the first Regulation A of its kind to raise $50 Million in crowdfunding using social media.  By accessing social media, I am offering investment opportunities to the everyday investor, like you!   💰 #CardoneCapital #MultifamilyInvesting #10XLiving" and went on to list the required SEC legend: "Our offerings under Rule 506(c) are for accredited investors only."    The advertisement went on to say:  "For our anticipated Regulation A offering, until such time that the Offering Statement is qualified by the SEC, no money or consideration is being solicited, and if sent in response prior to qualification, such money will not be accepted. No offer to buy the securities can by accepted and no part of the purchase price can be received until the offering statement is qualified. Any offer may be withdrawn or revoked, without obligation or commitment of any kind, at any time before notice of its acceptance given after the qualification date. A person's indication of interest involves no obligation or commitment of any kind. Our Offering Circular, which is part of the Offering Statement, may be found at www.cardonecapital.com/offering-1."

9



28.     On September 28, 2019, Grant Cardone represented on his personal Instagram account (@grantcardone) that Fund V had closed, raising $50,000,000.



29.     In his Instagram post, Cardone wrote:  "Congrats to our non-accredited investors who have taken advantage of Cardone Equity Fund V.  This is the largest Reg A+ crowdfunding ever done for real estate investments of this quality using social media.  I am so proud of this accomplishment as it is truly a way for me to make a significant difference in the financial lives of millions of people.  It is clear

10

the deck is stacked against the average every day family from creating financial freedom.  The rich get richer and everyone else continues to struggle.  The difference is in how the [sic] invest.  The great investments available in the world today are held for the wealthy institutions and family's [sic].  Cardone Capital gives access to the everyday person to the kind of real estate only available to the wealthiest of institutions & the well connected.  By using no middleman & going directly to the public using social media we reduce our cost.  This ensures more of your money goes directly into the assets, resulting in lower promotional cost.  More importantly, investors gain access to real estate that has never been available before.  We are literally doing something that has never been done.  Thanks for your support, I will never let you down.  GC.  Text [ ] to invest.  #investing # Real estate #Fund #PassiveIncome #CardoneCapital #GrantCardone #10X #Investing."  He did not include the required SEC legend on this post even though Cardone represented to the SEC on September 26, 2018 that "[a]ny mention of any specific fund of Cardone Capital will contain the proper legends" in connection with the "Cardone Capital Marketing Policy."

## IV.  REGULATION A OFFERINGS

30.    Cardone Capital has a number of funds in which individuals and entities can invest.  The funds were formed to acquire interests in income-earning real estate.

31.    For Fund V and Fund VI, Cardone Capital raised money for the funds by registering with the SEC as Regulation A offerings under Title IV of the 2015 Jumpstart Our Business Starts (JOBS) Act.  Regulation A provides for "mini-public offerings," which are offerings exempt from SEC registration.  However, the offering materials are subject to SEC filing requirements.  To offer securities under Regulation A, an issuer must file an offering statement on Form 1-A with the SEC, including an offering circular for distribution to investors and all required exhibits.

32.     Form 1-A filings are subject to SEC review and comment.   Before sales under Regulation A can be made, the SEC reviews the offering materials in order to "qualify" the Form 1-A.   Subject to certain conditions, a Regulation A issuer is permitted to use "test the waters" communications to communicate with investors to see if they might be interested in an offering before filing a Form 1-A.

33.     Regulation A governs how an issuer may communicate with potential investors around the time of a Regulation A offering.   The rules specify the types of communications about the offering an issuer can make depending on the stage of the qualification process.   Specifically, no offers may be made until the Form 1-A is qualified, with the exception of testing the waters communications that meet the requirements of Rule 255.

34.     "Test the waters" communications are considered offers of securities and are subject to the anti-fraud provisions of the securities laws.   All testing the waters communications must contain a legend stating:   (i) that no money or other consideration is being solicited or accepted, (ii) that offers to buy the securities cannot be accepted, and no part of the purchase price can be received, until the Form 1-A is qualified and any offer can be withdrawn or revoked at any time before notice of its acceptance is given after the qualification date, (iii) that an indication of interest involves no obligation or commitment of any kind, and (iv) the contact information of a person from whom the preliminary offering circular can be obtained, a preliminary URL at which the offering circular is available, or a complete copy of the document (if the Form 1-A has already been filed).

35.     Post-filing "test the waters" communications must include a current preliminary offering circular or a notice informing potential investors where to obtain one (*i.e.*, by providing the URL of the preliminary offering circular).   An issuer must distribute revised "test the waters" materials if any post-filing testing the waters material contains information that is or becomes materially inaccurate or inadequate.

36.     Written or broadcast "test the waters" materials must be filed as Exhibits to Form 1-A when the issuer initially confidentially submits or files the Form 1-A.

## V.     DEFENDANTS' MATERIAL MISSTATEMENTS AND OMISSIONS

### A.     Material Misstatements and Omissions in "Test the Waters" Communications

37.     Cardone Capital acknowledged that pursuant to SEC Rule 255, "test the waters" communications are subject to the anti-fraud provisions of federal securities laws and cannot contain false or misleading communications.  When the SEC required Cardone Capital to provide a "detailed analysis regarding how all of [its] communications comply with Regulation A and Section 5 under the Securities Act," Cardone Capital responded on November 5, 2018 that it had "conducted a comprehensive audit of its online presence including all websites and social media accounts" and adopted a "Social media and solicitation policy" to ensure "ongoing and future compliance."

38.     Cardone Capital's letter attached an "Action Plan and Written Social Media Compliance Manual," which provided, "All social media posts on all social media platforms, videos, websites, live shows, replay of live shows have to be compliance with the SEC.  This is for every social media platform as well as emails that solicit investor interest.  Until we 'clear' comments, no posting on social media will occur until it has been passed through the Compliance Officer and Compliance process.   Once comments are cleared, then we will have an official opening date, we will amend this manual to reflect the new guidelines for posting on Social Media."

39.     The Manual went on: "As such, this social media policy is a living document and will be reviewed on an ongoing basis with an emphasis on preventing false and misleading communications."   It went on to describe requirements for Twitter, Facebook, Instagram, GCTV (Grant Cardone TV),

13

YouTube, Website (cardonecapital.com), LinkedIn, and Podcasts and stated that "The Web Team and SEC Compliance Officer will keep track of all media postings for compliance."

### 1.     Cardone Capital's Statements About 15% Internal Rates of Return Were Baseless and Materially Misleading

40.     Cardone Capital has repeatedly told investors in its social media posts that they can expect a 15% internal rate of return even though there is no basis for this statement and it is materially false and misleading.

41.     On July 30, 2018, a letter from Jennifer Gowetski, Senior Counsel, Office of Real Estate and Commodities of the SEC, directed Cardone Capital: "We note your disclosure on page 17 and throughout the offering statement that references your strategy to pay a monthly distribution to investors that will result in a return of approximately 15% annualized return on investment. We further note you have commenced only limited operations, have not paid any distributions to date and do not appear to have a basis for such return. Please revise to remove this disclosure throughout the offering statement." Notwithstanding the specific warning from the SEC that it had no basis for making this statement, Cardone Capital continued to advertise a 15% internal rate of return to potential investors.

42.     The below advertisements appeared on Cardone Capital's Instagram account, all of which tell investors that Cardone Capital targeted at least a 15% internal rate of return for Fund V and Fund VI. In the May 5, 2019 advertisement, Cardone Capital advertised a "15% Targeted IRR," "monthly distributions" and "long term appreciation" in connection with soliciting investments in Fund VI. Because Cardone Capital had no basis for advertising the projection for such a return, as acknowledged by the SEC, this statement was materially false and misleading.

1

2

3

4

5

6

7

8

9



10      43.     In the October 16, 2019 advertisement for Fund VI, Cardone Capital

11  advertised how 10X Living at Panama City Beach, one of the properties in which

12  Fund VI acquired an interest, had a targeted investor IRR of 17.88%, a targeted

13  equity multiple of 2.5-3X, and a targeted average cash yield of 10.31%.  Because

14  Cardone Capital had no basis for such returns, this statement was materially false

15  and misleading.

16

17

18

19

20

21

22

23

24

25

26

27

28

15

7591236v1/016789

44.     In Cardone Capital's September 4, 2019 advertisement, it advertised a Target IRR of 15% with regard to the "bonus property," 10X Living at Breakfast Point, purchased by Fund V.   Because Cardone Capital had not basis for such returns, this statement was materially false and misleading.



### 2.   Misleading Statements Regarding Monthly Distributions

45.     Cardone Capital overstated the amount of monthly distributions investors could expect to receive after investing in the funds.   On February 5, 2019, Grant Cardone advertised that investors would double their money, receive $480,000 in cashflow (*i.e.*, monthly distributions) after investing $1,000,000, achieve "north of 15% returns after fees," obtain a 118% return amounting to 19.6% per year, and other disclosures that are neither in line with the offering statements, nor the representations permitted by the SEC.   Neither Grant Cardone nor Cardone Capital had any basis for making these statements, and the advertisements are not consistent with what investors have actually received on their investments.

16



46.     Cardone Capital also represented to investors that an investment of $1 million would pay $50,000 in yearly dividend income.  Neither Grant Cardone nor Cardone Capital had any basis for making these statements, and the advertisements are not consistent with what investors have actually received on their investments.



47.     Cardone Capital also represented to investors that it would pay monthly distributions based on cash flows from operations when, in fact, Cardone Capital suspended monthly distributions in April 2020:

17

The Company will make Distributions monthly out of available cash flow from operations equal to the total cash gross receipts of the Company during the month (i) derived from all sources (other than capital contributions and capital transactions) together with any amounts included in reserves or working capital from prior periods which the Manager reasonably determines to distribute, or the sale, refinancing or disposition of investments, as determined by the Manager, net of disbursements and less the operating expenses of the Company paid during such period (including, but not limited to, present and anticipated debts and obligations, capital needs and expenses, the payment of any management or administrative fees and expenses, including without limitation the Asset Management Fee, Asset Acquisition Fee or Asset Disposition Fee, and reasonable reserves for contingencies) and any increases or replacements in reserves (other than from Capital Contributions) during such period.

48.   Cardone Capital had advertised the monthly distributions as a key reason to invest in the Funds:



49.   Grant Cardone held an investor call in April 2020 explaining that rent payments across Cardone Capital properties remained stable, and that he was suspending distributions out of an abundance of caution.  To the extent there was any lack of cash flows that precluded Cardone Capital from making those monthly

18

distributions, it did not disclose the source of the problem to investors.  Cardone Capital has since resumed monthly distributions.

### 3.    Misleading Statements Regarding Debt Obligations

50.    Cardone Capital misrepresented the extent to which investors would be financially responsible for the debt incurred to finance the properties.  In one Instagram post, Cardone Capital wrote:  "One question you might want to ask is, who is responsible for the debt?  The answer is Grant!"



51.    This statement is materially misleading because the capital contributed by investors in Fund V and Fund VI is used to pay the debt service for the Funds, *i.e.,* the monthly interest payments on the interest-only loans obtained by Cardone Capital on behalf of the funds.  The debt is a significant operating expense for which investors are responsible by virtue of their investment in the funds.

52.    Similarly, Cardone Capital represented that an investment in Cardone Capital was an "asset" and not a "liability," which was misleading because the interests in properties acquired by Fund V and Fund VI were leveraged with financing debt with a loan-to-value ratio of 60-80%.  The statement suggests that

19

investors are not responsible for the significant monthly debt service payments, which is inaccurate and misleading.





**B.** **Material Misstatements and Omissions in the Securities Offering Documents**

**1.** **Cardone Capital Misrepresented How Properties Would Be Financed**

53.     The offering statements represented that Cardone Capital would secure the necessary financing before obtaining properties on behalf of the Funds: "When the Company identifies a location or a potential property, it will secure the

necessary financing, sign a contract and place an escrow deposit to be held with the designated escrow agent. The Company will take the time necessary to complete all its due diligence to the property including: site inspection, reviewing all leases, income and expenses, as well as securing a first mortgage on the property. After the due diligence process has been completed, the Company will determine whether the property is suitable or not."

54.    This statement was materially misleading because instead of obtaining loans to finance the acquisition of the properties from third parties, Grant Cardone personally, through entities that he owns and controls, purchased the properties from third parties before selling them to the Funds.  Grant Cardone acknowledged his practice of buying properties personally and then selling them to investors in an April 21, 2020 interview:  "I buy the deal.  In the past at least, up until this moment right now, our current fund, I buy the deal with my money before I offer it to the public."[1]

55.    As to Fund V, for example, mortgage documents show that Grant Cardone, signatory for Cardone Capital, on behalf of Cardone Delray Member, LLC (through the entity Atlantic Delray Beach, LLC) took out a $60,125,000 mortgage on the property on September 27, 2018.  But Fund V investors did not acquire the property until January 1, 2019, when the Fund "immediately purchased an investment in Cardone Delray Member, LLC which owns, Atlantic Delray Beach, LLC (dba 10X Living at Delray)."

56.    The operating statements further described that "the purchase price of any Property or real estate investment acquired from or sold to an affiliated party will be based upon the fair market value of the asset established by a third-party appraisal or fairness opinion that is dated within the last 120 days prior to the transaction."  This is materially misleading because, Cardone Capital did not obtain

---

[1]  https://www.youtube.com/watch?v=1XVWdBC8ffw&t=183s   (last visited on September 10, 2020)

a third-party appraisal or fairness opinion for those real estate investments it sold to the equity funds.  With the exception of one property, Grant Cardone has failed to disclose the acquisition price for any of the properties he sold to Funds.  Cardone Capital has also failed to disclose whether Grant Cardone acquired the properties at a different acquisition price than that paid by investors in the Funds.

57.   Not only did Grant Cardone purchase properties with his own money before selling them to the Funds, he stated that he was "loaning" the money to investors, and charged the Funds interest.

58.   The April 21, 2020 Fund V SEC Form 1-K states that Grant Cardone loaned millions of dollars to the Fund to acquire the properties being sold to the Fund, and charged investors interest:  "When each Cardone Member entity purchases a multifamily property, Grant Cardone contributes his equity and loans the balance needed to purchase the property to each Cardone Member entity. The aggregate principle balance loaned by Grant Cardone on behalf of the Company to the Cardone Member entities to acquire the investments amounted to approximately $42,159,000. Each loan pays 6% interest rate, is unsecured and is payable on demand. As of December 31, 2019, all loans had been repaid and the Company's proportional share of interest paid totaled $216,266."

59.   Similarly, the April 21, 2020 Fund VI SEC Form 1-K states: "When each Cardone Member entity purchases a multifamily property, Grant Cardone contributes his equity and loans the balance needed to purchase the property to each Cardone Member entity. The aggregate principle balance loaned by Grant Cardone on behalf of the Company to the Cardone Member entities to acquire the investments during 2019 amounted to $10,126,000. Each loan pays 6% interest rate, is unsecured and is payable on demand. As of December 31, 2019, the Company's proportional share of principal outstanding and interest incurred totaled to $5,877,743 and $50,487, respectively."

60.    Cardone Capital's failure to disclose that Grant Cardone would charge investors interest on Cardone's loans to acquire properties is a material omission because investors were contributing capital to provide the equity to acquire interests in properties.  There was no apparent need for Grant Cardone to loan money that investors were providing to the Funds, and then to charge investors for the loan. Investors contributed their capital based on the fees expressly described in the offering statement.  For example, Cardone Capital disclosed that investors would pay Grant Cardone an asset management fee, based on fees charged to Fund V and Fund VI for "the management of [their] investments" and an acquisition fee for fees "charged to the company as properties are acquired."   To the extent Cardone Capital intended to charge investors additional fees relating to acquiring the properties, the fees should have been disclosed.

61.    Similarly, Cardone Capital failed to disclose that Grant Cardone had already acquired Cardone Delray Member LLC which owns Atlantic Delray Beach, LLC (dba 10X Living at Delray) at the time of the offering statement.   In the offering statement, Cardone Capital claimed, "However, because as of the date of this Offering Circular, we have not identified the assets we expect to acquire and because our Members will be unable to evaluate the economic merit of assets before we invest in them, they will have to rely on the ability of our manager to select suitable and successful investment opportunities."   The offering statement was dated October 22, 2018.  Cardone Capital acquired 10X Living at Delray on September 28, 2018.  This statement is materially misleading because it implies that investors were paying Grant Cardone an acquisition fee for his ability to target properties for investment when, in fact, Cardone Capital was selling investors interests in Funds which for he already owned the properties.   It is further misleading because, had Cardone Capital disclosed its acquisition of 10X Living at Delray, investors could have evaluated the merit of the property prior to investing in Fund V.  Finally, the statement is misleading because Cardone charged investors

23

interest for Cardone "contribut[ing] his equity and loaning the balance needed to purchase the property," even though Cardone Capital had acquired 10X Living at Delray months before Fund V invested in the property.

62.    Cardone Capital also represented that its strategy would be to buy multi-family apartment communities at "below-market prices."  This statement is materially misleading because, upon information and belief, Cardone Capital did not acquire multi-family apartment communities at "below-market prices," which raised the costs to investors.

63.    Plaintiff and the members of the Class had no knowledge of the untrue statements or omissions alleged herein or facts sufficient to place them on notice of those untrue statements and omissions until April 2020 at the earliest, when distributions of the Funds were suspended.

**VI.    CLASS ACTION ALLEGATIONS**

64.    Plaintiff bring this action on their own behalf, and on behalf of a class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The Class is defined as:

> All persons and entities who purchased or otherwise acquired interests in Cardone Equity Fund V and Cardone Equity Fund VI pursuant to their public offerings.  Excluded from the Class are defendants and their directors, officers, employees and agents.

65.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are several thousand members of the Class.  Absent members of the Class may be identified from records maintained by defendants and may be notified of the pendency of this action using a form of notice similar to that customarily used in securities class actions.

66.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class were similarly affected by defendants' wrongful common course of conduct complained of herein.

67.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

68.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether defendants violated the federal securities laws;

(b)     whether defendants made material misstatements or omissions in the Offering Documents;

(c)     whether the Offering Documents were negligently prepared, contained materially misleading statements, and omitted material information required to be stated therein; and

(d)     whether the "test the waters" communications made by defendants were materially misleading and omitted material information.

69.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.   The damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it virtually impossible as a practical matter for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

7591236v1/016789

**FIRST CLAIM FOR RELIEF**

**(Against Cardone Capital for Violation of Section 12(a)(2) of the**

**Securities Act)**

70.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.     Cardone Capital offered and sold interests in Fund V and Fund VI through offering statements and "test the waters" communications in connection with the solicitation of its public offerings.

72.     By means of the defective offering statement and "test the waters" communications made in connection with solicitation of the initial public offerings, Cardone Capital promoted and sold interests in Fund V and Fund VI to plaintiff and other members of the Class.

73.     The offering statement and "test the waters" communications made in connection with the solicitation of the initial public offerings contained untrue statements of material fact, and concealed or failed to disclose material facts. Cardone Capital owed plaintiff and other members of the Class who purchased interests in Fund V and Fund VI pursuant to the offering statements and "test the waters" communications the duty to make a reasonable and diligent investigation of the statements contained in the offering statements and test the waters communications, to ensure that such statements were true, and to ensure that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Cardone Capital, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the offering statements and test the waters communications as set forth above. Plaintiff, while reserving all of his rights, expressly disclaims and disavows at this time any allegation in this complaint that could be construed as alleging fraud.

74.     Plaintiff did not know, nor in the exercise of reasonable diligence could plaintiff have known, of the untruths and omissions contained in the offering

statements and test the waters communications made in connection with solicitation of the initial public offerings at the time plaintiff acquired interests in Fund V and Fund VI.

75.   By reason of the conduct alleged herein, Cardone Capital violated Section 12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased interests in Fund V and Fund VI pursuant to the offering statement sustained substantial damages in connection with their purchases.  Accordingly, plaintiff and the other members of the Class who purchased shares in Fund V and Fund VI pursuant to the offering statement have the right to rescind and recover the consideration paid for their shares, and thereby tender their shares to the defendants sued herein.  Class members who have sold their shares seek damages to the fullest extent permitted by law.

### SECOND CLAIM FOR RELIEF

**(Against Cardone for Violation of Section 15 of the Securities Act)**

76.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

77.   This claim is brought pursuant to Section 15 of the Securities Act against Cardone.

78.   Cardone was a control person of Cardone Capital by virtue of his position as CEO, and ownership interest in Cardone Capital.  Cardone signed the Offering Documents and published posts and advertisements on his social media accounts soliciting investors to purchase interests in the Funds for his own financial benefit.

79.   By reason of the above conduct, for which Cardone Capital is primarily liable, as set forth above, Cardone is jointly and severally liable with and to the same extent as Cardone Capital pursuant to Section 15 of the Securities Act.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment, as follows:

A.     Determine that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure and appointing plaintiff's counsel as Class counsel;

B.     Award damages in favor of plaintiff and the Class against all defendants, jointly and severally, for all damages sustained as a result of defendants' violations of the law, in an amount to be proven at trial, including prejudgment interest thereon.

C.     Award rescission or a rescissory measure of damages;

D.     Award plaintiff and the Class reasonable attorneys' fees, costs and expenses incurred in this action, including expert fees.

E.     Award such other and further relief as the Court may deem just and proper.

Dated:  September 16, 2020
MARC M. SELTZER
STEVEN G. SKLAVER
KRYSTA KAUBLE PACHMAN
SUSMAN GODFREY L.L.P.

By_____*/s/Marc M. Seltzer*_____
Marc M. Seltzer
Attorneys for Plaintiff

7591236v1/016789

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands trial by jury of all of the claims asserted in this complaint so triable.

Dated:  September 16, 2020           MARC M. SELTZER
                                     STEVEN G. SKLAVER
                                     KRYSTA KAUBLE PACHMAN
                                     SUSMAN GODFREY L.L.P.


By____*/s/Marc M. Seltzer*_____
                                     Marc M. Seltzer
                                     Attorneys for Plaintiff

29

# Exhibit A

## CERTIFICATION OF LUIS PINO

I, Luis Pino, certify as follows:

1.     I am a named plaintiff in the attached complaint and I have reviewed the complaint and authorized its filing.

2.     I did not purchase the securities that are the subject of the complaint at the direction of plaintiffs' counsel or in order to participate in any private action arising under this chapter.

3.     I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.     My transactions in the securities described in the Complaint are set forth in the attached Exhibit A.

5.     During the three-year period preceding the date of this certification, I have not sought to serve as a representative party on behalf of the class.

6.     I will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court under the law.

I declare under penalty of perjury under laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on August _31_, 2020, at Inglewood, California.

Luis Pino

**Exhibit A to Certification**

| Entity | Date | Amount |
|---|---|---|
| Cardone Equity Fund V, LLC | September 23, 2019 | $5,000 |
| Cardone Equity Fund VI, LLC | November 15, 2019 | $5,000 |