1  MARC M. SELTZER (54534)
2  mselzer@susmangodfrey.com
   STEVEN SKLAVER (237612)
3  ssklaver@susmangodfrey.com
4  KRYSTA KAUBLE PACHMAN (280951)
   kpachman@susmangodfrey.com
5  SUSMAN GODFREY L.L.P.
6  1900 Avenue of the Stars, Suite 1400
   Los Angeles, CA  90067
7  Phone:  (310) 789-3100
8  Fax:      (310) 789-3150

9  Attorneys for Lead Plaintiff

10

11

12              **UNITED STATES DISTRICT COURT**

13            **CENTRAL DISTRICT OF CALIFORNIA**

14                    **WESTERN DIVISION**

15  LUIS PINO, on behalf of himself and all    Case No. 2:20-cv-08499-JFW (KSx)
    others similarly situated,
16                                             <u>**CLASS ACTION**</u>
17                                 Plaintiff,
                                               **FIRST AMENDED COMPLAINT**
18  v.                                         **FOR VIOLATION OF THE**
                                               **FEDERAL SECURITIES LAWS**
19  CARDONE CAPITAL, LLC, GRANT
20  CARDONE, CARDONE EQUITY FUND               <u>**JURY**</u> <u>**TRIAL**</u> <u>**DEMANDED**</u>
    V, LLC, and CARDONE EQUITY FUND
21  VI, LLC,
22                               Defendants.

23

24

25

26

27

28

I.        **NATURE OF THE ACTION**

1.        In an April 22, 2019 YouTube video, defendant Grant Cardone ("Cardone") stated "you're gonna walk away with a 15% annualized return. If I'm in that deal for 10 years, you're gonna earn 150%. You can tell the SEC that's what I said it would be. They call me Uncle G and some people call me Nostradamus, because I'm predicting the future dude, this is what's gonna happen."[1] These statements were what is known as "test the waters" communications, soliciting investors to purchase interests in Cardone's equity funds.

2.        This is a class action brought on behalf of all persons and entities who purchased interests in Cardone Equity Fund V, LLC ("Fund V") and Cardone Equity Fund VI, LLC ("Fund VI"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77(a), *et seq*.  As alleged below, defendants are responsible for false and misleading statements and omitting material facts in connection with defendant Cardone Capital, LLC's public offerings of interests in Fund V and Fund VI. Specifically, defendants authorized or signed the offering statements and participated in making false and misleading "test the waters" communications that misstated and omitted material facts in connection with the public offerings of those interests.

3.        The public offerings were made under Regulation A of the Securities Act.  In this action, plaintiff asserts claims under Section 12(a)(2) of the Securities Act, which provides buyers of securities an express remedy for material misrepresentations and omissions made by a seller or solicitor in connection with the offer or sale of an issuer's securities involving a prospectus or oral communications, and Section 15 of the Securities Act, which extends liability for the Section 12 claims to those who control the issuer.

---

[1] https://www.youtube.com/watch?v=OoeJkZZGa2c (last visited February 3, 2021).

4.      Defendant Cardone Capital, LLC ("Cardone Capital") provides real estate investment opportunities to the so-called "everyday investor" through real estate crowdfunding.  According to Cardone Capital's website, Cardone Capital "finds the deals, negotiates the purchase and financing, and closes the deal" and generates rental payments from creditworthy tenants to pay monthly cash distributions to investors.  Investors invest in Cardone Capital's equity funds, which have been formed to acquire interests in income earning real estate.

5.      Defendant Cardone is a sales trainer, entrepreneur, social media influencer, and author.  He is, and was at all times relevant to this action, the Chief Executive Officer of Cardone Capital.

6.      Fund V and Fund VI are offered to both accredited and non-accredited investors.  A non-accredited investor is any investor who does not meet the income or net worth requirements specified by the Securities and Exchange Commission ("SEC").  Under the SEC guidelines in effect at the time of the offerings, a non-accredited investor is anyone earning less than $200,000 annually with a total net worth of less than $1 million when their primary residence is excluded.

7.      Fund V claims to have set a world record when it was the first ever to raise $50 million via Regulation A using social media crowdfunding.  It began receiving subscriptions from investors on December 12, 2018.  On September 20, 2019, Fund V completed raising $50 million from over 2,200 individual investors. Fund VI is also a $50 million fund.  It began receiving subscriptions from investors on October 16, 2019. Fund VI closed on or around June 25, 2020.

8.      Cardone Capital and Cardone targeted what they called the "everyday investor," soliciting investors to purchase interests in Fund V and Fund VI through social media and urging consumers to invest their retirement funds with Cardone Capital.  Defendants' statements on social media are considered "test the waters" communications, which are offers of securities subject to the

3

1   anti-fraud and other provisions of the federal securities laws.  Cardone Capital and

2   Cardone made a number of false and misleading statements in connection with

3   these "test the waters" communications.

4       9.      For example, Cardone assured investors that their capital was

5   "protected, waiting for appreciation," that he can "return to investors at least 2X-

6   3X their investment" and that investing $100,000 would pay $500 in distributions

7   monthly.



10      10.     These statements were false and materially misleading for several

reasons.  First, it was false and misleading to represent to investors that "their

capital" was "protected, waiting for appreciation" because, among other

undisclosed risks, investors' faced the risk that they would lose some or all of

their investment if the Funds were not able to make the monthly debt service

payments.  The statements contained no cautionary language warning investors of

these risks.  Cardone also had no basis for telling investors that they would earn

"at least 2X-3X [on] their investment."    Defendants did not employ any

cautionary language warning investors that they may not receive 2X-3X their

investment by investing in the Funds.

11.    These statements were test the waters communications targeting investors in Funds V and VI.  The statements contain the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

12.    In one video, on September 17, 2019, Cardone advertised that if someone invested $220,000 in Cardone Capital funds, this would result in a $660,000 "position" in the fund.



13.    Cardone claimed that investing $220,000 would allow investors to earn "about $12,000-$15,000 a year" in distributions.  This statement was materially false and misleading because there was no reasonable basis for this representation and investors' distributions have, in fact, been much lower than these amounts.  Investors have received only a 4.5% rate of return on their investments in Fund V and Fund VI.  At that rate of return, if someone invested $220,000, they could expect to earn only $9,900 per year in distributions.

14.    Cardone also told potential investors that he expected to sell the underlying real property in 5 to 7 years, at which point, he expected the $220,000 investment to be worth $660,000, "plus your cash flow."  These statements were false and misleading because Cardone has no reasonable or historical basis for claiming that a given property will triple in value in five to seven years.

1    Defendants' previous investments had not tripled in value within this time period.

2    Nor did defendants include any cautionary language, let alone meaningful

3    cautionary language, in these statements warning investors that the properties in

4    which the Funds were investing may not increase, let alone triple, in value in five

5    to seven years or identifying any risks that may prevent such results.



15.    These statements were test the waters communications targeting

investors in Funds V and VI.  The statements contain the Rule 255 legend

defendants told the SEC they would affix to any test the waters communications.

16.    Cardone Capital further represented to potential investors that their

capital would be "safe" in Cardone Capital funds because "Cardone Capital is

built on real assets which are already established and stable in nature," without

sufficiently warning investors of the risks of investing in the real estate properties

in question.

6



17.    These statements were test the waters communications targeting investors in Funds V and VI. The statements contain the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

18.    In addition to the foregoing "test the waters" communications, Cardone and Cardone Capital made materially false and misleading statements regarding (1) whether investors would obtain a 15% internal rate of return on their investments; (2) the amounts of monthly distributions they would receive; and (3) investors' debt obligations.

19.    Cardone and Cardone Capital also made materially false and misleading statements in the offering documents and omitted to state material facts relating to whether the properties would be acquired at "below-market prices"; that Cardone Capital and Grant Cardone had acquired properties before selling them to the funds; and that Grant Cardone would receive additional compensation by charging investors additional interest.

20.    Since this lawsuit was filed, defendants have begun adding disclaimers to their social media posts. For example, in Grant Cardone's October 7, 2020 post soliciting accredited investors for a different fund, he included the following statement:   "The funds described herein are open to 'accredited

investors' only, through an offering made in accordance with Regulation D, Rule 506(c) of the Securities Act of 1933, as amended.  In purchasing securities through a 506(c) offering, we are obligated to verify any participating investor's status as an 'accredited investor' in accordance with Rule 501 of Regulation D. Investors should consider the investment objectives, risks, charges, and expenses of the fund carefully before investing.  We do not make any representations as to the accuracy or completeness of the information contained on this website and undertake no obligation to update the information.  Past performance is not an indicator of any future results.  All investments contain risk and may lose value. This does not constitute an offer to sell or a solicitation of interest to purchase any securities or investment advisory services in any country or jurisdiction in which such offer or solicitation is not permitted by law."

21.    In another post, dated December 9, 2020, Grant Cardone included the following disclaimer: "The information provided is for convenience only.  It is not investment advice or a recommendation, it does not constitute a solicitation to buy or sell securities, and it may be not be relied upon in considering an investment in a Cardone fund.  Past performance is no guarantee of future results.  Any historical returns expected returns or probability projections may not reflect actual future performance.  All securities involve risk and may result in partial or total loss.  Investment in Cardone funds is available only to independently verified 'accredited investors' through an offering made in accordance with Rule 506(c) under Regulation D of the Securities Act of 1933.  Before investing in any Cardone fund, prospective investors should consider carefully the investment objective(s), risks, arches, and expenses.  While the data we use from third parties is believed to be reliable, we cannot ensure the accuracy or completeness of the data provided.  Cardone Capital does not provide legal or tax advice.  Prospective investors should consult with a tax or legal adviser before making any investment decision."

22.     None of the test the waters communications pertaining to Fund V or Fund VI contain any cautionary language or any of the disclaimers described in Paragraphs 20 and 21.  They only contain the legend defendants told the SEC they would attach to any test the waters communications under Rule 255: "Our offerings under Rule 506(c) are for accredited investors only.  For our anticipated Regulation A offering, until such time that the Offering Statement is qualified by the SEC, no money or consideration is being solicited, and if sent in response prior to qualification, such money will not be accepted. No offer to buy the securities can by accepted and no part of the purchase price can be received until the offering statement is qualified. Any offer may be withdrawn or revoked, without obligation or commitment of any kind, at any time before notice of its acceptance given after the qualification date. A person's indication of interest involves no obligation or commitment of any kind. Our Offering Circular, which is part of the Offering Statement, may be found at www.cardonecapital.com/offering-1."

23.     Cardone Capital's website now also contains the following disclaimers, which were not made to prospective investors, including the members of the class, before this action:

- "The information provided is for convenience only. It is not investment advice or a recommendation, it does not constitute a solicitation to buy or sell securities, and it may not be relied upon in considering an investment in a Cardone fund. Past performance is no guarantee of future results. Any historical returns expected returns or probability projections may not reflect actual future performance. All securities involve risk and may result in partial or total loss. Investment in Cardone funds is available only to independently verified 'accredited investors' through an offering made in accordance with Rule 506(c) under Regulation D of the Securities Act of 1933.

Before investing in any Cardone fund, prospective investors should consider carefully the investment objective(s), risks, arches, and expenses. While the data we use from third parties is believed to be reliable, we cannot ensure the accuracy or completeness of the data provided. Cardone Capital does not provide legal or tax advice. Prospective investors should consult with a tax or legal adviser before making any investment decision."

- "Targeted IRR and Equity Multiple listed above represents the property's internal rate of return (IRR) or Equity Multiple based on the property's forecasted cash flows generated over a period of time and the amount invested in the property. This is different from the forecasted IRR or Equity Multiple to the investor in the applicable fund or other investment vehicle."

- "The website may contain forward-looking statements. You should not rely upon forward-looking statements as predictions of future events. These statements involve known and unknown risks, uncertainties, and other factors that may cause an investment's actual results to be materially and adversely different from those expressed or implied by these forward-looking statements. Past performance is no guarantee of future results. Any historical returns, expected returns, or probability projections may not reflect actual future performance. All securities involve risk and may result in partial or total loss. Before making an investment decision with respect to any offering, potential investors are advised to carefully read the related subscription and offering memorandum documents and to consult with their tax, legal and financial advisors. Cardone Capital does not give investment advice or recommendations regarding any offering posted on the website."

24.    By virtue of Section 12(a)(2) of the Securities Act, the making of material misstatements and omissions in offering documents and "test the waters" communications is prohibited.   In spite of their obligation to be truthful to investors, Cardone and Cardone Capital instead took advantage of investors.

## II.    <u>JURISDICTION AND VENUE</u>

25.    The claims asserted herein arise under section 12(a)(2) and section 15 of the Securities Act (15 U.S.C. §§ 77l(a)(2) and 77o).

26.    Jurisdiction is conferred by § 22 of the Securities Act (15 U.S.C. §§77v), and 28 U.S.C. §§ 1331 and 1337.

27.    Venue is proper in this district pursuant to § 22 of the Securities Act and 28 U.S.C. § 1391(a)(2) because false statements were made to plaintiff and other class members who reside in this district and acts giving rise to the violations complained of occurred in this district.

28.    In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mail.

## III.    <u>THE PARTIES</u>

29.    Plaintiff Luis Pino is a resident of Inglewood, California.   Luis Pino purchased interests in Fund V and Fund VI and was damaged thereby.

30.    Defendant Cardone Capital, LLC is a limited liability company organized under the laws of the State of Delaware.   The principal executive offices of Cardone Capital, LLC are located at 18909 NE 29th Avenue, Aventura, FL 33180-2807.

31.    Defendant Grant Cardone was the Chief Executive Officer of Cardone Capital at all relevant times, including at the time of the Fund V and Fund VI public offerings.   As CEO, Cardone reviewed and approved, and participated in making, statements to investors, including statements in the offering statements.   Both Fund V's and Fund VI's offering statements identify

Cardone as a control person of the Funds.   Cardone is a resident of Florida. Cardone signed or authorized the signing of the offering statements used to conduct the public offerings.

32.   Defendant Cardone Equity Fund V, LLC is a limited liability corporation organized under the laws of the State of Delaware. The principal executive offices of Cardone Equity Fund V, LLC are located at 18909 NE 29th Avenue, Aventura, FL 33180-2807.

33.   Defendant Cardone Equity Fund VI, LLC is a limited liability corporation organized under the laws of the State of Delaware. The principal executive offices of Cardone Equity Fund VI, LLC are located at 18909 NE 29th Avenue, Aventura, FL 33180-2807.

34.   On September 19, 2019, Grant Cardone advertised on his Instagram account that he was coming to Anaheim, California to market Cardone Capital.





35.    On September 21, 2019, plaintiff attended the "Breakthrough Wealth Summit" in Anaheim, California, hosted by Grant Cardone.  The Breakthrough Wealth Summit took place at the Hilton Anaheim, 777 West Convention Way, Anaheim, CA. 92802.



36.    According to the Cardone Capital investor portal, two days later, on September 23, 2019, plaintiff invested in Fund V.

13

37.     On September 25, 2019, Grant Cardone advertised on his Instagram page:   "Three cities today, finally home after 2 months.   #CardoneCapital #Realestate," describing Grant Cardone's travels to market the Cardone Capital equity funds in connection with his tour.



38.     On September 26, 2019, the Cardone Capital Instagram account (@cardonecapitalofficial) advertised:   "I am proud to announce Cardone Equity Fund V is oversubscribed and the first Regulation A of its kind to raise $50 Million in crowdfunding using social media.   By accessing social media, I am offering investment opportunities to the everyday investor, like you!   #CardoneCapital #MultifamilyInvesting #10XLiving" and went on to list the required SEC legend:   "Our offerings under Rule 506(c) are for accredited investors only."   The advertisement went on to say:   "For our anticipated Regulation A offering, until such time that the Offering Statement is qualified by the SEC, no money or consideration is being solicited, and if sent in response prior to qualification, such money will not be accepted. No offer to buy the securities can by accepted and no part of the purchase price can be received until the offering statement is qualified. Any offer may be withdrawn or revoked, without obligation or commitment of any kind, at any time before notice of its

acceptance given after the qualification date. A person's indication of interest involves no obligation or commitment of any kind. Our Offering Circular, which is part of the Offering Statement, may be found at www.cardonecapital.com/offering-1."



39. On September 28, 2019, Grant Cardone represented on his personal Instagram account (@grantcardone) that Fund V had closed, raising $50,000,000.



40. In his Instagram post, Cardone wrote: "Congrats to our non-accredited investors who have taken advantage of Cardone Equity Fund V. This

15

is the largest Reg A+ crowdfunding ever done for real estate investments of this quality using social media.  I am so proud of this accomplishment as it is truly a way for me to make a significant difference in the financial lives of millions of people.  It is clear the deck is stacked against the average every day family from creating financial freedom.  The rich get richer and everyone else continues to struggle.  The difference is in how the [sic] invest.  The great investments available in the world today are held for the wealthy institutions and family's [sic].  Cardone Capital gives access to the everyday person to the kind of real estate only available to the wealthiest of institutions & the well connected.  By using no middleman & going directly to the public using social media we reduce our cost.  This ensures more of your money goes directly into the assets, resulting in lower promotional cost.  More importantly, investors gain access to real estate that has never been available before.  We are literally doing something that has never been done.  Thanks for your support, I will never let you down.  GC. Text [ ] to invest.  #Investing #Real estate #Fund #PassiveIncome #CardoneCapital #GrantCardone #10X #Investing."  He did not include the required SEC legend on this post even though Cardone represented to the SEC on September 26, 2018 that "[a]ny mention of any specific fund of Cardone Capital will contain the proper legends" in connection with the "Cardone Capital Marketing Policy."

## IV.    REGULATION A OFFERINGS

41.    Cardone Capital has a number of funds in which individuals and entities can invest.  The funds were formed to acquire interests in income-earning real estate.

42.    For Fund V and Fund VI, Cardone Capital raised money for the funds by registering with the SEC as Regulation A offerings under Title IV of the 2015 Jumpstart Our Business Starts (JOBS) Act.  Regulation A provides for "mini-public offerings," which are offerings exempt from SEC registration.  However, the offering materials are subject to SEC filing requirements.  To offer

16

securities under Regulation A, an issuer must file an offering statement on Form 1-A with the SEC, including an offering circular for distribution to investors and all required exhibits.

43.   Form 1-A filings are subject to SEC review and comment.  Before sales under Regulation A can be made, the SEC reviews the offering materials in order to "qualify" the Form 1-A.  Subject to certain conditions, a Regulation A issuer is permitted to use "test the waters" communications to communicate with investors to see if they might be interested in an offering before filing a Form 1-A.

44.   Regulation A governs how an issuer may communicate with potential investors around the time of a Regulation A offering.  The rules specify the types of communications about the offering an issuer can make depending on the stage of the qualification process.  Specifically, no offers may be made until the Form 1-A is qualified, with the exception of testing the waters communications that meet the requirements of Rule 255.

45.   "Test the waters" communications are considered offers of securities and are subject to the anti-fraud provisions of the securities laws.  All test the waters communications must contain a legend stating:  (i) that no money or other consideration is being solicited or accepted, (ii) that offers to buy the securities cannot be accepted, and no part of the purchase price can be received, until the Form 1-A is qualified and any offer can be withdrawn or revoked at any time before notice of its acceptance is given after the qualification date, (iii) that an indication of interest involves no obligation or commitment of any kind, and (iv) the contact information of a person from whom the preliminary offering circular can be obtained, a preliminary URL at which the offering circular is available, or a complete copy of the document (if the Form 1-A has already been filed).

46.   Post-filing "test the waters" communications must include a current preliminary offering circular or a notice informing potential investors where to obtain one (*i.e.*, by providing the URL of the preliminary offering circular).  An

issuer must distribute revised "test the waters" materials if any post-filing testing the waters material contains information that is or becomes materially inaccurate or inadequate.

47.     Written or broadcast "test the waters" materials must be filed as Exhibits to Form 1-A when the issuer initially confidentially submits or files the Form 1-A.

## V.     DEFENDANTS' MATERIAL MISSTATEMENTS AND OMISSIONS

### A.     Material Misstatements and Omissions in "Test the Waters" Communications

48.     Cardone Capital acknowledged that pursuant to SEC Rule 255, "test the waters" communications are subject to the anti-fraud provisions of federal securities laws and cannot contain false or misleading communications.  When the SEC required Cardone Capital to provide a "detailed analysis regarding how all of [its] communications comply with Regulation A and Section 5 under the Securities Act," Cardone Capital responded on November 5, 2018 that it had "conducted a comprehensive audit of its online presence including all websites and social media accounts" and adopted a "Social media and solicitation policy" to ensure "ongoing and future compliance."

49.     Cardone Capital's letter attached an "Action Plan and Written Social Media Compliance Manual," which provided, "All social media posts on all social media platforms, videos, websites, live shows, replay of live shows have to be compliance with the SEC.  This is for every social media platform as well as emails that solicit investor interest.  Until we 'clear' comments, no posting on social media will occur until it has been passed through the Compliance Officer and Compliance process.  Once comments are cleared, then we will have an official opening date, we will amend this manual to reflect the new guidelines for posting on Social Media."

50.     As to Instagram posts, specifically, Cardone Capital wrote: "Any post that invites potential investors to the website or to inquire about investing MUST contain a Legend. The Long Legend should be used."

51.     The Manual went on: "As such, this social media policy is a living document and will be reviewed on an ongoing basis with an emphasis on preventing false and misleading communications."  It went on to describe requirements for Twitter, Facebook, Instagram, GCTV (Grant Cardone TV), YouTube, Website (cardonecapital.com), LinkedIn, and Podcasts and stated that "The Web Team and SEC Compliance Officer will keep track of all media postings for compliance."

## 1.     Cardone Capital's Statements About 15% Internal Rates of Return Were Baseless and Materially Misleading

52.     Defendants repeatedly told investors in their social media posts that they can expect a 15% internal rate of return, even though there is no basis for this statement and it is materially false and misleading.

53.     In the July 3, 2018 version of the Fund V offering statement, which was not qualified by the SEC, defendants said they would seek opportunities that would afford a 15% IRR based on a ten-year holding period and made the following statements:

> (a)     "Currently, our strategy includes paying a monthly distribution to investors under this Offering that would result in a return of approximately fifteen percent (15%) annualized return on investment, net of expenses, of which there is no guarantee."

> (b)     "The Company will attempt to achieve an overall Company internal rate of return (IRR) of fifteen (15%) percent per year, net of expenses."

54.     The July 3, 2018 version of the Fund V offering statement also referenced Cardone's prior operating results of prior programs, which included

Cardone Equity Fund I, Cardone Equity Fund II, and Cardone Equity Fund III. None of those prior investments had obtained a 15% internal rate of return.

55.    On July 30, 2018, a letter from Jennifer Gowetski, Senior Counsel, Office of Real Estate and Commodities of the SEC, directed Cardone Capital: "We note your disclosure on page 17 and throughout the offering statement that references your strategy to pay a monthly distribution to investors that will result in a return of approximately 15% annualized return on investment.  We further note you have commenced only limited operations, have not paid any distributions to date and do not appear to have a basis for such return.  Please revise to remove this disclosure throughout the offering statement." Notwithstanding the specific warning from the SEC that it had no basis for making this statement, Cardone Capital continued to advertise a 15% internal rate of return to potential investors.

56.    On April 22, 2019, Grant Cardone stated in his YouTube video: "[I]t doesn't matter whether [the investor] [is] accredited [or] non-accredited . . . you're gonna walk away with a 15% annualized return. If I'm in that deal for 10 years, you're gonna earn 150%." He had no basis for making that statement.  He then said, "You can tell the SEC that's what I said it would be. They call me Uncle G and some people call me Nostradamus, because I'm predicting the future dude, this is what's gonna happen." One minute after making this statement, Cardone clarified that his remarks applied to Fund V, but that any differences between Cardone Equity Fund IV and Fund V "[do] not matter" for purposes of this statement.[2]  In fact, the SEC had told Cardone nine months before that he had no basis for making such a statement.  Because Cardone had no basis for such returns, this statement was materially false and misleading. These statements were test the waters communications targeting investors in Funds V and VI.   The

---

[2] https://www.youtube.com/watch?v=OoeJkZZGa2c (last visited February 3, 2021).

YouTube video contains the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

57. The below advertisements appeared on Cardone Capital's Instagram account, all of which tell investors that Cardone Capital targeted at least a 15% internal rate of return for Fund V and Fund VI. In the May 5, 2019 advertisement, Cardone Capital advertised a "15% Targeted IRR," "monthly distributions" and "long term appreciation" in connection with soliciting investments in Fund VI. At the time Cardone Capital made this statement, Fund V and Fund VI had commenced only limited operations and had not made any distributions to date, and Cardone Capital did not have a basis for claiming that they would have such a return. Because Cardone Capital had no basis for advertising the projection for such a return, as acknowledged by the SEC, this statement was materially false and misleading.



58. These statements were test the waters communications targeting investors in Funds V and VI. The statements contain the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

59. In the October 16, 2019 advertisement for Fund VI, Cardone Capital advertised how 10X Living at Panama City Beach, one of the properties in which Fund VI acquired an interest, had a targeted investor IRR of 17.88%, a targeted

equity multiple of 2.5-3X, and a targeted average cash yield of 10.31%.  At the time Cardone Capital made this statement, Fund VI had commenced only limited operations and had not made any distributions to date, and Cardone Capital did not have a basis for claiming such a rate of return on investments. Because Cardone Capital had no basis for claiming such a rate of return, as acknowledged by the SEC, this statement was materially false and misleading.



60.    These statements were test the waters communications targeting investors in Funds V and VI.  The statements contain the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

61.    In Cardone Capital's September 4, 2019 advertisement, it advertised a Target IRR of 15% with regard to the "bonus property," 10X Living at Breakfast Point, purchased by Fund V.  At the time Cardone Capital made this statement, Fund V had commenced only limited operations, had not made any distributions to date, and Cardone Capital did not have a basis for such a return. Because Cardone Capital had no basis for claiming such a rate of return on investment, as acknowledged by the SEC, this statement was materially false and misleading.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



62.     These statements were test the waters communications targeting investors in Funds V and VI.  The statements contain the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

63.     Cardone and Cardone Capital had no historical track record of realizing a 15% rate of return. Before forming Fund V and Fund VI, Grant Cardone and Cardone Capital had established several equity funds which, like Funds V and VI, invested in multi-unit rental properties.  Those equity funds include Cardone Equity Fund I, Cardone Equity Fund II, and Cardone Equity Fund III, which were formed in 2016 and 2017.   None have achieved these returns.

64.     Defendants thus had no basis for their claim that investors in Fund V and Fund VI would realize a 15% internal rate of return. And defendants failed to inform investors in Fund V and Fund VI that none of their other equity funds had achieved a 15% rate of return. To the extent that these statements were forward looking, they implied that defendants had achieved these returns in the past. Indeed, Cardone Capital's October 28, 2019 Instagram post solicited investors by specifically highlighting defendants' past performance, noting that Cardone Capital had "typically [chosen] A class [properties] in top-tier, high growth

markets" and that "Cardone Capital is built on real assets which are already established and stable in nature."

65.     Defendants' statements regarding investors' rates of return were also not accompanied by any cautionary language, let alone meaningful cautionary language. Defendants did not caution investors that they had failed to achieve a 15% rate of return in the past. Defendants also did not caution about the risks specific to investing in these Funds. For example, at the time these statements were made, Fund V and Fund VI had not yet acquired, or were in the early stages of seeking to acquire, rental properties. The Funds had not even identified certain properties that would they would eventually purchase. Yet, in these test the waters communications, defendants did not warn prospective investors that Fund V and Fund VI might fail to acquire properties that generated these rates of return, and that they had no reasonable basis to represent that they would acquire such properties and, in fact, they failed to do so.

66.     Even if defendants' statements are forward looking, the PSLRA's safe harbor for forward looking statements would not apply. *See* 15 U.S.C. § 78u-5. The statutory safe harbor does not apply to forward looking statements that are "made in connection with an initial public offering" or made by a limited liability company. *Id.* § 78u-5(b)(2)(D)–(E). Funds V and VI are both LLCs, and they made these statements in connection with their initial public offerings. The PSLRA's statutory safe harbor thus does not insulate defendants from liability.

### 2.     Misleading Statements Regarding Monthly Distributions

67.     Cardone Capital overstated the amount of monthly distributions investors could expect to receive after investing in the funds.  On February 5, 2019, Grant Cardone advertised that investors would double their money, receive $480,000 in cashflow (*i.e.*, monthly distributions) after investing $1,000,000, achieve "north of 15% returns after fees," obtain a "118% return amounting to

1  19.6% per year," and other disclosures that are neither in line with the offering

2  statements, nor the representations permitted by the SEC.

3

4



5

6

7

8

9

10

11

12

13

14  68.   At the time Cardone made this statement, the Funds had commenced

15  only limited operations and had not paid any distributions to date, and Cardone

16  did not have a basis for claiming such a rate of return on investments. Because

17  Cardone had no basis to advertise such a return, as acknowledged by the SEC, this

18  statement was materially false and misleading.  Further, based on the 4.5% rate of

19  return paid by Funds V and VI to date, after investing $1,000,000, one would only

20  expect to receive $270,000 in monthly distributions after six years.

21  69.   These statements were test the waters communications targeting

22  investors in Funds V and VI.  The statements contain the Rule 255 legend

23  defendants told the SEC they would affix to any test the waters communications.

24  70.   Cardone Capital also represented to investors that an investment of

25  $1 million would pay $50,000 in "yearly dividend income."

26

27

28

1
2
3
4
5
6
7
8
9
10



11      71.     Because Cardone Capital had no basis for advertising the projection

12  for such a return, as acknowledged by the SEC, this statement was materially false

13  and misleading.  Further, based on the 4.5% rate of return paid by Funds V and VI

14  to date, after investing $1,000,000, an investor would only receive $45,000 in

15  distributions annually.

16      72.     These statements were test the waters communications targeting

17  investors in Funds V and VI.  The statements contain the Rule 255 legend

18  defendants told the SEC they would affix to any test the waters communications.

19      73.     Defendants' statements regarding distributions were also not

20  accompanied by any cautionary language, let alone meaningful cautionary

21  language. Defendants also did not caution about the risks specific to investing in

22  these Funds. For example, at the time these statements were made, Fund V and

23  Fund VI had not yet acquired, or were in the early stages of seeking to acquire,

24  rental properties. The Funds had not even identified certain properties that would

25  they would eventually purchase. Yet, in these test the waters communications,

26  defendants did not warn prospective investors that Fund V and Fund VI might fail

27  to acquire properties that would produce income sufficient to make distributions

28

1    in the amounts described in those communications,  and that they had no
2    reasonable basis to represent that they would acquire such properties and, in fact,
3    they failed to do so.

4         74.    Even if defendants' statements are forward looking, the PSLRA's
5    safe harbor for forward looking statements would not apply. *See* 15 U.S.C. § 78u-
6    5. The statutory safe harbor does not apply to forward looking statements that are
7    "made in connection with an initial public offering" or made by a limited liability
8    company. *Id.* § 78u-5(b)(2)(D)–(E). Funds V and VI are both LLCs, and they
9    made these statements in connection with their initial public offerings. The
10   PSLRA's statutory safe harbor thus does not insulate defendants from liability.

11        75.    Cardone Capital also represented to investors that it would pay
12   monthly distributions based on cash flows from operations when, in fact, Cardone
13   Capital suspended monthly distributions in April 2020:

14       The Company will make Distributions monthly out of available cash
15       flow from operations equal to the total cash gross receipts of the
16       Company during the month (i) derived from all sources (other than
17       capital contributions and capital transactions) together with any
18       amounts included in reserves or working capital from prior periods
19       which the Manager reasonably determines to distribute, or the sale,
20       refinancing or disposition of investments, as determined by the
21       Manager, net of disbursements and less the operating expenses of the
22       Company paid during such period (including, but not limited to,
23       present and anticipated debts and obligations, capital needs and
24       expenses, the payment of any management or administrative fees and
25       expenses, including without limitation the Asset Management Fee,
26       Asset Acquisition Fee or Asset Disposition Fee, and reasonable
27       reserves for contingencies) and any increases or replacements in
28       reserves (other than from Capital Contributions) during such period.

76.     Cardone Capital had advertised the monthly distributions as a key reason to invest in the Funds:



77.     These statements were test the waters communications targeting investors in Funds V and VI.  The statements contain the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

78.     Grant Cardone held an investor call in April 2020 explaining that rent payments across Cardone Capital properties remained stable, and that he was suspending distributions out of an abundance of caution.  To the extent there was any lack of cash flows that precluded Cardone Capital from making those monthly distributions, it did not disclose the source of the problem to investors. Cardone Capital has since resumed monthly distributions.

### 3.     Misleading Statements Regarding Debt Obligations

79.     Cardone Capital misrepresented the extent to which investors would be financially responsible for the debt incurred to finance the properties.  In one Instagram post, Cardone Capital wrote: "One question you might want to ask is, who is responsible for the debt?  The answer is Grant!"

1
2
3
4
5
6
7
8
9
10
11



12   80.   This statement is materially misleading because the capital

13   contributed by investors in Fund V and Fund VI is used to pay the debt service for

14   the Funds, *i.e.,* the monthly interest payments on the interest-only loans obtained

15   by Cardone Capital on behalf of the funds.  The debt is a significant operating

16   expense for which investors are responsible by virtue of their investment in the

17   funds.

18   81.   These statements were test the waters communications targeting

19   investors in Funds V and VI.  The statements contain the Rule 255 legend

20   defendants told the SEC they would affix to any test the waters communications.

21   82.   Similarly, Cardone Capital represented that an investment in Cardone

22   Capital was an "asset" and not a "liability," which was misleading because the

23   interests in properties acquired by Fund V and Fund VI were leveraged with

24   financing debt with a loan-to-value ratio of 60-80%.  The statements suggest that

25   investors are not responsible for the significant monthly debt service payments,

26   which is inaccurate and misleading.

27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21





83.    These statements were test the waters communications targeting

investors in Funds V and VI.   The statements contain the Rule 255 legend

defendants told the SEC they would affix to any test the waters communications.

**B.    Material Misstatements and Omissions in the Securities Offering Documents**

**1.    Defendants' Claim That They Would Acquire Properties At Below-Market Prices Was Materially Misleading**

84.     The Fund V and Fund VI offering statements described that the Manager (Cardone Capital, LLC, which is controlled by Grant Cardone) would receive the following compensation:

(a)     Acquisition Fee:  1% of the purchase price of the property;

(b)     Disposition Fee:  1% of the sale price of the property;

(c)     Asset Management Fee:   1% of the total amount of the Contributed Capital of all the Class A members, annualized, paid monthly; and

(d)     Class B Interests providing the Manager with a 35% profits interest an 35% of Distributable Cash

85.     Defendants had a strong incentive to purchase properties with a high purchase price in order to maximize the Manager's Acquisition Fee.

86.     Defendants represented in the offering statement that their strategy was to buy multi-family apartment communities at "below-market prices."  This statement is materially misleading because defendants did not acquire multi-family apartment communities at "below-market prices."

87.     Defendants have failed to disclose the acquisition price of all but one of the properties in which Funds V and VI have invested.  As to 10X Living at Del Ray, the acquisition price of $93,875,000 was more than $20 million over market value according to the real property tax assessor records from 2019.

## 2.     <u>Defendants Did Not Disclose That Cardone Capital and Grant Cardone Acquired Properties Before Selling Them To The Funds</u>

88.     The offering statements represented that the Funds would secure the necessary financing before obtaining properties:  "When the Company identifies a location or a potential property, it will secure the necessary financing, sign a contract and place an escrow deposit to be held with the designated escrow agent. The Company will take the time necessary to complete all its due diligence to the

property including: site inspection, reviewing all leases, income and expenses, as well as securing a first mortgage on the property. After the due diligence process has been completed, the Company will determine whether the property is suitable or not."

89.    This statement was materially misleading because instead of obtaining loans to finance the acquisition of the properties from third parties, Grant Cardone personally, through entities that he owns and controls, purchased the properties from third parties before selling them to the Funds.  Grant Cardone acknowledged his practice of buying properties personally and then selling them to investors in an April 21, 2020 interview: "I buy the deal.  In the past at least, up until this moment right now, our current fund, I buy the deal with my money before I offer it to the public."[3]

90.    For example, Fund V failed to disclose that Grant Cardone had already acquired Cardone Delray Member LLC, which owns Atlantic Delray Beach, LLC (dba 10X Living at Delray) at the time of issuance of the December 11, 2018 offering statement.  Atlantic Delray Holdings, L.L.C. and Cardone Real Estate Acquisitions, LLC agreed to purchase 10X Living at Delray on July 19, 2018.  Mortgage documents show that Grant Cardone, signatory for Cardone Capital, on behalf of Cardone Delray Member, LLC (through the entity Atlantic Delray Beach, LLC) took out a $60,125,000 mortgage on the property on September 27, 2018.  But Fund V investors did not acquire the property until January 1, 2019, when the Fund "immediately purchased an investment in Cardone Delray Member, LLC which owns, Atlantic Delray Beach, LLC (dba 10X Living at Delray)."

---

[3]  https://www.youtube.com/watch?v=1XVWdBC8ffw&t=183s    (last visited on September 10, 2020)

91.    In the offering statement, defendants expressly claimed, "However, because as of the date of this Offering Circular, we have not identified the assets we expect to acquire and because our Members will be unable to evaluate the economic merit of assets before we invest in them, they will have to rely on the ability of our manager to select suitable and successful investment opportunities."

92.    This statement is materially misleading because investors were paying Cardone Capital and Grant Cardone a significant acquisition fee.

93.    Defendants' failure to disclose that Cardone had acquired 10X Living at Delray months before selling it to Fund V is materially misleading because Cardone Capital and Cardone were paid an acquisition fee based on Cardone "targeting" the property.   But Cardone was merely pocketing an acquisition fee by selling a property to Fund V that he already owned.  Based on the purchase price of 10X Living at Delray, the 1% acquisition fee would be $9,387,500.

94.    It is further misleading because, had Cardone Capital disclosed its acquisition of 10X Living at Delray, investors could have evaluated the merit of the property prior to investing in Fund V.

95.    Defendants also failed to disclose that Grant Cardone acquired the properties at a different acquisition price than that paid by the Funds.

**3.    Defendants Did Not Disclose That Grant Cardone Would Receive Additional Compensation by Charging Investors Additional Interest**

96.    Not only did Grant Cardone purchase properties with his own money before selling them to the Funds, he stated that he was "loaning" this money to investors, and charged the Funds interest on this money. Defendants failed to disclose to investors that Cardone was charging them interest on the money he used to purchase the target properties.

97.     The April 21, 2020 Fund V SEC Form 1-K states that Grant Cardone loaned millions of dollars to the Fund to acquire the properties being sold to the Fund, and charged investors interest:   "When each Cardone Member entity purchases a multifamily property, Grant Cardone contributes his equity and loans the balance needed to purchase the property to each Cardone Member entity. The aggregate principle balance loaned by Grant Cardone on behalf of the Company to the Cardone Member entities to acquire the investments amounted to approximately $42,159,000. Each loan pays 6% interest rate, is unsecured and is payable on demand. As of December 31, 2019, all loans had been repaid and the Company's proportional share of interest paid totaled $216,266."

98.     Similarly, the April 21, 2020 Fund VI SEC Form 1-K states: "When each Cardone Member entity purchases a multifamily property, Grant Cardone contributes his equity and loans the balance needed to purchase the property to each Cardone Member entity. The aggregate principle balance loaned by Grant Cardone on behalf of the Company to the Cardone Member entities to acquire the investments during 2019 amounted to $10,126,000. Each loan pays 6% interest rate, is unsecured and is payable on demand. As of December 31, 2019, the Company's proportional share of principal outstanding and interest incurred totaled to $5,877,743 and $50,487, respectively."

99.     Defendants' failure to disclose that Grant Cardone would charge investors interest on Cardone's loans to acquire properties is a material omission because investors were contributing capital to provide the equity to acquire interests in properties.   There was no apparent need for Grant Cardone to loan money that investors were providing to the Funds, and then to charge investors for the loan.   Investors contributed their capital based on the fees expressly described in the offering statement.   For example, defendants disclosed that investors would pay Grant Cardone an asset management fee, based on fees charged to Fund V and Fund VI for "the management of [their] investments," and an acquisition fee

for fees "charged to the company as properties are acquired."  To the extent defendants intended to charge investors additional fees relating to acquiring the properties, including interest on the money Cardone used to purchase the properties, the fees should have been disclosed.

100.   The omission is also material because defendants charged investors interest for Cardone "contribut[ing] his equity and loaning the balance needed to purchase the property," even though Cardone Capital had acquired 10X Living at Delray months before Fund V invested in the property.

101.   Plaintiff and the members of the Class had no knowledge of the untrue statements or omissions alleged herein or facts sufficient to place them on notice of those untrue statements and omissions until April 2020 at the earliest, when distributions of the Funds were suspended.

## VI.   CLASS ACTION ALLEGATIONS

102.   Plaintiff bring this action on their own behalf, and on behalf of a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The Class is defined as:

> All persons and entities who purchased or otherwise acquired interests in Cardone Equity Fund V and Cardone Equity Fund VI pursuant to their public offerings.  Excluded from the Class are defendants and their directors, officers, employees and agents.

103.   The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are several thousand members of the Class.  Absent members of the Class may be identified from records maintained by defendants and may be notified of the pendency of this action using a form of notice similar to that customarily used in securities class actions.

104. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class were similarly affected by defendants' wrongful common course of conduct complained of herein.

105. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

106. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a)    whether defendants violated the federal securities laws;

    (b)    whether defendants made material misstatements or omissions in the Offering Documents;

    (c)    whether the Offering Documents were negligently prepared, contained materially misleading statements, and omitted material information required to be stated therein; and

    (d)    whether the "test the waters" communications made by defendants were materially misleading and omitted material information.

107. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it virtually impossible as a practical matter for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**FIRST CLAIM FOR RELIEF**

**(Against Grant Cardone, Cardone Capital, Cardone Equity Fund V, LLC, and Cardone Equity Fund VI, LLC for Violation of § 12(a)(2) of the Securities Act)**

108.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

109.   Defendants offered and sold interests in Fund V and Fund VI through offering statements and "test the waters" communications in connection with the solicitation of its public offerings.

110.   By means of the defective offering statement and "test the waters" communications made in connection with solicitation of the initial public offerings, defendants promoted and sold interests in Fund V and Fund VI to plaintiff and other members of the Class.

111.   The offering statement and "test the waters" communications made in connection with the solicitation of the initial public offerings contained untrue statements of material fact, and concealed or failed to disclose material facts. Defendants owed plaintiff and other members of the Class who purchased interests in Fund V and Fund VI pursuant to the offering statements and "test the waters" communications the duty to make a reasonable and diligent investigation of the statements contained in the offering statements and test the waters communications, to ensure that such statements were true, and to ensure that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.   Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the offering statements and test the waters communications as set forth above. Plaintiff, while reserving all of his rights, expressly disclaims and disavows at this time any allegation in this complaint that could be construed as alleging fraud.

112.   Plaintiff did not know, nor in the exercise of reasonable diligence could plaintiff have known, of the untruths and omissions contained in the offering statements and test the waters communications made in connection with solicitation of the initial public offerings at the time plaintiff acquired interests in Fund V and Fund VI.

113.   By reason of the conduct alleged herein, defendants violated Section 12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased interests in Fund V and Fund VI pursuant to the offering statement sustained substantial damages in connection with their purchases.  Accordingly, plaintiff and the other members of the Class who purchased shares in Fund V and Fund VI pursuant to the offering statement have the right to rescind and recover the consideration paid for their shares, and thereby tender their shares to the defendants sued herein.   Class members who have sold their shares seek damages to the fullest extent permitted by law.

## **SECOND CLAIM FOR RELIEF**

**(Against Cardone Capital and Grant Cardone for Violation of Section 15 of the Securities Act)**

114.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

115.   This claim is brought pursuant to Section 15 of the Securities Act against Cardone Capital and Grant Cardone.

116.   Cardone Capital was a control person of Fund V and Fund VI by virtue of its position as manager of the Funds. According to the Funds' offering statements, Cardone Capital "ma[d]e all decisions relating to the business, operations, and strategy" of the Funds, "includ[ing] purchase and sale decisions regarding the assets, the appointment of other officers, managers, vendors and whether to enter into material transactions with related parties."

38

117.   Cardone was a control person of Fund V, Fund VI, and Cardone Capital by virtue of his position as Cardone Capital's CEO, his ownership interest in Cardone Capital, and Cardone Capital's control over the Funds. According to the Funds' offering statements, Grant Cardone was the controller and "sole decision maker" of Cardone Capital, LLC, which in turn was the Funds' manager. Cardone signed the Funds' Offering Documents and published posts and advertisements on his social media accounts soliciting investors to purchase interests in the Funds for his own financial benefit.

118.   By reason of the above conduct, Cardone Capital and Grant Cardone are jointly and severally liable with and to the same extent as the Funds pursuant to Section 15 of the Securities Act.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment, as follows:

A.   Determine that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure and appointing plaintiff's counsel as Class counsel;

B.   Award damages in favor of plaintiff and the Class against all defendants, jointly and severally, for all damages sustained as a result of defendants' violations of the law, in an amount to be proven at trial, including prejudgment interest thereon.

C.   Award rescission or a rescissory measure of damages;

D.   Award plaintiff and the Class reasonable attorneys' fees, costs and expenses incurred in this action, including expert fees.

E.   Award such other and further relief as the Court may deem just and proper.

///

1    Dated:  February 19, 2021            MARC M. SELTZER
                                          STEVEN G. SKLAVER
2                                         KRYSTA KAUBLE PACHMAN
                                          SUSMAN GODFREY L.L.P.
3

4                                         By_____*/s/ Marc M. Seltzer*_____
                                              Marc M. Seltzer
5                                          Attorneys for Lead Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands trial by jury of all of the claims asserted in this complaint so triable.

Dated:  February 19, 2021              MARC M. SELTZER
                                       STEVEN G. SKLAVER
                                       KRYSTA KAUBLE PACHMAN
                                       SUSMAN GODFREY L.L.P.


                                       By_____*/s/ Marc M. Seltzer*_____
                                          Marc M. Seltzer
                                       Attorneys for Lead Plaintiff

41