MARC M. SELTZER (54534)
mselzer@susmangodfrey.com
STEVEN SKLAVER (237612)
ssklaver@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Phone: (310) 789-3100
Fax:    (310) 789-3150

RAJ MATHUR (admitted *pro hac vice*)
rmathur@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Phone: (212) 729-2051
Fax:    (212) 336-8340

Attorneys for Lead Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CHRISTINE PINO, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br>v.<br><br>CARDONE CAPITAL, LLC, GRANT CARDONE, CARDONE EQUITY FUND V, LLC, and CARDONE EQUITY FUND VI, LLC,<br><br>                    Defendants. | Case No. 2:20-cv-08499-JFW (KSx)<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

## I.    NATURE OF THE ACTION

1.    In an April 22, 2019 YouTube video, defendant Grant Cardone ("Cardone") stated "you're gonna walk away with a 15% annualized return. If I'm in that deal for 10 years, you're gonna earn 150%. You can tell the SEC that's what I said it would be. They call me Uncle G and some people call me Nostradamus, because I'm predicting the future dude, this is what's gonna happen."[1] These statements were what is known as "test the waters" communications, soliciting investors to purchase interests in Cardone's equity funds.

2.    This is a class action brought on behalf of all persons and entities who purchased interests in Cardone Equity Fund V, LLC ("Fund V") and Cardone Equity Fund VI, LLC ("Fund VI"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77(a), *et seq*.   As alleged below, defendants are responsible for false and misleading statements and omitting material facts in connection with defendant Cardone Capital, LLC's public offerings of interests in Fund V and Fund VI. Specifically, defendants authorized or signed the offering statements and participated in making false and misleading "test the waters" communications that misstated and omitted material facts in connection with the public offerings of those interests.

3.    The public offerings were made under Regulation A of the Securities Act.  In this action, plaintiff asserts claims under Section 12(a)(2) of the Securities Act, which provides buyers of securities an express remedy for material misrepresentations and omissions made by a seller or solicitor in connection with the offer or sale of an issuer's securities involving a prospectus or oral communications, and Section 15 of the Securities Act, which extends liability for the Section 12 claims to those who control the issuer.

---

[1] https://www.youtube.com/watch?v=OoeJkZZGa2c (last visited February 3, 2021).

4.      Defendant Cardone Capital, LLC ("Cardone Capital") provides real estate investment opportunities to the so-called "everyday investor" through real estate crowdfunding.  According to Cardone Capital's website, Cardone Capital "finds the deals, negotiates the purchase and financing, and closes the deal" and generates rental payments from creditworthy tenants to pay monthly cash distributions to investors.  Investors invest in Cardone Capital's equity funds, which have been formed to acquire interests in income earning real estate.

5.      Defendant Cardone is a sales trainer, entrepreneur, social media influencer, and author.  He is, and was at all times relevant to this action, the Chief Executive Officer of Cardone Capital.

6.      Fund V and Fund VI are offered to both accredited and non-accredited investors.  A non-accredited investor is any investor who does not meet the income or net worth requirements specified by the Securities and Exchange Commission ("SEC").  Under the SEC guidelines in effect at the time of the offerings, a non-accredited investor is anyone earning less than $200,000 annually with a total net worth of less than $1 million when their primary residence is excluded.

7.      Fund V claims to have set a world record when it was the first ever to raise $50 million via Regulation A using social media crowdfunding.  It began receiving subscriptions from investors on December 12, 2018.  On September 20, 2019, Fund V completed raising $50 million from over 2,200 individual investors.  Fund VI is also a $50 million fund.  It began receiving subscriptions from investors on October 16, 2019. Fund VI closed on or around June 25, 2020.

8.      Cardone Capital and Cardone targeted what they called the "everyday investor," soliciting investors to purchase interests in Fund V and Fund VI through social media and urging consumers to invest their retirement funds with Cardone Capital.  Defendants' statements on social media are considered "test the waters" communications, which are offers of securities subject to the

1    anti-fraud and other provisions of the federal securities laws.  Cardone Capital and

2    Cardone made a number of false and misleading statements in connection with

3    these "test the waters" communications.

4        9.    For example, Cardone assured investors that their capital was

5    "protected, waiting for appreciation," that he can "return to investors at least 2X-

6    3X their investment" and that investing $100,000 would pay $500 in distributions

7    monthly.



10        10.    It was false and misleading to represent to investors that "their

19    capital" was "protected, waiting for appreciation" because, among other

20    undisclosed risks, investors' faced the risk that they would lose some or all of

21    their investment if the Funds were not able to make the monthly debt service

22    payments.  The statements contained no cautionary language warning investors of

23    these risks.

24        11.    These statements were test the waters communications targeting

25    investors in Funds V and VI.  The statements contain the Rule 255 legend

26    defendants told the SEC they would affix to any test the waters communications.

4

12.    In one video, on September 17, 2019, Cardone advertised that if someone invested $220,000 in Cardone Capital funds, this would result in a $660,000 "position" in the fund.



13.    Cardone claimed that investing $220,000 would allow investors to earn "about $12,000-$15,000 a year" in distributions.  Investors have received only a 4.5% rate of return on their investments in Fund V and Fund VI.  At that rate of return, if someone invested $220,000, they could expect to earn only $9,900 per year in distributions.

14.    Cardone also told potential investors that he expected to sell the underlying real property in 5 to 7 years, at which point, he expected the $220,000 investment to be worth $660,000, "plus your cash flow."  These statements were false and misleading because Cardone has no reasonable or historical basis for claiming that a given property will triple in value in five to seven years. Defendants' previous investments had not tripled in value within this time period. Nor did defendants include any cautionary language, let alone meaningful cautionary language, in these statements warning investors that the properties in

5

which the Funds were investing may not increase, let alone triple, in value in five to seven years or identifying any risks that may prevent such results.



15.    These statements were test the waters communications targeting investors in Funds V and VI.  The statements contain the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

16.    Cardone Capital further represented to potential investors that their capital would be "safe" in Cardone Capital funds because "Cardone Capital is built on real assets which are already established and stable in nature," without sufficiently warning investors of the risks of investing in the real estate properties in question.

6

1
2
3
4
5
6
7
8
9
10



11    17.    These statements were test the waters communications targeting

12  investors in Funds V and VI.   The statements contain the Rule 255 legend

13  defendants told the SEC they would affix to any test the waters communications.

14    18.    In addition to the foregoing "test the waters" communications,

15  Cardone and Cardone Capital made materially false and misleading statements

16  regarding (1) whether investors would obtain a 15% internal rate of return on their

17  investments; (2) the amounts of monthly distributions they would receive; and (3)

18  investors' debt obligations.

19    19.    Cardone and Cardone Capital also made materially false and

20  misleading statements in the offering documents and omitted to state material

21  facts relating to whether the properties would be acquired at "below-market

22  prices" and that Cardone Capital and Grant Cardone had acquired properties

23  before selling them to the funds.

24    20.    Since this lawsuit was filed, defendants have begun adding

25  disclaimers to their social media posts.  For example, in Grant Cardone's October

26  7, 2020 post soliciting accredited investors for a different fund, he included the

27  following statement:   "The funds described herein are open to 'accredited

28  investors' only, through an offering made in accordance with Regulation D, Rule

7

506(c) of the Securities Act of 1933, as amended.   In purchasing securities through a 506(c) offering, we are obligated to verify any participating investor's status as an 'accredited investor' in accordance with Rule 501 of Regulation D. Investors should consider the investment objectives, risks, charges, and expenses of the fund carefully before investing.  We do not make any representations as to the accuracy or completeness of the information contained on this website and undertake no obligation to update the information.  Past performance is not an indicator of any future results.  All investments contain risk and may lose value. This does not constitute an offer to sell or a solicitation of interest to purchase any securities or investment advisory services in any country or jurisdiction in which such offer or solicitation is not permitted by law."

21.    In another post, dated December 9, 2020, Grant Cardone included the following disclaimer: "The information provided is for convenience only.  It is not investment advice or a recommendation, it does not constitute a solicitation to buy or sell securities, and it may be not be relied upon in considering an investment in a Cardone fund.   Past performance is no guarantee of future results.   Any historical returns expected returns or probability projections may not reflect actual future performance.  All securities involve risk and may result in partial or total loss.   Investment in Cardone funds is available only to independently verified 'accredited investors' through an offering made in accordance with Rule 506(c) under Regulation D of the Securities Act of 1933.   Before investing in any Cardone fund, prospective investors should consider carefully the investment objective(s), risks, arches, and expenses.  While the data we use from third parties is believed to be reliable, we cannot ensure the accuracy or completeness of the data provided.  Cardone Capital does not provide legal or tax advice.  Prospective investors should consult with a tax or legal adviser before making any investment decision."

22.     None of the test the waters communications pertaining to Fund V or Fund VI contain any cautionary language or any of the disclaimers described in Paragraphs 20 and 21.  They only contain the legend defendants told the SEC they would attach to any test the waters communications under Rule 255: "Our offerings under Rule 506(c) are for accredited investors only.  For our anticipated Regulation A offering, until such time that the Offering Statement is qualified by the SEC, no money or consideration is being solicited, and if sent in response prior to qualification, such money will not be accepted. No offer to buy the securities can by accepted and no part of the purchase price can be received until the offering statement is qualified. Any offer may be withdrawn or revoked, without obligation or commitment of any kind, at any time before notice of its acceptance given after the qualification date. A person's indication of interest involves no obligation or commitment of any kind. Our Offering Circular, which is part of the Offering Statement, may be found at www.cardonecapital.com/offering-1."

23.     Cardone Capital's website now also contains the following disclaimers, which were not made to prospective investors, including the members of the class, before this action:

- "The information provided is for convenience only. It is not investment advice or a recommendation, it does not constitute a solicitation to buy or sell securities, and it may not be relied upon in considering an investment in a Cardone fund. Past performance is no guarantee of future results. Any historical returns expected returns or probability projections may not reflect actual future performance. All securities involve risk and may result in partial or total loss. Investment in Cardone funds is available only to independently verified 'accredited investors' through an offering made in accordance with Rule 506(c) under Regulation D of the Securities Act of 1933.

Before investing in any Cardone fund, prospective investors should consider carefully the investment objective(s), risks, arches, and expenses. While the data we use from third parties is believed to be reliable, we cannot ensure the accuracy or completeness of the data provided. Cardone Capital does not provide legal or tax advice. Prospective investors should consult with a tax or legal adviser before making any investment decision."

- "Targeted IRR and Equity Multiple listed above represents the property's internal rate of return (IRR) or Equity Multiple based on the property's forecasted cash flows generated over a period of time and the amount invested in the property. This is different from the forecasted IRR or Equity Multiple to the investor in the applicable fund or other investment vehicle."

- "The website may contain forward-looking statements. You should not rely upon forward-looking statements as predictions of future events. These statements involve known and unknown risks, uncertainties, and other factors that may cause an investment's actual results to be materially and adversely different from those expressed or implied by these forward-looking statements. Past performance is no guarantee of future results. Any historical returns, expected returns, or probability projections may not reflect actual future performance. All securities involve risk and may result in partial or total loss. Before making an investment decision with respect to any offering, potential investors are advised to carefully read the related subscription and offering memorandum documents and to consult with their tax, legal and financial advisors. Cardone Capital does not give investment advice or recommendations regarding any offering posted on the website."

24.     By virtue of Section 12(a)(2) of the Securities Act, the making of material misstatements and omissions in offering documents and "test the waters" communications is prohibited.   In spite of their obligation to be truthful to investors, Cardone and Cardone Capital instead took advantage of investors.

## II.    <u>JURISDICTION AND VENUE</u>

25.     The claims asserted herein arise under section 12(a)(2) and section 15 of the Securities Act (15 U.S.C. §§ 77l(a)(2) and 77o).

26.     Jurisdiction is conferred by § 22 of the Securities Act (15 U.S.C. §§77v), and 28 U.S.C. §§ 1331 and 1337.

27.     Venue is proper in this district pursuant to § 22 of the Securities Act and 28 U.S.C. § 1391(a)(2) because false statements were made to plaintiff and other class members who reside in this district and acts giving rise to the violations complained of occurred in this district.

28.     In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mail.

## III.    <u>THE PARTIES</u>

29.     Luis Pino was a resident of Inglewood, California.    Luis Pino purchased interests in Fund V and Fund VI and was damaged thereby. Luis Pino passed away in February 2023.

30.     Christine Pino is Luis Pino's daughter, sole heir, and successor-in-interest.

31.     Defendant Cardone Capital, LLC is a limited liability company organized under the laws of the State of Delaware.   The principal executive offices of Cardone Capital, LLC are located at 18909 NE 29th Avenue, Aventura, FL 33180-2807.

32.     Defendant Grant Cardone was the Chief Executive Officer of Cardone Capital at all relevant times, including at the time of the Fund V and

Fund VI public offerings.    As CEO, Cardone reviewed and approved, and participated in making, statements to investors, including statements in the offering statements.  Both Fund V's and Fund VI's offering statements identify Cardone as a control person of the Funds.  Cardone is a resident of Florida. Cardone signed or authorized the signing of the offering statements used to conduct the public offerings.

33.    Defendant Cardone Equity Fund V, LLC is a limited liability corporation organized under the laws of the State of Delaware. The principal executive offices of Cardone Equity Fund V, LLC are located at 18909 NE 29th Avenue, Aventura, FL 33180-2807.

34.    Defendant Cardone Equity Fund VI, LLC is a limited liability corporation organized under the laws of the State of Delaware. The principal executive offices of Cardone Equity Fund VI, LLC are located at 18909 NE 29th Avenue, Aventura, FL 33180-2807.

35.    On September 19, 2019, Grant Cardone advertised on his Instagram account that he was coming to Anaheim, California to market Cardone Capital.



1

2

3

4

5

6

7

8

9

10

11

12

13

14



15

16      36.     On September 21, 2019, Luis Pino attended the "Breakthrough

17 Wealth Summit" in Anaheim, California, hosted by Grant Cardone.      The

18 Breakthrough Wealth Summit took place at the Hilton Anaheim, 777 West

19 Convention Way, Anaheim, CA. 92802.

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



37.     According to the Cardone Capital investor portal, two days later, on September 23, 2019, Luis Pino invested in Fund V.

38.     On September 25, 2019, Grant Cardone advertised on his Instagram page:  "Three cities today, finally home after 2 months.  #CardoneCapital #Realestate," describing Grant Cardone's travels to market the Cardone Capital equity funds in connection with his tour.

39.     On September 26, 2019, the Cardone Capital Instagram account (@cardonecapitalofficial) advertised:  "I am proud to announce Cardone Equity Fund V is oversubscribed and the first Regulation A of its kind to raise $50 Million in crowdfunding using social media.  By accessing social media, I am

14

offering investment opportunities to the everyday investor, like you! #CardoneCapital #MultifamilyInvesting #10XLiving" and went on to list the required SEC legend: "Our offerings under Rule 506(c) are for accredited investors only." The advertisement went on to say: "For our anticipated Regulation A offering, until such time that the Offering Statement is qualified by the SEC, no money or consideration is being solicited, and if sent in response prior to qualification, such money will not be accepted. No offer to buy the securities can by accepted and no part of the purchase price can be received until the offering statement is qualified. Any offer may be withdrawn or revoked, without obligation or commitment of any kind, at any time before notice of its acceptance given after the qualification date. A person's indication of interest involves no obligation or commitment of any kind. Our Offering Circular, which is part of the Offering Statement, may be found at www.cardonecapital.com/offering-1."



40.    On September 28, 2019, Grant Cardone represented on his personal Instagram account (@grantcardone) that Fund V had closed, raising $50,000,000.



41.    In his Instagram post, Cardone wrote: "Congrats to our non-accredited investors who have taken advantage of Cardone Equity Fund V.  This is the largest Reg A+ crowdfunding ever done for real estate investments of this quality using social media.  I am so proud of this accomplishment as it is truly a way for me to make a significant difference in the financial lives of millions of people.  It is clear the deck is stacked against the average every day family from creating financial freedom.  The rich get richer and everyone else continues to struggle.    The difference is in how the [sic] invest.    The great investments available in the world today are held for the wealthy institutions and family's [sic].  Cardone Capital gives access to the everyday person to the kind of real estate only available to the wealthiest of institutions & the well connected.  By using no middleman & going directly to the public using social media we reduce our cost.  This ensures more of your money goes directly into the assets, resulting in lower promotional cost.  More importantly, investors gain access to real estate that has never been available before.  We are literally doing something that has never been done.  Thanks for your support, I will never let you down.  GC. Text [ ] to invest.   #Investing #Real estate #Fund #PassiveIncome #CardoneCapital #GrantCardone #10X #Investing."  He did not include the required SEC legend on

this post even though Cardone represented to the SEC on September 26, 2018 that "[a]ny mention of any specific fund of Cardone Capital will contain the proper legends" in connection with the "Cardone Capital Marketing Policy."

## IV.    REGULATION A OFFERINGS

42.    Cardone Capital has a number of funds in which individuals and entities can invest.  The funds were formed to acquire interests in income-earning real estate.

43.    For Fund V and Fund VI, Cardone Capital raised money for the funds by registering with the SEC as Regulation A offerings under Title IV of the 2015 Jumpstart Our Business Starts (JOBS) Act.  Regulation A provides for "mini-public offerings," which are offerings exempt from SEC registration. However, the offering materials are subject to SEC filing requirements.  To offer securities under Regulation A, an issuer must file an offering statement on Form 1-A with the SEC, including an offering circular for distribution to investors and all required exhibits.

44.    Form 1-A filings are subject to SEC review and comment.  Before sales under Regulation A can be made, the SEC reviews the offering materials in order to "qualify" the Form 1-A.  Subject to certain conditions, a Regulation A issuer is permitted to use "test the waters" communications to communicate with investors to see if they might be interested in an offering before filing a Form 1-A.

45.    Regulation A governs how an issuer may communicate with potential investors around the time of a Regulation A offering.  The rules specify the types of communications about the offering an issuer can make depending on the stage of the qualification process.  Specifically, no offers may be made until the Form 1-A is qualified, with the exception of testing the waters communications that meet the requirements of Rule 255.

46.    "Test the waters" communications are considered offers of securities and are subject to the anti-fraud provisions of the securities laws.  All test the

waters communications must contain a legend stating: (i) that no money or other consideration is being solicited or accepted, (ii) that offers to buy the securities cannot be accepted, and no part of the purchase price can be received, until the Form 1-A is qualified and any offer can be withdrawn or revoked at any time before notice of its acceptance is given after the qualification date, (iii) that an indication of interest involves no obligation or commitment of any kind, and (iv) the contact information of a person from whom the preliminary offering circular can be obtained, a preliminary URL at which the offering circular is available, or a complete copy of the document (if the Form 1-A has already been filed).

47.    Post-filing "test the waters" communications must include a current preliminary offering circular or a notice informing potential investors where to obtain one (*i.e.*, by providing the URL of the preliminary offering circular). An issuer must distribute revised "test the waters" materials if any post-filing testing the waters material contains information that is or becomes materially inaccurate or inadequate.

48.    Written or broadcast "test the waters" materials must be filed as Exhibits to Form 1-A when the issuer initially confidentially submits or files the Form 1-A.

## V.    DEFENDANTS' MATERIAL MISSTATEMENTS AND OMISSIONS

### A.    Material Misstatements and Omissions in "Test the Waters" Communications

49.    Cardone Capital acknowledged that pursuant to SEC Rule 255, "test the waters" communications are subject to the anti-fraud provisions of federal securities laws and cannot contain false or misleading communications. When the SEC required Cardone Capital to provide a "detailed analysis regarding how all of [its] communications comply with Regulation A and Section 5 under the Securities Act," Cardone Capital responded on November 5, 2018 that it had "conducted a comprehensive audit of its online presence including all websites

18

and social media accounts" and adopted a "Social media and solicitation policy"
to ensure "ongoing and future compliance."

50.    Cardone Capital's letter attached an "Action Plan and Written Social
Media Compliance Manual," which provided, "All social media posts on all social
media platforms, videos, websites, live shows, replay of live shows have to be
compliance with the SEC.  This is for every social media platform as well as
emails that solicit investor interest.  Until we 'clear' comments, no posting on
social media will occur until it has been passed through the Compliance Officer
and Compliance process.  Once comments are cleared, then we will have an
official opening date, we will amend this manual to reflect the new guidelines for
posting on Social Media."

51.    As to Instagram posts, specifically, Cardone Capital wrote:  "Any
post that invites potential investors to the website or to inquire about investing
MUST contain a Legend. The Long Legend should be used."

52.    The Manual went on: "As such, this social media policy is a living
document and will be reviewed on an ongoing basis with an emphasis on
preventing false and misleading communications."  It went on to describe
requirements for Twitter, Facebook, Instagram, GCTV (Grant Cardone TV),
YouTube, Website (cardonecapital.com), LinkedIn, and Podcasts and stated that
"The Web Team and SEC Compliance Officer will keep track of all media
postings for compliance."

### 1.    Cardone Capital's Statements About Returns Were Baseless and Materially False Misrepresentations and Omissions

53.    In the July 3, 2018 version of the Fund V offering statement, which
was not qualified by the SEC, defendants said they would seek opportunities that
would afford a 15% IRR based on a ten-year holding period and made the
following statements:

    (a)    "Currently, our strategy includes paying a monthly distribution to investors under this Offering that would result in a return of approximately fifteen percent (15%) annualized return on investment, net of expenses, of which there is no guarantee."

    (b)    "The Company will attempt to achieve an overall Company internal rate of return (IRR) of fifteen (15%) percent per year, net of expenses."

54.    The July 3, 2018 version of the Fund V offering statement also referenced Cardone's prior operating results of prior programs, which included Cardone Equity Fund I, Cardone Equity Fund II, and Cardone Equity Fund III. None of those prior investments had obtained a 15% internal rate of return.

55.    On July 30, 2018, a letter from Jennifer Gowetski, Senior Counsel, Office of Real Estate and Commodities of the SEC, directed Cardone Capital: "We note your disclosure on page 17 and throughout the offering statement that references your strategy to pay a monthly distribution to investors that will result in a return of approximately 15% annualized return on investment. We further note you have commenced only limited operations, have not paid any distributions to date and do not appear to have a basis for such return. Please revise to remove this disclosure throughout the offering statement." Notwithstanding the specific warning from the SEC that it had no basis for making this statement, Defendants continued to advertise a 15% internal rate of return to potential investors.

56.    On April 22, 2019, Grant Cardone stated in his YouTube video: "[I]t doesn't matter whether [the investor] [is] accredited [or] non-accredited . . . you're gonna walk away with a 15% annualized return. If I'm in that deal for 10 years, you're gonna earn 150%." He then said, "You can tell the SEC that's what I said it would be. They call me Uncle G and some people call me Nostradamus, because I'm predicting the future dude, this is what's gonna happen." One minute

after making this statement, Cardone clarified that his remarks applied to Fund V, but that any differences between Cardone Equity Fund IV and Fund V "[do] not matter" for purposes of this statement.[2]  In fact, the SEC had told Cardone nine months before that he had no basis for making such a statement. These statements were test the waters communications targeting investors in Funds V and VI.  The YouTube video contains the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

57.    The below advertisements appeared on Cardone Capital's Instagram account, all of which tell investors that Cardone Capital targeted at least a 15% internal rate of return for Fund V and Fund VI.  In the May 5, 2019 advertisement, Cardone Capital advertised a "15% Targeted IRR," "monthly distributions" and "long term appreciation" in connection with soliciting investments in Fund VI.  At the time Cardone Capital made this statement, Fund V and Fund VI had commenced only limited operations and had not made any distributions to date., and Cardone Capital did not have a basis for claiming that they would have such a return.



---

[2] https://www.youtube.com/watch?v=OoeJkZZGa2c (last visited June 26, 2023).

58.    These statements were test the waters communications targeting investors in Funds V and VI.    The statements contain the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

59.    In the October 16, 2019 advertisement for Fund VI, Cardone Capital advertised how 10X Living at Panama City Beach, one of the properties in which Fund VI acquired an interest, had a targeted investor IRR of 17.88%, a targeted equity multiple of 2.5-3X, and a targeted average cash yield of 10.31%.    At the time Cardone Capital made this statement, Fund VI had commenced only limited operations and had not made any distributions to date, and Cardone Capital did not have a basis for claiming such a rate of return on investments.



60.    These statements were test the waters communications targeting investors in Funds V and VI.    The statements contain the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

61.    In Cardone Capital's September 4, 2019 advertisement, it advertised a Target IRR of 15% with regard to the "bonus property," 10X Living at Breakfast Point, purchased by Fund V.    At the time Cardone Capital made this statement, Fund V had commenced only limited operations, had not made any distributions to date, and Cardone Capital did not have a basis for such a return.



62.    These statements were test the waters communications targeting investors in Funds V and VI.  The statements contain the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

63.    Cardone and Cardone Capital had no historical track record of realizing a 15% internal rate of return. Before forming Fund V and Fund VI, Grant Cardone and Cardone Capital had established several equity funds which, like Funds V and VI, invested in multi-unit rental properties.  Those equity funds include Cardone Equity Fund I, Cardone Equity Fund II, and Cardone Equity Fund III, which were formed in 2016 and 2017.   None have achieved these returns.

64.    Defendants failed to inform investors in Fund V and Fund VI that none of their other equity funds had achieved a 15% rate of return. To the extent that these statements were forward looking, they implied that defendants had achieved these returns in the past. Indeed, Cardone Capital's October 28, 2019 Instagram post solicited investors by specifically highlighting defendants' past performance, noting that Cardone Capital had "typically [chosen] A class

23

[properties] in top-tier, high growth markets" and that "Cardone Capital is built on real assets which are already established and stable in nature."

65.     As alleged in Paragraphs 9–14 and incorporated by reference here, these were not the only representations about returns made by Cardone when soliciting investments for Fund V and Fund VI: Cardone told investors he could "return to investors at least 2X-3X their investment." (¶ 9). Cardone also told investors that within five to seven years, a "$220,000 investment [would] be worth $660,000, 'plus your cash flow.'" (¶ 14). This is at least a 200% return.

66.     Cardone's representations to investors about returns were material misrepresentations. *First*, Cardone Capital and its principal, Grant Cardone, did not believe that these statements were accurate or true. The SEC had determined that Cardone did not have any factual basis to promise investors a 15% IRR. In making that determination, the SEC had before it the track record of Cardone's prior equity funds, but the SEC nonetheless concluded that Cardone lacked a reasonable factual basis for the representation of a 15% IRR. The SEC gave Cardone and Cardone Capital an opportunity to defend this representation and thereby keep it in Fund V's offering materials, but they did not even try, and agreed to omit the representation in order to make the offering materials available for distribution to investors. Defendants therefore knew and understood that they had no basis for representing a 15% IRR (or higher) and had no information with which to challenge the SEC's determination. Cardone knew about the SEC's determination, but nonetheless continued to make the very same representation of a 15% IRR—and representations of even higher returns—to investors, without disclosing to investors that the SEC had made that determination and that Defendants had agreed to omit the representations from the offering materials in order to comply with the SEC's determination. Defendants' statements to investors did not align with the information they had in their possession when

making them, and Defendants did not believe the statements made to investors were true at the time they were made.

67.    Cardone's representations about returns were also objectively untrue. Cardone had no basis to promise investors a 15% IRR, as the SEC recognized. When reviewing Fund V's offering circular, the SEC considered Cardone's track record of prior investments, but concluded that he nonetheless had no basis to project a 15% internal rate of return. Cardone also projected higher returns, including telling investors they could double or triple their money, and the agency's determination demonstrates the falsity of those projections too.

68.    As the Ninth Circuit recognized, the SEC's determination "'call[s] into question Cardone's basis for offering his projections of a 15% IRR and promises of large monthly distributions or that investors would double or triple their investments." *Pino*, 2023 WL 2158802, at *3 (quoting *City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*, 856 F.3d 605, 616 (9th Cir. 2017)).

69.    *Second*, Cardone and Cardone Capital's representations to investors about returns were also misleading because they omitted material information. Cardone and Cardone Capital did not, in any of these representations, tell investors that just months earlier the SEC had determined that they lacked any basis to project such returns. The Ninth Circuit held: "Pino plausibly alleges that by omitting mention of the SEC's communication to Cardone Capital that there was no basis to represent that investors would receive monthly distributions resulting in a 15% annualized return on their investments, the alleged misstatements relating to IRR and distributions were misleading to a reasonable person reading the statements fairly and in context." *Pino*, 2023 WL 2158802, at *3.

70.    Defendants' statements regarding investors' rates of return were also not accompanied by any cautionary language, let alone meaningful cautionary

25

language. Defendants did not caution investors that they had failed to achieve a 15% rate of return in the past. Defendants also did not caution about the risks specific to investing in these Funds. For example, at the time these statements were made, Fund V and Fund VI had not yet acquired, or were in the early stages of seeking to acquire, rental properties. The Funds had not even identified certain properties that would they would eventually purchase. Yet, in these test the waters communications, defendants did not warn prospective investors that Fund V and Fund VI might fail to acquire properties that generated these rates of return, and that they had no reasonable basis to represent that they would acquire such properties and, in fact, they failed to do so.

71.     Even if defendants' statements are forward looking, the PSLRA's safe harbor for forward looking statements would not apply. *See* 15 U.S.C. § 78u-5. The statutory safe harbor does not apply to forward looking statements that are "made in connection with an initial public offering" or made by a limited liability company. *Id.* § 78u-5(b)(2)(D)–(E). Funds V and VI are both LLCs, and they made these statements in connection with their initial public offerings. The PSLRA's statutory safe harbor thus does not insulate defendants from liability.

## 2.     Misleading Statements Regarding Monthly Distributions

72.     Defendants overstated the amount of monthly distributions investors could expect to receive after investing in the funds.  As alleged in Paragraphs 12–14 and incorporated by reference here, Cardone told prospective investors that "investing $220,000 would allow investors to earn 'about $12,000-$15,000 a year," which is between 5.5% and 6.8% in annual distributions. On another occasion, Cardone told investors they would receive 5% in annual distributions. *See* ¶ 9.



1

2

3

4

5

6

7

8

9

10       73.     On February 5, 2019, Grant Cardone advertised that investors would

11   double their money, receive $480,000 in cashflow (*i.e.*, monthly distributions)

12   after investing $1,000,000, achieve "north of 15% returns after fees," obtain a

13   "118% return amounting to 19.6% per year," and other disclosures that are neither

14   in line with the offering statements, nor the representations permitted by the SEC.

15   On an annual basis, Cardone therefore projected that investors would receive 8%

16   in cash distributions.

17       74.     At the time Cardone made this statement, the Funds had commenced

18   only limited operations and had not paid any distributions to date, and Cardone

19   did not have a basis for claiming such a rate of return on investments. Further,

20   based on the 4.5% rate of return paid by Funds V and VI to date, after investing

21   $1,000,000, one would only expect to receive $270,000 in monthly distributions

22   after six years.

23       75.     These statements were test the waters communications targeting

24   investors in Funds V and VI.  The statements contain the Rule 255 legend

25   defendants told the SEC they would affix to any test the waters communications.

26       76.     Cardone Capital also represented to investors that an investment of

27   $1 million would pay $50,000 in "yearly dividend income."

28

1

2

3

4

5

6

7

8

9

10

11

12



13

14    77.    Based on the 4.5% rate of return actually paid by Funds V and VI to

15    date, after investing $1,000,000, an investor would only receive $45,000 in

16    distributions annually.

17    78.    Cardone's representations to investors about distributions were

18    material misrepresentations. *First*, Cardone Capital and its principal, Grant

19    Cardone, did not believe that these statements were accurate or true. The SEC had

20    determined that Cardone did not have any factual basis to promise investors a

21    15% IRR. In making that determination, the SEC had before it track record of

22    Cardone's prior equity funds, but the SEC nonetheless concluded that Cardone

23    lacked a reasonable factual basis for the representation of a 15% IRR. Cash flows

24    on an investment, including monthly cash distributions, are an important

25    component of calculating internal rates of return. The SEC gave Cardone and

26    Cardone Capital an opportunity to defend this representation and thereby keep it

27    in Fund V's offering materials, but they did not even try, and agreed to omit the

28    representation in order to make the offering materials available for distribution to

28

investors. Defendants therefore knew and understood that they had no basis for representing a 15% IRR (or higher), and related distributions, and had no information with which to challenge the SEC's determination. Yet Cardone continued making representations about large distributions to prospective investors, without disclosing to investors that the SEC had made that determination and that Defendants had agreed to omit the representations regarding a 15% IRR from the offering materials in order to comply with the SEC's determination. As the Ninth Circuit recognized, the SEC's determination "'call[s] into question Cardone's basis for offering his projections of a 15% IRR *and promises of large monthly distributions* or that investors would double or triple their investments." *Pino*, 2023 WL 2158802, at *3 (quoting *City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*, 856 F.3d 605, 616 (9th Cir. 2017)) (emphasis added). Defendants' statements to investors did not align with the information they had in their possession when making them, and Defendants did not believe the statements made to investors were true at the time they were made.

79.    Cardone's representations about distributions were also objectively untrue. Cardone had no basis to promise investors these cash distributions. When reviewing Fund V's offering circular, the SEC considered Cardone's track record of prior investments, but concluded that he nonetheless had no basis to project a 15% internal rate of return. The agency's determination demonstrates the falsity of Cardone's projections about distributions too: Cash distributions are an important component of calculating IRRs. If Cardone and Cardone Capital lacked a basis to project a 15% IRR, they also lacked a basis to project upwards of 8% in cash distributions. These projections are part and parcel of the promises of extraordinary performance Cardone made to investors—high IRRs and large monthly distributions are two sides of the same coin—but, as recognized by the SEC, are not justified by Cardone's track record.

80.    *Second*, Cardone and Cardone Capital's representations to investors about distributions were also misleading because they omitted material information. Cardone and Cardone Capital did not, in any of these representations, tell investors that just months earlier the SEC had determined that they lacked any basis to project a 15% IRR. As the Ninth Circuit held: "Pino plausibly alleges that by omitting mention of the SEC's communication to Cardone Capital that there was no basis to represent that investors would *receive monthly distributions* resulting in a 15% annualized return on their investments, the alleged misstatements relating to IRR and distributions were misleading to a reasonable person reading the statements fairly and in context." *Pino*, 2023 WL 2158802, at *3 (emphasis added).

81.    These statements were test the waters communications targeting investors in Funds V and VI.  The statements contain the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

82.    Defendants' statements regarding distributions were also not accompanied by any cautionary language, let alone meaningful cautionary language. Defendants also did not caution about the risks specific to investing in these Funds. For example, at the time these statements were made, Fund V and Fund VI had not yet acquired, or were in the early stages of seeking to acquire, rental properties. The Funds had not even identified certain properties that would they would eventually purchase. Yet, in these test the waters communications, defendants did not warn prospective investors that Fund V and Fund VI might fail to acquire properties that would produce income sufficient to make distributions in the amounts described in those communications, and that they had no reasonable basis to represent that they would acquire such properties and, in fact, they failed to do so.

83.    Even if defendants' statements are forward looking, the PSLRA's safe harbor for forward looking statements would not apply. *See* 15 U.S.C. § 78u-

5. The statutory safe harbor does not apply to forward looking statements that are "made in connection with an initial public offering" or made by a limited liability company. *Id.* § 78u-5(b)(2)(D)–(E). Funds V and VI are both LLCs, and they made these statements in connection with their initial public offerings. The PSLRA's statutory safe harbor thus does not insulate defendants from liability.

84.    Cardone Capital had advertised the monthly distributions as a key reason to invest in the Funds:



85.    These statements were test the waters communications targeting investors in Funds V and VI.  The statements contain the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

### 3.    Misleading Statements Regarding Debt Obligations

86.    Cardone Capital misrepresented the extent to which investors would be financially responsible for the debt incurred to finance the properties.  In one Instagram post, Cardone Capital wrote: "One question you might want to ask is, who is responsible for the debt?  The answer is Grant!"

1

2

3

4

5

6

7

8

9

10

11



12    87.    This statement is materially misleading because the capital

13  contributed by investors in Fund V and Fund VI is used to pay the debt service for

14  the Funds, *i.e.,* the monthly interest payments on the interest-only loans obtained

15  by Cardone Capital on behalf of the funds.  The debt is a significant operating

16  expense for which investors are responsible by virtue of their investment in the

17  funds. Not only was this statement objectively false, therefore, but Cardone and

18  Cardone Capital knew it was false. Defendants were aware that they would use

19  investor money to pay the Funds' debt obligations. From their inception, Funds V

20  and VI used investor money to pay debt obligations. This statement was directly

21  at odds with information in Defendants' possession at the time it was made,

22  because Defendants intended to use investor money to service debt.

23    88.    These statements were test the waters communications targeting

24  investors in Funds V and VI.  The statements contain the Rule 255 legend

25  defendants told the SEC they would affix to any test the waters communications.

26    89.    Similarly, Cardone Capital represented that an investment in Cardone

27  Capital was an "asset" and not a "liability," which was misleading because the

28  interests in properties acquired by Fund V and Fund VI were leveraged with

32

financing debt with a loan-to-value ratio of 60-80%. The statements suggest that investors are not responsible for the significant monthly debt service payments, which is inaccurate and misleading. Defendants also knew this statement was not accurate, because it was their intention to take out significant debt obligations and use investor money to service that debt, as they did so upon the creation of Fund V and Fund VI.





90.     These statements were test the waters communications targeting investors in Funds V and VI.  The statements contain the Rule 255 legend defendants told the SEC they would affix to any test the waters communications.

91.     As to defendants' statements "regarding debt obligations . . . and statements that the properties acquired by the Funds were assets, rather than liabilities," the Ninth Circuit held "[t]he FAC plausibly alleged that these statements were 'untrue statements of fact,' 15 U.S.C. § 77l(a)(2), because they suggest investors are not responsible for the "significant monthly debt service payments.'" *Pino*, 2023 WL 2158802, at *3.

92.     Plaintiff and the members of the Class had no knowledge of the untrue statements or omissions alleged herein or facts sufficient to place them on notice of those untrue statements and omissions until April 2020 at the earliest, when distributions of the Funds were suspended.

93.     Defendants did not subjectively believe in the truth of their statements of belief made to investors and that they failed to disclose facts known to them that seriously undermined their statements.

## VI.     <u>CLASS ACTION ALLEGATIONS</u>

94.     Plaintiff bring this action on their own behalf, and on behalf of a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The Class is defined as:

> All persons and entities who purchased or otherwise acquired interests
> in Cardone Equity Fund V and Cardone Equity Fund VI pursuant to
> their public offerings.  Excluded from the Class are defendants and
> their directors, officers, employees and agents.

95.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are several thousand members of the Class.  Absent

members of the Class may be identified from records maintained by defendants and may be notified of the pendency of this action using a form of notice similar to that customarily used in securities class actions.

96.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class were similarly affected by defendants' wrongful common course of conduct complained of herein.

97.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

98.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

    (a)    whether defendants violated the federal securities laws;

    (b)    whether defendants made material misstatements or omissions in the Offering Documents;

    (c)    whether the Offering Documents were negligently prepared, contained materially misleading statements, and omitted material information required to be stated therein; and

    (d)    whether the "test the waters" communications made by defendants were materially misleading and omitted material information.

99.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  The damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it virtually impossible as a practical matter for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

35

# FIRST CLAIM FOR RELIEF

**(Against Grant Cardone, Cardone Capital, Cardone Equity Fund V, LLC, and Cardone Equity Fund VI, LLC for Violation of § 12(a)(2) of the Securities Act)**

100.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

101.   Defendants offered and sold interests in Fund V and Fund VI through offering statements and "test the waters" communications in connection with the solicitation of its public offerings.

102.   By means of the defective offering statement and "test the waters" communications made in connection with solicitation of the initial public offerings, defendants promoted and sold interests in Fund V and Fund VI to plaintiff and other members of the Class.

103.   The offering statement and "test the waters" communications made in connection with the solicitation of the initial public offerings contained untrue statements of material fact, and concealed or failed to disclose material facts. Defendants owed plaintiff and other members of the Class who purchased interests in Fund V and Fund VI pursuant to the offering statements and "test the waters" communications the duty to make a reasonable and diligent investigation of the statements contained in the offering statements and test the waters communications, to ensure that such statements were true, and to ensure that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.   Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the offering statements and test the waters communications as set forth above. Plaintiff, while reserving all of his rights, expressly disclaims and disavows at this time any allegation in this complaint that could be construed as alleging fraud.

104.   Plaintiff did not know, nor in the exercise of reasonable diligence could plaintiff have known, of the untruths and omissions contained in the offering statements and test the waters communications made in connection with solicitation of the initial public offerings at the time plaintiff acquired interests in Fund V and Fund VI.

105.   By reason of the conduct alleged herein, defendants violated Section 12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased interests in Fund V and Fund VI pursuant to the offering statement sustained substantial damages in connection with their purchases.  Accordingly, plaintiff and the other members of the Class who purchased shares in Fund V and Fund VI pursuant to the offering statement have the right to rescind and recover the consideration paid for their shares, and thereby tender their shares to the defendants sued herein.   Class members who have sold their shares seek damages to the fullest extent permitted by law.

## SECOND CLAIM FOR RELIEF

**(Against Cardone Capital and Grant Cardone for Violation of Section 15 of the Securities Act)**

106.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

107.   This claim is brought pursuant to Section 15 of the Securities Act against Cardone Capital and Grant Cardone.

108.   Cardone Capital was a control person of Fund V and Fund VI by virtue of its position as manager of the Funds. According to the Funds' offering statements, Cardone Capital "ma[d]e all decisions relating to the business, operations, and strategy" of the Funds, "includ[ing] purchase and sale decisions regarding the assets, the appointment of other officers, managers, vendors and whether to enter into material transactions with related parties."

109.    Cardone was a control person of Fund V, Fund VI, and Cardone Capital by virtue of his position as Cardone Capital's CEO, his ownership interest in Cardone Capital, and Cardone Capital's control over the Funds. According to the Funds' offering statements, Grant Cardone was the controller and "sole decision maker" of Cardone Capital, LLC, which in turn was the Funds' manager. Cardone signed the Funds' Offering Documents and published posts and advertisements on his social media accounts soliciting investors to purchase interests in the Funds for his own financial benefit.

110.    By reason of the above conduct, Cardone Capital and Grant Cardone are jointly and severally liable with and to the same extent as the Funds pursuant to Section 15 of the Securities Act.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment, as follows:

A.    Determine that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure and appointing plaintiff's counsel as Class counsel;

B.    Award damages in favor of plaintiff and the Class against all defendants, jointly and severally, for all damages sustained as a result of defendants' violations of the law, in an amount to be proven at trial, including prejudgment interest thereon.

C.    Award rescission or a rescissory measure of damages;

D.    Award plaintiff and the Class reasonable attorneys' fees, costs and expenses incurred in this action, including expert fees.

E.    Award such other and further relief as the Court may deem just and proper.

Dated:  June 26, 2023                    MARC M. SELTZER
                                         STEVEN G. SKLAVER
                                         KRYSTA KAUBLE PACHMAN
                                         RAJ MATHUR
                                         SUSMAN GODFREY L.L.P.

38

1

2                                          By_____/s/ Marc M. Seltzer_____

3                                               Marc M. Seltzer
                                             Attorneys for Lead Plaintiff

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                   39

1

## **JURY DEMAND**

2      Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands trial by jury of all of the

3  claims asserted in this complaint so triable.

4

Dated:  June 26, 2023                MARC M. SELTZER
5                                     STEVEN G. SKLAVER
                                      KRYSTA KAUBLE PACHMAN
6                                     SUSMAN GODFREY L.L.P.

7

8

9                                     By____/s/ Marc M. Seltzer_____
                                            Marc M. Seltzer
10                                    Attorneys for Lead Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        40