**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 20-8499-JFW(KSx)** | Date: October 4, 2023 |
| Title: | Christine Pino -v- Cardone Capital, LLC, et al. | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (IN CHAMBERS):**   ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT [filed 7/17/23; Docket No. 130]

On July 17, 2023, Defendants Cardone Capital, LLC ("Cardone Capital"), Grant Cardone ("Cardone"), Cardone Equity Fund V, LLC ("Fund V"), and Cardone Equity Fund VI, LLC (Fund VI") (collectively, "Defendants") filed a Motion to Dismiss Second Amended Complaint ("Motion").  On August 17, 2023, Plaintiff Christine Pino ("Plaintiff") filed her Opposition.  On August 21, 2023, Defendants filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.   Factual and Procedural Background**

The facts of this case are well known to the parties and this Court.  As a result, the Court will only discuss the facts relevant to Defendants' Motion.

**A.   The Parties**

Luis Pino, who was the Lead Plaintiff in this action, was an investor in Cardone Equity Fund V, LLC ("Fund V") and Cardone Equity Fund VI, LLC ("Fund VI") (collectively, the "Funds"), which were organized to "acquire various real estate assets throughout the United States."  Luis Pino invested $5,000 in Fund V and $5,000 in Fund VI.  On February 11, 2023, after he had been named Lead Plaintiff in this action, Luis Pino died.  On June 8, 2023, the Court substituted Christine Pino, who is Luis Pino's daughter, sole beneficiary, and successor-in-interest, as Lead

Plaintiff.

The Funds are managed by Cardone Capital, LLC ("Cardone Capital"). Grant Cardone ("Cardone") founded Cardone Capital in 2017 and he is its sole manager and Chief Executive Officer. Cardone also founded Cardone Real Estate Acquisitions, LLC ("Cardone Acquisitions"), now Cardone Capital's acquisition arm, in 1995. Cardone has thirty years of experience investing in income-producing, multi-family real estate properties. Over the years, Cardone has purchased over forty properties across eight states – California, North Carolina, Georgia, Florida, Alabama, Arizona, Tennessee, and Texas – with a total purchase price of over $650,000,000. At the time the Funds were created, Cardone was managing a multi-family real estate portfolio consisting of over 4,500 units in twenty communities, valued in excess of $700 million. Several of these properties were acquired with the proceeds of three private offerings of securities made exclusively to accredited investors.[1]

Cardone Capital is a typical real estate syndicator and its business activities include identifying locations or potential properties, determining if properties are suitable for purchase, creating a marketing plan to attract investors, raising money from investors to acquire the properties, preparing the documents to be used in raising money from investors, negotiating the purchase and financing of the properties, managing the properties, making periodic distributions to investors, and selling or refinancing the properties and distributing the profits to investors. Cardone Capital offers real estate investment opportunities it refers to as "the everyday investor" through the Funds. In order to offer these investment opportunities to everyday investors, the Funds were offered to both accredited and non-accredited investors. Investments in both Funds were made through offerings pursuant to Regulation A of the Securities Act. In addition, both Funds were characterized as emerging growth companies under the 2015 U.S. JOBS Act, a law that reduced reporting and accounting requirements for emerging companies and enabled the sale of securities using crowdfunding techniques. In fact, both Funds used social media crowdfunding to raise capital, and Fund V claims to have set a record because it was the first fund to raise $50,000,000 via Regulation A using social media crowdfunding. Fund V began receiving subscriptions on December 12, 2018, and completed raising $50,000,000 from over 2,200 individual investors on September 20, 2019. Fund VI began receiving subscriptions on October 16, 2019, and completed raising $50,000,000 on June 25, 2020.

**B.   Procedural History**

On September 16, 2020, Luis Pino filed a Complaint against Cardone Capital and Cardone. Docket No. 1.  On February 19, 2021, Luis Pino filed his First Amended Complaint ("FAC"), alleging claims against Cardone Capital and Cardone as well as the Funds. Docket No. 53. On April 27, 2021, the Court granted Defendants' Motion to Dismiss the FAC, and dismissed the FAC without leave to amend and dismissed this action with prejudice (the April 27, 2021 Order"). *See* Docket Nos. 94 and 96. On May 28, 2021, Luis Pino appealed this Court's April 27, 2021 Order. Docket No. 102.

---

[1] These securities were offered through Reserve at St. Lucie LP 188, LLC (a/k/a Cardone Equity I), Reserve at Ormond Beach 27, LLC (a/k/a Cardone Equity II), and Cardone Equity Fund, LLC (a/k/a Cardone Equity III).

On December 21, 2022, the Ninth Circuit filed a published Opinion and unpublished Memorandum of Disposition. *See* Docket Nos. 104 and 105. On February 22, 2023, the Ninth Circuit issued an unpublished Order and Amended Memorandum of Disposition, which affirmed in part and reversed in part this Court's April 27, 2021 Order ("February 22, 2023 Order"). Docket No. 107. Specifically, the Ninth Circuit held in its February 22, 2023 Order that:

> Because the FAC identifies actionable alleged misstatements regarding projected internal rates of return and distributions and debt obligations, which are not insulated by the bespeaks caution doctrine, we reverse the district court's dismissal of Pino's claims of violations of §§ 12(a)(2) and 15 of the Securities Act as to those alleged misstatements. We remand to the district court to allow Pino to replead consistent with our memorandum disposition and opinion. We affirm the district court's dismissal of Pino's Securities Act claims on the remainder of the alleged misstatements or omissions.

*Pino v. Cardone Capital*, 2023 WL 2158802 (9th Cir. Feb. 22, 2023); February 22, 2023 Order (Docket No. 107).

With respect to Defendants' alleged misstatements relating to the internal rate of return ("IRR") and distribution projections, the Ninth Circuit concluded that:

> The district court erred in holding that the FAC did not state an actionable claim based on alleged misstatements relating to internal rate of return ("IRR") and distributions, which are not protected by the bespeaks caution doctrine. The FAC includes allegations that Cardone told investors they would realize a 15% IRR, while omitting that the SEC had previously requested that Defendants remove from the proposed Fund V offering circular references to their "strategy to pay a monthly distribution to investors that will result in a return of approximately 15% annualized return on investment," because the Fund had commenced only limited operations, had not paid any distributions to date, and did not appear to have a basis for such a projected return. FAC ¶ 55.
>
> The statements recited in the FAC relating to IRR and distributions are actionable. Pino plausibly alleges that by omitting mention of the SEC's communication to Cardone Capital that there was no basis to represent that investors would receive monthly distributions resulting in a 15% annualized return on their investments, the alleged misstatements relating to IRR and distributions were misleading to a reasonable person reading the statements fairly and in context. *See Omnicare*, 575 U.S. at 188–89 ("[I]f the issuer made the statement . . . with knowledge that the Federal Government was taking the opposite view, the investor again has cause to complain: He expects not just that the issuer believes the opinion . . . but that it fairly aligns with the information in the issuer's possession at the time."). Such facts likewise "call into question [Cardone's] basis for offering" his projections of a 15% IRR and promises of large monthly distributions or that investors would double or triple their investments. *City of Dearborn Heights*, 856 F.3d at 616 (*quoting Omnicare*, 575 U.S. at 194).

*Pino v. Cardone Capital*, 2023 WL 2158802 (9th Cir. Feb. 22, 2023); February 22, 2023 Order (Docket No. 107) (footnotes omitted).

With respect to Defendants' alleged misstatements regarding debt obligations, the Ninth Circuit concluded that:

> The district court failed to interpret the FAC's allegations regarding debt obligations in the light most favorable to Pino, by disregarding defendants' statements about "who is responsible for the debt? The answer is, Grant!" and statements that the properties acquired by the Funds were assets, rather than liabilities. The FAC plausibly alleged that these statements were "untrue statements of fact," 15 U.S.C. § 77l(a)(2), because they suggest investors are not responsible for the "significant monthly debt service payments." FAC ¶ 82.3

*Pino v. Cardone Capital*, 2023 WL 2158802 (9th Cir. Feb. 22, 2023); February 22, 2023 Order (Docket No. 107).

In its conclusion, the Ninth Circuit determined that Plaintiff should be allowed to replead her Section 12(a)(2) and 15 claims related to Defendants' alleged misstatements regarding IRR, distribution projections, and debt obligation under the *Ominicare* standard and that Defendants should be allowed to challenge whether Plaintiff had successfully alleged those claims under the *Omnicare* standard. Specifically, the Ninth Circuit concluded that:

> For the foregoing reasons, we reverse the district court's dismissal of Pino's §§ 12(a)(2) and 15 claims as to Defendants' alleged statements regarding a 15% IRR and distributions, as well as the Funds' debt obligations. Because Pino did not plead these claims under the standard in *Omnicare*, the district court shall grant Pino leave to amend the FAC to replead these claims consistent with this memorandum disposition and opinion. We affirm the district court on Pino's Securities Act claims on the remainder of the alleged misstatements. On remand, Defendants may raise arguments to the district court regarding application of the *Omnicare* standard, but Defendants may not relitigate any of the issues resolved by this memorandum disposition.

*Pino v. Cardone Capital*, 2023 WL 2158802 (9th Cir. Feb. 22, 2023); February 22, 2023 Order (Docket No. 107).

On April 17, 2023, the Ninth Circuit entered its Mandate. Docket No. 109. On June 8, 2023, the Court granted Plaintiff's motion to substitute Christine Pino for Luis Pino as the Lead Plaintiff. Docket No. 124.

On June 26, 2023, Plaintiff filed a Second Amended Complaint ("SAC"), alleging claims of relief for: (1) violation of Section 12(a)(2) of the Securities Act against all of the Defendants; and (2) violation of Section 15 of the Securities Act against Cardone Capital and Cardone. Docket No. 127.

## II. Legal Standard

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III. Discussion

In their Motion, Defendants seek an order dismissing the SAC without leave to amend. Defendants argue that Plaintiff has failed to satisfy the *Omnicare* standard with respect to Defendants' statements regarding IRR and distribution projections. Defendants also argue that Plaintiff has failed to allege the materiality of Defendants' statement regarding debt obligation. Plaintiff argues that her allegations in the SAC regarding IRR and distribution projections satisfy the *Omnicare* standard and that her allegations regarding debt obligations are actionable.

A.   **Plaintiff's Opposition to Request for Judicial Notice**

Defendants filed the Declaration of Lisa Bugni ("Bugni Declaration") with their Motion. *See* Docket No. 130-1. The Bugnia Declaration attaches four exhibits that Defendants ask the Court to consider in deciding their Motion. Specifically, the four exhibits are: (1) Fund V's Form 1-K Annual Report for the year ending December 31, 2022, filed on May 1, 2023 ("Fund V's 2022 1-K Filing"); (2) Fund VI's Form 1-K Annual Report for the year ending December 31, 2022, filed on My 1, 2023 ("Fund VI's 2022 1-K Filing"); (3) a Cardone Capital Investor Summary Statement for Luis Pino, dated June 28, 2023 (the "Investor Statement"); and (4) the letter from the U.S. Securities and Exchange Commission to Cardone providing comments on Fund V's Offering Statement, dated July 30, 2018 (the "SEC's Letter"). *See* Docket Nos. 130-2, 130-3, 130-4, and 130-5. Although Defendants did not file a request for judicial notice, Plaintiff filed an Opposition to Defendants' Request for Judicial Notice. Docket No. 132. Defendants argue that a request for judicial notice is unnecessary because the exhibits attached to the Bugni Declaration can be considered under the incorporation by reference doctrine.

The Supreme Court has concluded that "when ruling on Rule 12(b)(6) motions to dismiss," courts should consider "documents incorporated into the complaint by reference" and "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). In the Ninth Circuit, "[b]oth of these procedures permit district courts to consider materials outside a complaint, but each does so for different reasons and in different ways." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Id*. at 1002. Incorporation is proper "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id. (quoting United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). Alternatively, judicial notice "permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Id.* at 999 (*quoting* Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id*. (*quoting* Fed. R. Evid. 201(b)). However, "a court cannot take judicial notice of disputed facts," and "[j]ust because the document is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.*

In this case, the Court concludes that the exhibits to the Bugni Declaration are properly before the Court pursuant to the incorporated by reference doctrine and, as a result, can be considered by the Court. Plaintiff's claims in the SAC expressly refer to and are based on the "rate of return actually paid by Funds V and VI to date." *See, e.g.,* SAC, ¶¶ 74 and 77. Although the SAC does not explicitly refer to the Funds' 1-K Filings or the Investor Statement by name, these documents are an acceptable source of the "rate of return actually paid by Funds V and VI to date." In addition, the Ninth Circuit has recognized that documents may be considered "incorporated by reference" (and, thus, considered by a court) even when they are not explicitly referenced "because the claim necessarily depended on them." *See Khoja,* 899 F.3d at 1002. Plaintiff's claims necessarily depend on the current performance of the Funds because Plaintiff alleges that their performance to date renders Defendants' projections about their performance false, and, as a result, the Funds 1-K Filings and Investor Statement can be considered by the

Court.  *In re Ocera Therapeutics, Inc. Sec. Litig. ("Ocera I"),* 2018 WL 7019481, at *5 (N.D. Cal. Oct. 16, 2018) (holding that the Recommendation Statement and Supplemental Disclosure were incorporated by reference because those documents were "what inspired [the plaintiffs'] claims as the sources of the allegedly fraudulent statements"), *aff'd,* 806 F. App'x 603 ("*Ocera II*") (9th Cir. 2020).  Similarly, any argument that the SEC Letter cannot be considered by the Court is unpersuasive.  The SEC Letter can be considered by the Court because Plaintiff refers to and quotes from the letter and relies on it as the basis for her allegation that Defendants had "no basis" to "advertise a 15% internal rate of return to potential investors."  *See, e.g.,* SAC, ¶ 55.

Accordingly, the Court concludes that the exhibits to the Bugni Declaration are properly before the Court.

### B.     Plaintiff's Section 12(a)(2) Claim Fails

Section 12(a)(2) provides a cause of action "where the securities at issue were sold using prospectuses or oral communications that contain material misstatements or omissions."  *In re Morgan Stanley Info. Fund Sec. Info.*, 592 F.3d 347, 359 (2d Cir. 2010).  To state a claim under Section 12(a)(2) of the Securities Act, a plaintiff must allege that the defendant is" (1) a statutory seller; (2) that the sale was effected by means of a prospectus or oral communication; and (3) that the communication contained a material misstatement or omission.  *In re STEC Inc., Sec. Litig.*, 2011 WL 4442822, at *9 (C.D. Cal. Jan. 10, 2011).  "Scienter, reliance, and loss causation are not prima facie elements of a Section 12(a)(2) claim."  *In re XP Inc. Sec. Litig.*, 524 F.Supp. 3d 23 (E.D.N.Y. 2021) (*quoting Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 98 (2d Cir. 2017)).

#### 1.     Plaintiff's Allegations With Respect to Defendants' Statements Regarding IRR and Distribution Projections in the SAC Fail to Satisfy *Omnicare*

Because Section 12(a)(2) regulates statements of "material fact," a statement of opinion will be actionable only in "special circumstances."  *In re Finjan Holdings, Inc*., 58 F.4th 1048, 1055 (9th Cir. 2023).  The Supreme Court has identified three such "special circumstances": (1) subjective falsity; (2) embedded statements of fact; and (3) misleading omissions.  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188 (2015).  In this case, Plaintiff does not allege that the statements regarding IRR and distribution projections contained embedded statements of fact.  Instead, Plaintiff attempts to meet the *Omnicare* standard by alleging that these statements were subjectively false and misleading by omission.  *See, e.g.,* SAC, ¶¶ 66-69 and 78-80.

##### a.     Plaintiff Fails to Allege Subjective Falsity in the SAC

In the SAC, Plaintiff alleges that Defendants' statements regarding IRR and distribution projections were material misrepresentations and subjectively false.  *See, e.g.,* SAC, ¶ 66 ("Cardone's representations to investors about returns were material misrepresentations. . . . The SEC had determined that Cardone did not have any factual basis to promise investors at 15% IRR. . . . Cardone knew about the SEC's determination, but nonetheless continued to make the very same representation of a 15% IRR – and representations of even higher returns – to investors,

without disclosing to investors that the SEC had made that determination and that Defendants had agreed to omit the representations from the offering materials in order to comply with the SEC's determination") and ¶ 72 ("Defendants overstated the amount of monthly distributions investors could expect to receive after investing in the funds. . . . Cardone told prospective investors that [they would earn] between 5.5% and 6.8% in annual distributions. On another occasion, Cardone told investors they would receive 5% in annual distributions").

"[W]here a plaintiff relies on a theory of subjective falsity, the plaintiff must allege 'both that "the speaker did not hold the belief she professed" and that the belief is objectively untrue.'" *Finjan Holdings*, 58 F.4th at 1056 (*quoting City of Dearborn Heights v. Align Tech.*, 856 F.3d 605, 615-16 (9th Cir. 2017), and *Omnicare*, 575 U.S. at 186); *see also Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1096 (1991) (holding that "to recognize liability on mere disbelief or undisclosed motive without any demonstration that the . . . statement was false or misleading about its subject would authorize . . . litigation confined solely to what one skeptical court spoke of as the 'impurities' of a director's 'unclean heart'") (*quoting Stedman v. Storer*, 308 F. Supp. 881, 887 (S.D.N.Y. 1969)).

In this case, Plaintiff is unable to plausibly plead that Defendants did not hold the belief expressed in their statements regarding IRR and distribution projections because Plaintiff alleges that "Plaintiff, while reserving all of his [*sic*] rights, expressly disclaims and disavows at this time any allegation in the complaint that could be construed as alleging fraud." SAC ¶ 103. Under *Omnicare*, because Plaintiff has disclaimed any and all allegations of fraud, Plaintiff cannot allege that Defendants did not honestly believe in the statements made regarding IRR and distribution projections. Specifically, the Supreme Court held in *Omnicare* that:

> [T]he Funds do not contest that Omnicare's opinion was honestly held. Recall that their complaint explicitly "excludes and disclaims" any allegation sounding in fraud or deception.

*Omnicare*, 575 U.S. at 186. As a result, because Plaintiff has affirmatively disclaimed fraud in the SAC, she cannot plead subjective falsity. *See, e.g., Mehedi v. View, Inc.*, 2023 WL 3592098, *10 (N.D. Cal. May 22, 2023) (holding that the plaintiff could not plead subjective falsity because he "disclaims any allegations of fraud," which "would be inconsistent with any allegation that [defendant] knew that its statements were false"); *In re Velti PLC Sec. Litig.*, 2015 WL 5736589, *18 (N.D. Cal. Oct. 1, 2015) (holding that the plaintiff could not plead subjective falsity under *Omnicare* because it "disavows any allegation sounding in fraud"); *Stein v. U.S. Xpress Enter., Inc.*, 2020 WL 3584800, *10 n.15 (E.D. Tenn. June 30, 2020) (holding that under *Omnicare*, the plaintiffs' "disclaimer" of fraud "bars [p]laintiffs from pursuing such a [subjective falsity] theory"); *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, *12 (S.D. Tex. July 6, 2016) (dismissing the Securities Act claim with prejudice because the plaintiffs "expressly disclaimed any allegations of fraud," which is "inconsistent with any allegations that [defendant] did not believe the opinions it was providing").

In addition, even if Plaintiff's decision to affirmatively disclaim fraud did not preclude Plaintiff from pleading subjective falsity, the Court concludes that Plaintiff has nonetheless failed to sufficiently allege facts that plausibly demonstrate subjective falsity. Plaintiff claims that Defendants' failure to respond to the SEC Letter demonstrates that Defendants "*knew* they had no

basis for" stating that investors would receive a fifteen percent IRR.  Opposition, 5:18-19.  However, despite Plaintiff's argument to the contrary, the SEC Letter did not make any determination or state "that Cardone's projections are objectively untrue."  Opposition, 9:10-11.  Indeed, the SEC Letter did not indicate that it had conducted any independent investigation, or that the SEC had arrived at any definitive conclusion whatsoever regarding the reasonableness of Defendants' projections.  Instead, it merely stated that Defendant did "not *appear* to have a basis for such return."  SEC Letter, ¶ 2 (emphasis added).  Specifically, the SEC Letter merely notes, without any explanation or basis, in relevant part, that:

> We note your disclosure on page 17 and throughout the offering statement that references your strategy to pay a monthly distribution to investors that will result in a return of approximately 15% annualized return on investment.  We further note you have commenced only limited operations, have not paid any distributions to date and do not *appear* to have a basis for such returns.

SEC Letter, ¶ 2 (emphasis added).

Moreover, although the SEC Letter suggests that due to the "limited operations" of Fund V Defendants may not have a sufficient basis to project a fifteen percent IRR, it did not take any definitive position or comment on the issue of whether Defendants subjectively believed that the projection was accurate.  *See, e.g., Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021) ("Plaintiffs rely on allegations that two employees told Musk in 2016 that the goal of producing 5,000 cars per week by the end of 2017 was impossible to achieve, but the district court correctly held that Plaintiffs failed to plead any facts showing that Musk ever accepted those employees' views that the goal was impossible.  In particular, the district court properly held that Plaintiffs had failed to plead facts showing that Defendants adopted the conservative timeline for production on which these employees' pessimism was based").  Indeed, an opinion may be "sincere" even if it is "irrational" or based "on mere intuition."  *Omnicare*, 575 U.S. at 188-89.  In addition, Plaintiff fails to plead any facts demonstrating that Defendants' statements regarding IRR and distribution projections were objectively untrue.[2]  *Id.* at 185 n. 2 (recognizing that an opinion is not objectively false, even if it is true only "accidentally" or if the truth of the opinion would "surprise" the speaker).

Accordingly, the Court concludes that Plaintiff's first claim for relief is dismissed to the extent it relies on Defendants' statements regarding IRR and distribution projections.

### b.     Plaintiff Fails to Allege a Misleading Omission

In the SAC, Plaintiff also alleges that Defendants' statements regarding IRR and distribution

---

[2]  Even if given the opportunity, it is not clear how Plaintiff could plausibly and in good faith plead facts demonstrating that Defendants' statements were objectively untrue.  For example, according to Fund V's 2022 1-K Filing, the audited IRR for Fund V as of December 31, 2022 was 18.26 percent.  According to Fund VI's 2022 1-K Filing, the audited IRR for Fund VI as of December 31, 2022 was 24.16 percent.  Thus, the IRR for both Funds appears to exceed Defendants' fifteen percent projection.

projections were misleading because Defendants failed to disclose the SEC Letter. *See, e.g.,* SAC ¶¶ 69 and 80. To plead an opinion is misleading by omission under Omnicare "is no small task." *Omnicare*, 575 U.S. at 194. Specifically, as the Supreme Court explained:

> The investor must identify particular (and material) facts going to the basis for the issuer's opinion – facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have – whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.

*Id.*

In this case, Plaintiff's argument that Defendants' statements regarding IRR and distribution projections were misleading because Defendants failed to inform investors about the existence of or contents of the SEC Letter is unpersuasive. *See, e.g.,* SAC, ¶¶ 69 and 80. In *Omnicare*, the Supreme Court held that in securities fraud cases, as in other tort cases, "[a] statement of opinion as to facts not disclosed and not otherwise known to the recipient may" in some circumstances reasonably "be interpreted by him as an implied statement" that the speaker "knows facts sufficient to justify him in forming" the opinion, or that he at least knows no facts "incompatible with [the] opinion." *Omnicare*, 575 U.S. at 191 (*quoting Restatement (Second) of Torts* § 539, p. 85 (1976)). However, "[a]n opinion statement . . . is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way." *Id.* at 189. Specifically, a plaintiff "cannot just say that the issuer failed to reveal its basis" for an opinion. *Id.* at 194. Instead, the "common law" incorporated into the Securities Act recognizes that an omission is misleading when "a speaker 'holds himself out or is understood as having *special knowledge* of the matter which is *not available* to the plaintiff.'" *Id.* at 191-92 (emphasis added). However, Plaintiff does not – and could not – allege or argue that the SEC Letter was "not available" to Luis Pino. The SEC Letter was made public on July 31, 2018, on the SEC's Edgar database, well before Luis Pino made his initial investment in the Funds on September 23, 2019. As a result, the information contained in the SEC Letter was publicly available for more than one year prior to his investment in the Funds and, thus, the information was "otherwise known" to him (and other investors) prior to any of the alleged statements by Defendants regarding IRR and distribution projections. Because the SEC letter "was publicly available," the Securities Act did "not require [its] disclosure." *Rubke v. Capitol Bancorp Ltd.,* 551 F.3d 1156, 1162-63 (9th Cir. 2009) (noting that "it is pointless and costly to compel firms to reprint information already in the public domain") (internal quotation marks omitted). Therefore, the Court concludes that Luis Pino knew or should have known about the information contained in the SEC Letter at the time of his investment and Plaintiff cannot now claim that Defendants are liable for failing to disclose that information. *See, e.g., Belodoff v. Netlist, Inc.*, 2009 WL 1293690, at *8 (C.D. Cal. Apr. 17, 2009) (holding that the defendant was not liable for information allegedly omitted because it was actually disclosed and defendant "was under no particular obligation to characterize the facts in a particular manner").

Accordingly, the Court concludes that Plaintiff's first claim for relief is dismissed to the extent it relies on Defendants' statements regarding IRR and distribution projections and Defendants' failure to inform investors about the SEC Letter.

2.  **Plaintiff Fails to Allege the Materiality of Defendants' Purported Debt Obligation Misstatement**

In the SAC, Plaintiff also alleges that Defendants misrepresented whether Cardone or the Fund investors would be responsible for the debt service payments. *See* SAC ¶¶ 86-87. Plaintiff alleges that in one Instagram post, Cardone Capital wrote: "One question you might want to ask is, who is responsible for the debt? The answer is Grant!" *Id.* at ¶ 86. In their Motion, Defendants argue that Plaintiff fails to plead that this statement regarding debt obligation is material because Plaintiff's claim is based on a single Instragram post and not the "total mix of information" available to investors. Defendants also argue that because the operating expense ratio is so small, it is immaterial as a matter of law. Plaintiff argues that the Ninth Circuit has concluded that the debt obligation statement is actionable and, therefore, this issue cannot be raised by Defendants. In addition, Plaintiff argues that the statement is material because a reasonable investor would consider it important to an investment decision.

Although the Ninth Circuit cautioned in its February 22, 2023 Order that Defendants could not re-litigate issues the Ninth Circuit had already resolved (*see Pino*, 2023 WL 2158802, at *4), the Ninth Circuit did not address, discuss, or resolve whether Plaintiff had adequately alleged whether the debt obligation statement was material. In addition, the Ninth Circuit did not specifically limit Defendants' arguments on remand to arguments about the *Omnicare* standard. When the Ninth Circuit remands a case, its mandate "leaves to the district court any issue not expressly or impliedly disposed of on appeal." *Nguyen v. U.S.*, 792 F.2d 1500, 1502 (9th Cir. 1986). As a result, the Ninth Circuit's grant of permission for Defendants to "raise arguments to the district court regarding application of the *Omnicare* standard" does not prohibit Defendants from raising other issues. *Id.* ("Absent a mandate which explicitly directs to the contrary, a district court upon remand can permit [a party] to 'file additional pleadings, vary or expand the issues'"). Moreover, materiality is part of the "*Omnicare* standard" because all of *Omnicare*'s theories of falsity expressly require "materiality." *See, e.g., Omnicare*, 575 U.S. at 185, 194. As a result, the Court concludes that nothing in the Ninth Circuit's February 22, 2023 Order prohibits Defendants from arguing, or this Court from considering, the materiality of Defendants' debt obligation statement.

In the securities context, materiality requires consideration of the "total mix of information" available to investors. *See Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1277 (9th Cir. 2017) (*citing Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)). Plaintiff's claim is based entirely on a single brief Instagram post in which the following text appears: "One question you might want to ask is, who is responsible for the debt? The answer is Grant!" *See* SAC ¶ 86. However, the post consists of an image with the overarching question "How much does Grant invest into the fund?" *Id.* In addition, the post clarifies that "[t]his will be determined by the particular deal, however the last 3-4 deals that have closed, Grant put a significant portion of his own money into the fund." *Id.* Thus, when considering the statement that Plaintiff relies on the context of the "total mix of information" contained in the post, the Court concludes that the language is immaterial and not misleading. *Primo v. Pacific Biosciences of California, Inc.*, 940 F. Supp. 2d 1105, 1116 (N.D. Cal. 2013) (finding alleged omission immaterial in light of other disclosures). Indeed, the post clearly indicates that it was not specifically directed to Funds V or VI, but rather the past "3-4 deals that have closed." *Id.*; *see also In re Velti*, 2015 WL 5736589, at *22 (finding no material omission where "[e]ach of the [allegedly

omitted] circumstances – and the risks they entailed was disclosed in the registration statements"); *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1116 (N.D. Cal. 2013) (finding alleged omission immaterial in light of other disclosures).

Accordingly, the Court dismisses Plaintiff's first claim for relief to the extent it relies on the debt obligation statement in Cardone Capital's Instagram post.

### C. Plaintiff's Section 15 Claim Fails

In her second claim for relief, Plaintiff alleges a claim for violation of Section 15 of the Securities Act against Cardone and Cardone Capital. To state a claim under Section 15 – the control person liability provision – of the Securities Act, a plaintiff must show that: (1) there is a primary violation of the Securities Act; and (2) the defendant directly or indirectly controlled the person or entity liable for the primary violation. *See SEC v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011).

In this case, because Plaintiff failed to allege a primary violation of the Securities Act, Plaintiff has failed to allege a control person liability claim against Cardone and Cardone Capital. Accordingly, Plaintiff's second claim for relief for violation of Section 15 of the Securities Act is dismissed.

### D. Leave to Amend Would Be Futile

The Ninth Circuit has instructed that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). However, "[a] district court may dismiss a complaint without leave to amend if amendment would be futile." *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (citation and quotation marks omitted); *Gardner v. Martino*, 563 F.3d 981 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile").

In this case, the Court concludes that it would be futile and, thus, unnecessary to provide Plaintiff another opportunity to amend the first and second claims for relief. *See, e.g., Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087-88 (9th Cir. 2002) ("The basic underlying facts have been alleged by plaintiffs and have been analyzed by the district court and us. We conclude that the plaintiffs cannot cure the basic flaw in their pleading. Because any amendment would be futile, there is no need to prolong the litigation by permitting further amendment"); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the litigation by permitting further amendment"); *Klamath–Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that "futile amendments should not be permitted"). Plaintiff has had three opportunities to allege her claims against Defendants and although Plaintiff argues in her Opposition that she could allege additional facts if given the opportunity to amend her claims, the Court concludes that Plaintiff has failed to

demonstrate that there are additional facts that she could allege in order to state viable claims against Defendants.

Accordingly, Plaintiff's first and second claims for relief are dismissed without leave to amend.

### IV.     Conclusion

For all the following reasons, Defendants' Motion is **GRANTED**.  The first and second claims for relief in the SAC are **DISMISSED without leave to amend**, and this action is **DISMISSED with prejudice**.  The parties are ordered to meet and confer and agree on a joint proposed Judgment which is consistent with this Order.  The parties shall lodge the joint proposed Judgment with the Court on or before October 11, 2023.  In the unlikely event that counsel are unable to agree upon a joint proposed Judgment, the parties shall each submit separate versions of a proposed Judgment along with a Joint Statement setting forth their respective positions on or before October 11, 2023.

IT IS SO ORDERED.