MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
STEVEN SKLAVER (237612)
ssklaver@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
Phone:  (310) 789-3100
Fax:       (310) 789-3150

RAJ MATHUR (admitted *pro hac vice*)
rmathur@susmangodfrey.com
MORGAN MCCOLLUM (admitted *pro hac vice*)
mmccollum@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, Fl. 50
New York, NY 10001
Phone:  (212) 729-2051
Fax:       (212) 336-8340

Attorneys for Lead Plaintiff Christine Pino

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| CHRISTINE PINO, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>CARDONE CAPITAL, LLC, GRANT CARDONE, CARDONE EQUITY FUND V, LLC, and CARDONE EQUITY FUND VI, LLC,<br><br>    Defendants. | Case No. 2:20-cv-08499-JFW (KS)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>**Motion Hearing Date:** 03/09/2026<br>**Motion Hearing Time:** 1:30 P.M.<br>**Location:** Courtroom 7A, 7th Fl.<br>**Discovery Cutoff Date:** 11/16/2025<br>**Pretrial Conference Date:** 2/12/2027<br>**Trial Date:** 3/3/2027 |

# **TABLE OF CONTENTS**

PAGE(S)

I.    INTRODUCTION .................................................................................................1

II.   SUMMARY OF COMMON EVIDENCE .........................................................3

    A.    The Statements and Omissions that the Ninth Circuit Already Found Actionable Can Be Proven With Common Evidence ..............................................................................................3

    B.    Common Evidence Will Prove Defendants Knew They Had No Basis for Their Statements About IRR and Distributions ..............5

    C.    Common Evidence Will Prove that Investors, Not Grant Cardone, Are Responsible for the Funds' Debt Service ....................10

III.  ARGUMENT ......................................................................................................12

    A.    Class Action Standard.............................................................................12

    B.    The Proposed Class Meets Rule 23(a)'s Requirements.......................12

    C.    The Proposed Class Satisfies Rule 23(b)(3) ........................................15

        1.    Common Questions of Law and Fact Predominate..................15

        2.    Class Adjudication is Superior ................................................22

IV.   CONCLUSION ..................................................................................................22

i

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Allen v. Hyland's Inc.,*
    300 F.R.D. 643 (C.D. Cal. 2014) ........................................................................ 12

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013) ................................................................................... 12, 16

*Boston Retirement Sys. V. Uber Techs., Inc.,*
    2022 WL 2954937 (N.D. Cal. July 26, 2022) ........................................................ 15

*Briseno v. ConAgra Foods, Inc.,*
    844 F.3d 1121 (9th Cir. 2017) ........................................................................... 12

*Castillo v. Bank of Am., N.A.,*
    980 F.3d 723 (9th Cir. 2020) ............................................................................ 14

*Davy v. Paragon Coin, Inc.,*
    2020 WL 4460446 (N.D. Cal. June 24, 2020) ....................................................... 15

*Edwards v. First Am. Corp.,*
    798 F.3d 1172 (9th Cir. 2015) ................................................................. 12, 17, 22

*Feller v. Transamerica Life Ins. Co.,*
    2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ....................................................... 15

*In re Banc of Cal. Secs. Litig.,*
    326 F.R.D. 640 (C.D. Cal. 2018) ....................................................................... 12

*In re China Intelligent Lighting & Elecs., Inc. Secs. Litig.,*
    2013 WL 5789237 (C.D. Cal. Oct. 25, 2013) .................................................*passim*

*In re Oppenheimer Rochester Funds Grp. Secs. Litig.,*
    318 F.R.D. 435 (D. Co. 2015) .............................................................. 2, 14, 20, 21

*In re Snap Inc. Sec. Litig.,*
    334 F.R.D. 209 (C.D. Cal. 2019) ................................................................. 13, 15

*In re Stec Inc. Secs. Litig.,*
    2012 WL 6965372 .......................................................................................... 22

*Katz v. China Century Dragon Media,*
   287 F.R.D. 575, 585 (C.D. Cal. 2012) ...................................................*passim*

*Leyva v. Medline Indus. Inc.,*
   716 F.3d 510 (9th Cir. 2013) ............................................................ 20

*Miller v. Thane Intern., Inc.,*
   615 F.3d 1095 (9th Cir. 2010) ........................................................... 13

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
   693 F.3d 145 (2d Cir. 2012) ............................................................. 14

*Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund,*
   575 U.S. 175 (2015) .......................................................... 4, 16, 17

*Pino v. Cardone Capital,*
   2023 WL 2158802, & 2 (9th Cir. Feb. 22, 2023) .................................. 3

*Pino v. Cardone Capital, LLC, et al.,*
   139 F.4th 1102 (9th Cir. 2025) ...................................................*passim*

*Pino v. Cardone Capital, LLC, et al.,*
   55 F.4th 1253 (9th Cir. 2022) .................................................. 1, 16, 19

*Pinter v. Dahl,*
   486 U.S. 622 (1988) ..................................................................... 19

*Pub. Employees' Retirement Sys. of Miss. v. Merrill Lynch & Co., Inc.,*
   277 F.R.D. 97 (S.D.N.Y. 2011) .................................................... 2, 16

*Ruiz Torres v. Mercer Canyons Inc.,*
   835 F.3d 1125 (9th Cir. 2016) ..................................................... 12, 21

*Samuels v. Lido Dao,*
   757 F. Supp. 3d 951 (N.D. Cal. 2024) ............................................... 16

*Tsereteli v. Residential Asset Securitization Trust 2006-A8,*
   283 F.R.D. 199 (S.D.N.Y. 2012) ..................................................... 21

*Tyson Foods, Inc. v. Bouaphekeo,*
   577 U.S. 442 (2016) ..................................................................... 15

## STATUTES

15 U.S.C.A. § 77*l*(a)(2) ......................................................................... 13, 21

Section 12(a)(2) and 15 Securities Act..................................................*passim*

Securities Act.........................................................................................*passim*

Securities Act Section 2(a)(3) ......................................................................... 3

## RULES

Fed R. Civ. P. 10b-5 ..............................................................................*passim*

Fed. R. Civ. P. 12(a)(2) ................................................................................. 16

Fed. R. Civ. P. 23........................................................................................3, 14

## REGULATIONS

17 C.F.R. §230.159(c) ................................................................................... 13

## I.    INTRODUCTION

This case presents common central questions of fact and law with common answers. As the Ninth Circuit stated, this case involves claims about whether "Cardone made opinion statements he subjectively disbelieved and omitted material facts about the internal rate of return ("IRR") and distribution projections for these investments...[and] misstated material facts regarding debt obligations." *Pino v. Cardone Capital, LLC, et al.* ("*Pino II*"), 139 F.4th 1102, 1107 (9th Cir. 2025). At trial, Plaintiff will present common evidence that defendants did just that, in violation of section 12(a)(2) of the Securities Act. Proof that defendants Cardone and Cardone Capital are "control persons" liable for these violations under section 15 of the Securities Act can also be proven with common evidence.

Common proof can show that defendants raised money for two funds from everyday investors through uniform, mass communications on Instagram and YouTube, using the same "boasting" lies quoted in the opening paragraphs in *Pino II*. Defendants told investors they would receive a 15% IRR and that Grant Cardone would bear the funds' debt, which common evidence can prove was objectively false and not truly believed by defendants themselves. For example, ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████. Common issues underpin Plaintiff's claims and predominate because the focus on the case is on defendants' conduct. Unlike other types of securities cases brought under different statutory sections, here, proof of individual reliance is *not* required. *Pino v. Cardone Capital, LLC, et al.*, 55 F.4th 1253, 1260 (9th Cir. 2022) (quoting *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 965 (9th Cir. 1990) ("[R]eliance is not an element of a section 12(2) claim."))

Courts routinely certify classes, like the one proposed here, alleging violations of Section 12(a)(2) of the Securities Act, because the claims "depend[], more than

1

anything else, on establishing that certain statements and omissions common to all the offerings were material misrepresentations: a classic basis for a class action.". *Pub. Employees' Retirement Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 101 (S.D.N.Y. 2011) ("As courts have repeatedly found, suits alleging violations of the securities laws, particularly those brought pursuant to Sections 11 and 12(a)(2), are especially amenable to class action resolution."). The "central issues are usually common to all class members: Was there a false or misleading statement . . . and was it material? These issues are tried with common proof, and damages are calculated using a common formula." *In re Oppenheimer Rochester Funds Grp. Secs. Litig.*, 318 F.R.D. 435, 443 (D. Co. 2015); *In re China Intelligent Lighting & Elecs., Inc. Secs. Litig.*, 2013 WL 5789237, at *4 (C.D. Cal. Oct. 25, 2013) (finding commonality in a section 12(a)(2) case where "the members of the Class were all allegedly injured by the same misstatements and omissions in the Offering Documents"). Whether Cardone and Cardone Capital are "statutory sellers" and control persons under Section 15 of the Securities Act is likewise subject to common proof rather than the idiosyncratic views of any class member. *See Katz v. China Century Dragon Media*, 287 F.R.D. 575, 585 (C.D. Cal. 2012) ("whether certain individuals are 'control persons' under the 1933 Act" is a common question in a section 15 case).

The class members' section 12(a)(2) and 15 Securities Act claims rise and fall together. The alleged misstatements and omissions were standardized and public; materiality is based on an objective, reasonable investor standard; and investor reliance is not an element for either claim. Whether defendants "subjectively disbelieved the IRR and distribution projections or that those projections were objectively untrue," *Pino II*, 139 F.4th at 1110, and whether defendants are "control persons" or not are all merits defenses that can be decided class-wide.

And though not required for class certification, computing the remedy is a mere programing exercise performed through a statutory formula that applies class-wide, as explained by Plaintiff's expert, economist Robert Mills. *See* Expert Declaration of Robert Mills at ¶¶ 19-29.

In short, plaintiff's case will rise or fall on common proof—that is, on facts common to the members of the proposed Class. Given the nature of plaintiff's claim for violations of sections 12 and 15 of the Securities Act and the evidence adduced to prove it, and because all required elements of Fed. R. Civ. P. 23(a) and (b)(3) are satisfied, the Court should certify the proposed Class.

## II.    SUMMARY OF COMMON EVIDENCE

### A.    The Statements and Omissions that the Ninth Circuit Already Found Actionable Can Be Proven With Common Evidence

The Ninth Circuit has already concluded that thirteen of the challenged statements at issue in this case are actionable under the Securities Act as test the waters communications under Section 12.[1] *See Pino v. Cardone Capital*, 2023 WL 2158802, at *2 n.1 & 2, *3 (9th Cir. Feb. 22, 2023). The thirteen misstatements included promises that investors would receive a 15% IRR and relatedly high monthly distributions, that Grant Cardone would be personally responsible for the funds' debt, and that an investment with Cardone Capital would be an "asset" and not a "liability." *See* (McCollum Decl.), Ex. 2-14 (the thirteen misstatements); *see also* Declaration of Paul Habibi (Habibi Decl.), ¶¶ 12. These statements can be proven with common, class-wide evidence: namely, Cardone and Cardone Capital's

---

[1] Test the waters communications constitute "offers" with the meaning of Section 2(a)(3) of the Securities Act, such that liability can be imposed under Section 12(a)(2). Sec. Act Release No. 10607, 2019 WL 697992, at *5 n.24 (Feb. 19, 2019) ("Liability under Section 12(a)(2) would attach to test the waters oral and written communications under the proposed rule both before and after a registration statement has been filed.").

Instagram and YouTube posts, like the post below promising investors a "15% Targeted IRR," "Monthly Distributions," and "Long Term Appreciation":



McCollum Decl., Ex. 3.

Common evidence will further prove that Defendants made the same material omission to all investors—namely, the failure to disclose to investors that the SEC had told Cardone to remove representations of a 15% IRR from the offering documents because the representations lacked any basis. *Pino*, 139 F.4th at 1111-12 ("Cardone's failure to disclose the SEC letter (which requested that Cardone remove the projected rates of return and distributions) supports an omission claim under *Omnicare*."). Melissa Harless, who oversaw the fundraising process for Cardone Capital's equity funds, including Funds V and VI, testified that she never saw any disclaimer in any of Cardone's advertisements about the SEC letter; that she never told any prospective investors that the SEC had told Cardone to remove mention of the 15% IRR from the circular "because [she] was not aware of that"; and that she never told any prospective investors that the SEC had told Cardone that there didn't appear to be any basis for a 15% IRR. *Id.* (Harless Dep.12:9-13:23, 53:18-54:24). Similarly, ███████████████████

4

██████████████████████████████████████████████████

██████████████████████████████████████████████████

**B.    Common Evidence Will Prove Defendants Knew They Had No Basis for Their Statements About IRR and Distributions**

Common evidence can prove that defendants *knew* their promises of a 15% IRR and high distributions were misleading when made and objectively untrue. The Ninth Circuit already highlighted one such piece of evidence. After defendants posted their offering circular promising a 15% IRR to investors, the SEC issued a letter on July 30, 2018, to Cardone Capital calling into question the promise. McCollum Decl., Ex. 16 (SEC letter). The SEC noted Cardone Capital's "disclosure on page 17 and throughout the offering statement that references your strategy to pay a monthly distribution to investors that will result in a return of approximately 15% annualized return on investment," and requested that it "revise to remove this disclosure throughout the offering statement," because "you have commenced only limited operations, have not paid any distributions to date and do not appear to have a basis for such return," and requesting that defendants' "revise to remove this disclosure throughout the offering statement." *Id.* at 1-2. As the Ninth Circuit acknowledged in *Pino II*, "Cardone's telling *reaction* to the SEC letter—removing the projections without any rebuttal or comment—evinces Cardone's subjective disbelief" that investors would actually receive a 15% IRR. *Pino II*, 139 F.4th at 1111. But even after removing those projections, Cardone went on to promise a 15% IRR to investors on social media. Indeed, nine months after the SEC's directive, Grant Cardone told prospective investors on YouTube:

> *You're gonna walk away with a 15% annualized return*. If I'm in that deal for 10 years, *you're gonna earn 150%*. You can tell the SEC that's what I said it would be. They call me Uncle G and some people call me

Nostradamus, because I'm predicting the future dude, *this is what's gonna happen.*[2]

McCollum Decl., Ex. 2 at p. 19 (transcript).

Since the Ninth Circuit issued its decision, discovery revealed additional common proof that Cardone *knew* he lacked any basis for his advertised projections. Accompanying this motion is the expert declaration of Paul Habibi, who has extensive experience in the areas of residential and commercial real estate valuation. As Mr. Habibi shows in his declaration, ███████████████

███████████████████████████████

███████████████████████████. *See* Habibi Decl. ¶¶ 26-32; Habibi Decl. Exs. 4A, 4B, 5A, 5B. ████████████████

███████████████████████████████

███████████████████████████████

███████. Habibi Decl. ¶¶ 26-32; *see* McCollum Decl., Ex. 13 (Instagram Post telling investors "we seek properties where we can deliver 6-8% returns").

Common proof can show that Defendants ignored these projections because they didn't support the conclusions defendants wanted to advertise. Instead, ██

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

██████████████

████████████████████████████████

███████████████████████████████

_____

[2] https://www.youtube.com/watch?v=OoeJkZZGa2c at 16 minutes, 45 seconds.

6





Mr. Habibi also cites to common proof

*Id.*[4]

---

[4] Mr. Habibi also explains that common evidence shows that multifamily market conditions changed between the time Cardone acquired properties for his earlier funds (Cardone Equity Funds I and II) and when he acquired properties for Funds V and VI. Habibi Decl. ¶¶ 47-54. Because of these changes in market conditions, it would be challenging for Funds V and VI to perform at the same level as Cardone's earlier funds. *Id.* Thus, while the preliminary offering circular for Fund V noted that Funds I and II had obtained returns to investors "totaling 13.6%" and "11.4%," *see* McCollum Decl., Ex. 22 at p. 62, market conditions in 2019 would compel that Funds V and VI could not achieve these returns.

Common evidence can therefore show that defendants knew their representations about IRR and distributions were false, and their representations to investors would violate securities laws. In November 2018, Cardone Capital's attorney informed the SEC that the company had "adopted a social media and solicitation policy" "[t]o ensure ongoing and future compliance" with the Securities Act. McCollum Decl., Ex. 23 (Nov. 5, 2018 letter from Cardone Capital to SEC). Employees had to sign that they had read this "SEC compliance" manual. *See* McCollum Decl., Ex. 24. That manual contains a section titled "the basic rules of advertising—your comprehensive checklist," which states the following:

> **2. Be Sure that Your Advertising Claims Aren't "Deceptive."**
> For example, stating that you doubled your money from investing in real estate.

McCollum Decl., Ex. 25, at CARDONE_CAP_000000622.

Despite this clear instruction, Grant Cardone, on February 5, 2020, posted the following:



McCollum Decl., Ex. 13.

This is all common proof—and the very type of statement that Cardone's own guidelines said would be "deceptive." ▬▬▬▬▬▬▬▬

9

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████

### C.   Common Evidence Will Prove that Investors, Not Grant Cardone, Are Responsible for the Funds' Debt Service

Common evidence will also prove that Grant Cardone misled investors by stating that *he* would be responsible for the debt:



*See* McCollum Decl., Ex. 10 ("One question you might want to ask is, who is responsible for the debt? The answer is, Grant!").

Determining who is responsible for the funds' debt service is proven with common evidence. The funds' compensation structure "resulted in a misalignment of risk exposure between [Cardone] and the investors." Habibi Decl. ¶ 117. The Manager, Grant Cardone, "receives 35% of the cash flow [from the Funds] while only having contributed a fraction of that percentage in equity," meaning that Cardone "recoups [his] initial investment at a significantly faster rate than

10

investors." *Id.* Once Cardone has recouped his initial investment, he "effectively has zero capital remaining at risk in the deal" while the investors "have their capital at risk for a longer duration." *Id.* The "economic reality of the distribution structure results in [Cardone's] capital at risk for less time and investors bearing the majority of the risk for the majority of the investment period." *Id.* Because "investors' equity is in the first-loss position," and the properties acquired by the Funds "are the primary collateral for the loans," the "funds' obligation to pay the debt service supersedes any right for investors' to receive distributions." *Id.* at ¶¶ 120. This means investors are at risk that the funds could default on the loan or that investors would have to contribute additional funds in the form of a capital call to cover the debt service shortfall and protect the properties from foreclosure. *Id.*

Additional common proof includes the fact that in 2020, Cardone Capital's CFO informed Kaufman Rossin—the funds' external auditor—that the company would suspend distributions for a month to "further build [the Funds'] operating reserves," because the funds' existing reserves would cover only "about 3 months of mortgage payments should rent collections drop significantly" during the COVID-19 pandemic. *See* McCollum Decl., Ex. 28, at KR001377-78; *see also* McCollum Decl., Ex. 29 (Kaufman Dep. 78:3-9 (Q. "So Cardone Capital took money that would have gone to investors in the form of distributions and used that to further build operating reserves; correct?" A. "That's what she [the CFO] said they were doing.")). Cardone Capital then decided to suspend distributions "[w]ith the theory being if they didn't make the mortgage payments they were going to lose the property *and investors would lose everything*." McCollum Decl., Ex. 29 (Kaufman Dep. 78:11-22) (emphasis added).

11

## III.   ARGUMENT

### A.   Class Action Standard

Class certification is appropriate where the proposed class satisfied the four prerequisites of Rule 23(a) and at least one of the three prongs of Rule 23(b). *See Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1132 (9th Cir. 2016). Under Rule 23(a), certification is appropriate if the elements of numerosity, typicality, and adequacy are satisfied. Fed. R. Civ. P. 23(a). Plaintiff seeks certification of a class pursuant to Rule 23(b)(3), which also requires a showing of predominance and superiority. Fed. R. Civ. P. 23(b)(3).

A court considering class certification "is merely to decide a suitable method of adjudicating the case and should not 'turn class certification into a mini-trial' on the merits.'" *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

### B.   The Proposed Class Meets Rule 23(a)'s Requirements

Numerosity. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members if impractical." "It's generally accepted that when a proposed class has at least forty members, joinder is presumptively impracticable based on numbers alone." *In re Banc of Cal. Secs. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018). The class has at least 2,172 members. Fund V has 2,172 investors and Fund VI has 1,322 investors. McCollum Decl., Ex. 30 (defendants' Response to Interrogatories No. 2). And while Rule 23 has no separate "ascertainability" requirement, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017),

12

a proposed class is ascertainable if its definition is "based on objective criteria." *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 658 (C.D. Cal. 2014). The proposed class here is defined by objective criteria: ownership of particular interests in funds. Moreover, class members are identifiable from defendants' records and transaction data. *See, e.g.*, McCollum Decl., Exs. 31 & 32 (example of subscription agreements for Funds V and VI, which exists in materially the same form for all class members).[5]

Commonality: "Commonality exists when a plaintiff's claims 'depend upon a common contention' of 'a nature that is capable of class-wide resolution,' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 226 (C.D. Cal. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "For the purposes of Rule 23(a)(2), 'even a single common question' is sufficient." *Id.* (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)).

To prevail on a Section 12(a)(2) claim, the proposed class must establish: a prospectus or oral communication that "includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission)." 15 U.S.C.A. § 77*l*(a)(2); 17 C.F.R. §230.159(c); *see also Miller v. Thane Intern., Inc.*, 615 F.3d 1095, 1099 (9th Cir. 2010).

---

[5] Defendants refused to produce documents identifying investors prior to a court ruling on plaintiff's motion for class certification. *See* Doc. No. 165, at 90-100. Plaintiff moved to compel these documents, *see* Doc. No. 164, but did not receive a ruling in advance of this motion's due date. But, as defendants conceded in their portion of the joint stipulation, "Plaintiff already has the investment documentation for Luis Pino's investment," and "there is no dispute that the subscription agreements [for other investors] varied in any material way." *Id.* at 95.

Common questions of fact and law abound in this case because central issues turn on defendants' conduct and knowledge. These common questions with common answers include:

- Whether defendants made misstatements or omissions in their "test the waters" communications;

- Whether those misstatements or omissions would be material to a reasonable investor;

- Whether defendants subjectively knew that the "test the waters" communications were misleading;

- Whether Grant Cardone and Cardone Capital, LLC are statutory sellers under the Securities Act; and

- Whether Grant Cardone and Cardone Capital were "control persons" for the purposes of liability under Section 15 of the Securities Act.

Courts consistently recognize the commonality of such issues in cases alleging violations of the same Securities Action provisions. *See, e.g., In re Oppenheimer Rochester Funds Grp. Secs. Litig.*, 318 F.R.D. at 443; *In re China Intelligent Lighting & Elecs., Inc. Secs. Litig.*, 2013 WL 5789237, at \*4; *Katz*, 287 F.R.D. at 585 (C.D. Cal. 2012).

Typicality: "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo v. Bank of Am., N.A.*, 980 F.3d 723, 729 (9th Cir. 2020) (citation omitted). Defendants' false and misleading statements regarding the funds' IRR, distributions, and debt harmed plaintiff in the same way as every other class member. Typicality is easily met in cases asserting Securities Act claims, because "in the context of claims alleging injury based on misrepresentations, the misconduct alleged will almost always be the same [as to all

14

class members]: the making of a false or misleading statement." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012).

Adequacy: Plaintiff and plaintiff's counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry centers on two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Snap*, 334 F.R.D. at 228 (quoting *Ellis*, 657 F.3d at 985). Neither plaintiff nor Susman Godfrey have any conflicts with the class. Plaintiff has also demonstrated that she will prosecute this action vigorously; she has responded to defendants' written discovery and will sit for deposition. *See* Pino Decl. ¶¶ 11-12.

Susman Godfrey has vigorously prosecuted this case. *See* Seltzer Decl. ¶¶ 3-4. Susman Godfrey has a track record of success in prosecuting complicated class actions and is particularly well-suited to serve as Class Counsel. *See id.* ¶¶ 5-6; *id.* Ex. A.

### C.    The Proposed Class Satisfies Rule 23(b)(3)

#### 1.    Common Questions of Law and Fact Predominate

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphekeo*, 577 U.S. 442, 453 (2016) (citation omitted). Predominance centers on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," and "measures the relative weight of the common to individualized claims." *Feller v. Transamerica Life Ins. Co.*, 2017 WL 6496803, at *4 (C.D. Cal. Dec. 11, 2017).

Courts in this Circuit and District have routinely held that similar Securities Act cases easily satisfy the predominance inquiry. *See, e.g.*, *In re China Intelligent Lighting*, 2013 WL 5789237, at *6 (finding that the "predominance requirement

15

[was] easily met," as "virtually all of the material issues of law and fact [would] be common to the class"); *Davy v. Paragon Coin, Inc.*, 2020 WL 4460446, at *6-7 (N.D. Cal. June 24, 2020); *see also Katz*, 287 F.R.D. at 586; *Boston Retirement Sys. V. Uber Techs., Inc.*, 2022 WL 2954937, at *3-4 (N.D. Cal. July 26, 2022). That is because whether defendants' misstatements or omissions were *material* to a reasonable investor is a common, objective question, susceptible to a single answer for all purchasers. Materiality is judged according to an objective standard. *Amgen, 568 U.S. at 459-60*. Accordingly, whether the misrepresentations and omissions are material or would be "equally [true] for all investors composing the class . . . As to materiality, therefore, the class is entirely cohesive: It will prevail or fail in unison." *Id.*; *see also Omnicare*, 575 U.S. at 186-87 ("[W]hether a statement is 'misleading' depends on the perspective of a reasonable investor: The inquiry (like the one into materiality) is objective."); *Pub. Employees' Ret. Sys. of Miss.*, 277 F.R.D. at 114 ("swiftly reject[ing]" the argument "that individual issues regarding materiality will predominate" because "the question of materiality, 'rather than being an individual issue, is in fact a common issue.'").

Further, and unlike Rule 10b-5, Section 12(a)(2) does not require proof of investor reliance. The claim turns only whether the solicitations contained material truths or omissions, not on any individual investor's decision-making. *See Pino*, 139 F. 4th at 1110 (quoting *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 578 (1995) ("It is understandable that Congress would provide [securities] buyers with a right to rescind, *without proof of fraud or reliance . . .*") (emphasis added)); *Pino*, 55 F.4th at 1260 (quoting *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 965 (9th Cir. 1990) ("[R]eliance is not an element of a section 12(2) claim.")); *Samuels v. Lido Dao*, 757 F. Supp. 3d 951, 969 (N.D. Cal. 2024) ("[A] Lead Plaintiff does not need to plead either reliance or causation to state a Section 12 claim."); *In re China*

*Intelligent Lighting*, 2013 WL 5789237, at \*6 ("Plaintiff will not need to show scienter, their reliance, or loss causation" to prevail on its § 12(a)(2) claim).

Here, liability will turn on common answers to common questions, including whether Cardone's "mass communications" about IRR and distributions, on public forums like Instagram and YouTube, were misleading because they failed to disclose the SEC letter; *see Pino II*, 139 F.4th at 1111; whether Cardone's statements about debt obligations "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available," *id.* at 1112; and whether "Cardone subjectively disbelieved the IRR and distribution projections or that those projections were objectively untrue," *id.* at 1110. All of this will be adjudicated using classwide evidence.

***First***, common evidence will show that defendants subjectively had no basis for predicting a 15% IRR and large monthly distributions. "Subjective falsity means that 'the speaker did not hold the belief [he] professed' and objective falsity requires 'that the belief is objectively untrue.'" *Pino II*, 139 F.4th at 1109 (citation omitted). "Under *Omnicare*, subjective falsity goes to whether 'the speaker actually holds the stated belief.'" *Id.* (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*, 575 U.S. 175, 184 (2015)). Here, the Ninth Circuit already found plaintiff's allegation of Cardone's subjective belief both "strong and reasonable," referring to the SEC's letter to Cardone (stating that the 15% IRR and relatively high monthly distributions "lacked backing and should be removed from the offering circular") and Cardone's "*reaction* to the SEC letter—removing the projections without any rebuttal or comment." *Id.* at 1110-11. The correspondence with SEC, Cardone's reaction to the SEC letter, and Cardone's mass communications, all of which ignored the SEC's instructions and continued to advertise the 15% IRR and high distributions, are all common evidence of subjective falsity. McCollum Decl.,

17

Exs. 2:14, 16, 17, 22 (preliminary offering circular, July 30, 2018 SEC letter, Cardone's response, relevant TTW communications).[6]

*Second*, common evidence will show that defendants objectively had no basis for predicting a 15% IRR and large monthly distributions. "Objective falsity means the statement is untrue." *Pino II*, 139 F.4th at 1111. The Ninth Circuit previously recognized the common evidence alleged in plaintiff's complaint that demonstrates the statements were not true *when made*, including evidence that the projections lacked a basis, evidence of Cardone Capital's prior funds' performance, and that the properties for Funds V and VI had not yet been purchased. *Id.* (citing *Omnicare, 575 U.S. at 185-190*).

Discovery obtained in this case has reinforced these allegations.



The Ninth Circuit has also already held that the SEC letter's public availability does not insulate defendants from liability. *Pino II*, 139 F.4th at 1111-12.

18



***Third***, common evidence will prove that Grant Cardone misled investors by stating that he would be responsible for the debt, because the class members (*i.e.* the investors) are actually responsible for the Funds' debt service. This evidence includes the funds' offering statements and operating agreements, which explain that under the funds' compensation structure, investor equity is "in the first-loss position," such that the "funds' obligation to pay the debt service supersedes any right for investors to receive distributions." Habibi Decl. ¶¶ 120. Indeed, as Cardone's own external auditor testified, if Cardone Capital "didn't make the mortgage payments" on a Fund V or VI property, the company would "lose the property and investors would lose everything." McCollum Decl., Ex. 29 (Kaufman Rossin Dep. 78:11-22).

***Fourth***, common evidence will prove that Grant Cardone and Cardone Capital are statutory "sellers" under Section 12(a). A person may be liable as a seller under Section 12(a) if the person "engages in solicitation." *Pino, 55 F.4th at 1258-59* (citing *Pinter v. Dahl, 486 U.S. 622, 643, 647-48 (1988)*).[7] The Ninth Circuit has already highlighted the common evidence that will prove that Grant Cardone and Cardone Capital "engaged in extensive solicitation efforts." *Id.* That includes "the

---

[7] As the Ninth Circuit stated, defendants' indirect, mass communications to potential investors through social media posts and online videos counts as "engaging in solicitation" under *Pinter*. *See id.* at 1260.

advertisements at issue in this case—Instagram posts and YouTube videos," which are "the types of potentially injurious solicitations that are intended to command attention and persuade potential purchasers to invest in the funds during the 'most critical' first stage of a selling transaction," *id*.; and evidence that Cardone and Cardone Capital solicited investors at conferences, including the "Breakthrough Wealth Summit" that Plaintiff's father, Luis Pino, attended, *id.* Indeed, Melissa Harless, a former employee in Investor Relations at Cardone Capital, testified that Grant Cardone controlled what was posted from his Instagram account and Cardone Capital's Instagram account. McCollum Decl., Ex. 15 (Harless Dep. 60:17-25).

*Fifth*, common evidence will prove that Grant Cardone and Cardone Capital are liable as "control persons." *See In re China Intelligent Lighting*, 2013 WL 5789237, at *4 (noting that whether defendants are "control persons" under section 15 could be resolved on a classwide basis); *Katz*, 287 F.R.D. at 586 (same); *In re Oppenheimer*., 318 F.R.D. at 447-48 (D. Co. 2015) ("Courts recognize that the issue of control person liability is common to all members."). This common evidence includes documents like the offering statements for Funds V and VI. The offering statements include a section titled "Manager, Executive Officers, Promoters *and Control Persons*." That section states: "Mr. Cardone is the sole decision maker of Cardone Capital, LLC which is the Manager of [Fund V or Fund VI]. All business and affairs of [Fund V or Fund VI] shall be managed by the Manager. The Manager shall direct, manage, *and control* [Fund V and Fund VI] to the best of its ability and shall have full and complete authority, power, and discretion to make any and all decisions and to do any and all things that the Manager shall deem to be reasonably required to accomplish the business and objectives of the Company." McCollum Decl., Ex. 33 at 52-53 & Ex. 34 at 52-53 (emphasis added).

The operating agreements for the Funds further confirm that Grant Cardone and Cardone Capital are "control persons." The operating agreements again state

20

that Cardone Capital, as "Manager," "shall manage all business and affairs of [the Funds]." *See* McCollum Decl. Ex. 35 & 36.

**Finally**, it is a bedrock legal principle that damages calculations alone cannot defeat certification. *See, e.g., Leyva v. Medline Indus. Inc., 716 F.3d 510, 513 (9th Cir. 2013)* (reiterating that "[i]n this circuit . . . damage calculations alone cannot defeat certification"). Defendants have conceded as much, arguing in response to plaintiff's motion to compel that "[p]laintiff does not need to establish the amount of class-wide damages unless a class is certified." Doc. No. 165 at 95.

Nevertheless, here, rescission, the remedy available to class members who hold investments in the funds, is formulaic and can be readily calculated applying a common method. Courts commonly find that "the calculation of damages is common to the Class" in a securities action. *See, e.g., In re Oppenheimer, 318 F.R.D. at 447; Tsereteli v. Residential Asset Securitization Trust 2006-A8, 283 F.R.D. 199, 207 (S.D.N.Y. 2012)* (holding that because Securities Act damages are calculated using a statutory formula, "[t]he means of determining them therefore would be common to all class members"). That is because the Securities Act provides a specific statutory formula: if a class member still owns the security, then they are entitled to return of the consideration paid (plus interest), less any income received. 15 U.S.C. § 77l(a). This statutory formula lends itself to a uniform methodology that can be implemented class-wide with transactional data.

Plaintiff has offered the expert declaration of economist Robert Mills, who describes how rescission will be calculated on a classwide basis. Mr. Mills calculates the classwide recovery amount using the statutory formula described above. *See* Mills Decl. ¶ 19-29. While the "partitioning" of that aggregate amount "among class members may lead to individual calculations," "those calculations would not impact [the defendants'] liability for the total amount of damages" and should not defeat class certification. *Ruiz Torres, 835 F.3d at 1140-41*.

### 2. Class Adjudication is Superior

Under Rule 23(b)(3)'s superiority prong, [t]he Court must consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *In re China Intelligent Lighting*, 2013 WL 5789237, at *6 (quoting Fed. R. Civ. P. 23(b)(3)).

Each of these factors are met here. *First*, no individual member of the class has expressed interest in controlling the prosecution of the case, nor has anyone brought an individual suit. "In fact, a class action might incentivize some putative Class members to pursue recovery when they would not have done so individually." *In re Stec Inc. Secs. Litig.*, 2012 WL 6965372, at *11. *Second*, the class is readily manageable "in light of the overwhelming predominance of common issues in this case and the statutory formulas for the calculation of damages." *In re China Intelligent Lighting*, 2013 WL 5789237, at *7. *Third*, "proceedings in this District are appropriate," *Katz*, 287 F.R.D. at 589, particularly where, as here, the case has already been litigated for five years and "it is desirable to consolidate this nationwide class action in this Court given the Court's familiarity with the claims," *In re Stec Inc. Secs. Litig.*, 2012 WL 6965372, at *11. *Fourth*, "a class proceeding, rather than what could be hundreds or even thousands of individual actions, will be far more efficient and will thereby reduce litigation costs and promote greater efficiency." *Katz*, 287 F.R.D. at 589.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion for class certification and appoint Plaintiff as the class representative and Susman Godfrey L.L.P. as class counsel.

Dated:      December 10, 2025          Respectfully Submitted,
MARC M. SELTZER
STEVEN G. SKLAVER
KRYSTA KAUBLE PACHMAN
MORGAN MCCOLLUM

By: */s/ Marc M. Seltzer*
Attorneys for Lead Plaintiff

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff, certifies that this brief contains 6,544 words, which complies with the word limit of L.R. 11-6.1.

Dated:      December 10, 2025        By: /s/ Marc M. Seltzer
                                                 Marc M. Seltzer
                                               Attorney for Lead Plaintiff