CONFIDENTIAL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE PINO, on behalf of herself and all others similarly situated, | : : : : | Case No. 2:20-cv-08499-JFW (KS) |
| Plaintiffs, | : : | |
| v. | : : | |
| CARDONE CAPITAL, LLC, GRANT CARDONE, CARDONE EQUITY FUND V, LLC, and CARDONE EQUITY FUND VI, LLC, | : : : : : | |
| Defendants. | : : | |

## EXPERT DECLARATION OF PAUL HABIBI IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### DECEMBER 10, 2025

# Table of Contents

I.      Qualifications ................................................................................................... 1

II.     Assignment and Summary of Opinions .......................................................... 2

III.    Background and Timeline of Key Events ....................................................... 3

IV.     Defendants' TTW Communications ................................................................ 3

V.      Defining Key Real Estate Investment Metrics ............................................... 7

        A.      Effects of Debt Financing or Leverage ............................................... 7

        B.      Returns from Cash Flows ..................................................................... 8

        C.      Returns from Appreciation and Total Return (IRR) ........................... 9

        D.      Project-Level Versus Investor-Level Returns ................................... 11

VI.     Analysis of Defendants' Advertised Returns ............................................... 12

        A.      Defendants' Own Internal Projections Confirm Advertised Returns Would be
                Challenging to Achieve ...................................................................... 12

        B.      Defendants' Own Internal Projections Contain Assumptions that Appear
                Aggressive and Serve to Artificially Inflate Returns ......................... 13

        C.      Testimony from Former Employees Corroborates Projected Return Ranges and
                Sensitivity to Exit Cap Rates ............................................................. 16

        D.      Defendants Were Previously Warned by the SEC About Lacking Basis for Return
                Projections .......................................................................................... 17

        E.      Multifamily Market Conditions Changed between 2016 and 2019, Making
                Defendants' Advertised Returns Challenging to Achieve ................. 18

VII.    Analysis of Individual TTW Communications .............................................. 20

        A.      TTW #1: YouTube Video by @GrantCardone on April 22, 2019 ...................... 20

        B.      TTW #2: Instagram Post by @cardonecapitalofficial on May 5, 2019 ............... 23

        C.      TTW #3: Instagram Post by @cardonecapitalofficial on September 4, 2019 ...... 24

        D.      TTW #4: Instagram Post by @cardonecapitalofficial on September 12, 2019 .... 26

        E.      TTW #5: Instagram Post by @cardonecapitalofficial on September 17, 2019 .... 27

        F.      TTW #6: Instagram Post by @cardonecapitalofficial on September 18, 2019 .... 29

        G.      TTW #7: Instagram Post by @cardonecapitalofficial on October 16, 2019 ........ 31

        H.      TTW #8: Instagram Post by @cardonecapitalofficial on October 28, 2019 ........ 33

        I.      TTW #9: Instagram Post by @cardonecapitalofficial on October 31, 2019 ........ 34

        J.      TTW #10: Instagram Post by @cardonecapitalofficial on December 24, 2019 ... 37

        K.      TTW #11: Instagram Post by @grantcardone on January 31, 2020 .................... 38

        L.      TTW #12: Instagram Post by @grantcardone on February 5, 2020 .................... 41

        M.      TTW #13: Instagram Post by @cardonecapitalofficial on March 2, 2020 .......... 43

VIII.   Conclusion ................................................................................................... 44

CONFIDENTIAL

## I.    Qualifications

1.     I am principal and founder of Grayslake Advisors, LLC ("Grayslake"), a real estate expert services firm based in Los Angeles, California. Grayslake's clients include publicly traded Fortune 500 companies, as well as privately held, small businesses, non-profit organizations and associations and individuals.

2.     I am also a Senior Continuing Lecturer at UCLA Anderson School of Management and Continuing Lecturer in Law at UCLA School of Law, teaching in the areas of real estate, finance, and accounting. In my courses, I cover a range of topics in real estate, including the purchase and sale, development, financing, operations, and maintenance of residential and commercial properties.

3.     In addition to my work in academia, I am an active real estate investor. As Principal and Co-Founder of Habibi Properties and affiliates, I directly oversee the acquisition, development, and management of thousands of units within single- and multi-family properties across Southern California and the Midwest.

4.     I am a graduate of the University of California, Santa Barbara, and received my Master of Business Administration from the Stephen M. Ross School of Business at the University of Michigan. I am a Certified Public Accountant and real estate broker and salesperson. I am also Accredited in Business Valuation and Certified in Financial Forensics.

5.     I have frequently been designated as an expert in the areas of residential and commercial real estate valuation, acquisitions and dispositions of assets, financing structures, advanced valuation techniques, and customs and practices with respect to sponsors and investors in syndicated real estate investments. My complete curriculum vitae, including my publications from the last ten years and matters in which I have testified at arbitration, deposition, and/or trial within the past four years, can be found in **Appendix A**.

6.     The rate for my work as an expert on this matter is $1,350 per hour. I have been assisted in this matter by staff of Grayslake Advisors, who worked under my direction. My compensation in this matter is not in any way contingent or based on the content of my opinions or the outcome of this matter. My work in this matter is ongoing, and I reserve the right to supplement my

1

CONFIDENTIAL

opinions in the event that additional information or arguments are provided to me or submitted in connection with this matter and/or in response to any opinions offered by Defendants' experts.

## II.    Assignment and Summary of Opinions

7.    I have been retained by Susman Godfrey L.L.P., counsel for Christine Pino and all others similarly situated ("Plaintiffs"), to provide opinions related to the customs and practices within the multifamily rental sector of the real estate industry with respect to projected return metrics and debt obligations for Cardone Equity Funds ("CEF") V and VI. Specifically, I have been asked to assess certain "test the waters" ("TTW") communications made by Cardone Capital or Grant Cardone as an agent for Cardone Capital ("Defendants") regarding:

    a.   Projected Internal Rates of Return ("IRR"), or total returns, which account for both the amounts and timing of all monies invested and returned;

    b.   Projected Cash-on-Cash ("COC") returns, or distribution returns, which are the amounts of cash distributed divided by the amounts of equity invested;

    c.   Representations that Grant Cardone was responsible for the debt obligations of each Fund.

8.    My opinions in this matter are summarized as follows:

    a.   Real estate investors commonly base investment decisions on several key metrics to evaluate prospective investment returns, including investor-level IRR and COC returns. The calculation of these expected return metrics is highly dependent on assumptions regarding cash flows to investors, leverage and loan terms, property value appreciation, and capital market conditions.

    b.   At the fund level, Defendants' representations about investor returns were not supported by contemporaneous internal projections, prior public disclosures, correspondence with regulators, and testimony in the record.

    c.   Based on my review of evidence, which would be common to all proposed class members, each of the TTWs that were identified in the operative complaint contained representations about the nature or structure of the investments, prospective investor returns, and/or the risks associated with the investments that

CONFIDENTIAL

were contradicted by Defendants' contemporaneous internal analysis, existing market conditions, or real estate investment industry custom and practice.

### III.    Background and Timeline of Key Events

9.    Grant Cardone is the principal owner and manager of Cardone Capital, LLC, which he founded in 1995. Mr. Cardone has purchased or managed apartment communities in Alabama, California, Arizona, Texas, Georgia, Tennessee, Florida, and North Carolina.[1] Between 2016 and 2018, Defendants raised over $164 million across four private offerings (CEF I through IV) from accredited investors under Regulation D of the Securities Act of 1933.[2]

10.    In December 2018, Defendants began raising two new Regulation A funds, CEF V and VI, which were open to nonaccredited investors.[3] CEF V began receiving subscriptions from investors on December 12, 2018 and closed on September 20, 2019, after raising $50 million from investors.[4] CEF VI began receiving subscriptions from investors on October 16, 2019 and closed on June 26, 2020, after raising $29.5 million from investors.[5]

### IV.    Defendants' TTW Communications

11.    Under Regulation A, an issuer is permitted to use TTW communications to gauge investor interest in an offering.[6] Whereas the TTW communications gauge investor interest with

---

[1] Cardone Equity Fund V, LLC Offering Circular dated December 11, 2018, p. 57.

[2] Cardone Equity Fund V, LLC Offering Circular dated December 11, 2018, p. 56. Cardone Equity Fund V, Form 1-K For the year ended December 31, 2021, p. 4.

[3] *See* U.S. Securities and Exchange Commission, *Small Business Exempt Offerings – Regulation*, SEC.gov, available at https://www.sec.gov/resources-small-businesses/exempt-offerings/regulation. In 2012, the Jumpstart Our Business Startups Act ("JOBS") Act was signed into law, allowing private companies to solicit public investment, subject to certain requirements. The JOBS Act allowed "emerging growth companies" (those generating less than $1 billion in annual revenues) to engage in oral or written communications, referred to herein as TTW communications, with potential accredited or institutional investors. In 2015, the SEC permitted issuers of Regulation A offerings to TTW with, or solicit interest in a potential offering from the general public, subject to certain requirements. *See* 17 CFR 230.251–230.346 at 251(d)(2) and 255(a).

[4] Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2021, p. 4.

[5] Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2021, p. 2.

[6] *See* 17 CFR 230.251–230.346 at 255(a).

3

CONFIDENTIAL

"no obligation or commitment of any kind,"[7] a completed offering statement qualified by the SEC allows an issuer to actually begin selling securities.[8]

12.     I have reviewed the following TTW communications Defendants made when fundraising for CEF V and VI, in chronological order:

   a.  **TTW #1:** In a YouTube video streamed live on April 22, 2019, Mr. Cardone stated "At the end of the day, you are going to make six percent on your money. Okay? Assuming I bought the property right, assuming it cash flows, assuming the world doesn't go to hell, you will earn six percent of your money. And then, when I'm done paying you six, I'm going to pay you another nine on top of that. Cuz that's what a good Uncle does. You're going to walk away with a 15% annualized return. If I'm in that deal for 10 years, you're gonna earn 150% on your money. You can tell the SEC that's what I said it would be. They call me Uncle G. And some people call me Nostradamus because I'm predicting the future, dude. This is what's going to happen."[9]

   b.  **TTW #2:** A since-deleted Instagram post by @cardonecapitalofficial on May 5, 2019 told investors that Cardone Capital offerings have a "15% Targeted IRR," "monthly distributions," and "long-term appreciation" in "funds open for non-accredited and accredited investors."[10]

   c.  **TTW #3:** An Instagram post by @cardonecapitalofficial on September 4, 2019 advertised 10X Living at Breakfast Point, a property in CEF V, as a "prime value-add opportunity" with the opportunity to capture between $225 in "[estimated] premiums for continued + recommended upgrades" per unit through "$9,000 [estimated] cost for interior upgrades," resulting in a "30% minimum average return on cost." The advertisement further detailed "explosive rent growth" with

---

[7] *See* 17 CFR 230.251–230.346 at 255(b)(3).

[8] *See* U.S. Securities and Exchange Commission, *Regulation A: Guidance for Issuers*, SEC.gov, available at https://www.sec.gov/resources-small-businesses/regulation-guidance-issuers. ("Issuers are only permitted to begin selling securities pursuant to Regulation A once the offering statement has been qualified by the Commission." "The Offering Circular format is a simplified and scaled version of the narrative disclosure requirements otherwise required to be provided by issuers in registered offerings on Form S-1.") *See also,* 17 CFR 230.251-230.346 at 252(a).

[9] Second Amended Complaint, ¶ 56. *See also,* https://www.youtube.com/watch?v=OoeJkZZGa2c at 16 minutes, 45 seconds.

[10] Second Amended Complaint, ¶ 57. *See also,* PINO_0000001.

CONFIDENTIAL

"16% rent bumps on renewals" and "18% YoY NRI Growth," and stated a target IRR of 15%.[11]

   d.  **TTW #4:** An Instagram post by @cardonecapitalofficial on September 12, 2019 contrasted multifamily housing, cash, and gold coins (assets) with sports cars, yachts, and luxury single-family homes (liabilities), encouraging investors to "surround yourself with assets, not liabilities." The post defined assets as "property owned [by] a person or company, regarded as having value."[12]

   e.  **TTW #5:** In an Instagram post by @cardonecapitalofficial on September 17, 2019, Mr. Cardone stated "So many people have equity in their houses that's dead right now. Get your equity out and get it to work. [$220,000] in Cardone Capital would buy you about a $660,000 position in our fund. That is going to pay you about $12,000-$15,000 a year and every 5-7 years we're going to be sellers of that property. By the time we sell the property, I expect your [$220,000] to be worth [$660,000] plus your cashflow. Is your house going to [$660,000]? Did you get a check while you waited? Cash flow. If a house doesn't provide you with cash flow, don't buy it!"[13]

   f.  **TTW #6:** An Instagram post by @cardonecapitalofficial on September 18, 2019 asked "What does it take to receive $50,000 in yearly dividend income?" and shows two options: "17,123 shares" of Apple Inc. "at a cost of $2,910,910," or "Invest $1,000,000 with Cardone Capital."[14]

   g.  **TTW #7:** An Instagram post by @cardonecapitalofficial on October 16, 2019 promoting 10X Living at Panama City Beach, a property in CEF VI, included a "Targeted Investor IRR" of "17.88%," a "Targeted Average Cash Yield" of "10.31%," and a "Targeted Investment Period" of "10 Years."[15]

   h.  **TTW #8:** An Instagram post by @cardonecapitalofficial on October 28, 2019 asked "Is my capital safe?" and stated in the caption that "Grant has been

---

[11] Second Amended Complaint, ¶ 61. *See also,* https://www.instagram.com/tv/B2AW7YzHYyZ/. PINO_0000002.

[12] Second Amended Complaint, ¶ 89. *See also,* https://www.instagram.com/p/B2UrnuWpkpr/. PINO_0000003.

[13] Second Amended Complaint, ¶ 12. *See also,* https://www.instagram.com/p/B2hecP8nJjm/. PINO_0000004. PINO_0000005.

[14] Second Amended Complaint, ¶ 76. *See also,* https://www.instagram.com/p/B2j34fJJQU-/. PINO_0000006.

[15] Second Amended Complaint, ¶ 59. *See also,* https://www.instagram.com/p/B3r563VJS_V/. PINO_0000007.

5

CONFIDENTIAL

investing in Multifamily Real Estate for over 30 years! We're extremely selective in our vetting process; only choosing strong multifamily properties, typically A Class, in top-tier, high growth markets. Cardone Capital is built on real assets which are already established and stable in nature."[16]

i.   **TTW #9:** An Instagram post by @cardonecapitalofficial on October 31, 2019 asked "How much does Grant invest into the fund?" and stated in the caption "This will be determined by the particular deal, however the last 3-4 deals that have closed, Grant put a significant portion of his own money in the fund." Furthermore, the caption continues with "One question you might want to ask is, who is responsible for the debt? The answer is, Grant!"[17]

j.   **TTW #10:** An Instagram post by @cardonecapitalofficial on December 24, 2019 that stated "This month alone I paid out $1.8 million to investors. And unlike Santa, I pay similar distributions every single month."[18]

k.   **TTW #11:** An Instagram post by @grantcardone on January 31, 2020 stated "Investing $100,000 pays $500 a month. $1,000,000 pays you $5,000 a month. $10,000,000 pays you $50,000 a month," and "More importantly investors have their capital sitting next to mine, protected, waiting for appreciation. We [target] to sell properties when I can return to investors at least 2X-3X their investment."[19]

l.   **TTW #12:** An Instagram post by @grantcardone on February 5, 2020 asked "Want to double your money" and advertised that $1 million invested for six years would result in "$480,000" in cash flow and "$700,000" in appreciation for a "118% return," or "19.6% per year." The same post advertised targeted returns, stating "we seek properties where we can deliver 6-8% returns and sell properties at a point where we can achieve north of 15% returns after fees."[20]

m.   **TTW #13:** An Instagram post by @cardonecapitalofficial on March 2, 2020 compared stocks and multi-family real estate, stating "If you put $25K down on a

---

[16] Second Amended Complaint, ¶ 16. *See also,* https://www.instagram.com/p/B4K2P9DpuNq/. PINO_0000008.

[17] Second Amended Complaint, ¶ 86. *See also,* https://www.instagram.com/p/B4TG93gJy7A/. PINO_0000009.

[18] Second Amended Complaint, ¶ 84. *See also,* https://www.instagram.com/p/B6eRQjejLLI/. PINO_0000010.

[19] Second Amended Complaint, ¶ 9. *See also,* https://www.instagram.com/p/B7_RJtej-C2/. PINO_0000011.

[20] Second Amended Complaint, ¶ 73. *See also,* https://www.instagram.com/p/B8NFiGRDXM6/. PINO_0000012.

CONFIDENTIAL

stock, you are buying a $25K asset that is cyclical in nature. If you put $25K down on a property, you are buying a $100K asset. If the market increases by 10%, let's see how your earnings compare respectively."[21]

## V.     Defining Key Real Estate Investment Metrics

13.    Investors typically purchase real estate assets with the goal of earning returns on their capital. These returns are comprised of two main components: recurring cash flows generated during the holding period, and property value appreciation realized through capital events, such as refinancing or sale. Defendants' TTW communications advertise various return metrics, often using multiple, inconsistent measures of investor returns. It is therefore critical to define and distinguish these metrics as they represent fundamentally different measures of performance and risk.

### A.  Effects of Debt Financing or Leverage

14.    A fundamental concept in real estate investment analysis is the distinction between unlevered and levered returns, which hinges on the use of debt, or "leverage." An unlevered analysis considered the property's performance on an all-cash basis as if no debt were used. A levered analysis accounts for the cost and effect of debt financing.

15.    Leverage is used to acquire an asset with less cash than would be required with an all-cash investment, and its primary effect is to magnify potential returns and risks.[22] When the property's unlevered return is higher than the interest rate on the borrowed funds, "positive leverage" is achieved, which amplifies the return on the investor's equity.[23] Conversely, if the debt's interest rate exceeds the property's unlevered return, "negative leverage" occurs, which reduces the return on equity.[24] This distinction is essential for understanding two primary metrics for recurring cash flow: the capitalization rate and the cash-on-cash return.

---

[21] Second Amended Complaint, ¶ 89. *See also,* https://www.instagram.com/p/B9PNAobJ3kD/.
[22] Brueggeman, W. & J. Fisher, *Real Estate Finance and Investments*, McGraw-Hill Irwin, 14th Edition, pp. 381, 385.
[23] Brueggeman, W. & J. Fisher, *Real Estate Finance and Investments*, McGraw-Hill Irwin, 14th Edition, p. 382.
[24] Brueggeman, W. & J. Fisher, *Real Estate Finance and Investments*, McGraw-Hill Irwin, 14th Edition, p. 385.

CONFIDENTIAL

## B. Returns from Cash Flows

16.    The primary unlevered metric that reflects the recurring cash flow of an income-producing investment property is the capitalization rate ("cap rate"), defined as the property's net operating income ("NOI") divided by its value or purchase price.[25] NOI represents the property's gross income, including potential gross income and other income, less vacancy and all operating expenses,[26] which typically include property taxes, insurance, management fees, utilities, and repairs and maintenance. Notably, NOI excludes capital improvement expenditures and debt service.[27] Therefore, the cap rate is an unlevered return metric.

17.    A key distinction exists between the drivers of NOI and cap rates. NOI is determined by fundamental market and property conditions including prevailing rents, vacancy rates, and operating costs, as well as the asset's competitive position relative to peers. The cap rate is determined by all of these factors that drive NOI as well as the capital market, which influences cap rates based on the relative supply and demand of debt and equity capital and investment opportunities, the opportunity cost of capital including returns on alternative investments like stocks and bonds, expectations for future rental growth and property-specific capital improvement needs, and the perceived risk of the investment.[28] Because the cap rate reflects all of these market factors, it is a critical metric for assessing marketing timing and relative pricing. When demand from investors is high, property prices are bid up. Holding the property's NOI constant, the resulting cap rate becomes lower. This is known as a "low" or "compressed" cap rate, because buyers are paying a relatively high price for each dollar of current income, which is characteristic of an expensive or peak market. Conversely, a "high" cap rate implies a lower purchase price relative to income, often found in market down-cycles.

18.    The primary levered metric for a property's cash flow is the cash-on-cash ("COC") return, which is the amount of cash distributed to investors divided by the amount of equity they invested.[29] Whereas the cap rate is the current yield of the property before accounting for the

---

[25] Geltner, D. M. et al, *Commercial Real Estate Analysis and Investments*, The CE Shop, 3rd Edition, p. 17. *See also,* Brueggeman, W. & J. Fisher, *Real Estate Finance and Investments*, McGraw-Hill Irwin, 14th Edition, p. 302.

[26] Geltner, D. M. et al, *Commercial Real Estate Analysis and Investments*, The CE Shop, 3rd Edition, p. 237.

[27] Geltner, D. M. et al, *Commercial Real Estate Analysis and Investments*, The CE Shop, 3rd Edition, p. 231.

[28] Appraisal Institute, *The Appraisal of Real Estate*, 15th Edition, pp. 273–274. Geltner, D. M. et al, *Commercial Real Estate Analysis and Investments*, The CE Shop, 3rd Edition, p. 18.

[29] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 57. Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 57.

8

CONFIDENTIAL

effects of debt, the COC return accounts for the effects of debt service. The debt's interest rate, term, and loan-to-value ("LTV")[30] factor into the COC return. Investors who seek a consistent stream of income from their real estate investments will pay particularly close attention to assets' COC returns.

### C.  Returns from Appreciation and Total Return (IRR)

19.    In addition to recurring cash flows, real estate investment returns are also generated by asset appreciation, which is only realized when the property is sold. The exit value is determined using the same methodology as at purchase, as a function of the property's projected NOI at sale and the prevailing "exit" cap rate at that time. Thus, for a property to appreciate, there must be some combination of NOI growth and/or cap rate compression during the investment's life.

20.    The IRR is an industry-standard metric for measuring an investment's total return, as it combines both recurring cash flows and the final cash flow from appreciation into a single, time-weighted figure. The IRR is formally defined as the rate that makes the present value of the projected cash flows of an investment equal to the initial investment.[31] IRR accounts for the timing of all monies contributed by and distributed to investors, providing a single, equivalent, annualized return for the irregular set of cash flows that often accompany real estate investments.

21.    It is this time-weighting that distinguishes the IRR from more rudimentary straight-line or average annual return calculations. A straight-line return ignores the time value of money, treating a dollar received in year six as having the same value as a dollar received in year one. The IRR appropriately accounts for this time value, providing a more accurate basis for comparing different investment opportunities with different magnitudes and timing of cash flows.

22.    While the IRR can be projected at any point during the investment's life, projections are highly sensitive to market timing and valuation assumptions. The actual investment IRR cannot be calculated until the business plan is complete, the property is sold, and all cash flows are realized. The actual public reporting for CEF V and VI highlights the sensitivity of unrealized

---

[30] Loan-to-value is the percentage of debt relative to the value of the property. For example, a property worth $100 that is encumbered with $70 of debt has an LTV of 70%. Peca, S. P, *Real Estate Development and Investment, A Comprehensive Approach,* John Wiley & Sons, p. 191.

[31] Brueggeman, W. & J. Fisher, *Real Estate Finance and Investments*, McGraw-Hill Irwin, 14th Edition, pp. 68, 358.

CONFIDENTIAL

IRRs to key inputs and assumptions. In the Form 1-K annual reports filed between 2019 and 2023 pursuant to Regulation A, Defendants reported interim IRRs that demonstrated significant volatility, ranging from 4.19% to 18.26% for CEF V, and negative 22.08% to 33.91% for CEF VI.[32] These interim calculations rely on assumptions that undermine their reliability as performance indicators. First, the calculations use Defendants' estimates of net asset value as a proxy for sale price and do not include hypothetical transaction costs that Defendants noted in their own disclosures approximate 2-3% of the fair value.[33] This methodology artificially inflates the amount of cash investors would receive from a sale, thereby inflating the interim IRR figure. Second, Defendants' deferral of millions of dollars of fees may have improved reported performance. As of December 31, 2023, Defendants deferred $3.6 million of fees from CEF V and $1.3 million of fees from CEF VI.[34] If the deferral of these fees served to increase cash flows to investors, the interim IRRs would be further inflated.

23.      Ultimately, interim IRRs rely on estimates of future NOI, exit cap rates, and sale timing, which are not always accurate. The unreliability of these interim figures is a concept Defendants understand, as their own offering materials state: "It is anticipated that the projected 15% IRR return to investors will primarily be derived from the exit of the investments in the real estate entities, to a lesser degree the investor will also receive a monthly cash distribution derived from

---

[32] CEF V reported interim IRRs of 4.19% through 2019, 7.89% through 2020, 20.00% through 2021, 18.26% through 2022, and 14.42% through 2023. *See* Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2019, p. F-14; Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2020, p. F-15; Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2021, p. 23; Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2022, p. F-16; Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2023, p. F-15. CEF VI reported interim IRRs of negative 22.08% through 2019, 13.44% through 2020, 33.91% through 2021, 24.16% through 2022, and 33.91% through 2023. *See* Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2019, p. F-15; Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2020, p. F-15; Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2021, p. F-17; Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2022, p. F-16; Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2023, p. F-16.

[33] *See* Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2020, p. F-10. *See also*, Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2020, p. F-10. *See also,* FASB, *Accounting Standards Codification – Topic 946: Financial Services – Investment Companies*, Financial Accounting Foundation, as amended, at ASC 946-210-45-14, "Under Rule 2a-4 of the Investment Company Act of 1940, current net asset value is computed using the fair value of the investment company's portfolio securities." *See also,* FASB, *Accounting Standards Codification – Topic 820: Fair Value Measurement*, Financial Accounting Foundation, as amended, at ASC 820-10-35-9B, "The price in the principal (or most advantageous) market used to measure the fair value of the asset or liability shall not be adjusted for transaction costs."

[34] "At the Manager's discretion, a reduced percentage of distributions has been paid to date to the Class B Interest Holder, the Manager, with the intention that at a later time, when the cash flow from operations increases or an exit event occurs, the Manager may adjust cash distributions to be allocated on a cumulative 65%/35% basis. The aggregate impact of this at December 31, 2023 would be to distribute an additional $3,593,703 to the Manager." *See* Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2023, p. F-13. "At the Manager's discretion, a reduced percentage of distributions has been paid to date to the Class B Interest Holder, the Manager, with the intention that at a later time, when the cash flow from operations increases or an exit event occurs, the Manager may adjust cash distributions to be allocated on a cumulative 65%/35% basis. The aggregate impact of this at December 31, 2023 would be to distribute an additional $1,323,907 to the Manager." Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2023, p. F-14.

CONFIDENTIAL

the investments in the Company's real estate investments," acknowledging that the return is contingent on future sales, not current or past performance.[35]

### D. Project-Level Versus Investor-Level Returns

24.     Finally, it is critical to distinguish between "project-level" returns and "investor-level" returns. Project-level returns, or "asset-level" returns, are calculated using total equity inflows and outflows for the property, irrespective of their source or destination. These returns reflect the performance of the asset and are agnostic of the flow of funds to the investors versus the sponsor or fund manager.

25.     Investor-level returns, on the other hand, isolate only cash flows to and from equity investors, which are contributed and distributed pursuant to terms typically laid out in an operating agreement or similar governing agreement. The difference between project-level and investor-level returns is driven by the sponsor's or manager's compensation. For example, pursuant to the CEF V and VI offering circulars, the funds' managers earn acquisition fees totaling 1% of purchase price, disposition fees totaling 1% of sale price, and asset management fees totaling 1% of committed capital per year[36] as well as carried interest of 35% of distributable cash and 35% of sale proceed profits, with the remaining 65% going to investors.[37] This 35% carried interest is significantly higher compensation when compared to CEF I and II, where the split of distributable cash was approximately 20% to Defendants and 80% to investors.[38] Even if project-level returns were identical, the higher fees for CEF V and VI would result in lower investor-level returns when compared to CEF I and II. When evaluating

---

[35] ██████████

[36] According to the offering circulars, for the first three years, the asset management fee is 1% of total capital commitments. Thereafter, the 1% fee is based on the remaining capital contributions (adjusted for any sold assets) and is paid monthly from operational cash flow. *See* Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 23. *See also*, Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 23.

[37] Section 4.1 of the Operating Agreements states "Cash Distributions during Operations" shall be disbursed 65%/35% to Class A and Class B members, with Section 4.4 stating these payments are not a return of capital. Section 4.2 states that on refinance or disposition of a property, capital will first be returned and any profits will be distributed 65%/35% to Class A and Class B members. *See* Cardone Equity Fund V, LLC, Operating Agreement filed October 22, 2018, pp. 9-10. *See also,* Cardone Equity Fund VI, LLC, Operating Agreement filed June 26, 2019, pp. 9-10.

[38] The CEF V and VI offering circulars include operating results for CEF I and II. Between 2016-2017, CEF I distributed $653,899 to investors, and $162,097 to Defendants, which is a split of 80.14% and 19.86%. Between 2016-2017, CEF II distributed $952,353 to investors, and $244,652 to Defendants, which is a split of 79.56% and 20.44%. *See* Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 61. *See also*, Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 61.

CONFIDENTIAL

prospective investment opportunities, equity investors typically focus on investor-level return projections, since those reflect the returns they expect on their investment.

## VI.    Analysis of Defendants' Advertised Returns

### A.  Defendants' Own Internal Projections Confirm Advertised Returns Would be Challenging to Achieve

26.

27.

28.

---

[39] A pro forma for 10X Living at Delray references an external model "2018 03 9  Woodway 10 yr forecast v7.xls" for the initial equity investment. The pro forma uses $26,656,207 for the initial investment when the correct number appears to be $34,200,000, understating the required investment by $7,543,793. *See* CARDONE_CAP_00018075 at the "10 Yr" sheet.

12

CONFIDENTIAL



29. ███████████████████████████████████████████████████████

████████████████████████

30. ███████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

31. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

32. ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████

**B. Defendants' Own Internal Projections Contain Assumptions that Appear Aggressive and Serve to Artificially Inflate Returns**

33. ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████

34. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

---

[40] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 55. Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 55.

CONFIDENTIAL

35.

36.

---

[41] Geltner, D. M. et al, *Commercial Real Estate Analysis and Investments*, The CE Shop, 3rd Edition, pp. 240–41 ("[Buildings] become more risky or less able to grow the rents they can charge (or more prone to needing capital improvement expenditures)." "Cap rates of older buildings tend to be higher than those of otherwise similar buildings." "[I]f the asset market is particularly 'exuberant' at the time of purchase, the going-in cap rate will tend to be abnormally low, and such a low rate should probably not be projected for reversion.") *See also*, Brueggeman, W. & J. Fisher, *Real Estate Finance and Investments*, McGraw-Hill Irwin, 14th Edition, p. 310 ("[H]olding all else constant, when compared to newly developed properties, a property that is 10 years old should sell for a lower price relative to its NOI (higher cap rate) than a new one (lower cap rate)… Holding all else constant, the current difference between cap rates on older properties and newer properties should reflect differences in the amount of economic depreciation, and therefore lower rents and income, that will occur in the future.")

[42] Ling, D. & W. Archer, *Real Estate Principals, A Value Approach*, McGraw-Hill Irwin, 5th Edition, p. 206 ("For fully leased, stabilized properties in normal markets, the going-out cap rate is usually assumed to be approximately 1/4 to 3/4 percentage points higher than the going-in cap rate—and higher cap rates produce lower value estimates. The higher going-out cap rate at termination usually reflects the assumption that the income-producing ability of properties (i.e., their productivity) declines over time as the property ages, all else being equal. Thus, investors generally pay less per dollar of current NOI for older properties than newer properties, all else equal.")

[43] CARDONE_CAP_00018371; CARDONE_CAP_00018071; CARDONE_CAP_00018380; CARDONE_CAP_00018311; CARDONE_CAP_00018253; CARDONE_CAP_00018957; CARDONE_CAP_00019565; CARDONE_CAP_00018594; CARDONE_CAP_00018509.

CONFIDENTIAL



[44] Deposition of Adam John Helmker, dated November 19, 2025, at pp. 27–32.

[45] See **Exhibits 4A and 4B**.

[46] CARDONE_CAP_00018071.

[47] CARDONE_CAP_00018371.

[48] CARDONE_CAP_00018380; CARDONE_CAP_00018311; CARDONE_CAP_00018253; CARDONE_CAP_00018957; CARDONE_CAP_00019565; CARDONE_CAP_00018594; CARDONE_CAP_00018509.

[49] *See* Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2020, p. F-10. *See also*, Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2020, p. F-10.

[50] CARDONE_CAP_00018071.

CONFIDENTIAL



40.

### C. Testimony from Former Employees Corroborates Projected Return Ranges and Sensitivity to Exit Cap Rates

41.

42.

43.

---

[51] Deposition of Adam John Helmker, dated November 19, 2025, at p. 5.
[52] Deposition of Adam John Helmker, dated November 19, 2025, at p. 26.
[53] Deposition of Adam John Helmker, dated November 19, 2025, at pp. 28–31.
[54] Deposition of Adam John Helmker, dated November 19, 2025, at p. 31.

CONFIDENTIAL

44.

45.

### D. Defendants Were Previously Warned by the SEC About Lacking Basis for Return Projections

46.    During the SEC's review of CEF V on July 30, 2018, regulators specifically challenged Defendants' return representations, stating, "we note your disclosure… throughout the offering statement that references your strategy to pay a monthly distribution to investors that will result in a return of approximately 15% annualized return on investment. We further note you have commenced only limited operations, have not paid any distributions to date and do not appear to have a basis for such return. Please revise to remove this disclosure throughout the offering statement."[57] Defendants responded the following day by removing references to the 15% IRR.[58]

47.

[57]
[58]

17

CONFIDENTIAL

██████████████████████████████████████████████████████

████████████████████████████████

### E. Multifamily Market Conditions Changed between 2016 and 2019, Making Defendants' Advertised Returns Challenging to Achieve

48.     The multifamily market conditions that existed in 2016 and 2017, when Defendants were raising CEF I and II, were favorable to producing high leveraged returns. These conditions changed fundamentally by 2019 and 2020 when Defendants were raising funds for CEF V and VI and were less favorable to producing high levered returns.

49.     In late 2016, the market offered a "positive leverage" environment characterized by purchase cap rates that exceeded interest rates. This spread allowed investment properties to generate income yields higher than the cost of debt. Consequently, borrowers could achieve higher LTV ratios, borrowing a larger percentage of the total property value and enhancing equity returns. These market conditions are reflected in the acquisition metrics found in public SEC filings and Defendants' internal financial projections below, and also detailed in **Exhibit 5**:

| Fund | Purchase Cap Rate | Interest Rate | LTV |
|---|---|---|---|
| CEF I (Pro Formas) | 7.8% | 3.9% | 79.0% |
| CEF I (SEC Filings) | 7.1% | 3.9% | 79.0% |
| CEF II (SEC Filings) | 7.0% | 4.1% | 80.0% |

50.     ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████   ████████████████████████████████
            ████████████████████████
            ██████████████████████████████

51.     ██████████████████████████████████████████████
████████████████████████████████████████████████

[59] The CEF V and VI offering circulars include operating results for CEF I and II. Between 2016-2017, CEF I distributed $653,899 to investors, and $162,097 to Defendants, which is a split of 80.14% and 19.86%. Between 2016-2017, CEF II distributed $952,353 to investors, and $244,652 to Defendants, which is a split of 79.56% and 20.44%. *See* Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 61. *See also*, Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 61.

18

CONFIDENTIAL



53.    This market shift is also confirmed by contemporaneous industry research. As early as February 2018, Fannie Mae noted that "while rent growth should remain positive, it is expected to grow at a more modest pace."[61] Similarly, Freddie Mac's 2018 mid-year outlook stated multifamily performance "remained healthy in the first half of 2018, and is expected to continue throughout the second half of 2018 and into 2019, but with continued moderation from the prior few years."[62] By 2019, Freddie Mac noted that price growth seen in Q2 2019 was "a healthy 7.3% over the past year," but "the lowest annualized growth since 2010" and future value growth was "generally expected to come more from income growth going forward instead of cap rate compression" with "expected price appreciation to be more modest going forward."[63] Similarly, Cushman & Wakefield forecasted in 2019 that "[c]ap rate compression across multifamily subcategories is projected to moderate."[64]

---

[60] CARDONE_CAP_00018119 shows a project-level IRR of 29.85%, CARDONE_CAP_00018121 shows a project-level IRR of 28.55%, CARDONE_CAP_00018122 shows a project-level IRR of 27.95%, and CARDONE_CAP_00018123 shows a project-level IRR of 27.81%.

[61] Fannie Mae, *Multifamily Market Commentary – February 2018*, p. 1.

[62] Freddie Mac Multifamily, *Multifamily 2018 Mid-Year Outlook*, p. 1.

[63] Freddie Mac Multifamily, *Multifamily 2019 Mid-Year Outlook*, p. 3.

[64] Cushman & Wakefield, *U.S. Multifamily MarketBeat Q2 2019*, p. 4

CONFIDENTIAL

54. ████████████████████████████████████

████████████████████████████████████

████████████████████



55. ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████

## VII.    Analysis of Individual TTW Communications

56.    In this section, I analyze each of the TTW communications identified in **Section IV**. For each TTW communication, I provide an overview of the representations being made to investors and evaluate whether those representations were reasonable or achievable based on Defendants' contemporaneous internal projections, which are evidence common to all proposed class members. Specifically, I analyze the project-level projections in the record that are closest to and generally before the date of each TTW communication to determine whether Defendants' contemporaneous internal analyses are consistent with their external representations to prospective investors.

### A. TTW #1: YouTube Video by @GrantCardone on April 22, 2019

57.    In a YouTube video streamed live on April 22, 2019, Mr. Cardone stated "At the end of the day, you are going to make six percent on your money. Okay? Assuming I bought the

CONFIDENTIAL

property right, assuming it cash flows, assuming the world doesn't go to hell, you will earn six percent of your money. And then, when I'm done paying you six, I'm going to pay you another nine on top of that. Cuz that's what a good Uncle does. You're going to walk away with a 15% annualized return. If I'm in that deal for 10 years, you're gonna earn 150% on your money. You can tell the SEC that's what I said it would be. They call me Uncle G. And some people call me Nostradamus because I'm predicting the future, dude. This is what's going to happen."[65]

58.    **Summary of Representations:**

a.    **IRR:** Defendants represented the IRR as the "15% annualized return." This is derived from the "six percent" cash flow and "another nine" percent appreciation.

b.    **COC:** Defendants represented "you are going to make six percent on your money." This is the COC return.

c.    **Risk:** Defendants used phrasing such as "I'm going to pay you," "You're going to walk away with a 15% annualized return," "You can tell the SEC that's what I said it would be," "I'm predicting the future," and "This is what's going to happen."

59.    **Analysis of IRR Representations:** The statement "If I'm in the deal for 10 years, you're gonna earn 150% on your money" is a fundamental miscalculation of compounding returns. A 15% annualized return (IRR) does not grow linearly (15% x 10 years = 150%). A true 15% IRR over 10 years would result in a total return of 404.6%, not 150%. This demonstrates a conflation of simple interest with compounded IRR, which is confusing to investors.

60.

61.

[65] Second Amended Complaint, ¶ 56. *See also,* https://www.youtube.com/watch?v=OoeJkZZGa2c at 16 minutes, 45 seconds.
[66] CARDONE_CAP_00018183 and CARDONE_CAP_00028740. The pro forma for 10X Living at Delray dated January 16, 2019 (CARDONE_CAP_00018075) is excluded from my analysis for errors. See **Exhibits 1A and 1B**.
[67] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 55. Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 55.

CONFIDENTIAL

62.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

63.     Furthermore, Defendants' divergence from the 15% figure is notable given prior regulatory scrutiny. As detailed in **Section VI.D**, the SEC challenged Defendants' IRR representations in July 2018, over nine months before the TTW #1 communication. Regulators stated Defendants "do not appear to have a basis for" the "approximately 15% annualized return on investment."[68] In response, Defendants removed references to the 15% IRR from their preliminary offering circulars.[69] However, they continued to advertise a "15% annualized return" in TTW #1.

64.     **Analysis of COC Return Representations:** I performed the same analysis on Defendants' internal projections to calculate the investor-level Year 1 COC returns. The 10X Living at Delray pro forma projects a 2.4% COC return, and the Stella at Riverstone pro forma projects a 3.3% COC return, which are both significantly lower than the advertised "six percent on your money."

65.

66.     **Analysis of Risk Representations:** Defendants' use of language such as "I'm going to pay you," "You're going to walk away with a 15% annualized return," "You can tell the SEC that's what I said it would be," "I'm predicting the future," and "This is what's going to happen"

---

[68] CARDONE_CAP_00008345 at 346–347.

[69] CARDONE_CAP_00000327 at 0338. *See also,* Cardone Equity Fund V, LLC Preliminary Offering Circular dated July 2, 2018, at p. 17 ("Currently, our strategy includes paying a monthly distribution to investors under this Offering that would result in a return of approximately fifteen percent (15%) annualized return on investment, net of expenses, of which there is no guarantee."), p. 26 ("The Company will attempt to achieve an overall Company internal rate of return (IRR) of fifteen (15%) percent per year, net of expenses."), and p. 32 ("IRR based on 10-Yr Hold 15%").

[70] CARDONE_CAP_00000323 and CARDONE_CAP_00000324.

CONFIDENTIAL

frames the returns as guaranteed outcomes rather than targets. A guaranteed 15% return is inconsistent with the nature of a speculative, leveraged real estate fund, where distributions are contingent on variable NOI rather than fixed contractual payments. Because real estate cash flows are inherently subject to risks, including market volatility, vacancy, and unexpected expenses, they cannot be guaranteed. Consequently, framing these variable outcomes as certainties is inconsistent with real estate investment industry custom and practice and ignores the standard risks inherent in speculative investing.

### B. TTW #2: Instagram Post by @cardonecapitalofficial on May 5, 2019

67.     A since-deleted Instagram post by @cardonecapitalofficial on May 5, 2019 told investors that Cardone Capital offerings have a "15% Targeted IRR," referring to expected returns at the time of investment, "monthly distributions," and "long-term appreciation" in "funds open for non-accredited and accredited investors."[71]

68.     **Summary of Representations:**

    a.  **IRR:** Defendants represented a "15% Targeted IRR."

    b.  **Other Returns:** Defendants also represented "monthly distributions" and "long-term appreciation."

69.

70.



---

[71] Second Amended Complaint, ¶ 57. *See also,* PINO_0000001.

[72] CARDONE_CAP_00018183 and CARDONE_CAP_00028740. The pro forma for 10X Living at Delray dated January 16, 2019 (CARDONE_CAP_00018075) is excluded from my analysis for errors. See **Exhibits 1A and 1B**.

[73] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 55. Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 55.

CONFIDENTIAL

71. ███████████████████████████████████████████

72.    Furthermore, Defendants' divergence from the 15% figure is notable given prior regulatory scrutiny. As detailed in **Section VI.D**, the SEC challenged Defendants' IRR representations in July 2018, over nine months before the TTW #2 communication. Regulators stated Defendants "do not appear to have a basis for" the "approximately 15% annualized return on investment."[74] In response, Defendants removed references to the 15% IRR from their preliminary offering circulars.[75] However, they continued to advertise a "15% Targeted IRR" in TTW #2.

73.    **Analysis of Other Return Representations:** The claim of "monthly distributions" implies a level of consistency and certainty that is not guaranteed. Distributions are dependent on fluctuating property-level cash flow after expenses and debt service, which is not guaranteed and can be highly variable.[76]

### C. TTW #3: Instagram Post by @cardonecapitalofficial on September 4, 2019

74.    An Instagram post by @cardonecapitalofficial on September 4, 2019 advertised 10X Living at Breakfast Point, a property in CEF V, as a "prime value-add opportunity" with the opportunity to capture between $225 in "[estimated] premiums for continued + recommended upgrades" per unit through "$9,000 [estimated] cost for interior upgrades," resulting in a "30% minimum average return on cost." The advertisement further detailed "explosive rent growth" with "16% rent bumps on renewals" and "18% YoY NRI Growth," and stated a target IRR of 15%.[77]

75.    **Summary of Representations:**

   a.  **IRR:** Defendants represented targeting a 15% IRR.

---

[74] CARDONE_CAP_00008345 at 346–347.

[75] CARDONE_CAP_00000327 at 0338. *See also,* Cardone Equity Fund V, LLC Preliminary Offering Circular dated July 2, 2018, at p. 17 ("Currently, our strategy includes paying a monthly distribution to investors under this Offering that would result in a return of approximately fifteen percent (15%) annualized return on investment, net of expenses, of which there is no guarantee."), p. 26 ("The Company will attempt to achieve an overall Company internal rate of return (IRR) of fifteen (15%) percent per year, net of expenses."), and p. 32 ("IRR based on 10-Yr Hold 15%").

[76] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 47. *See also* Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 47

[77] Second Amended Complaint, ¶ 61. *See also,* https://www.instagram.com/tv/B2AW7YzHYyZ/. PINO_0000002.

24

CONFIDENTIAL

b. **Value-Add Opportunity:** Defendants represented a specific value-add business plan for 10X Living at Breakfast Point to spend an estimated $9,000 cost per unit for interior upgrades to achieve an estimated $225 in monthly rent premiums. It labels this calculation as a "30% minimum average return on cost."



79. Additionally, as detailed in **Section VI.D**, the SEC challenged Defendants' IRR representations in July 2018, over a year before the TTW #3 communication. Regulators stated Defendants "do not appear to have a basis for" the "approximately 15% annualized return on investment."[79] In response, Defendants removed references to the 15% IRR from their preliminary offering circulars.[80] However, they continued to advertise a target IRR of 15% in TTW #3.



---

[78] CARDONE_CAP_00018381 and CARDONE_CAP_00018382.

[79] CARDONE_CAP_00008345 at 346–347.

[80] CARDONE_CAP_00000327 at 0338. *See also,* Cardone Equity Fund V, LLC Preliminary Offering Circular dated July 2, 2018, at p. 17 ("Currently, our strategy includes paying a monthly distribution to investors under this Offering that would result in a return of approximately fifteen percent (15%) annualized return on investment, net of expenses, of which there is no guarantee."), p. 26 ("The Company will attempt to achieve an overall Company internal rate of return (IRR) of fifteen (15%) percent per year, net of expenses."), and p. 32 ("IRR based on 10-Yr Hold 15%").

CONFIDENTIAL



### D. TTW #4: Instagram Post by @cardonecapitalofficial on September 12, 2019

82.     An Instagram post by @cardonecapitalofficial on September 12, 2019 contrasted multifamily real estate, cash, and gold coins as assets with sports cars, yachts, and luxury single-family homes as liabilities, encouraging investors to "surround yourself with assets, not liabilities." The post defined assets as "property owned [by] a person or company, regarded as having value."[87]

83.     **Summary of Representations:** Defendants represented that multifamily real estate is a safe asset like cash and gold, distinguishing it from liabilities such as sports cars, yachts, and luxury single-family homes.

---

[81] Brueggeman, W. & J. Fisher, *Real Estate Finance and Investments*, McGraw-Hill Irwin, 14th Edition, p. 342.
[82] CARDONE_CAP_00018381 and CARDONE_CAP_00018382 at the sheet ███████████████████████████ ██████████████████████.
[83] CARDONE_CAP_00018381 and CARDONE_CAP_00018382 at the sheet "████████████████████████████ █████████████.
[84] CARDONE_CAP_00018381 and CARDONE_CAP_00018382 at the sheet ████████████████████████
[85] CARDONE_CAP_00020173-78 at 78.
[86] CARDONE_CAP_00022332.
[87] Second Amended Complaint, ¶ 89. *See also,* https://www.instagram.com/p/B2UrnuWpkpr/. PINO_0000003.

CONFIDENTIAL

84.    **Analysis of Representations:** Equating multifamily real estate with liquid stores of value like cash or gold mischaracterizes the risk profile of the asset class. Whereas cash is a liquidity instrument and gold is a commodity store of value, an investment in a private real estate fund is an illiquid, speculative equity position. By grouping these asset classes together, Defendants imply a safety profile that does not exist in speculative real estate, minimizing the perceived risks of the investment.

85.    Defendants characterize sports cars, yachts, and luxury homes as liabilities, yet they structured CEF V and VI with significant debt obligations that are, by definition, liabilities. As detailed in the Offering Circulars, the funds were designed to encumber properties with substantial senior debt.[88] Consequently, an investor was not purchasing an unleveraged asset like cash or gold, but a leveraged equity position subordinate to these debt liabilities. In this structure, the equity holds the first-loss position. Unlike cash or gold, which do not have debt service obligations, the funds' equity is responsible for servicing this debt. If revenue falls, the asset can effectively become a liability that consumes cash or faces foreclosure.

86.    The danger of these liabilities is quantified by the funds' leverage targets. Defendants projected utilizing 60-80% LTV ratios.[89] Such leverage symmetrically magnifies gains and losses. In an illustrative 80% LTV scenario, a 20% decline in property value would result in a 100% loss for the equity. The leverage also creates default risk, since, if the property's NOI cannot cover the debt service payments, the lender may foreclose on the property and extinguish the equity entirely. This risk profile where total loss is possible due to leverage is inconsistent with the safety profile of cash or gold.

### E.  TTW #5: Instagram Post by @cardonecapitalofficial on September 17, 2019

87.    In an Instagram post by @cardonecapitalofficial on September 17, 2019, Mr. Cardone stated "So many people have equity in their houses that's dead right now. Get your equity out and get it to work. [$220,000] in Cardone Capital would buy you about a $660,000 position in our fund. That is going to pay you about $12,000-$15,000 a year and every 5-7 years we're

---

[88] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 32. Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 32.
[89] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 32. Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 32.

CONFIDENTIAL

going to be sellers of that property. By the time we sell the property, I expect your [$220,000] to be worth [$660,000] plus your cashflow. Is your house going to [$660,000]? Did you get a check while you waited? Cash flow. If a house doesn't provide you with cash flow, don't buy it!"[90]

88.  **Summary of Representations:**

   a.  **COC:** Defendants represented that a $220,000 investment "is going to pay you about $12,000-$15,000 a year," which is a COC return between 5.5% and 6.8%.[91]

   b.  **Appreciation:** Defendants represented that upon sale in 5-7 years, "I expect your [$220,000] to be worth [$660,000] plus your cashflow."

89.

90.

91.

92.

---

[90] Second Amended Complaint, ¶ 12. *See also,* https://www.instagram.com/p/B2hecP8nJjm/. PINO_0000004. PINO_0000005.
[91] See **Exhibit 9**.
[92] CARDONE_CAP_00018183, CARDONE_CAP_00028740, CARDONE_CAP_00018076 and CARDONE_CAP_00018604. The pro formas for 10X Living at Delray dated January 16, 2019 (CARDONE_CAP_00018075) and Columbia Town Center dated September 17, 2019 (CARDONE_CAP_00018591) are excluded from my analysis for errors. See **Exhibits 1A and 1B**.
[93] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 55. Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 55.

CONFIDENTIAL



93.    **Analysis of Appreciation Representations:** I compared the advertised return that every 5 to 7 years, Defendants expected an investor's $220,000 investment to be worth $660,000. In **Exhibit 9,** ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████   ██████████████████████████████ ████████████████████████████████

94.    In addition, the representation "Every 5-7 years we're going to be sellers of that property" is inconsistent with Defendants' offering materials, which state that the investments are "highly illiquid" and because both CEF V and VI intend "to operate for a period of ten (10) years," investors "should expect to keep your investment in Class A Interests for a period of ten (10) years."[95] The same offering materials state CEF V and VI intend "to purchase properties that will appreciate in value over the expected hold period of seven (7) to ten (10) years."[96]

## F. TTW #6: Instagram Post by @cardonecapitalofficial on September 18, 2019

95.    An Instagram post by @cardonecapitalofficial on September 18, 2019 asked "What does it take to receive $50,000 in yearly dividend income?" and shows two options: "17,123 shares" of Apple Inc. "at a cost of $2,910,910," or "Invest $1,000,000 with Cardone Capital."[97]

96.    **Summary of Representations:**

    a.    **COC:** Defendants represented two methods of generating $50,000 in yearly income. It juxtaposes buying 17,123 shares of Apple Inc. "at a cost of

---

[94] CARDONE_CAP_00000323 and CARDONE_CAP_00000324.

[95] "An investment in the Interests is highly illiquid. You may never be able to sell or otherwise dispose of your Interests. Since there is no public trading market for our Interests, you may never be able to liquidate your investment or otherwise dispose of your Interests. The Company intends to operate for a period of ten (10) years. Therefore, you should expect to keep your investment in Class A Interests for a period of ten (10) years." *See* Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018 and filed December 11, 2018, p. 11. *See also*, Cardone Equity Fund VI, LLC, Preliminary Offering Circular dated May 29, 2019 and filed June 26, 2019, p. 11.

[96] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018 and filed December 11, 2018, p. 6. Cardone Equity Fund VI, LLC, Preliminary Offering Circular dated May 29, 2019 and filed June 26, 2019, p. 6.

[97] Second Amended Complaint, ¶ 76. *See also,* https://www.instagram.com/p/B2j34fJJQU-/. PINO_0000006.

CONFIDENTIAL

$2,910,910" against the option to "invest $1,000,000 with Cardone Capital."

$50,000 of income on $1 million is a 5% COC return.

97.

98.

99.

100.

101.     The post also compares dividend income from Apple Inc. stock with distributions from Cardone Capital's funds. Dividends represent a distribution of corporate earnings to

[98] CARDONE_CAP_00018183, CARDONE_CAP_00028740, CARDONE_CAP_00018076 and CARDONE_CAP_00018604. The pro formas for 10X Living at Delray dated January 16, 2019 (CARDONE_CAP_00018075) and Columbia Town Center dated September 17, 2019 (CARDONE_CAP_00018591) are excluded from my analysis for errors. See **Exhibits 1A and 1B**.
[99] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 55. Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 55.
[100] CARDONE_CAP_00000323 and CARDONE_CAP_00000324.

CONFIDENTIAL

shareholders,[101] whereas payments from a real estate fund are distributions and are derived from available cash flow, which can include both profits and a return of capital.

102.    Finally, Defendants' representations frame a comparison between two investment vehicles generating the same income and differentiated only by cost, with Apple Inc. stock costing nearly three times as much as an investment with Cardone Capital. This comparison ignores the entirely different risk and liquidity profiles of the two investments. Apple Inc. stock is a highly liquid, publicly-traded security that can be converted to cash almost instantly. The Cardone Capital investment is described in the offering circulars as "highly illiquid," with a target hold period of 10 years.[102] Comparing the yields of a liquid versus illiquid asset without a liquidity adjustment to compensate investors for the inability to access their capital is improper and inconsistent with the nature of the two investment options represented in the TTW communications.

### G.  TTW #7: Instagram Post by @cardonecapitalofficial on October 16, 2019

103.    An Instagram post by @cardonecapitalofficial on October 16, 2019 promoting 10X Living at Panama City Beach, a property in CEF VI, included a "Targeted Investor IRR" of "17.88%," a "Targeted Equity Multiple" of "2.5-3x," a "Targeted Average Cash Yield" of "10.31%," and a "Targeted Investment Period" of "10 Years."[103]

104.    **Summary of Representations:** For the specific 10X Living at Panama City Beach property, Defendants advertise return targets over a 10-year hold:

> a.  **IRR:** 17.88%
>
> b.  **COC:** 10.31% (average)
>
> c.  **Equity Multiple:** 2.5-3x

---

[101] "Stockholders may receive dividends from the net earnings of the corporation. Dividends are payments made periodically, usually every quarter, to stockholders." *See* Mishkin, Frederic S., *The Economics of Money, Banking, and Financial Markets*, Pearson, 11th Edition, p. 187.

[102] "An investment in the Interests is highly illiquid. You may never be able to sell or otherwise dispose of your Interests. Since there is no public trading market for our Interests, you may never be able to liquidate your investment or otherwise dispose of your Interests. The Company intends to operate for a period of ten (10) years. Therefore, you should expect to keep your investment in Class A Interests for a period of ten (10) years." *See* Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018 and filed December 11, 2018, p. 11. *See also*, Cardone Equity Fund VI, LLC, Preliminary Offering Circular dated May 29, 2019 and filed June 26, 2019, p. 11.

[103] Second Amended Complaint, ¶ 59. *See also,* https://www.instagram.com/p/B3r563VJS_V/. PINO_0000007.

CONFIDENTIAL



105.

106.

107.

108.

---

[104] CARDONE_CAP_00018506.

[105] *See* Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2020, p. F-10. *See also*, Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2020, p. F-10.

[106] CARDONE_CAP_00008345 at 346–347.

[107] CARDONE_CAP_00000327 at 0338. *See also,* Cardone Equity Fund V, LLC Preliminary Offering Circular dated July 2, 2018, at p. 17 ("Currently, our strategy includes paying a monthly distribution to investors under this Offering that would result in a return of approximately fifteen percent (15%) annualized return on investment, net of expenses, of which there is no guarantee."), p. 26 ("The Company will attempt to achieve an overall Company internal rate of return (IRR) of fifteen (15%) percent per year, net of expenses."), and p. 32 ("IRR based on 10-Yr Hold 15%").

CONFIDENTIAL

109.

110.

### H. TTW #8: Instagram Post by @cardonecapitalofficial on October 28, 2019

111.    An Instagram post by @cardonecapitalofficial on October 28, 2019 asked "Is my capital safe?" and stated in the caption that "Grant has been investing in Multifamily Real Estate for over 30 years! We're extremely selective in our vetting process; only choosing strong multifamily properties, typically A Class, in top-tier, high growth markets. Cardone Capital is built on real assets which are already established and stable in nature."[110]

112.    **Summary of Representations:** Defendants posed the question "Is my capital safe?" and represented that "Grant has been investing… for over 30 years," the "extremely selective" vetting process, and that "Cardone Capital is built on real assets which are already established and stable in nature."

---

[108] CARDONE_CAP_00000324.

[109] "Equity multiple means the total profits of a deal plus the equity divided by the equity." *See* Morri, G. & A. Mazza, *Property Finance* (2015), Wiley, p. 134.

[110] Second Amended Complaint, ¶ 16. *See also,* https://www.instagram.com/p/B4K2P9DpuNq/. PINO_0000008.

CONFIDENTIAL

113.   **Analysis of Representations:** Defendants' advertising verbiage regarding safety is inconsistent with the nature of the investment. By posing the question "Is my capital safe?" and immediately following it with language of stability and 30 years of experience, potential investors may assume a level of safety that is at odds with the risk of loss in speculative, illiquid, and leveraged real estate investments.

114.   Furthermore, the investment strategy described in the TTW communication diverges from the strategy detailed in Defendants' offering circulars. Whereas the Instagram post markets an exclusive focus, "only choosing strong multifamily properties" in Class A assets in "top-tier" markets, the offering circulars grant the funds a much broader scope. Specifically, they permit the acquisition of older Class B assets and entirely different property types including office, retail, and industrial properties, in "secondary" markets.[111] This inconsistency can be confusing for investors who are led to believe the funds are restricted to Class A multifamily assets when, in fact, the offering circulars allow for investments in riskier market segments.

### I.   TTW #9: Instagram Post by @cardonecapitalofficial on October 31, 2019

115.   An Instagram post by @cardonecapitalofficial on October 31, 2019 asked "How much does Grant invest into the fund?" and stated in the caption "This will be determined by the particular deal, however the last 3-4 deals that have closed, Grant put a significant portion of his own money in the fund." Furthermore, the caption continues with "One question you might want to ask is, who is responsible for the debt? The answer is, Grant!"[112]

116.   **Summary of Representations:** Defendants represented that Mr. Cardone co-invests a "significant portion of his own money" alongside investors, and that Mr. Cardone is personally "responsible for the debt."

117.   **Analysis of Co-Investment and Net Risk:** The Defendants' compensation structure resulted in a misalignment of risk exposure between the Manager and the investors. While Mr.

---

[111] "Initially, the Company intends to target multifamily properties, but may acquire other property types that meet its investment objectives. The Company may also purchase additional properties or make other real estate investments in other property types including office, retail and industrial properties… These types of investments are, or relate to, properties generally located in central business districts or suburban markets of primary and secondary metropolitan cities, primarily located in the central and southeastern United States… Identify Class A and Class B multi-family apartment communities in quality locations in the Company's target markets." *See* Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 33. *See also,* Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 33.
[112] Second Amended Complaint, ¶ 86. *See also,* https://www.instagram.com/p/B4TG93gJy7A/. PINO_0000009.

CONFIDENTIAL

Cardone, as CEO of the funds' Manager, contributed between 1% and 5% of the equity required for the purchase of properties in CEF V and VI,[113] the Operating Agreement granted the Manager 35% of distributable cash and 35% of sale proceed profits, with the remaining 65% going to investors.[114] Because the Manager receives 35% of the cash flow while only having contributed a fraction of that percentage in equity, the Manager recoups its initial investment at a significantly faster rate than the investors. Once the Manager's initial investment has been returned via these distributions, it effectively has zero capital remaining at risk in the deal. Meanwhile, the investors receive distributions at a much slower rate relative to their approximately 95% to 99% equity contributions and have their capital at risk for a longer duration. Contrary to the representation that Mr. Cardone invests a "significant portion of his own money" and bears responsibility "for the debt," the economic reality of the distribution structure results in the Manager's capital at risk for less time and the investors bearing the majority of the risk for the majority of the investment period.

118.    **Analysis of Debt-Related Risks:** This statement that "Grant is responsible" for the debt is confusing as it implies investors bear no risk related to the debt. To understand the investors' true position, one must first understand the structure of commercial mortgage loans.

119.    Commercial loans are typically structured as either "recourse" or "non-recourse." In the event of default, a recourse loan permits the lender not only to foreclose on the property but also to pursue the borrower's other assets for any deficiency if the property's sale proceeds are insufficient to cover the outstanding loan balance. A non-recourse loan, which is more common for large, stabilized commercial assets, contains an "exculpatory clause." This clause removes the borrower from personal financial liability, giving the lender no recourse beyond seizing the property that secures the loan.[115]

120.    Regardless of the loan's recourse structure, the investors' equity is in the first-loss position. The properties themselves, which the investors partially own, are the primary collateral for the loans. The fund's obligation to pay the debt service supersedes any right for investors to

---

[113] Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2019, p. F-13. Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2020, p. F-14.

[114] Cardone Equity Fund V, LLC, Operating Agreement filed October 22, 2018, pp. 9-10. Cardone Equity Fund VI, LLC, Operating Agreement filed June 26, 2019, pp. 9-10.

[115] Geltner, D. M. et al, *Commercial Real Estate Analysis and Investments*, The CE Shop, 3rd Edition, p. 392.

CONFIDENTIAL

receive distributions. If a property's NOI declines to a point where it cannot cover the required debt service, the fund faces some options, including but not limited to:

    a. Default and Foreclosure: the fund can default on the loan, and the lender will foreclose on the property. Because debt holders are paid in full before equity holders receive anything, the investors would almost certainly face losses.

    b. Capital Call: to prevent default, Defendants may issue a "capital call," requiring investors to contribute additional funds to cover the debt service shortfall and protect the asset from foreclosure.[116]

121.    To illustrate this risk, consider an illustrative example: Assume a property generates $1,000,000 in annual NOI and the loan secured by the property requires $800,000 in annual debt service, leaving $200,000 of cash available for distribution. If a market downturn causes rents to fall and operating expenses to rise, the NOI could decrease by 25% to $750,000. In this scenario, the property is now experiencing a $50,000 annual cash flow shortfall. Investor distributions are immediately eliminated, and the loan faces potential default. At this point, the question of whether the fund manager is "responsible" for the shortfall does not alter the investors' immediate financial risk. Their distributions are gone, and they now must address the $50,000 shortfall through remedial actions like a capital call, or face foreclosure and lose some of all of their equity.

122.    Therefore, the statement that "Grant is responsible" is inconsistent with the investors' true position. It conflates Defendants' personal liability with the investors' investment risk. While investors may not be individual signatories on the loan, their capital is the primary buffer against a loan default and is entirely at risk before Defendant's personal liability, if any exists, is triggered.

---

[116] Cardone Equity Fund V, LLC, Operating Agreement filed October 22, 2018, p. 5; Cardone Equity Fund VI, LLC, Operating Agreement filed June 26, 2019, p. 5.

CONFIDENTIAL

### J. TTW #10: Instagram Post by @cardonecapitalofficial on December 24, 2019

123. An Instagram post by @cardonecapitalofficial on December 24, 2019 that stated "This month alone I paid out $1.8 million to investors. And unlike Santa, I pay similar distributions every single month."[117]

124. **Summary of Representations:** Defendants represented that in December 2019, they paid "$1.8 million to investors," and that they "pay similar distributions every single month."

125. **Analysis of Representations:** By contrasting the funds' payouts with a seasonal event "unlike Santa" and using the phrase "every single month," Defendants represent a level of certainty and consistency that is not guaranteed in leveraged real estate investments. These representations are inconsistent with the discretionary nature of the distributions. Section 4.5 of the Operating Agreements for both CEF V and VI grant the Manager "sole and absolute discretion" to withhold distributions.[118] By failing to disclose that the Manager reserved the unilateral right to suspend payments to fund reserves, the claim that the funds pay distributions "every single month" omits a significant condition of the investment. Defendants cannot guarantee monthly payments while simultaneously holding the right to stop payments at their "sole and absolute discretion."

126. The representation of "similar" monthly payments further contradicts the risk factors disclosed in the Offering Circulars, which establish that investor distributions are residual claims, subordinate to all other obligations. The investors' right to receive distributions is "junior to the right of [the funds'] general creditors."[119] The documents explicitly warn that market conditions "could result in a reduction of our income… and thus affect the amount of distributions we can make to you" and high debt levels "could limit the amount of cash we have available to

---

[117] Second Amended Complaint, ¶ 84. *See also,* https://www.instagram.com/p/B6eRQjejLLI/. PINO_0000010.

[118] Section 4.5 of the Operating Agreements states "Notwithstanding anything contained in the Agreement to the contrary, the Manager, in the Manager's sole and absolute discretion, may use all or a portion of the Company's Distributable Cash to establish and fund a discretionary reserve(s) from time to time and in such amounts to be determined in the Manager's sole and reasonable discretion taking into account such factors as anticipated current and future cash requirements of the Company. Said reserve(s) may be used to pay some or all of the distributions, whether accrued or current, specified in this Article." *See* Cardone Equity Fund V, LLC, Operating Agreement filed October 22, 2018, p. 10. *See also,* Cardone Equity Fund VI, LLC, Operating Agreement filed June 26, 2019, p. 10.

[119] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 17. Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 17.

CONFIDENTIAL

distribute."[120] Advertising a consistent monthly distribution is inconsistent with the volatility and risk inherent in a variable, residual claim.

127.    I understand Defendants have argued that actual performance shows the statements were accurate. While I understand from counsel that actual performance is irrelevant to this litigation, I note that the discretionary nature of these payments was confirmed by actual events shortly after the post. On April 9, 2020, at the onset of the COVID-19 pandemic, Defendants suspended distributions for 90 days.[121] While suspending distributions during a period of economic uncertainty may have been a prudent management decision under the "sole and absolute discretion" clause of Section 4.5 of the Operating Agreements, this event confirms that that the payments were not guaranteed, not fixed, and not immune to risks.

### K.  TTW #11: Instagram Post by @grantcardone on January 31, 2020

128.    An Instagram post by @grantcardone on January 31, 2020 stated "Investing $100,000 pays $500 a month. $1,000,000 pays you $5,000 a month. $10,000,000 pays you $50,000 a month," and "More importantly investors have their capital sitting next to mine, protected, waiting for appreciation. We [target] to sell properties when I can return to investors at least 2X-3X their investment."[122]

129.    **Summary of Representations:**

    a.  **COC:** Defendants represented specific monthly payouts for corresponding investment amounts, which equate to a 6% COC return.

    b.  **Risk:** Defendants represented that "more importantly investors have their capital sitting next to mine, protected, waiting for appreciation."

    c.  **Appreciation:** Defendants represented targeting returns "at least 2X-3X" investors' investment.

---

[120] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, pp. 11, 15. Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, pp. 11, 15.

[121] "On April 9, 2020, the Managing Member announced to its Members that as a precaution, distributions to all Members would be paused for the next 90-days, until the economy becomes more stable. Thus, providing additional operating reserves during these uncertain times." *See* Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2019, p. F-14. *See also,* Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2020, p. F-15; CARDONE_CAP_00000323; CARDONE_CAP_00000324.

[122] Second Amended Complaint, ¶ 9. *See also,* https://www.instagram.com/p/B7_RJtej-C2/. PINO_0000011.

CONFIDENTIAL

130.

131.

132.

133.

134. **Analysis of Risk Representations:** The representation that the Manager's capital is "sitting next to" investor capital implies equal risk exposure, however, the Manager's compensation structure resulted in a misalignment of risk exposure between the Manager and the

---

[123] CARDONE_CAP_00018378, CARDONE_CAP_00018365, CARDONE_CAP_00018249, CARDONE_CAP_00018074, CARDONE_CAP_00018071, CARDONE_CAP_00018078, CARDONE_CAP_00018674, CARDONE_CAP_00018600, and CARDONE_CAP_00018073.

[124] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 55. Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 55.

[125] CARDONE_CAP_00000323. CARDONE_CAP_00000324.

CONFIDENTIAL

investors. While Mr. Cardone, as CEO of the funds' Manager, contributed only 1% to 5% of the equity for the properties in CEF V and VI,[126] the Operating Agreement granted the Manager 35% of distributable cash and 35% of sale proceed profits, with the remaining 65% going to investors.[127] Because the Manager receives 35% of the cash flow while only having contributed a fraction of that percentage in equity, the Manager recoups its initial investment at a significantly faster rate than the investors. Once the Manager's initial investment has been returned via these distributions, it effectively has zero capital remaining at risk in the deal. Meanwhile, the investors receive distributions at a much slower rate relative to their approximately 95% to 99% equity contributions and have their capital at risk for a longer duration. Thus, the Manager's capital is not "sitting next to" investor capital for the duration of the hold period, as the Manager's capital was returned more quickly. The implied alignment of interest is largely illusory as investors' capital remains committed to the illiquid asset while the Manager's capital is returned sooner.

135.    The characterization of the investment as "protected" is fundamentally at odds with the nature of a speculative real estate investment and the position of investor equity in the capital stack. In a leveraged real estate investment, the lenders hold the first priority claim on assets and cash flow, while the equity investors hold the residual claim. If the asset value declines, the equity tranche absorbs the first loss, effectively acting as protection for the lenders. Therefore, characterizing the equity position as "protected" inverts the reality of the capital stack. As the residual claimant, the equity is the most exposed position in the investment.

136.    Defendants' representation of safety is further contradicted by CEF V and VI's risk profile regarding leverage. Defendants projected utilizing 60-80% LTV ratios.[128] Such leverage symmetrically magnifies gains and losses. In the 80% LTV scenario, a 20% decline in property value would result in a 100% loss for the equity. This magnified volatility is inconsistent with a "protected" asset. The leverage also creates default risk, as if the property's income falls, the debt service payments still must be met. If investors cannot contribute additional funds to cover

---

[126] Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2019, p. F-13. Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2020, p. F-14.
[127] Cardone Equity Fund V, LLC, Operating Agreement filed October 22, 2018, pp. 9-10. Cardone Equity Fund VI, LLC, Operating Agreement filed June 26, 2019, pp. 9-10.
[128] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 32. Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 32.

CONFIDENTIAL

the debt service, the lender may foreclose, extinguishing some or all of the equity.[129] In this scenario, the equity is also not "protected."

137.    **Analysis of Appreciation Representations:** Based upon my review of the contemporaneous documents in the record, I do not find evidence that Defendants' internal projections were inconsistent with the represented investor-level equity multiples.

### L.  TTW #12: Instagram Post by @grantcardone on February 5, 2020

138.    An Instagram post by @grantcardone on February 5, 2020 asked "Want to double your money" and advertised that $1 million invested for six years would result in "$480,000" in cash flow and "$700,000" in appreciation for a "118% return," or "19.6% per year." The same post advertised targeted returns, stating "we seek properties where we can deliver 6-8% returns and sell properties at a point where we can achieve north of 15% returns after fees."[130]

139.    **Summary of Representations:**

a.  **IRR:** Defendants represented targeting IRRs that "achieve north of 15% returns after fees." The illustrative example using a $1 million investment (cash outflow) returning $80,000 annually for six years (cash inflows) plus a final payout of $1.7 million (the $1 million initial investment plus $700k in appreciation) results in a calculated IRR of 15.8%, consistent with the represented returns that were "north of 15%."[131]

b.  **COC:** Defendants represented a target range of "6-8% returns." The illustrative example lists $480,000 in cash flow over six years, which averages to $80,000 annually, or an 8% COC return on $1 million.

c.  **Other Metrics:** The "118% return" is the simple total return ($480k in cash flow plus $700k in appreciation equals $1.18 million) on the $1 million investment. The "19.6% per year" is a simple, non-compounded average of 118% divided by six years.

---

[129] Brueggeman, W. & J. Fisher, *Real Estate Finance and Investments*, McGraw-Hill Irwin, 14th Edition, p. 31.
[130] Second Amended Complaint, ¶ 73. *See also,* https://www.instagram.com/p/B8NFiGRDXM6/. PINO_0000012.
[131] See **Exhibit 13**.

CONFIDENTIAL

140.

141.

142.

143.    Furthermore, Defendants' divergence from the 15% figure is notable given prior regulatory scrutiny. As detailed in **Section VI.D**, the SEC challenged Defendants' IRR representations in July 2018, over 18 months before the TTW #12 communication, stating that Defendants "do not appear to have a basis for" the "approximately 15% annualized return on investment."[134] In response, Defendants removed references to the 15% IRR from their preliminary offering circulars.[135] However, they continued to advertise a "north of 15%" IRR in TTW #12.

---

[132] CARDONE_CAP_00018378, CARDONE_CAP_00018365, CARDONE_CAP_00018249, CARDONE_CAP_00018074, CARDONE_CAP_00018071, CARDONE_CAP_00018957, CARDONE_CAP_00019573, CARDONE_CAP_00018600, and CARDONE_CAP_00018073.

[133] Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018, p. 55. Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019, p. 55.

[134] CARDONE_CAP_00008345 at 346–347.

[135] CARDONE_CAP_00000327 at 0338. *See also,* Cardone Equity Fund V, LLC Preliminary Offering Circular dated July 2, 2018, at p. 17 ("Currently, our strategy includes paying a monthly distribution to investors under this Offering that would result in a return of approximately fifteen percent (15%) annualized return on investment, net of expenses, of which there is no guarantee."), p. 26 ("The Company will attempt to achieve an overall Company internal rate of return (IRR) of fifteen (15%) percent per year, net of expenses."), and p. 32 ("IRR based on 10-Yr Hold 15%").

CONFIDENTIAL

144.

145.

146.   **Analysis of Other Metrics:** Defendants' simultaneous use of multiple, differing return metrics, which include IRRs of 15.8% and "north of 15%," COC returns of 8% and "6-8%," total returns of 118%, and simple average returns of 19.6% lacks standardization. The inconsistency between these advertised figures and the contemporaneous internal data can be confusing and makes it difficult for a non-expert investor to make an informed assessment of the investment's potential value.

### M. TTW #13: Instagram Post by @cardonecapitalofficial on March 2, 2020

147.   An Instagram post by @cardonecapitalofficial on March 2, 2020 compared stocks and multi-family real estate, stating "If you put $25K down on a stock, you are buying a $25K asset that is cyclical in nature. If you put $25K down on a property, you are buying a $100K asset. If the market increases by 10%, let's see how your earnings compare respectively."[137]

---

[136] CARDONE_CAP_00000323 and CARDONE_CAP_00000324.
[137] Second Amended Complaint, ¶ 89. *See also,* https://www.instagram.com/p/B9PNAobJ3kD/.

CONFIDENTIAL

148.    **Summary of Representations:** Defendants represented a comparison of potential earnings for a $25,000 stock investment and a $25,000 investment in a leveraged $100,000 property.

149.    **Analysis of Representations:** Defendants' Instagram post illustrates the mechanics of positive financial leverage. Mathematically, when an asset appreciates, the use of debt magnifies the return on equity because the debt principal remains fixed while the equity receives the entire gain in asset value. In the example provided, a 10% increase in asset value results in a 10% increase on the unleveraged stock investment, and a 40% increase on the leveraged real estate investment.

150.    However, from a financial perspective, leverage is a risk magnifier that widens the range of potential outcomes in both directions.[138] Defendants' example isolates only the upper bound of this range, while excluding the lower bound. To evaluate the investment profile objectively, the same leverage mechanics must be applied to the downside scenario. If the asset value decreases 10%, the leveraged structure dictates that the equity holder absorbs the entire loss. Therefore, the unleveraged stock investment would result in a 10% loss, and the leveraged real estate investment would result in a 40% loss.

151.    Furthermore, the post distinguishes stocks as being "cyclical in nature," implying that the real estate investment is either not cyclical or less cyclical than stocks. Economically, real estate is inherently cyclical due to supply and demand mechanics.[139] Utilizing leverage on a cyclical asset increases, rather than decreases, the equity investment's sensitivity to these market cycles.

152.    Therefore, while Defendants' representation accurately portrays the results of an upward market move, an accurate portrayal of risk to prospective investors should acknowledge that leverage magnifies returns symmetrically, both for gains and losses.

## VIII.    Conclusion

153.    Based upon my review of evidence, which would be common to all proposed class members, it is my opinion that Defendants' representations in TTW communications were

---

[138] Brueggeman, W. & J. Fisher, *Real Estate Finance and Investments*, McGraw-Hill Irwin, 14th Edition, p. 381.
[139] Brueggeman, W. & J. Fisher, *Real Estate Finance and Investments*, McGraw-Hill Irwin, 14th Edition, pp. 340–42.

CONFIDENTIAL

contradicted by Defendants' internal, contemporaneous analysis, which contained several aggressive assumptions but still generally did not show investor-level IRRs or Year 1 COC returns that were in line with the returns represented to prospective investors. Changing market conditions created additional challenges for Defendants to achieve the represented investor-level returns in the TTWs, and made it unlikely that Defendants would be able to replicate the returns from earlier funds for investors in CEF V and VI. Each of the TTWs contained multiple representations which were directly contradicted by Defendants' contemporaneous internal analysis.

Executed this 10th of December, 2025

_____
Paul Habibi

**Exhibit 1A**
**Pino v. Cardone Capital**
**CEF V Pro Forma Selection**



CONFIDENTIAL

**Exhibit 1A**
**Pino v. Cardone Capital**
**CEF V Pro Forma Selection**



CONFIDENTIAL

**Exhibit 1B**
**Pino v. Cardone Capital**
**CEF VI Pro Forma Selection**



**Exhibit 1B**
**Pino v. Cardone Capital**
**CEF VI Pro Forma Selection**



**Exhibit 2A**
**Pino v. Cardone Capital**
**CEF V Fund-Level Returns - Low Scenario**



**Exhibit 2A**
**Pino v. Cardone Capital**
**CEF V Fund-Level Returns - Low Scenario**



**Exhibit 2B**
**Pino v. Cardone Capital**
**CEV VI Fund-Level Returns - Low Scenario**



**Exhibit 2B**
**Pino v. Cardone Capital**
**CEV VI Fund-Level Returns - Low Scenario**



**Exhibit 3A**
**Pino v. Cardone Capital**
**CEF V Fund-Level Returns - High Scenario**



**Exhibit 3A**
**Pino v. Cardone Capital**
**CEF V Fund-Level Returns - High Scenario**



**Exhibit 3B**
**Pino v. Cardone Capital**
**CEF VI Fund-Level Returns - High Scenario**



**Exhibit 3B**
**Pino v. Cardone Capital**
**CEF VI Fund-Level Returns - High Scenario**



CONFIDENTIAL

**Exhibit 4A**
**Pino v. Cardone Capital**
**CEF V Fund-Level Returns - 50 bps Exit Cap Rate Expansion [1]**



**Exhibit 4A**
**Pino v. Cardone Capital**
**CEF V Fund-Level Returns - 50 bps Exit Cap Rate Expansion [1]**



**Exhibit 4B**
**Pino v. Cardone Capital**
**CEF VI Fund-Level Returns - 50 bps Exit Cap Rate Expansion [1]**



**Exhibit 4B**
**Pino v. Cardone Capital**
**CEF VI Fund-Level Returns - 50 bps Exit Cap Rate Expansion [1]**



**Exhibit 5**
**Pino v. Cardone Capital**
**Acquisition Metrics for CEF I, II, V, and VI**



CONFIDENTIAL

**Exhibit 6**
**Pino v. Cardone Capital**
**CEF I Fund-Level Returns**



CONFIDENTIAL

**Exhibit 7**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTWs #1-2**



**Exhibit 7**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTWs #1-2**



**Exhibit 8**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTW #3**



CONFIDENTIAL

**Exhibit 8**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTW #3**



CONFIDENTIAL

**Exhibit 9**
**Pino v. Cardone Capital**
**Defendants' Return Representations in TTW #5 [1]**



CONFIDENTIAL

**Exhibit 10**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTWs #5-6**



CONFIDENTIAL

**Exhibit 10**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTWs #5-6**



CONFIDENTIAL

**Exhibit 11**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTW #7**



CONFIDENTIAL

**Exhibit 12**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTW #11**



CONFIDENTIAL

**Exhibit 12**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTW #11**



CONFIDENTIAL

**Exhibit 12**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTW #11**



**Exhibit 12**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTW #11**



CONFIDENTIAL

**Exhibit 12**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTW #11**



**Exhibit 13**
**Pino v. Cardone Capital**
**Defendants' Return Representations in TTW #12 [1]**



CONFIDENTIAL

**Exhibit 14**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTW #12**



CONFIDENTIAL

**Exhibit 14**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTW #12**



CONFIDENTIAL

**Exhibit 14**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTW #12**



**Exhibit 14**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTW #12**



**Exhibit 14**
**Pino v. Cardone Capital**
**Investor-Level Returns Based on Defendants' Contemporaneous Projections, TTW #12**





## CURRICULUM VITAE

# Paul Habibi, CPA/ABV/CFF

149 S. Barrington Ave. Suite 705, Los Angeles, CA 90049

(424) 256-6230 | Paul@GrayslakeAdvisors.com

Paul Habibi has been retained as an expert witness in 300+ litigation and regulatory matters, on engagements involving financial analysis, economic damages, accounting, valuation, and industry custom and practice. He has testified in federal and state courts, including the Delaware Court of Chancery, and ADR forums. As the only person in the history of UCLA to hold continuing appointments in both business and law, he is a Senior Continuing Lecturer of Finance and Real Estate at UCLA Anderson School of Management, Continuing Lecturer in Law at UCLA School of Law, and Advisor at UCLA Department of Economics. Entrepreneur, investor and board member. Certified Public Accountant (CPA), Accredited in Business Valuation (ABV), Certified in Financial Forensics (CFF), Real Estate Broker and Salesperson.

## PROFESSIONAL EXPERIENCE

**UCLA Anderson School of Management** (2006-Present)
Senior Continuing Lecturer of Finance and Real Estate
**UCLA School of Law** (2013-Present)
Continuing Lecturer in Law
**UCLA Department of Economics** (2020-Present)
Faculty Advisor, Master of Quantitative Economics degree program
**UCLA Luskin School of Public Affairs** (2016-Present, Global Public Affairs Certificate Program)

*Courses taught: Urban Real Estate Financing and Investing (Management 278A), Entrepreneurial Real Estate Development (Management 279B), Affordable Housing Development (Management 298D), Social Entrepreneurship (Law 445), Business Skills for Lawyers, Real Estate Financial Analysis, Accounting and Financial Skills for Lawyers (Law 434), Transactional Law Competition Judge (Law 764)*

**Grayslake Advisors LLC**, Los Angeles, CA and New York, NY (2010-Present)
Principal and Founder, Expert Testimony and Litigation Support

**Habibi Properties LLC and affiliates**, Los Angeles, CA (2000-Present)
Principal and Co-Founder, Real Estate Investment and Development

*Own and manage 2,500+ multi-family units in Los Angeles; pioneered single-family rental industry in 2011 with acquisition and rehab of 300+ homes in Kansas City; own and manage agricultural properties in Central California, including 2,000+ acres of pistachios/almonds and Cole Creek Vineyard in Paso Robles*

**Bank of America**, San Francisco, CA (2002)
Summer Associate, Investment Banking

**The Walt Disney Company**, Burbank, CA (1999-2000)
Manager, Corporate Controllership (Transaction Support/Mergers and Acquisitions)

**Arthur Andersen LLP**, San Francisco, CA (1995-1999)
Manager, Audit and Business Advisory Services

## EDUCATION AND CERTIFICATIONS

**University of Michigan Ross School of Business**, MBA with Highest Distinction, 2003
Awarded merit-based academic scholarship; Beta Gamma Sigma Honor Society
David T. Shelby Award for leadership of Wolverine Venture Fund
Distinguished Alumnus Honoree, University of Michigan Ross Alumni Club

**University of California at Santa Barbara**, BA in Business Economics and Accounting, 1995
Head Coach, Men's Varsity Crew; Oarsman, U.S. Rowing National Team Development Camp

**Certified Public Accountant (CPA)**, State of California (license no. 77773)
**Accredited in Business Valuation (ABV)**, American Institute of Certified Public Accountants
**Certified in Financial Forensics (CFF)**, American Institute of Certified Public Accountants
**Real Estate Broker**, State of Georgia Real Estate Commission (license no. 370556)
**Real Estate Salesperson**, State of California Bureau of Real Estate (license no. 01448788)

## SELECTED LITIGATION AND REGULATORY MATTERS

**In re WeWork Litigation**
Retained by Morrison & Foerster LLP on behalf of Defendant
In the Court of Chancery of the State of Delaware, C.A. No. 2020-0258-AGB

Retained by **SoftBank Group Corp.** in a matter alleging the breach of a Master Transaction Agreement that included a tender offer for SoftBank to buy $3 billion in stock of the parent corporation of WeWork

**David Stapleton, as receiver for Silicon Sage Builders LLC v. JPMorgan Chase Bank, N.A.**
Retained by Greenberg Traurig LLP on behalf of Defendant
United States District Court, Northern District of California, Case No. 24-cv-04947-CRB

Retained by **JPMorgan Chase Bank** in defense of allegations that it aided and abetted Silicon Sage in breaches of fiduciary duty, fraud, and conversion, resulting in insolvency of the receivership entities

**Jaeger v. Zillow Group, Inc., et al.**
Retained by Skadden, Arps, Slate, Meagher & Flom LLP on behalf of Defendant
United States District Court, Western District of Washington, Case No. 2:21-cv-01551-TSZ

Retained by **Zillow Group, Inc.** in Section 10(b) securities matter alleging false and misleading statements made by defendants to investors about algorithms and pricing models related to the Zillow Offers program

**Lennar Corporation, et al. v. Tetra Tech, Inc., United States of America, et al.**
Retained by O'Melveny & Myers LLP on behalf of Plaintiff
United States District Court, Northern District of California, Case No. 3:20-CV-01485-JD

Retained by **Lennar Corporation** in matter alleging intentional misrepresentation and negligence in connection with the transfer of land to be redeveloped at Hunter's Point Naval Shipyard in San Francisco

**Café Gelato & Panini LLC, et al. v. Simon Property Group, et al.**
Retained by Blank Rome LLP on behalf of Defendant
United States District Court, Southern District of Florida, Case No. 0:20-cv-60981-AMC

Retained by **Simon Property Group** in a putative class action alleging a fraudulent and illegal scheme to overcharge tenants for electricity at 65 shopping malls throughout the U.S.; class certification denied

**Medical Properties Trust, Inc. v. Viceroy Research LLC, et al.**
Retained by Wachtell, Lipton, Rosen & Katz on behalf of Plaintiff
United States District Court, Northern District of Alabama, Civil Action No. 2:23-cv-00408-NAD

Retained by the nation's largest hospital landlord, a publicly-traded REIT, in a matter alleging a financial research group engaged in a "short-and-distort" campaign to defame, injure, and drive down its stock price

**Cohen, et al. v. Donald J. Trump**
Retained by Robbins, Geller, Rudman & Dowd LLP on behalf of Plaintiff
United States District Court, Southern District of California, Case No. 13-cv-2519-GPC-WVG

Retained by plaintiff in civil RICO class action alleging **Trump University** was a fraudulent scheme employed to market seminars and mislead students; case settled after 2016 U.S. Presidential election

**Shasha v. Malkin**
Retained by Dewey, Pegno & Kramarsky LLP on behalf of Defendant
American Arbitration Association Case No. 01-14-0001-6986

Retained by Malkin family in a matter alleging coerced conversion of ownership interests in the **Empire State Building** through its IPO; valued Empire State Building entities and testified in arbitration

**Bay Parc Plaza Apartments, L.P. v. Airbnb, Inc.**
Retained by Munger, Tolles & Olson LLP on behalf of Defendant
Eleventh Judicial Circuit Court of Florida, Case No. 2017-003624-CA-01

**La Park La Brea A LLC v. Airbnb, Inc.**
Retained by Munger, Tolles & Olson LLP on behalf of Defendant
United States District Court, Central District of California, Case No. 2:17-cv-04887-DMG

Retained by **Airbnb** in its defense of allegations by AIMCO and its affiliates of systematic misappropriation and abuse of private property rights and intentional interference with contracts

**Umpa, et al. v. The National Association of Realtors (NAR), et al., and related actions**
Retained by O'Melveny & Myers LLP on behalf of Defendant
United States District Court, Western District of Missouri, Case No. 4:23-cv-00945-FJG

Retained in putative class action alleging the **NAR** and 13 real estate brokerages, brokerage owners, and franchisors violated federal antitrust laws, causing home sellers to pay inflated commissions

**MSG Forum, LLC v. City of Inglewood, Murphy's Bowl, LLC, et al.**
Retained by Munger, Tolles & Olson LLP on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. YC072715

Retained by entity owned by **Steve Ballmer** in a matter alleging a scheme to defraud Madison Square Garden, owners of the Inglewood Forum, to develop a new arena for the **Los Angeles Clippers**

**In re American Realty Capital Properties, Inc. (ARCP) Litigation**

Retained by Paul, Weiss, Rifkind, Wharton & Garrison LLP and Kellogg, Hansen, Todd, Figel & Frederick PLLC on behalf of Defendant
United States District Court, Southern District of New York, Case No. 1:15-mc-00040-AKH

Retained in class action securities litigation alleging violations of the 1933 and 1934 Acts, including issuance of materially false and misleading financial statements that artificially inflated ARCP's stock price

**H&H Theatre Owner, LLC v. H&H Retail Owner, LLC**
Retained by Munger, Tolles & Olson LLP on behalf of Plaintiff
American Arbitration Association Case No. 01-22-0001-7947

Retained by owner of **Dolby Theatre**, home of the Academy Awards, in dispute whereby it sought an injunction for the owner of Ovation Hollywood to cease its planned conversion from retail to office space

**United States of America v. Frontier Communications, et al.**
Retained by Mayer Brown LLP on behalf of Defendant
United States District Court, Central District of California, Case No. 19-07179 PA (SKx)

Retained in a matter alleging **Frontier Communications** was liable for economic damages resulting from the 2016 Rey Fire, a wildfire that burned 32,606 acres in Santa Barbara County, California

**Manhattan Chrystie Street Development Fund LLC v. Ian Schrager Co., The Witkoff Group, et al.**
Retained by Weil, Gotshal & Manges LLP on behalf of Plaintiff
Supreme Court of the State of New York, County of New York, Index No. 651148/2021

Retained by investor in 215 Chrystie Street, a 28-story tower in New York City that contains the PUBLIC Hotel, in a matter alleging breach of contract by developers Ian Schrager Company and The Witkoff Group

**HotelsAB Green, LLC v. Reignwood Europe Holdings SARL**
Retained by Paul, Weiss, Rifkind, Wharton & Garrison LLP and Lupkin PLLC on behalf of Plaintiff
United States District Court, Southern District of New York, Case No. 1:17-cv-08776-JGK-DCF

Retained by celebrity hotelier **Andre Balazs** in a matter alleging breach of contract of a joint venture agreement for the acquisition and financing of New York's **The Standard Hotel**

**West 87 LP, et al. v. Paul Hastings LLP**
Retained by Davis Polk & Wardwell LLP on behalf of Defendant
Supreme Court of the State of New York, County of New York, Index No. 651263/2021

Retained by AmLaw 100 firm in defense of allegations that it was negligent in reviewing a portion of a real property contract that allowed annual rent escalations that were "far in excess" of what was appropriate

**Dorce, et al. v. City of New York, et al.**
Retained by New York City Law Department on behalf of Defendant
United States District Court, Southern District of New York, Case No. 1:19-cv-02216-JGK

Retained by City of New York in defense of a putative class action alleging that its Third Party Transfer Program amounts to an unconstitutional seizure of private property through *in rem* foreclosure proceedings

**MMMG-MC, Inc. v. MedMen Enterprises, Inc., et al.**
Retained by O'Melveny & Myers LLP on behalf of Plaintiff

JAMS Arbitration Case No. 1220062492

Retained by investors in cannabis company **MedMen** in matter alleging that the founders acted in their own best interests to the detriment of shareholders, locking up their shares during period of price decline

**Toll Brothers, Inc. v. SoCal Gas**
Retained by Boies Schiller Flexner LLP on behalf of Plaintiff
Superior Court, State of California, County of Los Angeles, Case No. BC674622

Retained by **Toll Brothers** in a matter alleging economic damages to multiple single-family residential development projects in Porter Ranch, California as a result of the largest natural gas leak in U.S. history

**Forester Investments, LLC, et al. v. The Tornante Company, LLC, et al.**
Retained by Latham & Watkins LLP on behalf of Defendant
JAMS Arbitration Case No. 1210036753

Retained by a media and entertainment company founded by former Disney Chairman and CEO **Michael Eisner** in a matter alleging breach of a baseball arbitration determination

**BLG Capital Ltd., et al. v. Michael Shvo, et al.**
Retained by Proskauer Rose LLP on behalf of Defendant
Supreme Court of the State of New York, County of New York, Index No. 653744/2020

Retained by ownership of the **San Francisco Transamerica Pyramid** and **Chicago "Big Red"** office buildings in defense of allegations it usurped investment opportunities from plaintiffs

**Dallas Fire & Police Pension System v. Townsend Holdings, LLC, et al.**
Retained by O'Melveny & Myers LLP on behalf of Defendant
District Court of Dallas County, Texas, Case No. DC-17-11306

Retained by investment consultant, a subsidiary of **Colony Capital** and **Aon**, in its defense against allegations of breaches of fiduciary duty in providing services to Dallas Fire & Police Pension System

**Fair, et al. v. SunAmerica Affordable Housing Partners, Inc., et al.**
Retained by O'Melveny & Myers LLP on behalf of Respondent
JAMS Arbitration Case No. 1220057137

Retained by **American International Group, Inc. (AIG)** in its defense of allegations by former executives of breach of fiduciary duty related to numerous participant limited partnership agreements

**Kevin Keenan v. Peter Thiel**
Retained by Lorber, Greenfield & Polito LLP on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. 19STCV42167

Retained by renowned investor **Peter Thiel** in his defense of a matter arising from a landslide and resulting damages that allegedly occurred from a property constructed and owned by Thiel

**Drake Kennedy v. Brian Kennedy, et al.**
Retained by O'Melveny & Myers LLP on behalf of Plaintiff
Superior Court, State of California, County of Los Angeles, Case No. 18STCP02617

Retained by co-owner of **Regency Outdoor Advertising, Inc.** in a dispute related to mismanagement of the company; calculated potential diminution in firm value due to decreased advertising/signage revenue

**D.T. Woodard, Inc., et al. v. United Parcel Service (UPS), et al.**
Retained by Morrison & Foerster LLP on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. BC294647

Retained by **UPS** in its defense against a class action alleging misrepresentation in the conversion from the Mail Boxes Etc. to the UPS franchise model, and claims that franchisees suffered financial harm

**Size It, LLC v. ASICS America Corporation, ASICS Corporation, et al.**
Retained by Sidley Austin LLP on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. BC597769

Retained by global sportswear company **ASICS** in matter alleging licensees of the company's U.S. retail stores were fraudulently induced into making an investment that led to closure of all the stores

**4 Corners Holdings, LLC v. Sam Nazarian, et al.**
Retained by Venable LLP on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. BC579079

Retained by Chairman of **SBE Entertainment Group** in defense of allegations by investors of breaches of contract and fiduciary duty in connection with the development and sale of SLS South Beach Hotel

**L&B Wholesale Supply, Inc. v. Starbucks Corporation, et al.**
Retained by Cozen O'Connor on behalf of Defendant
Superior Court, State of California, County of Ventura, Case No. 56-2016-00477825-CU-FR-VTA

Retained by **Starbucks Corporation** in its defense of allegations by a neighboring business that its store was a nuisance to and interfered with plaintiff's operations; served as damages expert

**CAM-Carson, LLC v. Carson Reclamation Authority, et al.**
Retained by Latham & Watkins LLP on behalf of Plaintiff
Superior Court of the State of California, County of Los Angeles, Case No. 20STCV16461

Retained by a joint venture of **Simon Property Group** and **The Macerich Company** in a breach of contract dispute with the City of Carson over a 157-acre redevelopment project

**Choi v. The Macerich Company, et al.**
Retained by Katten Muchin Rosenman LLP on behalf of Defendant
Superior Court of the State of California, County of Los Angeles, Case No. 20STCV35832

Retained by **The Macerich Company** in defense of allegations of breach of written lease agreement and unjust enrichment involving a shopping center in Southern California

**Lingard v. Holiday Inn Club Vacations, Inc., et al.**
Retained by Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. on behalf of Defendant
United States District Court, Middle District of Florida, Case No. 6:23-cv-323-PGB-RMN

Retained by **Holiday Inn** in defense of a putative class action alleging violation of federal lending regulations in connection with the purchase and sale of vacation club interests; class certification denied

**Steines v. Westgate Palace, LLC, et al.**
Retained by Greenspoon Marder LLP on behalf of Defendant
United States District Court, Middle District of Florida, Case No. 6:22-cv-629-RBD

Retained by **Westgate Resorts** and affiliates in defense of a putative class action alleging violation of federal lending regulations in connection with the purchase and sale of vacation club interests

**T. Park Central LLC v. Bluegreen Vacations Unlimited, Inc.**
Retained by Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. on behalf of Defendant
American Arbitration Association Case Number 01-21-0002-5658

Retained by defendant in a matter alleging breach of a purchase and sale agreement related to the transfer of sponsorship, ownership and control of **The Manhattan Club**, a timeshare property in New York City

**MHC Operating Limited Partnership, et al. v. The Nicholson Family Partnership**
Retained by Jenner & Block LLP on behalf of Plaintiff
Superior Court of the State of California, County of Santa Clara, Case No. 19CV361047

Retained by subsidiary of **Equity Lifestyle Properties, Inc.** in dispute related to alleged breaches of ground lease agreements encumbering Westwinds Mobile Home Park in San Jose, California

**Excelsior at The Brand HOA v. Caruso Affiliated Holdings, LLC, Americana Housing, LP, et al.**
Retained by Lorber, Greenfield & Polito LLP on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. BC683584

Retained by **Caruso Affiliated** and subsidiaries in a class action alleging construction defects, inverse condemnation, and breach of contract related to The Americana at Brand in Glendale, California

**H&N Management Group, Inc. v. Ares Capital Corporation, et al.**
Retained by Skadden, Arps, Slate, Meagher & Flom LLP on behalf of Defendant
In the Court of Chancery of the State of Delaware, C.A. No. 12847-VCMR

**H&N Management Group, Inc. v. Couch, et al.**
Retained by Ropes & Gray LLP and Arnold & Porter Kaye Scholer LLP on behalf of Defendant
In the Court of Chancery of the State of Delaware, C.A. No. 12847-VCMR

Retained in action alleging aiding and abetting of directors and officers to breach their duties, leading to the unlawful extraction of hundreds of millions of dollars for the benefit of a related-party private equity firm

**United States of America v. Lawrence "Lee" Loomis, et al.**
Retained by United States Attorney's Office/Department of Justice on behalf of Plaintiff
United States District Court, Eastern District of California, Case No. 2:12-CR-00315-JAM

Retained by the **U.S. Attorney's Office/Department of Justice** and **Federal Bureau of Investigation (FBI)** in a criminal matter involving a Ponzi scheme that victimized more than 100 individual investors

**United States Securities and Exchange Commission v. Loomis Wealth Solutions, et al.**
Retained by United States Securities and Exchange Commission as Plaintiff
United States District Court, Eastern District of California, Case No. S-10-458 KJM KJN

**APPENDIX A**

Retained by the **SEC** in a matter involving fraud and misappropriation of funds by fund manager; the Court granted SEC's motion for summary judgment, with numerous citations of SEC expert Habibi's analysis

**United States Securities and Exchange Commission v. James Thomas Bramlette, et al.**
Retained by United States Securities and Exchange Commission as Plaintiff
United States District Court, District of Utah, Central Division, Case No. 2:18-cv-00761-PMW

Retained by the **SEC** in a matter involving misrepresentations to investors, the omission of material information, and perpetration of a fraudulent scheme involving property located in South Carolina

**United States Securities and Exchange Commission v. The Legacy Group, et al.**
Retained by United States Securities and Exchange Commission as Plaintiff
United States District Court, District of Colorado, Case No. 21-cv-01404

Retained by the **SEC** in a matter alleging a group of real estate investment sponsors conducted fraudulent, unregistered securities offerings, raising more than $29 million from over 200 investors worldwide

**In the Matter of J.S. Oliver Capital Management, L.P., et al.**
Retained by United States Securities and Exchange Commission as Plaintiff
United States Securities and Exchange Commission Administrative Proceeding File No. 3-15446

Retained by the **SEC** in matter involving misconduct by a registered investment adviser for engaging in fraudulent trade allocation and misusing soft dollars

**Central States, Southeast & Southwest Areas Health and Welfare Plan**
Retained by Office of the Solicitor, United States Department of Labor on behalf of Plaintiff
Employee Benefits Security Administration (EBSA) Case No. 50-033570(48)

Retained by the **U.S. Department of Labor** to assist in evaluating investment decisions made by the Central States, Southeast, & Southwest Areas Health and Welfare Fund

**United States of America v. James V. Mazzo**
Retained by Skadden, Arps, Slate, Meagher & Flom LLP on behalf of Defendant
United States District Court, Central District of California, Case No. SA CR 12-269(C)-AG

Retained by former Chairman and CEO of Advanced Medical Optics (AMO) in his defense against allegations of insider trading in connection with Abbott Laboratories' $2.8 billion acquisition of AMO

**Garfield Beach CVS, LLC v. Playa Runway, LP**
Retained by Miller Starr Regalia, A Professional Law Corporation on behalf of Plaintiff
Superior Court, State of California, County of Los Angeles, Case No. SC124387

Retained by **CVS Pharmacy** in a matter alleging landlord's failure to conform to project specifications; determined economic damages arising from operational inefficiencies and extraordinary logistics costs

**The Preserve at Redwood Shores Owners Association v. KB Home South Bay, Inc., et al.**
Retained by Munger, Tolles & Olson LLP on behalf of Defendant
JAMS Arbitration Case No. 1100089451

Retained by **KB Home** in a matter alleging diminution in value caused by soils movement underneath 152 residential condominiums; opined as to damages, accounting, and standard of care

8

**City of San Diego v. 101 Ash LLC, et al.**
Retained by Quinn Emanuel Urquhart & Sullivan LLP on behalf of Plaintiff
Superior Court, State of California, County of San Diego, Case No. 37-2020-00036247-CU-CO-CTL

**City of San Diego v. CCP 1200 LLC, et al.**
Retained by Quinn Emanuel Urquhart & Sullivan LLP on behalf of Plaintiff
Superior Court, State of California, County of San Diego, Case No. 37-2021-00028026-CU-FR-CTL

Retained by the **City of San Diego** in a matter alleging that lease-to-own contracts the city entered into for the purchase of two office buildings and an educational institution were void under conflicts of interest law

**Border Business Park, Inc. v. City of San Diego**
Retained by Latham & Watkins LLP on behalf of Defendant
Superior Court, State of California, County of San Diego, Central, Case No. 692794

Retained by the **City of San Diego** in matter alleging inverse condemnation; performed debt and valuation analysis that aided in reversal of a $94 million verdict that had city on the verge of bankruptcy

**Bersin Properties, LLC v. Nomura Credit & Capital, Inc. and NCCMI, Inc.**
Retained by Greenberg Traurig LLP on behalf of Defendant
Supreme Court of the State of New York, County of New York, Index No. 452630/2014

Retained by subsidiaries of **Nomura Holdings, Inc.** in defense against allegations of breach of contract in connection with a $135 million loan agreement; served as damages rebuttal expert

**Wave Lengths, et al. v. CBL & Associates Properties, Inc., et al.**
Retained by Husch & Blackwell LLP on behalf of Defendant
United States District Court, Middle District of Florida, Case No. 2:16-cv-00206-SPC-MRM

Retained by defendant in a putative class action alleging a fraudulent and illegal scheme of overcharging tenants for electricity at 45 shopping malls throughout the United States

**Noble, et al. v. Greenberg Traurig, LLP, Wells Fargo Capital Finance, Inc., et al.**
Retained by Williams & Connolly LLP and Fenwick & West LLP on behalf of Defendant
Superior Court, State of California, County of Alameda, Case No. RG11593201

Retained by defendant in a class action matter alleging breach of fiduciary duty, securities fraud, and misrepresentation that allegedly resulted in a loss of $700 million of investor capital

**In re Estate Financial, Inc. Debtor/Thomas P. Jeremiassen, Ch. 11 Trustee v. Bryan Cave LLP, et al.**
Retained by Gibson, Dunn & Crutcher LLP on behalf of Defendant
United States Bankruptcy Court, Central District of California, Case No. 9:08-bk-11457-RR, Chapter 11
United States District Court, Central District of California, Case No. 9:08-bk-11457-PC
Adversary Case No. 9-11-ap-01146-PC

Retained by AmLaw 100 firm in defense against bankruptcy trustee's claims of professional negligence and breach of fiduciary duty in connection with alleged investor damages of over $100 million

**CashCall, Inc. v. Katten Muchin Rosenman LLP, et al.**
Retained by Munger, Tolles & Olson LLP on behalf of Defendant

9

Superior Court, State of California, County of Orange, Case No. 30-2017-00914968-CU-NP-CXC

Retained by AmLaw 100 firm in a matter alleging legal malpractice that resulted in a diminution of the value of plaintiff's businesses, lost opportunities, and substantial legal costs

**Pine River Capital Management L.P. v. Granite Point Mortgage Trust Inc.**
Retained by Sidley Austin LLP on behalf of Plaintiff
American Arbitration Association Case No. 01-20-0003-7163

**PRCM Advisors LLC, et al. v. Two Harbors Investment Corp.**
Retained by Sidley Austin LLP and Ciresi Conlin LLP on behalf of Plaintiff
United States District Court, Southern District of New York, Case No. 1:20-CV-05649-LAK

Retained by an external manager of a mortgage REIT in proceedings related to the internalization of the management function; served as valuation and REIT industry expert

**Rincon EV Realty, LLC, et al. v. CP Rincon Towers, Inc., et al.**
Retained by Boies Schiller Flexner LLP on behalf of Plaintiff
Superior Court, State of California, County of San Francisco, Case No. CGC 10-496887

Retained in a breach of contract case involving The Towers at Rincon Center; evaluated refinancing alternatives that may have been available but for lender interference with a $110 million bridge loan

**Fred Segal, LLC v. CormackHill, LP**
Retained by Gibson, Dunn & Crutcher LLP on behalf of Defendant
United States District Court, Central District of California, Case No. 2:16-cv-06653-VAP

Retained by defendant in a matter alleging unfair competition and violation of the Lanham Act in connection with the Fred Segal brand and its former flagship store; provided damages rebuttal analysis

**Dominguez v. Iconiq Capital Management, LLC, et al.**
Retained by Gibson, Dunn & Crutcher LLP on behalf of Defendant
Superior Court, State of California, County of San Francisco, Case No. CGC-21-589700

Retained in a matter alleging that defendant breached an agreement to pay a finder's fee to a consultant in connection with the acquisition of a $190 million apartment building in Chicago, IL

**HotBox Enterprises, LLC v. Jamie Weeks, et al.**
Retained by Latham & Watkins LLP on behalf of Defendant
Superior Court of the State of California, County of Los Angeles, Case No. 20GDCV00469

Retained by owner of 100+ Orangetheory Fitness locations in dispute arising from his alleged attempts to usurp control of the HotBox Sauna Studio franchise system through wrongful actions and bad faith conduct

**Green Street Advisors, LLC v. Jason Moore**
Retained by Latham & Watkins LLP on behalf of Plaintiff
Superior Court, State of California, County of Orange

Retained by a leading research and advisory services firm in a claim alleging that a former employee misappropriated, disseminated and profited from the use of the firm's proprietary trade secrets

10

**Fresh Bites, Inc. v. Legacy Partners Sunset Lofts, LLC**
Retained by Kirkland & Ellis LLP on behalf of Plaintiff
Superior Court, State of California, County of Los Angeles, Case No. BC565456

Retained by restaurant tenant in a claim alleging that landlord's tortious interference led to permanent closure of restaurant; calculated lost profits damages and provided restaurant/bar industry analysis

**Berryhill v. Burton, et al.**
Retained by Kirkland & Ellis LLP on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. BC553674

Retained by defendant in a matter alleging misrepresentation and fraud in connection with the purchase and sale of real property; provided opinions related to debt financing, escrow, title and deed recording

**Flagstone Island Gardens LLC, et al. v. City of Miami**
Retained by Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. on behalf of Plaintiff
Eleventh Judicial Circuit Court of Florida, Case No. 2017-013829-CA-01

Retained by a real estate developer in a matter alleging breaches of contract in connection with the development of a mega-yacht marina, hotels and retail space in Miami, Florida

**Potje, et al. v. Bluegreen Corporation**
Retained by Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. on behalf of Defendant
United States District Court, Southern District of Florida, Case No. 9:17-cv-81055

Retained in putative class action alleging violations of state regulations in connection with purchase and sale of vacation timeshares; plaintiffs withdrew motion for class certification and case was dismissed

**Laskey, et al. v. Bluegreen Vacations Unlimited, Inc.**
Retained by Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. on behalf of Defendant
United States District Court, Western District of Missouri, Southern Division, Case No. 6:22-cv-03194

Retained in putative class action alleging deception, fraud, misrepresentation, unfair practice and the omission of material facts in connection with the purchase and sale of vacation timeshares

**ValueRock Investment Partners, LLC, et al. v. PK II Larwin Square SC LP, et al.**
Retained by O'Melveny & Myers LLP on behalf of Plaintiff
Superior Court, State of California, County of Orange, Case No. 30-2016-00878748-CU-CO-CJC

Retained by buyer of a grocery-anchored retail ground lease from an existing lessee, in a matter alleging that the fee owner unreasonably withheld its consent to the assignment of the leasehold interest

**Reach v. Spahi, et al.**
Retained by Munger, Tolles & Olson LLP on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. SC124263

Retained in a matter regarding appointment of a receiver for Ocean Towers Housing Corporation; opined that this may constitute a default under its loan agreements and trigger an economic catastrophe

**Martinez, et al. v. Optimus Properties, LLC, et al.**
Retained by Skadden, Arps, Slate, Meagher & Flom LLP on behalf of Plaintiff

11

United States District Court, Central District of California, Case Nos. 2:17-cv-3581 to -86

Retained by multifamily tenants in multiple actions involving the alleged violation of anti-discrimination laws by their landlord; calculated economic damages

**MJW Investments v. Sears Holding Company**
Retained by Sheppard, Mullin, Richter & Hampton LLP on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. BC361451
JAMS Arbitration Case No. 1220040924

Retained by **Sears Holding Company** in its defense against claims of tortious interference and slander of title; valued historic 23-acre Sears development site in Boyle Heights district of Los Angeles

**Sunset Landmark Investment LLC v. City of Los Angeles**
Retained by Sheppard, Mullin, Richter & Hampton LLP, et al. on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. BS160807

Retained in a California Environmental Quality Act (CEQA) lawsuit related to the development of the **Thompson Hollywood Hotel**; performed economic and fiscal impact study and project delay analysis

**Grove Way Investments, LLC v. Centene Management Company, LLC**
Retained by Sheppard, Mullin, Richter & Hampton LLP on behalf of Defendant
United States District Court, Eastern District of California, Case No. 2:19-cv-00696-JAM-EFB

Retained by subsidiary of Fortune 100 company **Centene Corp.** in its defense against allegations of breach of a single-tenant office lease agreement; served as forensic accounting and real estate industry expert

**Wells Fargo & Company, et al. v. 1317 Fifth Street Investors, L.P., et al.**
Retained by Katten Muchin Rosenman LLP on behalf of Plaintiff
Superior Court, State of California, County of Los Angeles

Retained by plaintiff in an action alleging breach of contract in connection with the dissolution of a partnership owning retail and office property; valued partnership interests and calculated damages

**AR Capital LLC, et al. v. Freedom Specialty Insurance Company, et al.**
Retained by McKool Smith P.C. on behalf of Plaintiff
Superior Court, State of Delaware, Case No. N19C-01-024 MMJ CCLD

**XL Specialty Insurance Company, et al. v. AR Capital LLC, et al.**
Retained by McKool Smith P.C. on behalf of Defendant
Supreme Court of the State of New York, Index No. 650019/2019

Retained by a REIT manager and certain of its directors and officers in a dispute with insurers arising from the settlement of a regulatory investigation; performed financial/tax analysis of operating partnership units

**Wright v. Star Insurance Company, et al.**
Retained by Locke Lord LLP on behalf of Defendant
Superior Court, State of California, County of San Bernardino, Case No. CIVDS1410112

Retained in a matter alleging a decedent's liability for which decedent was protected by an insurance policy that indemnified him against damages caused by negligent operation of a Cessna aircraft

12

**Brehm Communities, et al. v. Hearthstone, Inc., et al.**
Retained by DLA Piper LLP on behalf of Defendant
Superior Court, State of California, County of Riverside, Case No. RIC 1200532

Retained by a private equity fund in its defense against claims of breach of contract in connection with numerous real property subdivision development agreements

**Watts, et al. v. The Bank of New York Mellon, et al.**
Retained by Bryan Cave LLP on behalf of Defendant
Superior Court, State of California, County of Santa Barbara, Case No. 1385709

Retained by **The Bank of New York Mellon** in its defense against claims of promissory estoppel in connection with the origination of a single-family mortgage loan and subsequent foreclosure proceeding

**Vayntrub v. Bank of America, N.A., et al.**
Retained by Bryan Cave LLP on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. BC496253

Retained by **Bank of America** in its defense against claims of promissory estoppel in connection with the origination of a single-family mortgage loan and subsequent foreclosure proceeding

**Golden Gateway Center v. San Francisco Waterfront Partners II, LLC**
Retained by Farella Braun + Martel LLP on behalf of Defendant
Superior Court, State of California, County of San Francisco, Case No. CGC 15-548437

Retained in a matter alleging breach of option agreement for the purchase of waterfront land in San Francisco, the proposed site for defendant's real estate development project

**Michael Maurer v. Steward Partners Holdings, LLC, et al.**
Retained by Paul Hastings LLP on behalf of Respondent
American Arbitration Association and Int'l. Centre for Dispute Resolution, Case No. 01-20-0000-3442

Retained in matter alleging breach of contract that led to expulsion of claimant from financial advisory firm he co-founded and cross-claim that he engaged in defamation and interference with business contacts

**Toguri v. Pierotti, et al.**
Retained by Munger, Tolles & Olson LLP on behalf of Claimant
American Arbitration Association, Ref. No. 01-20-0014-9001

Retained in matter alleging a scheme to steal claimant's interest in 30 acres of raw land in Rancho Cucamonga, CA through a series of sham transactions concluding in a sale of nearly $50 million

**Ross v. Fox**
Retained by Leonard, Dicker & Schreiber LLP on behalf of Plaintiff
Superior Court, State of California, County of Los Angeles, Case No. BC576879

Retained by investors in matter alleging breach of fiduciary duty and fraud in real estate syndications; testified in jury trial, resulting in complete adoption of Habibi's damages model and $13.4 million award

**BlackStar Industrial Properties, LLC v. Acreage Desert Hot Springs**

Retained by Cozen O'Connor on behalf of Respondent
JAMS Arbitration Case No. 1200057199

Retained by respondent-tenant involving the alleged breach of three leases for a cannabis cultivation facility in Desert Hot Springs, California; served as economic damages and industry expert

**EH Tech, Inc. d/b/a Nature's Market v. Cannaroyalty Corp. d/b/a Origin House, et al.**
Retained by Barnes & Thornburg LLP on behalf of Defendant
JAMS Arbitration, Reference No. 1200057763

Retained by cannabis distributor and producer Origin House in defense of allegations of breach of contract and intentional interference with economic relations with retailers and dispensaries

**Federal Trade Commission, et al. v. Response Marketing Group, LLC, et al.**
Retained by Venable LLP on behalf of Defendant
United States District Court, District of Utah, Central Division, Case No. 2:19-cv-00867

Retained by a real estate education company in defense of allegations that it misrepresented to consumers that they will be taught a proven formula on how to make money from investing in real estate

**Hathaway I, LLC and Hathaway II, LLC v. Hathaway Industrial Properties, et al.**
Retained by Browne George Ross LLP on behalf of Plaintiff
Superior Court, State of California, County of Los Angeles, Case No. BC683747

Retained by plaintiffs in a matter alleging breach of contract involving industrial property in Santa Fe Springs, California; calculated economic damages

**MR Ventura Estates, LLC v. Mariano Rancho, LLC**
Retained by Venable LLP on behalf of Plaintiff
JAMS Arbitration Reference No. 1210034509

Retained by real estate developer in an action related to the violation of a seller's duty of disclosure in connection with the purchase and sale of 1,645 acres of vacant land in Ventura County, California

**Tanager NK, LLC v. Hankey Capital, LLC**
Retained by Dykema Gossett PLLC on behalf of Plaintiff
JAMS Arbitration Case No. 1220063787

Retained by homebuilder in matter alleging breach of contract and fiduciary duty by its capital partner in connection with the development of a high-end residential property in the "Bird Streets" of Los Angeles

**Liberty Property Limited Partnership v. 10721 Jasmine LLC, et al.**
Retained by Sheppard, Mullin, Richter & Hampton LLP on behalf of Defendant
Superior Court, State of California, County of Orange, Case No. 30-2015-00805057-CU-BC-CJC

Retained by plaintiff in fraud and breach of contract case in connection with the purchase and sale of industrial property whereby the seller defendants failed to disclose imminent bankruptcy of the tenant

**Wilshire Vermont Housing Partners, L.P. v. QBE Insurance Co., Certain Underwriters at Lloyd's of London, et al.**
Retained by Robins Kaplan LLP and Steptoe & Johnson LLP on behalf of Defendant

14

**APPENDIX A**

Superior Court, State of California, County of Los Angeles, Case No. BC629273

Retained by insurers in matter alleging construction defects in a 449-unit apartment building over 36,486 square feet of retail in the Koreatown submarket of Los Angeles; served as damages and industry expert

**Stockdale Capital RE, LLC v. The Land of the Free, L.P.**
Retained by Robins Kaplan LLP on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. BC613517

Retained by defendant in a matter alleging breach of contract and fraud arising out of its alleged willful refusal to honor an option agreement for the purchase of an office building in Beverly Hills, California

**Cornerstone Realty Advisors, LLC, et al. v. Summit Healthcare REIT, Inc., et al.**
Retained by Thompson Coburn LLP on behalf of Defendant
Superior Court, State of California, County of Orange, Case No. 30-2014-00714004-CU-BT-CJC

Retained by REIT in its defense against allegations of unfair competition and breach of contract in connection with the termination of an external advisory agreement and cannibalization of employees

**In the Matter of the Davidson Living Trust**
Retained by Venable LLP on behalf of Petitioner
Superior Court, State of California, County of Santa Clara, Probate Division, Case No. 20PR187875

Retained by co-trustee/co-beneficiary of trust in action seeking redress for respondent's alleged wrongdoing whereby they usurped trust assets, including commercial real estate in San Jose, California, for themselves

**Arthur Levine, Lauren Leichtman, et al. v. Jeffrey Alan Taubman, et al.**
Retained by Freedman + Taitelman, LLP on behalf of Plaintiff
Superior Court, State of California, County of Los Angeles, Case No. 19STCV42543

Retained by private equity investors to provide analysis and opinions in connection with tax preparer defendant's alleged professional negligence in the preparation and filing of plaintiffs' tax returns

**Atlantic NWI, Inc. v. REDCO Development LLC, et al.**
Retained by Ervin Cohen & Jessup LLP on behalf of Defendant
In the Court of Chancery of the State of Delaware, C.A. No. 2021-0616

**Christopher Freise, et al. v. Atlantic NWI, LLC, et al.**
Retained by Ervin Cohen & Jessup LLP on behalf of Plaintiff
Superior Court of the State of California, County of San Mateo, Case No. 21CIV04210

Retained in matter involving the alleged abandonment of, and subsequent competition with, a joint venture to develop industrial and office properties in Seattle and the San Francisco Bay Area

**5th and Walnut Tower LLC, et al. v. City of Des Moines**
Retained by The Weinhardt Law Firm on behalf of Defendant and Cross-Claimant
In the Iowa District Court for Polk County, Case No. EQCE086198

Retained by developer in matter alleging the city breached a development agreement covering the construction of a mixed-use project consisting of a 40-story tower, retail and parking structure

**Barbaccia, et al. v. Previte**
Retained by Morgan Franich Fredkin Siamas & Kays LLP on behalf of Plaintiff
Superior Court, State of California, County of Santa Clara, Case No. 17CV315122

Retained in a matter alleging that an asset manager breached fiduciary duties to and embezzled monies from the owners of Palm Valley Apartments (sold to Essex Property Trust) and various mobile home parks

**Barbaccia, et al. v. GBR Magic Sands MHP LLC, et al.**
Retained by Morgan Franich Fredkin Siamas & Kays LLP on behalf of Defendant
Superior Court of the State of California, County of Santa Clara, Case No. 17-CV-313947

Retained in a family dispute involving claims of economic damages due to an alleged ousting of undivided ownership interests of the Magic Sands Mobile Home Park in San Jose, California

**Plantations at Haywood 1 LLC, et al. v. Plantations at Haywood LLC, et al.**
Retained by Shumener, Odson & Oh LLP on behalf of Defendant
American Arbitration Association, Case No. 01-18-0002-4830

Retained by real estate sponsor in defense of allegations that it fraudulently induced tenant in common members to exchange interests for LLC membership interests and usurped various business opportunities

**Mani Brothers Nine Thousand LLC v. LD Entertainment LLC**
Retained by Loeb & Loeb LLP on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. 21STCV04090

Retained by film and television production company in defense of allegations of breach of lease agreement in connection with its office space located at 9000 Sunset Blvd. in West Hollywood, California

**Westlake Investments XXXV LLC v. 1155 Angelo Drive LLC**
Retained by White & Case LLP and Lewis Brisbois Bisgaard & Smith LLP on behalf of Respondent
JAMS Arbitration Case No. 1220071233

Retained by developer/seller of a luxury residence in matter whereby the buyer alleged seller's concealment and failure to disclose material defects in connection with its $42.75 million sale

**Calvano Development Inc. v. Marwood Assets Management, et al.**
Retained by Sheppard, Mullin, Richter & Hampton LLP on behalf of Defendant
Superior Court, State of California, County of Santa Clara, Case No. 17CV309478

Retained in dispute arising from a joint venture to develop real property in Mountain View, California, and alleged breaches of operating agreements; opined as to custom and practice and reasonableness of conduct

**NNN Capital Fund I, LLC, et al. v. Cottonwood Residential OP LP, et al.**
Retained by Shumener, Odson & Oh LLP on behalf of Defendant
In the Third Judicial District in and for Salt Lake County, State of Utah, Case No. 170904222

Retained in matter alleging that managers of entities that owned and operated multifamily real estate investments knowingly and willfully conspired with each other to enrich themselves at plaintiffs' expense

**Teecom, Inc. v. SFII 1333 Broadway, LLC, et al.**

16

Retained by Baker McKenzie LLP on behalf of Plaintiff
Superior Court, State of California, County of Alameda, Case No. RG21089048

Retained by consulting and engineering firm in defense of allegations of breach of lease agreement in connection with its office space located in downtown Oakland, California

**SRE Santini LLC v. TMP Epic Center LLC and Home Run Investments LLC**
Retained by Novack and Macey LLP on behalf of Plaintiff
In the Circuit Court of Cook County, Illinois, Case No. 2020CH04314

Retained in a dispute related to capital allocation and governance of a joint venture to redevelop the Citadel Mall shopping center in Charleston, South Carolina

**Bell Gardens Avenue LLC, et al. v. 8000 Bell Gardens LLC, et al.**
Retained by Buchalter APC on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. 20STCV26362

Retained in matter alleging intentional and negligent misrepresentation, concealment, and conspiracy to violate health and safety codes in connection with the purchase and sale of land for residential development

**John Young v. Andrew Sun, et al.**
Retained by Keller/Anderle LLP on behalf of Plaintiff
Superior Court, State of California, County of Orange, Case No. 30-2013-00659963-CU-NP-CXC

Retained in matter alleging breach of contract and fiduciary duty in connection with a partnership spanning several decades; traced flow of funds and valued over 80 entities to facilitate partnership dissolution

**Mattress Firm, Inc. v. Levy, et al.**
Retained by Hicks Thomas LLP on behalf of Plaintiff
District Court of Harris County, State of Texas, Case No. 2017-73196

Retained in matter alleging a multi-year, nationwide fraudulent scheme involving bribes and kickbacks paid to **Mattress Firm** insiders by brokers and developers in order to charge inflated rental rates on retail leases

**Madison Nampa LLC v. Mattress Firm, Inc., et al.**
Retained by Hicks Thomas LLP on behalf of Defendant
United States District Court, District of Idaho, Case No. 1:17-CV-00049-SAB

Retained in matter alleging breach of a lease that was fraudulently induced by developer plaintiff; provided rebuttal to plaintiff's damages analysis and custom and practice opinions in leasing and development

**Acker v. Midea USA, et al.**
Retained by Gordon Rees Scully Mansukhani LLP on behalf of Defendant
Superior Court, State of California, County of Los Angeles, Case No. 20STCV19860

Retained by a subsidiary of **Midea Group**, the world's largest appliance maker, in a matter alleging that its space heater caused a fire that destroyed the Venice Hotel and resulted in loss of life and multiple injuries

**SLG 625 Lessee LLC v. 625 MAD Realty LLC (Appraisal of 625 Madison Avenue)**
Retained by Nixon Peabody LLP on behalf of Defendant
Supreme Court of the State of New York, County of New York, Index No. 657212/2021 (sent to arbitration)

17

Retained to provide an analysis of SL Green Realty Corporation's public disclosures in connection with the rent reset arbitration involving the ground lease encumbering 625 Madison Avenue, New York City

**California First, L.P. v. California Department of General Services**
Retained by Liner LLP on behalf of Plaintiff
Superior Court, State of California, County of San Francisco, Case No. CGC10-505436

Retained by winning bidder of the Golden State Portfolio transaction authorized by California Governor Arnold Schwarzenegger, alleging breach of contract related to the $2.3 billion sale of 11 office buildings

**Marmol, et al. v. Kalonymus Development Partners LLC**
Retained by Greenberg Traurig LLP on behalf of Defendant
United States District Court, Southern District of Florida, Case No. 22-CV-20703-SCOLA

Retained in an action for declaratory judgement relating to the parties' rights and obligations in connection with the purchase of membership interests in a Florida limited liability company that owned real property

**West American Insurance Company, et al. v. Victaulic Company**
Retained by Prenovost, Normandin, Dawe & Rocha APC on behalf of Defendant
Superior Court, State of California, County of Mono, Case No. 22UCM60

Retained by manufacturer of mechanical pipe joining systems in connection with damages that occurred when a fire sprinkler line failed at The Village Lodge at Mammoth in Mammoth Lakes, California

**Steven C. Gordon v. The Saul Brandman Foundation, et al.**
Retained by Loeb & Loeb LLP on behalf of Plaintiff
Superior Court, State of California, County of Los Angeles, Case No. 19STCV05991

Retained by plaintiff seeking declaratory relief and judicial determination regarding certain governing rights in connection with numerous real estate limited partnerships and limited liability companies

**Allenby LLC and Haygood LLC v. Credit Suisse AG, Cayman Islands Branch, et al.**
Retained by Reid Collins & Tsai LLP on behalf of Plaintiff
Supreme Court of the State of New York, County of New York, Index No. 652491/2013

Retained by assignees of claims of investment funds that participated in loans arranged by Credit Suisse that financed developments such as Yellowstone Mountain Club, Turtle Bay Resort, Ginn Clubs & Resorts, et al.

**Downie, et al. v. Scrivanich, et al.**
Retained by Perkins Coie LLP on behalf of Defendant
Superior Court of Washington for King County, Case No. 22-2-09744-2 SEA

Retained by defendant in a matter involving the purchase and sale of certain materials, including approximately 600 portable modular housing units from **TransCanada Keystone Pipeline LP**

**Livshetz v. Federal Insurance Company**
Retained by O'Melveny & Myers LLP and Cozen O'Connor on behalf of Defendant
Superior Court of the State of California, County of Los Angeles, Case No. 20STCV06506

Retained by member insurer of **Chubb Group of Insurance Companies** in defense of an alleged breach of

18

insurance contract related to a fire that damaged a home in the Hollywood Hills

**Pollock v. Federal Insurance Company**
Retained by O'Melveny & Myers LLP and Cozen O'Connor on behalf of Defendant
United States District Court, Northern District of California, Case No. 3:21-cv-9975-JCV

Retained by member insurer of **Chubb Group of Insurance Companies** in defense of claims related to real property damaged by the 2020 Glass Fire which burned 67,484 acres in Napa and Sonoma Counties

**Albert D. Seeno, Jr., et al v. Discovery Builders, Inc., et al.**
Retained by Cooley LLP on behalf of Plaintiff
Superior Court, State of California, County of Contra Costa, Case No. C22-01746

Retained by homebuilder in a dispute related to the value of fees potentially owed based upon the termination of a construction management agreement

**The Icon at Panorama, LLC v. Southwest Regional Council of Carpenters, et al.**
Retained by Morrison & Foerster LLP on behalf of Plaintiff
United States District Court, Central District of California, Case No. 2:19-cv-00181

Retained in antitrust matter alleging unions of conspiring to control sale of labor services to real estate developers by engaging in anti-competitive conduct and racketeering and filing sham litigation

**Center Point LLC v. The State of California, California High Speed Rail Authority, et al.**
Retained by Nossaman LLP and Van De Poel, Levy, Thomas LLP on behalf of Defendant
Superior Court of the State of California, County of Sacramento, Case No. 34-2019-00269273

Retained by State of California in an inverse condemnation matter alleging damages arising from construction activity in an easement that adversely impacted the value of a parcel in Madera County

**Perillo v. Dynamic Energy Solutions, LLC, et al.**
Retained by Blank Rome LLP on behalf of Claimant
JAMS Arbitration, Ref. No. 5450000383

Retained by seller of a solar power firm in a matter alleging that the buyer engaged in a scheme to prevent seller from receiving $115 million in earn-out payments pursuant to their purchase agreement

**Shorenstein Realty Services, L.P., et al. v. Hennefer Finley & Wood LLP**
Retained by Buchalter APC on behalf of Plaintiff
Superior Court of the State of California, County of San Francisco, Case No. CGC-22-598248

Retained by **Shorenstein Realty Services** in a matter alleging breach of contract with respect to an office lease in the historic Russ Building, located in San Francisco's Financial District

**R2O Development LLC d/b/a Vineyard Development Co. v. The Related Companies, LP, et al.**
Retained by Greenberg Traurig LLP on behalf of Defendant
Superior Court of California, County of Orange, Case No. 30-2022-01246664-CU-BT-CJC

Retained by **The Related Companies** in a matter involving the breach of an alleged joint venture partnership to develop the 41-acre Bristol Project in Santa Ana, California

**APPENDIX A**

**Singer v. The Related Companies, LP, et al.**
Retained by Bird Marella LLP and Fennemore LLP on behalf of Defendant
Superior Court of California, County of Los Angeles, Case No. 19SMCV01614

Retained by **The Related Companies** in a matter involving allegations of construction defects and violation of seller's disclosure duties at The Waverly condominium project in Santa Monica, California

**Barer, et al. v. Rosen, et al.**
Retained by Perkins Coie LLP on behalf of Plaintiff
JAMS Arbitration Case No. 5160000432

Retained by investors in various real estate development partnerships in a dispute alleging that the sponsor/manager breached of the terms and conditions of their respective operating agreements

**Blodgett v. Fairstead Capital LLC, et al.**
Retained by Susman Godfrey LLP on behalf of Claimant
JAMS Arbitration, Reference No. 5425000366

Retained in matter involving a departing executive of a real estate investment company who allegedly concealed from the company an opportunity to purchase a $1.4 billion housing portfolio

**LA-FIG Parking Lot Lessee LLC v. Mohill Holdings LP, et al.**
Retained by Paul Hastings LLP on behalf of Claimant
JAMS Arbitration, Case No. 5100001310

Retained by owner of Hotel Figueroa in Downtown Los Angeles in a dispute related to its leasehold interest in an adjacent parking lot used to support hotel operations

**Saadia Square LLC v. All-Ways Pacific LLC, et al.**
Retained by Greenberg Traurig LLP on behalf of Defendant
Superior Court of the State of California, County of Los Angeles, Case No. 21NWCV00133

Retained by defendant in a matter alleging a scheme to violate plaintiff's right of first offer on an industrial property located in Rialto, California

**The Windward Group v. Compass California, Inc. dba Compass, et al.**
Retained by Bird Marella LLP on behalf of Respondent
Signature Resolution Arbitration, Case No. QGXPR

Retained by Compass in a matter alleging breach of contract and in connection with an alleged oral agreement to recruit and transfer agents from another brokerage

**Lifestyle Realty, LLC v. Compass DMV, LLC, et al.**
Retained by Duane Morris LLP and Ogletree Deakins on behalf of Defendant
United States District Court, District of Maryland, Case No. 8:23-cv-00629-MJM

Retained by Compass in a matter alleging wrongful solicitation of clients and theft of numerous leads contained on plaintiff's confidential lead lists, resulting in stolen commissions

**Sheppard, et al. v. Compass, Inc., et al.**
Retained by Bird Marella LLP on behalf of Defendant

American Arbitration Association, Case No. 01-23-0001-1678

Retained by Compass in a matter alleging failure to pay contractually owed commissions, and misrepresentation of risks and terms of investing in the company's anticipated public offering of stock

**Equity Residential Management, LLC, et al. v. The City of Jersey City, et al.**
Retained by Jenner & Block LLP on behalf of Plaintiff
United States District Court, District of New Jersey, Case No. 2:23-cv-22291-MCA-JRA

Retained by Equity Residential in a matter alleging that a local government board unlawfully revoked rent control exemptions at The Portside Towers, a residential apartment community in Jersey City, New Jersey

**Griffith Company v. Wessex Investments, LLC, et al.**
Retained by Lorber, Greenfield & Olsen LLP on behalf of Plaintiff and Cross-Defendant
Superior Court of the State of California, County of Los Angeles, Case No. 20STCV21704

Retained by a general contracting firm in defense of allegations of breach of contract, negligence, and construction defects related to infrastructure upgrades to a mobile home park in Long Beach, California

**Corvallis Hospitality LLC v. Wilmington Trust, N.A., et al.**
Retained by Jenner & Block LLP on behalf of Defendant
United States District Court, District of Oregon, Case No. 6:22-cv-00024-MC

Retained by lender in defense of allegations by owner of a Hilton Garden Inn that it unlawfully accelerated the loan and initiated foreclosure, violating protections provided by statewide COVID-19 relief legislation

**In re the Estate of John A. Thomas**
Retained by Munger, Tolles & Olson LLP on behalf of Petitioner Wells Fargo Bank, N.A.
Superior Court of the State of California, County of Orange, Case No. 30-2014-00711762-PR-PW-CJC

Retained by Wells Fargo in its capacity as special administrator of an estate in connection with its petition to approve a $95 million sale of three tracts of land in Huntington Beach to Meritage Homes Corporation

**Molly Tracy v. John Morris and Tramor Properties, Inc. (Tramor)**
Retained by Hon. Margaret M. Morrow, Ret., in her capacity as Special Litigation Committee for Tramor
United States District Court, Central District of California, Case No. 2:23-cv-08022

Retained by SLC to investigate shareholder derivative claims alleging breach of fiduciary duty related to the management of multiple limited partnerships owning apartment complexes in Texas

**KB Salt Lake III, LLC, et al. v. Fitness International, LLC, et al.**
Retained by Loeb & Loeb LLP on behalf of Plaintiff
Superior Court of the State of California, County of Los Angeles, Case No. 23CHCV00792

Retained by landlord, a joint venture between Black Equities and ARKA Properties Group, in a matter alleging tenant's breach of lease agreement to redevelop and operate an LA Fitness gym in Chatsworth, CA

**In the Matter of The Stanley A. Sirott Trust**
Retained by Willkie Farr & Gallagher LLP on behalf of Respondent
Superior Court of the State of California, County of Orange, Case No. 30-2023-01364626-PR-TR-CMC

21

**Sirott v. Roldan, et al.**
Retained by Willkie Farr & Gallagher LLP on behalf of Plaintiff
Superior Court of the State of California, County of Los Angeles, Case No. 24STCV05522

Retained to provide testimony in response to a motion to appoint an interim trustee to provide asset management services for a multifamily real estate portfolio in Southern California

**Goldrich Kest, LLC v. Ategrity Specialty Insurance Company, et al.**
Retained by Covington & Burling LLP and Pillsbury Winthrop Shaw Pittman LLP
Superior Court of the State of California, County of Los Angeles, Case No. 23SMCV03537

Retained by owner of a mixed-use building in Downtown Los Angeles in an action alleging breach of contract against insurers that declined to pay certain claims stemming from a fire at the subject property

**L.A. Sports Properties, Inc. v. Darren Schield, et al.**
Retained by Barnes & Thornburg LLP on behalf of Plaintiff
United States District Court, Central District of California, Case No. 2:24-cv-03664-MCS-MAA

Retained by entity owned by Shelly Sterling in a matter alleging its investment manager of breach of fiduciary duty and fraud, including mismanagement of funds, self-dealing, and receipt of kickbacks

**Beach Front Properties LLC v. Waterford Property Company LLC, et al.**
Retained by Allen Matkins Leck Gamble Mallory and Natsis LLP on behalf of Defendant
Superior Court of the State of California, County of Los Angeles, Case No. 23LBCV01654

Retained in a matter alleging breach of an oral partnership agreement to develop affordable workforce housing projects in association with the California Community Housing Agency (CalCHA)

**Metropolis Master Assoc. v. Greenland LA Metropolis Acquisition LLC, et al. and related actions**
Retained by Prenevost, Normandin, Dawe & Rocha, P.C. on behalf of Defendant
Superior Court of the State of California, County of Los Angeles, Case No. 24STCV18383

Retained by defendants in a matter alleging construction defects in the development of the Greenland Metropolis mixed-use complex in Downtown Los Angeles

**Darby, et al. v. Kalesta Healthcare Group, LLC, et al.**
Retained by Fultz Maddox Dickens PLC on behalf of Defendant
Superior Court of the State of California, County of Sacramento, Case No. 34-2021-00310828

Retained by CareTrust REIT, Inc. and CTR Partnership, L.P. in defense of a matter alleging that a nursing home landlord was liable in the wrongful death of a patient under the care of the tenant/operator

**Norman, et al. v. Essex Property Trust, Inc., et al.**
Retained by Sheppard, Mullin, Richter & Hampton LLP on behalf of Defendant
Superior Court of the State of California, County of San Diego, Case No. 37-2022-00038519-CU-NP-CTL
Retained in defense of a putative class action alleging practices and policies of retaining security deposits of former tenants in bad faith and in violation of California law

**Jessica de Rothschild, Alexander Gervasi, et al. v. Diana Lands, et al.**
Retained by Eisner LLP on behalf of Plaintiff
Superior Court of the State of California, County of Los Angeles, Case No. 22STCV16977

Retained by plaintiff in a matter alleging gross negligence and conversion associated with the design and redevelopment of a single-family home in the Hollywood Hills

### KCS West, Inc. v. Silicon Beach Live, LLC, et al.

Retained by Jenner & Block LLP on behalf of Plaintiff
Superior Court of the State of California, County of Los Angeles, Case No. 23STCV10641

Retained by general contractor, a subsidiary of Kajima USA Inc., in a matter alleging the developer of a 176-unit apartment complex in Los Angeles mismanaged the project, leading to delays and economic damages

### Flyer Defense LLC, et al. v. Marvin Engineering Co., et al.

Retained by Stinson LLP on behalf of Defendant
Superior Court of the State of California, Couty of Los Angeles, Case No. 22STCV29636

Retained in a matter alleging breaches of contract and other causes of action between two companies that partnered to sell specialized, tactical all-terrain vehicles to the United States armed forces

### R. Stan Conway v. Edward P. Roski, Jr. and Majestic Realty Co.

Retained by Latham & Watkins LLP on behalf of Respondent
American Arbitration Association, Case No. 01-25-0000-9933 (Coordinated w/ Case No. 01-24-0009-1131)

Retained in a matter alleging improper management of real estate joint ventures through improper capital calls, control shifts, and fiduciary breaches that diluted claimant's ownership and economic interests

## SELECTED LITIGATION AND CONSULTING CLIENTS

### Law Firms

| | |
|---|---|
| Akerman LLP | Davis Wright Tremaine LLP |
| Allen Matkins | Dewey Pegno & Kramarsky LLP |
| ArentFox Schiff LLP | DLA Piper LLP |
| Arnold & Porter Kaye Scholer LLP | Duane Morris LLP |
| Baker Botts LLP | Dykema Gossett PLLC |
| Baker Donelson | Ervin Cohen & Jessup LLP |
| Baker Hostetler LLP | Farella Braun + Martel LLP |
| Baker McKenzie LLP | Fennemore LLP |
| Baker & Miller PLLC | Fenwick & West LLP |
| Barnes & Thornburg LLP | Freedman + Taitelman LLP |
| Bell Nunnally & Martin LLP | Gibson, Dunn & Crutcher LLP |
| Bird Marella LLP | Gordon Rees Scully Mansukhani LLP |
| Blank Rome LLP | Greenberg Traurig LLP |
| Boies Schiller Flexner LLP | Greenspoon Marder LLP |
| Bradley ArantBoult Cummings LLP | Haynes and Boone LLP |
| Browne George Ross LLP | Hicks Thomas LLP |
| Bryan Cave Leighton Paisner LLP | Holland & Knight LLP |
| Buchalter APC | Honigman LLP |
| Ciresi Conlin LLP | Hueston Hennigan LLP |
| Cooley LLP | Hughes Hubbard & Reed LLP |
| Covington & Burling LLP | Husch & Blackwell LLP |
| Cozen O'Connor | Jackson Walker LLP |
| Davis Polk & Wardwell LLP | Jenner & Block LLP |

23

**APPENDIX A**

| | |
|---|---|
| Jones Day | Proskauer Rose LLP |
| Katten Muchin Rosenman LLP | Quinn Emanuel Urquhart & Sullivan LLP |
| Keller/Anderle LLP | Reid Collins & Tsai LLP |
| Kellogg, Hansen, Todd, Figel & Frederick PLLC | Robbins Geller Rudman & Dowd LLP |
| Kilpatrick Townsend & Stockton LLP | Robins Kaplan LLP |
| King & Spalding LLP | Ropes & Gray LLP |
| Kirkland & Ellis LLP | Schlam, Stone & Dolan LLP |
| Latham & Watkins LLP | Seyfarth Shaw LLP |
| Levitt & Boccio LLP | Sheppard, Mullin, Richter and Hampton LLP |
| Lewis Brisbois Bisgaard & Smith LLP | Shook, Hardy & Bacon LLP |
| Locke Lord LLP | Sidley Austin LLP |
| Loeb & Loeb LLP | Skadden, Arps, Meagher, Slate & Flom LLP |
| Mayer Brown LLP | Snell & Wilmer LLP |
| Maynard Nexsen PC | Stearns Weaver Miller |
| McGuireWoods LLP | Steptoe & Johnson LLP |
| McKool Smith PC | Stinson LLP |
| Miller Barondess LLP | Stoel Rives LLP |
| Miller Starr Regalia P.C. | Susman Godfrey LLP |
| Montgomery Purdue PLLC | Thompson Coburn LLP |
| Morgan, Lewis & Bockius LLP | Venable LLP |
| Morrison & Foerster LLP | Vinson & Elkins LLP |
| Munger, Tolles & Olson LLP | Wachtell, Lipton, Rosen & Katz |
| Nixon Peabody LLP | Weil, Gotshal & Manges LLP |
| Norton Rose Fulbright US LLP | White & Case LLP |
| Nossaman LLP | Williams & Connolly LLP |
| Ogletree Deakins | Willkie Farr & Gallagher LLP |
| O'Melveny & Myers LLP | Wilson Sonsini Goodrich & Rosati PC |
| Paul Hastings LLP | Wright & Close LLP |
| Paul, Weiss, Rifkind, Wharton & Garrison LLP | Young Conaway Stargatt & Taylor LLP |
| Perkins Coie LLP | Zelle LLP |
| Pillsbury Winthrop Shaw Pittman LLP | |

**Businesses & Individuals**

| | |
|---|---|
| Airbnb | Bank of New York Mellon |
| Alger Management | BH Management Services |
| Allied Orion Group | Black Equities/Stanley Black |
| Altimeter Capital | Bluegreen Corporation |
| Americold | Boston Consulting Group |
| Andre Balazs | Brookfield Properties |
| Anywhere Real Estate (formerly Realogy) | Camden Property Trust |
| Aon Insurance | Canyon Capital |
| American International Group (AIG) | Capital Properties |
| AR Capital LLC/Nicholas S. Schorsch | Caruso Affiliated |
| Ares Capital Corporation | CBL & Associates Properties |
| ASICS | Centene Corporation |
| Atlas Capital | Chubb Group of Insurance Companies |
| Atomic Labs | Citigroup |
| Avalon Bay Communities | Colony Capital |
| Bain & Company | Compass |
| Bank of America | Cottonwood Residential |
| | CVS Pharmacy |

**APPENDIX A**

Davidson Kempner Capital Management
Edward P. Roski/Majestic Realty Co.
Empire State Realty Trust/Malkin family
Equity Residential
Essex Property Trust
Fortress Investment Group
Frontier Communications
Glenview Capital Management
Goldman Sachs
Green Street Advisors
Greystar
Gulf Finance House (Bahrain)
Hearthstone, Inc.
Highbridge Capital Management
Highmark Residential/Starwood Capital Group
Holiday Inn/IHG Hotels & Resorts
Iconiq Capital Management
Institutional Venture Partners
JPMorgan Chase Bank
KB Home
Keller Williams Realty
KKR & Co./K-Star Asset Management
Knightvest Residential
Lennar Corporation
Lincoln Property Company
Lloyd's of London
Los Angeles Clippers/Steve Ballmer
Macerich Company
Macquarie Group
Mattress Firm
McKinsey & Company
Medical Properties Trust
Mid-America Apartments
Midea Group
MSD Capital
Napier Park Global Capital
National Association of Realtors (NAR)
Nomura Holdings
Norwest Venture Partners

Och-Ziff Capital Management
Peter Thiel
Pine River Capital Management
PricewaterhouseCoopers
Providence Equity Partners
QBE Insurance Company
RealPage
Regency Outdoor Advertising
Related Companies
RE/MAX
Riverside Company
Sares Regis Group Commercial
SBE Entertainment/Sam Nazarian
Sears Holdings
Shamrock Holdings
Sherman Associates
Shorenstein Properties
Simon Property Group
Simpson Property Group
SoftBank Group Corporation
Southern California Edison
Starbucks Corporation
Star Insurance Company
State Bank of India
SunAmerica Affordable Housing Partners
Thoma Bravo
Tiger Global Management
Tishman Speyer Properties
Toll Brothers
Tornante Company/Michael Eisner
Trammell Crow
UDR Apartments
United Parcel Service (UPS)
Wells Fargo
Westgate Resorts
Willow Bridge Property Company
Yucaipa Companies
Zillow Group

**Government**
California State University
City of Los Angeles
City of New York
City of San Diego
County of Los Angeles
Federal Bureau of Investigation (FBI)
State of California
U.S. Attorney's Office/Department of Justice
U.S. Department of Labor
U.S. Navy/Naval Information Warfare Systems Command (NAVWAR)

25

APPENDIX A

U.S. Securities and Exchange Commission (SEC)

## BOARD AND ADVISORY MEMBERSHIPS

- Industrial Advisor, EQT Partners (Stockholm: EQT AB)
- Member, Board of Directors, Knock (Qualified Audit Committee Financial Expert)
- Member, Board of Trustees, Seven Arrows Elementary School
- Member, Board of Directors, Pacific Charter School Development (also Member of Audit Committee)
- Member, Space Policy and Procedure Task Force, UCLA Health System/Geffen School of Medicine
- Member, Judging Committee, Gerald Loeb Award for Distinguished Business Journalism
- Member, Transit Oriented Development and Workforce Housing Task Force, City of Los Angeles
- Advisor, Los Angeles Streetcar, Inc. – Led passage of Community Facilities District in special election
- Member, American Institute of Certified Public Accountants
- Member, American Bar Association (ABA), ABA Litigation Section
- Lexology Index (formerly Who's Who Legal), Commercial Litigation, Expert Witnesses ("Recommended" and "Thought Leader")
- Recipient, Iranian-American Bar Association (IABA) "Excellence in Leadership Award," 2015

## MEDIA, PUBLICATIONS AND SPEAKING ENGAGEMENTS

- Panelist, Experts on Experts by Lexangle, Dallas Arts District Mansion, 2025
- Moderated Affordable Housing panel, Crocker Symposium, 2021
- Moderated Homelessness panel, Crocker Symposium, 2020
- Taught UCLA Anderson x Upkey Virtual Internship Program, 2020
- Taught "Financial Skills for Litigators," Arnold & Porter Kaye Scholer LLP, 2019
- Moderated Opportunity Zones panel, Crocker Symposium, 2019
- Moderated California Lawyers Association Commercial Real Estate Symposium, 2018
- Taught "REITs: Overview and Market Trends," Simpson Thacher & Bartlett LLP, New York, 2018
- Taught "Financial Skills for Litigators," Quinn Emanuel Urquhart & Sullivan LLP, 2017 (to five offices)
- Taught "Financial Skills for Litigators," Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, 2017
- Keynote luncheon speaker, RCLCO Real Estate Advisors 50th Anniversary Retreat, 2017
- Authored "Housing Pays: Capturing the Economic and Fiscal Benefits of Increased Housing Production in Los Angeles," Los Angeles Business Council, 2017
- Featured speaker, Boutique and Lifestyle Lodging Association (BLLA) Leadership Symposium, 2016
- Keynote luncheon speaker, Pension Real Estate Association (PREA) Symposium, 2016
- Moderated "The Construction Boom" panel, U.C. Berkeley Haas School of Business, 2016
- Authored "Could L.A. Become a River City?" Zócalo Public Square, September 8, 2015
- Authored "Easing L.A.'s Housing Crunch," Op-Ed, Los Angeles Times, August 10, 2015
- Featured Speaker, UCLA Anderson Forecast, 2015 and 2019
- Authored "LA's Next Frontier: Capturing Opportunities for New Housing, Economic Growth, and Sustainable Development in LA River Communities," Los Angeles Business Council, 2015
- Moderated "How Bullet Proof is Your Strategy" panel, U.C. Berkeley Haas School of Business, 2015
- Taught finance, tax accounting and land use training course to executives of Americold Logistics, a real estate investment trust (REIT) owned by Yucaipa Companies and Goldman Sachs, 2014
- Taught "New Professionals Track" to real estate and corporate attorneys at Crocker Symposium, 2014
- Taught "Business Law for Lawyers: Deal Structuring Seminar" at Crocker Symposium, 2013
- Featured speaker, McKinsey & Company Southern California luncheon, 2013
- Authored and presented "2013 Livable Communities Report: A Call to Action," the centerpiece of the Los Angeles Mayoral Housing, Transportation and Jobs Summit, 2013

26

**APPENDIX A**

- Delivered economic forecast at Genesis LA Board of Directors Retreat, 2013
- Authored and presented "Building Livable Communities: Enhancing Economic Competitiveness in Los Angeles," the centerpiece of the Los Angeles Mayoral Housing, Transportation and Jobs Summit, 2012
- Keynote luncheon speaker, Crocker Symposium, 2012
- Keynote speaker, Southern California Development Forum Annual Forecast, 2012 and 2013
- Keynote speaker, Sheppard Mullin Richter & Hampton LLP Annual Retreat, 2011 and 2012
- Delivered economic forecast at RealShare Los Angeles Apartments Conference, 2011
- Authored "L.A. Should Abandon Rent Control," Op-Ed, Los Angeles Times, May 21, 2010
- Keynote speaker, Shamrock Capital Advisors Annual Investor Meeting, 2010
- Delivered economic forecast at UCLA Anderson Alumni Weekend, 2008 and 2009
- Widely interviewed by major television and radio programs including BBC World News, NBC's *The Today Show*, CNN, Bloomberg TV, CNBC, FOX News, CBS, ABC and NPR, as well as major dailies including Financial Times, The Wall Street Journal, The New York Times, The Guardian, Los Angeles Times, Washington Post, Chicago Tribune and San Francisco Chronicle

**APPENDIX B: DOCUMENTS RELIED UPON**

| | Document Title/Description | Bates Start | Document Date |
|---|---|---|---|
| | *Legal Pleadings and Depositions* | | |
| 01 | Second Amended Complaint | | June 26, 2023 |
| 02 | Deposition of Adam John Helmker | | November 19, 2025 |
| 03 | Deposition of Robert Kaufman for Kaufman Rossin CPA | | December 8, 2025 |
| 04 | Deposition of Brian Robb | | December 9, 2025 |
| | | | |
| | *Bates Stamped Documents & Exhibits* | | |
| 05 | Instagram Post [Deleted] | PINO_0000001 | May 5, 2019 |
| 06 | Instagram Post: https://www.instagram.com/tv/B2AW7YzHYyZ/ | PINO_0000002 | September 4, 2019 |
| 07 | Instagram Post: https://www.instagram.com/p/B2UrnuWpkpr/ | PINO_0000003 | September 12, 2019 |
| 08 | Instagram Post: https://www.instagram.com/p/B2hecP8nJjm/ | PINO_0000004; PINO_0000005 | September 17, 2019 |
| 09 | Instagram Post: https://www.instagram.com/p/B2j34fJJQU-/ | PINO_0000006 | September 18, 2019 |
| 10 | Instagram Post: https://www.instagram.com/p/B3r563VJS_V/ | PINO_0000007 | October 16, 2019 |
| 11 | Instagram Post: https://www.instagram.com/p/B4K2P9DpuNq/ | PINO_0000008 | October 28, 2019 |
| 12 | Instagram Post: https://www.instagram.com/p/B4TG93gJy7A/ | PINO_0000009 | October 31, 2019 |
| 13 | Instagram Post: https://www.instagram.com/p/B6eRQjejLLI/ | PINO_0000010 | December 24, 2019 |
| 14 | Instagram Post: https://www.instagram.com/p/B7_RJtej-C2/ | PINO_0000011 | January 31, 2020 |
| 15 | Instagram Post: https://www.instagram.com/p/B8NFiGRDXM6/ | PINO_0000012 | February 5, 2020 |
| 16 | 2018 06 27 Memo ASC 946  V1 | EA001295 | June 27, 2018 |
| 17 | 2019 08 02 Reserve PSL Forecast v1 | CARDONE_CAP_00018119 | December 6, 2019 |
| 18 | Reserve PSL Forecast v2 12.12.19 | CARDONE_CAP_00018121 | December 12, 2019 |
| 19 | Reserve PSL Forecast v3 12.20.19 | CARDONE_CAP_00018122 | December 27, 2019 |
| 20 | Reserve PSL Forecast v4 2019 EOY FINAL | CARDONE_CAP_00018123 | March 16, 2020 |
| 21 | Atlantic Delray / 10X Living at Delray Budget (incl property acquisition summary with projected IRR and 10 year projections) | CARDONE_CAP_00018075 | January 16, 2019 |
| 22 | Laguna Bay / 10X Living at Naples Forecast ("v3") | CARDONE_CAP_00018371 | December 10, 2019 |
| 23 | Atlantic Delray / 10X Living at Delray Forecast ("v13") | CARDONE_CAP_00018071 | December 12, 2019 |
| 24 | 10X Living at Breakfast Point Forecast ("v5 EOY Update") | CARDONE_CAP_00018380 | March 3, 2020 |
| 25 | 10X Living at Sawgrass Forecast ("v4 rev") | CARDONE_CAP_00018311 | March 3, 2020 |
| 26 | Stella Forecast ("v4 EOY Final rev") | CARDONE_CAP_00018253 | March 3, 2020 |
| 27 | Addison Place Forecast ("v6 Lender") | CARDONE_CAP_00018957 | February 3, 2020 |
| 28 | Retreat at PCB Forecast ("v5 updated t12") | CARDONE_CAP_00019565 | October 29, 2019 |
| 29 | Columbia Town Center Forecast ("v5 Five Yr IO") | CARDONE_CAP_00018594 | November 4, 2019 |
| 30 | Vantage at PCB ("v3") | CARDONE_CAP_00018509 | September 26, 2019 |
| 31 | Ex 04 - 2018-07-30 SEC Letter | CARDONE_CAP_00008345 | N/A |
| 32 | CARDONE CAPITAL 152109 -152417 | CARDONE_CAP_00000327 | December 11, 2020 |
| 33 | Atlantic Delray Forecast ("v10 without AM Fee") | CARDONE_CAP_00018183 | August 29, 2018 |
| 34 | Stella Forecast ("v5") | CARDONE_CAP_00018254 | November 9, 2018 |
| 35 | CEF V Distribution Summary 2021 06 30 | CARDONE_CAP_00000323 | October 4, 2021 |
| 36 | CEF VI Distribution Summary 2021 06 30 | CARDONE_CAP_00000324 | October 4, 2021 |
| 37 | 10X Living at Breakfast Point | CARDONE_CAP_00018381 | September 26, 2019 |
| 38 | 10X Living at Breakfast Point ("Final") | CARDONE_CAP_00018382 | September 26, 2019 |
| 39 | CEF V cover letter Final v3 | CARDONE_CAP_00020173 | November 21, 2019 |
| 40 | 2020 Q2 Ashley at Breakfast Point Report -FINAL | CARDONE_CAP_00022332 | August 10, 2020 |
| 41 | Nexus Sawgrass Forecast ("Finalized") | CARDONE_CAP_00018076 | July 10, 2019 |
| 42 | Columbia Town Center Weller Budget (incl property acquisition summary with projected IRR and 10 year projections) | CARDONE_CAP_00018604 | September 18, 2019 |
| 43 | Columbia Town Center Forecast | CARDONE_CAP_00018591 | September 17, 2019 |
| 44 | Vantage at PCB ("Final Final Approved") | CARDONE_CAP_00018506 | October 16, 2019 |
| 45 | 10X Living at Breakfast Point Forecast ("v3") | CARDONE_CAP_00018378 | January 8, 2020 |
| 46 | 10X Living at Naples Forecast ("v4") | CARDONE_CAP_00018365 | January 3, 2020 |
| 47 | Stella Forecast ("v2") | CARDONE_CAP_00018249 | December 30, 2019 |
| 48 | 10X Living at Sawgrass Forecast ("v2") | CARDONE_CAP_00018074 | December 20, 2019 |
| 49 | Addison Place Forecast ("v6") /  model including IRR waterfall | CARDONE_CAP_00018078 | January 30, 2020 |
| 50 | Retreat at PCB Forecast ("v7") | CARDONE_CAP_00018674 | January 22, 2020 |
| 51 | Columbia Town Center Forecast ("v9") | CARDONE_CAP_00018600 | December 13, 2019 |
| 52 | 10X Living at PCB Forecast ("v1") | CARDONE_CAP_00018073 | December 12, 2019 |
| 53 | 10X Living at Breakfast Point | CARDONE_CAP_00019275 | September 26, 2019 |
| 54 | 10X Living at Breakfast Point ("Final") | CARDONE_CAP_00019276 | September 26, 2019 |
| 55 | 10X Living at Breakfast Point ("Final") | CARDONE_CAP_00018383 | December 3, 2019 |
| 56 | 10X Living at Breakfast Point ("Final") | CARDONE_CAP_00019277 | December 3, 2019 |
| 57 | 10X Living at Breakfast Point Forecast ("v2") | CARDONE_CAP_00018070 | December 19, 2019 |
| 58 | 10X Living at Breakfast Point Forecast ("v2") | CARDONE_CAP_00018377 | December 19, 2019 |
| 59 | 10X Living at Breakfast Point Forecast ("v2") | CARDONE_CAP_00019271 | December 19, 2019 |
| 60 | 10X Living at Breakfast Point Forecast ("v3") | CARDONE_CAP_00019272 | January 8, 2020 |
| 61 | 10X Living at Breakfast Point Forecast ("v4 EOY FINAL") | CARDONE_CAP_00018379 | February 18, 2020 |
| 62 | 10X Living at Breakfast Point Forecast ("v4 EOY FINAL") | CARDONE_CAP_00019273 | February 18, 2020 |
| 63 | 10X Living at Breakfast Point Forecast ("v5 EOY Update") | CARDONE_CAP_00019274 | March 3, 2020 |
| 64 | "Cardone Capital 201470 – Cardone Capital 201474" | CARDONE_CAP_00018372 | May 17, 2021 |
| 65 | "Cardone Capital 203611 – Cardone Capital 203615" | CARDONE_CAP_00019266 | May 17, 2021 |
| 66 | The Atlantic Delray UW | CARDONE_CAP_00018193 | April 5, 2018 |
| 67 | Atlantic Delray Forecast | CARDONE_CAP_00019087 | April 5, 2018 |
| 68 | Atlantic Delray Forecast ("v2") | CARDONE_CAP_00018190 | May 3, 2018 |
| 69 | Atlantic Delray Forecast ("v2") | CARDONE_CAP_00019084 | May 3, 2018 |
| 70 | Atlantic Delray Forecast ("v3") | CARDONE_CAP_00018191 | May 29, 2018 |

**APPENDIX B: DOCUMENTS RELIED UPON**

| Document Title/Description | Bates Start | Document Date |
|---|---|---|
| Atlantic Delray Forecast ("v3") | CARDONE_CAP_00019085 | May 29, 2018 |
| Atlantic Delray Forecast ("v4") | CARDONE_CAP_00018192 | May 31, 2018 |
| Atlantic Delray Forecast ("v4") | CARDONE_CAP_00019086 | May 31, 2018 |
| Atlantic Delray Forecast ("stabilized v1") | CARDONE_CAP_00018187 | June 18, 2018 |
| Atlantic Delray Forecast ("stabilized v1") | CARDONE_CAP_00019081 | June 18, 2018 |
| Atlantic Delray Forecast ("v5") | CARDONE_CAP_00018179 | June 22, 2018 |
| Atlantic Delray Forecast ("v5") | CARDONE_CAP_00019073 | June 22, 2018 |
| Atlantic Delray Forecast ("stabilized v2") | CARDONE_CAP_00018177 | June 26, 2018 |
| Atlantic Delray Forecast ("stabilized v2") | CARDONE_CAP_00019071 | June 26, 2018 |
| Atlantic Delray Forecast ("v6") | CARDONE_CAP_00018180 | June 26, 2018 |
| Atlantic Delray Forecast ("v6") | CARDONE_CAP_00019074 | June 26, 2018 |
| Atlantic Delray Forecast ("v7") | CARDONE_CAP_00018181 | July 5, 2018 |
| Atlantic Delray Forecast ("v7") | CARDONE_CAP_00019075 | July 5, 2018 |
| Atlantic Delray Forecast ("Proforma v1") | CARDONE_CAP_00018178 | July 17, 2018 |
| Atlantic Delray Forecast ("Proforma v1") | CARDONE_CAP_00019072 | July 17, 2018 |
| Atlantic Delray Forecast ("v8") | CARDONE_CAP_00018182 | July 18, 2018 |
| Atlantic Delray Forecast ("v8") | CARDONE_CAP_00019076 | July 18, 2018 |
| Atlantic Delray Forecast ("v10 without AM Fee") | CARDONE_CAP_00019077 | August 29, 2018 |
| 10X Living at Delray Forecast ("v3 EOY Final") | CARDONE_CAP_00018174 | February 18, 2020 |
| 10X Living at Delray Forecast ("v3 EOY Final") | CARDONE_CAP_00019068 | February 18, 2020 |
| 10X Living at Delray Forecast ("v4 EOY draft") | CARDONE_CAP_00018189 | February 28, 2020 |
| 10X Living at Delray Forecast ("v4 EOY draft") | CARDONE_CAP_00019083 | February 28, 2020 |
| 10X Living at Delray Forecast ("v4 EOY rev") | CARDONE_CAP_00018175 | March 4, 2020 |
| 10X Living at Delray Forecast ("v4 EOY rev") | CARDONE_CAP_00019069 | March 4, 2020 |
| "Cardone Capital 200905 – Cardone Capital 200954" | CARDONE_CAP_00018124 | March 17, 2021 |
| "Cardone Capital 203086 – Cardone Capital 203135" | CARDONE_CAP_00019018 | May 17, 2021 |
| Nexus Sawgrass Forecast ("Finalized") | CARDONE_CAP_00018313 | July 10, 2019 |
| Nexus Sawgrass Forecast ("Finalized") | CARDONE_CAP_00019207 | July 10, 2019 |
| Nexus Sawgrass Forecast ("Finalized sps") | CARDONE_CAP_00018312 | October 2, 2019 |
| Nexus Sawgrass Forecast ("Finalized sps") | CARDONE_CAP_00019206 | October 2, 2019 |
| Nexus Sawgrass Forecast ("Finalized revised LG") | CARDONE_CAP_00018314 | November 27, 2019 |
| Nexus Sawgrass Forecast ("Finalized revised LG") | CARDONE_CAP_00019208 | November 27, 2019 |
| Nexus Sawgrass Forecast ("Finalized sps") | CARDONE_CAP_00018315 | November 27, 2019 |
| Nexus Sawgrass Forecast ("Finalized sps") | CARDONE_CAP_00019209 | November 27, 2019 |
| Nexus Sawgrass / Living at Sawgrass Forecast ("v1") | CARDONE_CAP_00018308 | December 12, 2019 |
| Nexus Sawgrass / Living at Sawgrass Forecast ("v1") | CARDONE_CAP_00019202 | December 12, 2019 |
| 10X Living at Sawgrass Forecast ("v2") | CARDONE_CAP_00018309 | December 20, 2019 |
| 10X Living at Sawgrass Forecast ("v2") | CARDONE_CAP_00019203 | December 20, 2019 |
| 10X Living at Sawgrass Forecast ("v3 EOY Final") | CARDONE_CAP_00018310 | February 20, 2020 |
| 10X Living at Sawgrass Forecast ("v3 EOY Final") | CARDONE_CAP_00019204 | February 20, 2020 |
| 10X Living at Sawgrass Forecast ("v4 sps") | CARDONE_CAP_00018307 | February 28, 2020 |
| 10X Living at Sawgrass Forecast ("v4 sps") | CARDONE_CAP_00019201 | February 28, 2020 |
| 10X Living at Sawgrass Forecast ("v4 rev") | CARDONE_CAP_00019205 | March 3, 2020 |
| Laguna Bay Forecast ("v1") | CARDONE_CAP_00018369 | September 30, 2019 |
| Laguna Bay Forecast ("v1") | CARDONE_CAP_00019263 | September 30, 2019 |
| Laguna Bay Forecast ("v1 sps") | CARDONE_CAP_00018368 | October 2, 2019 |
| Laguna Bay Forecast ("v1 sps") | CARDONE_CAP_00019262 | October 2, 2019 |
| Laguna Bay Forecast ("v2 sps") | CARDONE_CAP_00018370 | October 28, 2019 |
| Laguna Bay Forecast ("v2 sps") | CARDONE_CAP_00019264 | October 28, 2019 |
| Laguna Bay / 10X Living at Naples Forecast ("v3") | CARDONE_CAP_00019265 | December 10, 2019 |
| 10X Living at Naples Forecast ("v3") | CARDONE_CAP_00018364 | December 11, 2019 |
| 10X Living at Naples Forecast ("v3") | CARDONE_CAP_00019258 | December 11, 2019 |
| 10X Living at Naples Forecast ("v4") | CARDONE_CAP_00019259 | January 3, 2020 |
| 10X Living at Naples Forecast ("v5 EOY Final") | CARDONE_CAP_00018366 | February 18, 2020 |
| 10X Living at Naples Forecast ("v5 EOY Final") | CARDONE_CAP_00019260 | February 18, 2020 |
| 10X Living at Naples Forecast ("v6 Update") | CARDONE_CAP_00019261 | March 3, 2020 |
| 10X Living at Naples Forecast ("v6 Update") | CARDONE_CAP_00018367 | March 3, 2020 |
| Stella Forecast ("v5") | CARDONE_CAP_00019148 | November 9, 2018 |
| Stella Forecast ("v6") | CARDONE_CAP_00018255 | October 28, 2019 |
| Stella Forecast ("v6") | CARDONE_CAP_00019149 | October 28, 2019 |
| Stella Forecast ("Finalized v2 with 2020 budget") | CARDONE_CAP_00018248 | December 6, 2019 |
| Stella Forecast ("Finalized v2 with 2020 budget") | CARDONE_CAP_00019142 | December 6, 2019 |
| Stella Forecast ("v3 with 2020 Budget") | CARDONE_CAP_00018251 | December 6, 2019 |
| Stella Forecast ("v3 with 2020 Budget") | CARDONE_CAP_00019145 | December 6, 2019 |
| Stella Forecast ("v3") Stella at Riverside model including IRR waterfall | CARDONE_CAP_00018082 | December 24, 2019 |
| Stella Forecast ("v3") Stella at Riverside model including IRR waterfall | CARDONE_CAP_00018250 | December 24, 2019 |
| Stella Forecast ("v3") Stella at Riverside model including IRR waterfall | CARDONE_CAP_00019144 | December 24, 2019 |
| Stella Forecast ("v2") | CARDONE_CAP_00019143 | December 30, 2019 |
| Stella Forecast ("v4 EOY Final") | CARDONE_CAP_00018252 | February 18, 2020 |
| Stella Forecast ("v4 EOY Final") | CARDONE_CAP_00019146 | February 18, 2020 |
| Stella Forecast ("v4 EOY Final rev") | CARDONE_CAP_00019147 | March 3, 2020 |
| Vantage at PCB ("v3") | CARDONE_CAP_00019403 | September 26, 2019 |
| Vantage at PCB ("Final") | CARDONE_CAP_00018508 | September 26, 2019 |

**APPENDIX B: DOCUMENTS RELIED UPON**

| | Document Title/Description | Bates Start | Document Date |
|---|---|---|---|
| 144 | Vantage at PCB ("Final") | CARDONE_CAP_00019402 | September 26, 2019 |
| 145 | Vantage at PCB ("Final Final Approved") | CARDONE_CAP_00019400 | October 16, 2019 |
| 146 | 10X Living at PCB ("Final Approved") | CARDONE_CAP_00018503 | November 27, 2019 |
| 147 | 10X Living at PCB ("Final Approved") | CARDONE_CAP_00019397 | November 27, 2019 |
| 148 | Vantage at PCB Forecast ("Final") | CARDONE_CAP_00018505 | December 2, 2019 |
| 149 | Vantage at PCB Forecast ("Final") | CARDONE_CAP_00019399 | December 2, 2019 |
| 150 | 10X Living at PCB ("Final Final Final Approved") | CARDONE_CAP_00018507 | December 5, 2019 |
| 151 | 10X Living at PCB ("Final Final Final Approved") | CARDONE_CAP_00019401 | December 5, 2019 |
| 152 | 10X Living at PCB Forecast ("v1") | CARDONE_CAP_00018499 | December 12, 2019 |
| 153 | 10X Living at PCB Forecast ("v1") | CARDONE_CAP_00019393 | December 12, 2019 |
| 154 | 10X Living at PCB Forecast ("v2 EOY Finalized") | CARDONE_CAP_00018500 | February 24, 2020 |
| 155 | 10X Living at PCB Forecast ("v2 EOY Finalized") | CARDONE_CAP_00019394 | February 24, 2020 |
| 156 | 10X Living at PCB Forecast ("v3 EOY draft") | CARDONE_CAP_00018501 | February 28, 2020 |
| 157 | 10X Living at PCB Forecast ("v3 EOY draft") | CARDONE_CAP_00019395 | February 28, 2020 |
| 158 | 10X Living at PCB Forecast ("v3 EOY Finalized") | CARDONE_CAP_00018502 | October 16, 2020 |
| 159 | 10X Living at PCB Forecast ("v3 EOY Finalized") | CARDONE_CAP_00019396 | October 16, 2020 |
| 160 | "Cardone Capital 201475 – Cardone Capital 201589" | CARDONE_CAP_00018384 | May 17, 2021 |
| 161 | "Cardone Capital 203616 – Cardone Capital 203730" | CARDONE_CAP_00019278 | May 17, 2021 |
| 162 | Addison Place Forecast ("v1") | CARDONE_CAP_00018951 | October 10, 2019 |
| 163 | Addison Place Forecast ("v1") | CARDONE_CAP_00019845 | October 10, 2019 |
| 164 | Addison Place Weller Budget (incl property acquisition summary with projected IRR and 10 year projections) | CARDONE_CAP_00019861 | October 10, 2019 |
| 165 | Addison Place Weller Budget (incl property acquisition summary with projected IRR and 10-year projections) | CARDONE_CAP_00018967 | October 10, 2019 |
| 166 | Addison Place Forecast ("v2 with PM Budget") | CARDONE_CAP_00018952 | October 16, 2019 |
| 167 | Addison Place Forecast ("v2 with PM Budget") | CARDONE_CAP_00019846 | October 16, 2019 |
| 168 | Addison Place Forecast ("v3 Updated Financials") | CARDONE_CAP_00018953 | November 11, 2019 |
| 169 | Addison Place Forecast ("v3 Updated Financials") | CARDONE_CAP_00019847 | November 11, 2019 |
| 170 | Addison Place Forecast ("v4") | CARDONE_CAP_00018954 | November 18, 2019 |
| 171 | Addison Place Forecast ("v4") | CARDONE_CAP_00019848 | November 18, 2019 |
| 172 | Addison Place Forecast ("v5") / model including IRR waterfall | CARDONE_CAP_00018077 | January 14, 2020 |
| 173 | Addison Place Forecast ("v5") | CARDONE_CAP_00018955 | January 27, 2020 |
| 174 | Addison Place Forecast ("v5") | CARDONE_CAP_00019849 | January 27, 2020 |
| 175 | Addison Place Forecast ("v6") | CARDONE_CAP_00019850 | January 30, 2020 |
| 176 | Addison Place Forecast ("v6") / model including IRR waterfall | CARDONE_CAP_00018956 | January 30, 2020 |
| 177 | Addison Place Forecast ("v6 Lender") | CARDONE_CAP_00019851 | February 3, 2020 |
| 178 | Addison Place Forecast ("v7") | CARDONE_CAP_00018958 | February 19, 2020 |
| 179 | Addison Place Forecast ("v7") | CARDONE_CAP_00019852 | February 19, 2020 |
| 180 | Addison Place Forecast ("v8 FINAL AT CLOSING") | CARDONE_CAP_00018959 | February 28, 2020 |
| 181 | Addison Place Forecast ("v8 Final at Closing") | CARDONE_CAP_00019853 | February 28, 2020 |
| 182 | "Cardone Capital 201721 – Cardone Capital 201984" | CARDONE_CAP_00018680 | May 17, 2021 |
| 183 | Addison Place Due Diligence "Cardone Capital 203862 – Cardone Capital 204125" | CARDONE_CAP_00019574 | May 17, 2021 |
| 184 | Columbia Town Center Forecast | CARDONE_CAP_00019485 | September 17, 2019 |
| 185 | Columbia Town Center Weller Budget (incl property acquisition summary with projected IRR and 10 year projections) | CARDONE_CAP_00019498 | September 18, 2019 |
| 186 | Columbia Town Center Forecast ("v2") | CARDONE_CAP_00018589 | September 24, 2019 |
| 187 | Columbia Town Center Forecast ("v2") | CARDONE_CAP_00019483 | September 24, 2019 |
| 188 | Columbia Town Center Forecast ("v3 Revised Offer") | CARDONE_CAP_00018590 | October 1, 2019 |
| 189 | Columbia Town Center Forecast ("v3 Revised Offer") | CARDONE_CAP_00019484 | October 1, 2019 |
| 190 | Columbia Town Center Forecast ("v4.1 lender") | CARDONE_CAP_00018592 | October 4, 2019 |
| 191 | Columbia Town Center Forecast ("v4.1 lender") | CARDONE_CAP_00019486 | October 4, 2019 |
| 192 | Columbia Town Center Forecast ("v4") | CARDONE_CAP_00018593 | October 24, 2019 |
| 193 | Columbia Town Center Forecast ("v4") | CARDONE_CAP_00019487 | October 24, 2019 |
| 194 | Columbia Town Center Forecast ("v6 Six Yr IO") | CARDONE_CAP_00018595 | October 28, 2019 |
| 195 | Columbia Town Center Forecast ("v6 Six Yr IO") | CARDONE_CAP_00019489 | October 28, 2019 |
| 196 | Columbia Town Center Forecast ("v5 Five Yr IO") | CARDONE_CAP_00019488 | November 4, 2019 |
| 197 | Columbia Town Center Forecast ("v6 Five Yr IO") | CARDONE_CAP_00018599 | November 8, 2019 |
| 198 | Columbia Town Center Forecast ("v6 Five Yr IO") | CARDONE_CAP_00019493 | November 8, 2019 |
| 199 | Columbia Town Center Forecast ("v7 Five Yr IO") | CARDONE_CAP_00018596 | November 25, 2019 |
| 200 | Columbia Town Center Forecast ("v7 Five Yr IO") | CARDONE_CAP_00019490 | November 25, 2019 |
| 201 | Columbia Town Center Forecast ("v9 Lender") | CARDONE_CAP_00018598 | November 26, 2019 |
| 202 | Columbia Town Center Forecast ("v9 Lender") | CARDONE_CAP_00019492 | November 26, 2019 |
| 203 | Columbia Town Center Forecast ("v8") / model including IRR waterfall | CARDONE_CAP_00018597 | December 12, 2019 |
| 204 | Columbia Town Center Forecast ("v8") / model including IRR waterfall | CARDONE_CAP_00019491 | December 12, 2019 |
| 205 | Columbia Town Center Forecast ("v8") / model including IRR waterfall | CARDONE_CAP_00018079 | December 12, 2019 |
| 206 | Columbia Town Center Forecast ("v9") | CARDONE_CAP_00019494 | December 13, 2019 |
| 207 | Columbia Town Center Forecast ("v10") | CARDONE_CAP_00018601 | February 14, 2020 |
| 208 | Columbia Town Center Forecast ("v10") | CARDONE_CAP_00019495 | February 14, 2020 |
| 209 | Columbia Town Center Forecast ("v11") | CARDONE_CAP_00018587 | February 17, 2020 |
| 210 | Columbia Town Center Forecast ("v11") | CARDONE_CAP_00019481 | February 17, 2020 |
| 211 | Columbia Town Center Forecast ("v12 update") | CARDONE_CAP_00018588 | March 12, 2020 |
| 212 | Columbia Town Center Forecast ("v12 update") | CARDONE_CAP_00019482 | March 12, 2020 |
| 213 | "Cardone Capital 201590 – Cardone Capital 201665" | CARDONE_CAP_00018510 | May 17, 2021 |
| 214 | "Cardone Capital 203731 – Cardone Capital 203806" | CARDONE_CAP_00019404 | May 17, 2021 |
| 215 | Retreat at PCB Forecast ("v5") | CARDONE_CAP_00018671 | October 24, 2019 |
| 216 | Retreat at PCB Forecast ("v4") | CARDONE_CAP_00018670 | October 24, 2019 |

**APPENDIX B: DOCUMENTS RELIED UPON**

| | Document Title/Description | Bates Start | Document Date |
|---|---|---|---|
| 217 | Retreat at PCB Forecast ("v4") | CARDONE_CAP_00019564 | October 24, 2019 |
| 218 | Retreat at PCB Forecast ("v6 max proceeds") | CARDONE_CAP_00018673 | November 19, 2019 |
| 219 | Retreat at PCB Forecast ("v6 max proceeds") | CARDONE_CAP_00019567 | November 19, 2019 |
| 220 | Retreat at PCB Forecast ("v6 full term 10 yr IO") | CARDONE_CAP_00018672 | November 22, 2019 |
| 221 | Retreat at PCB Forecast ("v6 full term 10 yr IO") | CARDONE_CAP_00019566 | November 22, 2019 |
| 222 | Retreat at PCB Forecast ("v7") / model including IRR Waterfall | CARDONE_CAP_00018080 | January 14, 2020 |
| 223 | Retreat at PCB Forecast ("v7") | CARDONE_CAP_00019568 | January 22, 2020 |
| 224 | Retreat at PCB Forecast ("v8") / model including IRR Waterfall | CARDONE_CAP_00018081 | February 3, 2020 |
| 225 | Retreat at PCB Forecast ("v8") / model including IRR Waterfall | CARDONE_CAP_00018675 | February 3, 2020 |
| 226 | Retreat at PCB Forecast ("v8") | CARDONE_CAP_00019569 | February 3, 2020 |
| 227 | Retreat at PCB Forecast ("v9") | CARDONE_CAP_00018676 | February 3, 2020 |
| 228 | Retreat at PCB Forecast ("v9") | CARDONE_CAP_00019570 | February 3, 2020 |
| 229 | Retreat at PCB Weller Budget (incl property acquisition summary with projected IRR and 10 year projections) | CARDONE_CAP_00019573 | February 4, 2020 |
| 230 | Retreat at PCB Weller Budget (incl property acquisition summary with projected IRR and 10-year projections) | CARDONE_CAP_00018679 | February 4, 2020 |
| 231 | Retreat at PCB Forecast ("v10 Finalized at Closing") | CARDONE_CAP_00018677 | February 17, 2020 |
| 232 | Retreat at PCB Forecast ("v10 Finalized at Closing") | CARDONE_CAP_00019571 | February 17, 2020 |
| 233 | Retreat at PCB Forecast ("v11 Corona Break Even") | CARDONE_CAP_00018678 | March 19, 2020 |
| 234 | Retreat at PCB Forecast ("v11 Corona Break Even") | CARDONE_CAP_00019572 | March 19, 2020 |
| 235 | "Cardone Capital 203807 – Cardone Capital 203861" | CARDONE_CAP_00019501 | May 17, 2021 |
| 236 | "Cardone Capital 201666 – Cardone Capital 201720" | CARDONE_CAP_00018607 | N/A |
| 237 | 10X Living at Breakfast Point | CARDONE_CAP_00028463 | October 7, 2019 |
| 238 | 10X Living at CTC | CARDONE_CAP_00028523 | September 21, 2021 |
| 239 | 10X PCB | CARDONE_CAP_00028629 | September 21, 2021 |
| 240 | Stella 10-Year Projection | CARDONE_CAP_00028740 | February 21, 2019 |
| 241 | Stella 10-Year Projection | CARDONE_CAP_00028872 | February 21, 2019 |
| 242 | 10X Living at Breakfast Point | CARDONE_CAP_00028873 | October 7, 2019 |

**Academic Articles, Books & Industry Publications**

| | | | |
|---|---|---|---|
| 243 | U.S. Securities and Exchange Commission, Regulation A: Guidance for Issuers | | July 21, 2025 |
| 244 | U.S. Securities and Exchange Commission, Small Business Exempt Offerings – Regulation | | November 14, 2024 |
| 245 | 17 CFR Part 230 | | September 19, 2025 |
| 246 | Brueggeman, W. & J. Fisher, Real Estate Finance and Investments, McGraw-Hill Irwin, 14th Edition, Chapters 2, 3, 10, 11, 12, 13 | | |
| 247 | Geltner, D. M. et al, Commercial Real Estate Analysis and Investments, The CE Shop, 3rd Edition, Chapters 1, 11, 16 | | |
| 248 | Appraisal Institute, The Appraisal of Real Estate, 15th Edition, Chapter 15 | | |
| 249 | Peca, S. P, Real Estate Development and Investment, A Comprehensive Approach, John Wiley & Sons, Glossary | | |
| 250 | Fannie Mae, Multifamily Market Commentary – February 2018 | | February 2018 |
| 251 | Freddie Mac Multifamily, Multifamily 2018 Mid-Year Outlook | | August 2018 |
| 252 | Freddie Mac Multifamily, Multifamily 2019 Mid-Year Outlook | | August 2019 |
| 253 | Cushman & Wakefield, U.S. Multifamily MarketBeat Q2 2019 | | 2019 |
| 254 | Ling, D. & W. Archer, Real Estate Principals, A Value Approach, McGraw-Hill Irwin, 5th Edition, Chapter 8 | | |
| 255 | Mishkin, Frederic S., The Economics of Money, Banking, and Financial Markets, Pearson, 11th Edition, Chapter 7 | | |
| 256 | Morri, G. & A. Mazza, Property Finance (2015), Wiley, Chapter 7 | | |
| 257 | FASB, Accounting Standards Codification - Topic 946 | | |
| 258 | FASB, Accounting Standards Codification - Topic 820 | | |

**SEC Filings**

| | | | |
|---|---|---|---|
| 259 | Cardone Equity Fund IX, LLC, Preliminary Offering Circular filed March 17, 2020 | | March 17, 2020 |
| 260 | Cardone Equity Fund V, LLC Preliminary Offering Circular dated July 2, 2018 | | July 2, 2018 |
| 261 | Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2019 | | December 31, 2019 |
| 262 | Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2020 | | December 31, 2020 |
| 263 | Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2021 | | December 31, 2021 |
| 264 | Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2022 | | December 31, 2022 |
| 265 | Cardone Equity Fund V, LLC, Form 1-K for the year ended December 31, 2023 | | December 31, 2023 |
| 266 | Cardone Equity Fund V, LLC, Offering Circular dated December 11, 2018 | | December 11, 2018 |
| 267 | Cardone Equity Fund V, LLC, Operating Agreement filed October 22, 2018 | | October 22, 2018 |
| 268 | Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2019 | | December 31, 2019 |
| 269 | Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2020 | | December 31, 2020 |
| 270 | Cardone Equity Fund VI, LLC, Form 1-K For the year ended December 31, 2021 | | December 31, 2021 |
| 271 | Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2022 | | December 31, 2022 |
| 272 | Cardone Equity Fund VI, LLC, Form 1-K for the year ended December 31, 2023 | | December 31, 2023 |
| 273 | Cardone Equity Fund VI, LLC, Offering Circular dated September 26, 2019 | | September 26, 2019 |
| 274 | Cardone Equity Fund VI, LLC, Operating Agreement filed June 26, 2019 | | June 26, 2019 |
| 275 | Cardone Equity Fund VI, LLC, Preliminary Offering Circular dated May 29, 2019 | | May 29, 2019 |
| 276 | Cardone REIT I, LLC, Preliminary Offering Circular dated September 13, 2021 | | September 13, 2021 |

**Other**

| | | | |
|---|---|---|---|
| 277 | YouTube Video: https://www.youtube.com/watch?v=OoeJkZZGa2c | | April 22, 2019 |
| 278 | Instagram Post: https://www.instagram.com/p/B9PNAobJ3kD/ | | March 2, 2020 |