MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
STEVEN SKLAVER (237612)
ssklaver@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
Phone:  (310) 789-3100
Fax:      (310) 789-3150

RAJ MATHUR (admitted *pro hac vice*)
rmathur@susmangodfrey.com
MORGAN MCCOLLUM (admitted *pro hac vice*)
mmccollum@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, Fl. 50
New York, NY 10001
Phone:  (212) 729-2051
Fax:      (212) 336-8340

Attorneys for Lead Plaintiff Christine Pino and the Class

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| CHRISTINE PINO, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>vs.<br><br>CARDONE CAPITAL, LLC, GRANT CARDONE, CARDONE EQUITY FUND V, LLC, and CARDONE EQUITY FUND VI, LLC,<br><br>            Defendants. | Case No. 2:20-cv-08499-JFW (KS)<br><br>**CLASS ACTION**<br><br>**CLASS PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE AMENDED MOTION FOR CURATIVE NOTICE AND RELATED RELIEF**<br><br>**Hearing Date:** 08/03/2026<br>**Ctrm:** 7A<br>**Judge:** Hon. John F. Walter<br>**Mag. Judge:** Hon. Karen L. Stevenson<br>**Complaint Filed:** 9/16/2020<br>**Discovery Cutoff Date:** 11/16/2026<br>**Pretrial Conference Date:** 2/12/2027<br>**Trial Date:** 3/9/2027 |

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 11

    I.  After Certifying the Class, the Court Denies Defendants' Buyout Offer on May 15, 2026 .............................................................................................

                                                          .............................................................. 11

    II. Cardone Capital's Director of Investor Relations Makes an Offer to a Class Member on May 27................................................................................ 11

    III. Grant Cardone Posts on Social Media About Class Actions, a "Simple Exchange of Shares," and Redemptions ........................................................ 13

    IV.    Defendants Conduct Their Own Notice Campaign .................................. 14

LEGAL STANDARD............................................................................................ 15

ARGUMENT ........................................................................................................ 17

    I.  The Court Should Deem All Opt-Outs Withdrawn ....................................... 17

    II.  The Court Should Issue a Curative Notice Regarding the Buyout Offer ...... 18

    III. The Court Should Also Bar Defendants from Communicating with the Class, Unless About Routine Business Matters, and from Publicly Posting About Class Actions and this Litigation ................................................................. 19

    IV.    The Court Should Order Defendants to Identify All Class Members With Whom They Have Had *Ex Parte* Conversations Since Class Certification and Produce Any Correspondence ................................................................. 21

CONCLUSION ..................................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Camp v. Alexander*,
   300 F.R.D. 617 (N.D. Cal. 2014) ....................................................................... 14

*Cnty. of Santa Clara v. Astra USA, Inc.*,
   2010 WL 2724512 (N.D. Cal. July 8, 2010) ................................................. 14, 15

*Estakhrian v. Obenstine*,
   2017 WL 2661616 (C.D. Cal. June 20, 2017) ..................................................... 14

*Georgine v. Amchem Prods., Inc.*,
   160 F.R.D. 478 (E.D. Pa. 1995) .......................................................................... 16

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) .............................................................................................. 14

*Impervious Paint Indus., Inc. v. Ashland Oil*,
   508 F. Supp. 720 (W.D. Ky. 1981) ..................................................................... 17

*Kleiner v. First Nat. Bank of Atlanta*,
   751 F.2d 1193 (11th Cir. 1985) .................................................................... 13, 14

*Pino v. Cardone Capital, LLC*,
   55 F.4th 1253 (9th Cir. 2022) ............................................................................. 19

*Romano v. SLS Residential Inc.*,
   253 F.R.D. 292 (S.D.N.Y. 2008) ............................................................ 15, 16, 17

*Torres Romero v. May Trucking Co.*,
   2018 WL 5905604 (C.D. Cal. Feb. 21, 2018) .............................................. 14, 17

*Wang v. Chinese Daily News, Inc.*,
   623 F.3d 743 (9th Cir. 2010), *judgment vacated for other reasons*,
   565 U.S. 801 (2011) ............................................................................................ 15

*Wright v. Adventures Rolling Cross Country, Inc.*,
   2012 WL 2239797 (N.D. Cal. June 15, 2012) .............................. 14, 15, 17, 19

**Rules**

Rule 23(b)(3). ......................................................................................................... 14

ii

**Other Authorities**

Fed. Trade Comm., Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, at 1 (Sept. 2019), https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf ................................................... 8

Consumer Fin. Prot. Bureau, Arbitration Study: Report to Congress, pursuant to Dodd-Frank Wall Street Reform and Consumer Protection Act § 1028(a) (Mar. 2015), https://files.consumerfinance.gov/f/201503_cfpb_arbitration-study-report-to-congress-2015.pdf................................................................. 8

**INTRODUCTION**

Plaintiff files this amended motion to bring to the Court's attention new events in the past week that confirm Defendants have violated this Court's orders by improperly soliciting opt-outs and conducting individual buy-outs of class members without the involvement of Class Counsel or approval of the Court. Just five days ago, defendant Grant Cardone posted the following on X (formerly Twitter):



McCollum Decl., Ex. 8 (highlighting added). The redemptions Cardone brags about on social media are the product of Defendants' improper campaign of soliciting opt outs by offering to pay them the "buyout offers," which this Court already rejected as improper under Rule 23.  Dkt. 250 (May 15, 2026 Order).

In addition, on the same day, defendant Cardone Capital emailed class members with an "[u]rgent" message about this litigation and the opt-out deadline:

> Dear ▮
>
> I'm writing regarding an email you may have received about your investment in Fund V and/or Fund VI.
>
> **If you <u>do nothing</u>, you will be involved in the class action lawsuit, as discussed on the class action website.**
>
> **If you <u>Opt-Out</u>, you will NOT be involved in this lawsuit.**

McCollum Decl., Ex. 9. This email was not approved by the Court and did not contain the language the Court ordered for class notice.

Then, on July 6 (the day this amended motion is being filed), defendant Cardone Capital sent class members an unapproved text message about this litigation. This text message told class members that their "attention is required" and that they could "either" (1) "Do Nothing and automatically be involved in the lawsuit," or (2) "Opt-Out of the suit and NOT be involved." McCollum Decl. ¶ 12. The text only included a link to the opt-out page of the class website. Defendants did *not* include the information the Court ordered for class notice in this text message, including Plaintiff's allegations, the potential recovery, the URL for the Central District of California's PACER website, nor contact information for Class Counsel. By contrast, here is what the short-form notice approved by the Court informed Class Members would happen if they "Do Nothing":

> You will stay in the Class. You will keep the possibility of getting money or benefits that may come from a trial or a settlement. No class member will be forced against his will to terminate his investment as a result of this lawsuit. If Plaintiff were to prevail in this lawsuit, you would not receive any money or benefits from the lawsuit unless you choose to tender your shares in Funds V and VI. You will be bound by all orders and judgments in this action, whether favorable or unfavorable, and you will give up your right to sue Defendants on your own for the claims in this lawsuit.

Dkt. No. 234-2. Defendants' text message bypasses all of the court-ordered information a class member should consider in deciding whether to opt out, omits the adverse consequences of opting out, and fails to inform class members of the claims against Defendants.

This is a certified class action. Dkt. 229 (granting class certification). Just two weeks after the Court certified the class, Defendants asked the Court for permission to communicate buyout offers to Class Members. *See* Dkt. 233 ("Motion to Communicate Buyout Offer to Individual Class Members", hereafter "Buyout Offer"). On May 15, 2026, this Court denied that motion. Dkt. 250. The Court expressed concern that the "buyout offer" would "lead to widespread confusion among the Class Members about how the [offer] might impact their decision to either opt out or remain in the class"; that "Class Members will likely be confused about who they should contact with questions because Defendants' notice fails to include any contact information for Class Counsel or [JND] Legal Administration, the class notice administrator"; and that "[s]uch confusion is particularly likely in light of the fact that the Class Members are not sophisticated investors or financial professionals, but, as Defendants describe them, 'everyday retail investors who otherwise would not have access to such investment opportunities.'" *Id.* at 3-4. The Court further concluded that "[a]t this point in the litigation, it would be a better use of the parties' resources and more beneficial to the Class to use the 'buyout offer' as a basis for a Class-wide settlement rather than using it to negotiate what are essentially piecemeal settlements with individual Class Members." *Id.* at 3.

Nevertheless, in violation of the Court's Order and without disclosing any of this to the Court or Class Counsel, Defendants *still* went ahead and made a buyout offer to a Fund V investor and Class Member just twelve days later. *See* Roberto Lugo Declaration ("Lugo Dec.") ¶ 12; Attach. B. As shown in the text message below received from that Class Member, on May 21, 2026, Roberto Lugo, the investor, texted Andres Fischborn, the Director of Investor Relations at Defendant Cardone Capital, asking if Defendants had heard from the Court about whether they could "buy out the investors." Defendants, of course, had heard. The Court's answer was no. Nonetheless, Mr. Fischborn called Mr. Lugo and conveyed an offer. When Mr. Lugo texted asking if Cardone Capital would consider a higher offer, Mr. Fischborn replied: "**For us this is the offer**, if you wanted [sic] to connect you with other potential buyers I'm happy to do so but **this is Cardone Capitals offer**."



4

That is a blatant violation of this Court's order, and was only discovered and disclosed thanks to this Class Member who produced these text messages to Class Counsel. Defendants (to this day) have not produced these messages to Plaintiff.

There are other offers being made.  Defendants' latest tactic appears to be to offer Class Members a buyout if they opt out of the class. On July 1, Cardone posted on X that Cardone Capital had "[r]edeemed some Fund 5 investors who opted out of pino dispute and returned $459,000." McCollum Decl., Ex. 8. These redemptions appear functionally equivalent to Defendants' proposed buyouts. But Defendants cannot circumvent this Court's order by offering buyouts to class members if they opt out. The same concerns that animated this Court's earlier decision—about Class Member confusion and Defendants' failure to disclose the full story, particularly to unaccredited investors—are even stronger here because neither the Court nor class counsel have any visibility into the representations Defendants are making to these investors.

Just six days after this Court's denial of the Buyout Offer—Grant Cardone also took to X to post a "Real Estate Update" to his 1.2 million followers. Cardone's post on X read: "Just had a member in Fund V who needed liquidity who was bought out by another member. Simple exchange of shares from one member to another without extra fees or middlemen." The post goes on to say, "CardoneCapital [sic] has such a diverse group of investors with different needs invested in institutional assets, **it's not surprising we can find matches for investors who may need liquidity**."[1] McCollum Decl., Ex. 3 (emphasis added).

---

[1] Cardone made nearly the same post on Facebook, where he has 7.4 million followers, except the Facebook post says: "it's not surprising investors can find matches when they may need liquidity," instead of "it's not surprising we can find matches for investors who may need liquidity." McCollum Decl., Ex. 2. Defendants have since deleted the reference to "Fund V" in the Facebook post, but not in the X post. Grant Cardone also appears to have later edited the X post to delete the sentence "Good Real Estate will always have a buyer." *See* McCollum Decl., Ex. 4. The post now says, "Real Estate liquidity really depends on the investor group's members & quality of asseill [sic] always have a buyer."

5



The timing of this post—made just a week *after* this Court denied the Buyout Offer—and the express mention of the "**member in Fund V** who needed liquidity" is an improper invitation by Cardone to Class Members to contact Cardone Capital to find a match and sell their shares, despite this Court's order. If a member contacts Cardone Capital to "find matches," the match could be with Grant Cardone himself, who is a member of Fund V and VI. Indeed, according to Defendants' own representations, "Cardone Capital is **not permitted** to aid [investors] in locating a buyer for [their] membership interests . . . ." *See* Lugo Declaration, Attach. A at PDF pg. 6 (emphasis added). The only exception to that rule seems to be if the buyer is

6

from Cardone Capital, like Grant Cardone.[2]

In other words, when Cardone says, "it's not surprising we can find matches for investors who may need liquidity," and that he "[j]ust had a member in Fund V who needed liquidity who was bought out by another member," Cardone is, in effect, inviting Class Members to contact and sell their shares to him, but without judicial authorization nor the involvement of Class Counsel. And just like the "Buyout Offer" that the Court already denied, the social media post does not inform Class Members how an "exchange of shares" might impact their ability to remain in and seek relief through the class action, and does not inform Class Members that they are represented by Class Counsel who can advise them about the consequences of exchanging their shares in Fund V or VI while this litigation is pending. Nor are there any safeguards to ensure that Defendants' communications with Class Members who do contact them are not misleading. All of these issues were already briefed in the Buyout Offer motion that the Court denied.

There's more. The same day Cardone posted about the "simple exchange of shares," Cardone posted the following to his X account:

---

[2] That is what happened with Mr. Lugo. When Mr. Lugo contacted Cardone Capital stating that he "need[ed] to opt out/cash out [his] current equity," Cardone Capital's investor relations team initially responded saying that Cardone Capital could not "aid him in locating a buyer." Lugo Decl., Attach. A at 6. Only after Mr. Lugo asked if it would be possible to offer his position in Fund V "to someone in the Cardone organization," did Mr. Fischborn reply, "[t]here may be a possibility on that." *Id.* Ultimately, Cardone Capital made Mr. Lugo an offer. Lugo Decl., ¶ 12. Indeed, every "refund" offer that Cardone has purportedly paid to date has been a transfer of shares from the investor to Cardone himself. Dkt. 221-6 (identifying eighteen investors whose shares were purchased by Mr. Cardone); *see also* Dkt. 236-2 (purchase and sale agreement between investor and Grant Cardone).

7



Cardone then responded to comments on the post. He expressed his complete agreement with a comment stating that "[m]ost class action suits favor lawyers over plaintiffs" and that "[t]heir profits often comes from settlements, not consumer benefits," using the "100%" emoji. And in response to a comment, "Whoever the people are that are doing this for fund 5 need to get the f[***] out. Losers!" Cardone replied, "[t]his post was not about Fund V - but it would qualify." McCollum Decl., Ex. 6.



The same week that Class Members received notice of this lawsuit, Cardone also described "[t]he legal system in America" as "garbage":



McCollum Decl, Ex. 7.

The timing of these posts is not coincidental. They encourage opt-outs from the Class by implying to Class Members that there is something nefarious about this lawsuit and the Court's class certification order and that they will receive nothing as a class member, based on patently misleading and false representations.[3] Defendants did not seek nor obtain Court approval to undermine the Court-approved form and manner of Class Notice in this way.

In addition, Cardone Capital is also sending investors "Urgent Notice[s]," about the opt-out deadline, noting that "If you do nothing, you will be involved in the

---

[3] Neither the FTC nor the CFPB found that class members in consumer class actions "get nothing." The FTC report analyzed claims rates in consumer class actions (not securities class actions) and concluded that only a small percentage of class members choose to go through the claims process to receive their portion of any damages award. See Fed. Trade Comm., Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, at 1 (Sept. 2019), https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf. The CFPB report analyzed how 562 consumer class actions resolved and found that over half ended without any class-wide damages award because there was "a non-class settlement," or the "named plaintiff withdrew claims or the court dismissed claims for failure to serve or failure to prosecute." See Consumer Fin. Prot. Bureau, Arbitration Study: Report to Congress, pursuant to Dodd-Frank Wall Street Reform and Consumer Protection Act § 1028(a), at Section 6 pg. 7 (Mar. 2015), https://files.consumerfinance.gov/f/201503_cfpb_arbitration-study-report-to-congress-2015.pdf.

class action lawsuit, as discussed on the class action website." (The email hyperlinks to the class action website, https://www.cardoneclassaction.com/). This notice appears to be a mass communication sent to all Fund V and VI investors. McCollum Decl., Ex. 9. Defendants also sent similar communications by text message to Class Members. McCollum Decl. ¶ 12.

These communications with class members are all obviously improper. After class certification, the Court ordered short- and long-form notices to be sent to Class Members. Dkt. No. 235. Those notices contained precise and neutral language about the nature of this dispute, the parties' positions, and the rights of class members. Dkt. Nos. 235, 234-2, 234-3. That is the only notice that the Court approved for Class Members. Defendants had an opportunity to ask the Court for additional notice if they felt it necessary—but they did not. This Court did not authorize Defendants to send additional, unilaterally drafted notices (the subject line of Defendants' email even describes the correspondence as a "Notice," Ex. 9 at 1). To the contrary, the Court expressly *rejected* Defendants' request to send additional communications about this lawsuit and Defendants' proposed buyout because it would "lead to widespread confusion among the Class Members," especially as "Class Members are not sophisticated investors or financial professionals." Dkt. No. 250 at 3–4.

These shenanigans, opt-out campaigns, improper notices, and violations of the Court's orders need to stop. In light of Mr. Cardone's social media posts; Defendants' offer to a Fund V member outside the presence of counsel; that Defendants have made other undisclosed offers to other Class Members; and Defendants' unilateral notice communications, Plaintiff respectfully requests that the Court (1) deem all opt-outs withdrawn and issue corrective notice to the class; (2) authorize the dissemination of a curative notice to former and current members of the Class, in the form proposed in Exhibit 1 to the McCollum Declaration; (3) bar Defendants from further communicating *ex parte* with Class Members beyond routine, investment communications (such as sending distribution payments and tax forms) and from

making any social media posts about this case or class actions generally; (4) require Defendants to identify any investor of Fund V or Fund VI whom they have contacted regarding this litigation or discussed, offered, or provided a buyout offer (or helped facilitate an "exchange of shares") since this Court granted Plaintiff's motion for class certification on March 27, 2026, and to produce any communications with those Class Members; (5) grant any other relief that the Court deems proper, including voiding any release of claims that Defendants negotiated in violation of this Court's order.

## BACKGROUND

### I.     After Certifying the Class, the Court Denies Defendants' Buyout Offer on May 15, 2026

On March 27, 2026, this Court granted class certification and ordered the parties to submit classwide "notice and opt-out procedures." Dkt. 229 at 16. On April 13, 2026, each party submitted a proposed version of the notice. Dkt. 234. The very same day, Defendants filed a Motion to Communicate Buyout Offer to Class Members ("Buyout Offer"). Dkt. 233. On April 24, the Court approved the form and manner of providing notices to the Class of the Court's class certification order and the rights of Class Members. *See* Dkt. 235. Pursuant to the Court's order, JND, the class administrator, provided notice to Class Members by May 8, 2026. On May 15, 2026, this Court denied Defendants' Buyout Offer. Dkt. 250.

### II.    Cardone Capital's Director of Investor Relations Makes an Offer to a Class Member on May 27

Defendants nevertheless went ahead and made a buyout offer to an investor on May 27, 2026. Mr. Fischborn conveyed the offer after investor Roberto Lugo reached out to Cardone Capital seeking to "opt out / cash out [his] current equity." Lugo Decl., ¶ 3; Attach. A at 6. Mr. Lugo's initial email was dated April 15, 2026, three weeks after this Court certified this class action. *Id.* Despite that fact, Cardone Capital's

11

Investor Relations team said nothing to Mr. Lugo about the fact that he was part of a class action, that he would soon be provided with notice of that class action, or that he may wish to contact Class Counsel to discuss the lawsuit. Lugo Decl., ¶ 8. Instead, they responded that they had "reviewed [Mr. Lugo's] return of capital request," that they were "unable to authorize [the] request because the fund is still within its initial term as outlined in the Operating Agreement," and that they were "not permitted to aid [him] in locating a buyer . . . ." Lugo Decl., Attach. A at 6; *id.*, ¶ 4.

After further e-mail conversation, Mr. Lugo asked whether he could offer his position "at a discount to someone in the Cardone organization." Lugo Decl., Attach. A at 4; *id.*, ¶ 6. Mr. Fischborn responded that "[t]here may be a possibility on that" and asked to "get on a call on [sic] this next week." *Id.* Mr. Fischborn and Mr. Lugo then spoke on the phone on April 21, at which time Mr. Fischborn told him he was checking to see what he could do. Lugo Decl. ¶ 7.

Mr. Lugo did not hear from Mr. Fischborn for the next two weeks, despite Mr. Lugo's multiple follow-up text messages. *See* Lugo Decl., Attach. B. Mr. Fischborn did not call Mr. Lugo back until May 8, the same day that this Court ordered that class notice be distributed and, accordingly, the same day Mr. Lugo received the notice.[4] Lugo Decl., ¶ 11. That was the first time that Mr. Lugo had heard about this lawsuit. *Id.*, ¶ 8. Mr. Fischborn told Mr. Lugo that Cardone Capital had asked the Court for permission to buy investors out of their investments, and that he would let Mr. Lugo know what happens. *Id.*, ¶ 11.

On May 21, 2026, Mr. Lugo texted Mr. Fischborn asking whether the court had "made the determination" on the motion. Lugo Decl., Attach B. (The Court had—six days earlier). Mr. Fischborn did not respond to that text; rather, he called Mr. Lugo, at which time Mr. Fischborn conveyed an "offer." Lugo Decl., ¶ 12. That offer was for the price that Mr. Lugo paid for his shares, minus the amount of

---

[4] The timing of Mr. Fischborn's call raises concern that Defendants contacted other investors on May 8, in interference with Class Notice.

distributions he had received to date, without any interest. *Id.* After the call, Mr. Lugo asked Mr. Fischborn if he would consider returning him the full amount of his investment. Lugo Decl., Attach. B; *id.*, ¶ 13. Mr. Fischborn replied, "For us this is the offer, if you wanted [sic] to connect you with other potential buyers I'm happy to do so but this is Cardone Capitals [sic] offer." *Id.*

## III.    Grant Cardone Posts on Social Media About Class Actions, a "Simple Exchange of Shares," and Redemptions

On May 21, just six days after this Court's order denying Defendants' motion to make a Buyout Offer, Grant Cardone posted on both X and Facebook. The posts are materially the same. *See supra* at 4 n.1. Both stated: "Real Estate Update – Just had a member in Fund V who needed liquidity who was bought out by another member. Simple exchange of shares from one member to another without extra fees or middlemen." The Facebook post goes on to state: "CardoneCapital [sic] has such a diverse group of investors, 20,000+ all invested in institutional assets, it's not surprising investors can find matches when they may need liquidity." McCollum Decl., Ex. 2. The X post states: "CardoneCapital [sic] has such a diverse group of investors with different needs invested in institutional assets, it's not surprising *we* can find matches for investors who may need liquidity." *Id.*, Ex. 3 (emphasis added).

The very next day, Cardone posted again on X. This time he wrote: "do most class action suits benefit plaintiffs? Answer is crazy and #3 will blow your mind." McCollum Decl., Ex. 5. The post then proceeded to claim that "[m]ost eligible plaintiffs get nothing," that "most class actions deliver no consumer benefit at all," and that "[a]ttorneys take a large cut off the top." In a comment on the post, Cardone wrote: "This post was not about fund V – but it would qualify. The investors are almost never the problem. The system rewards litigation." *See id.*, Ex. 6.[5]

---

[5] This was not even Cardone's first post maligning the legal system since this Class was certified. On May 5, Mr. Cardone also posted on X: "The legal system in America is garbage. It doesn't reward victims it rewards greedy lawyers." McCollum Decl., Ex. 7.

On May 27, 2026, Class Counsel wrote to Defendants' counsel notifying them of the improper May 21 Facebook post. *See* McCollum Decl., ¶ 3. Class Counsel explained that the post was an improper attempt to circumvent the Court's May 15, 2026 Order. *Id.* Class Counsel asked that Mr. Cardone remove this post immediately and promptly produce all communications to and from Defendants about this "update" about an "exchange of shares" for Fund V. *Id.*

As of the date of this motion, the post is still publicly accessible on social media. Defendants have deleted the reference to "Fund V" in their Facebook post, but not the corresponding X post. McCollum Decl., ¶ 5. Defendants also have not produced any of their communications with Class Members, nor produced any further text messages or emails to and from its Director of Investor Relations whom Defendants know made at least one buyout offer in violation of the Court's Order.

On July 1, 2026—just two weeks before the opt-out deadline—Cardone posted on X that he had "[r]edeemed some Fund 5 investors who opted out of pino dispute and returned \$459,000." McCollum Decl., Ex. 8. This post is still available on X.

## IV.    Defendants Conduct Their Own Notice Campaign

Defendants have also contacted Class Members by email. On July 1, 2026, they sent an "Urgent Notice" about the upcoming opt-out deadline, telling Class members that if they did nothing, they would "be involved in the class action lawsuit," and that they "have a choice in this matter." McCollum Decl., Ex. 9. The email contained neither the language the Court ordered in the short-form notice nor the long-form notice. Class Counsel became aware of this unilateral notice campaign only because this email was shared by a Class Member with Raj Mathur, an attorney at Susman Godfrey LLP and Court-appointed class counsel.

On July 6, 2026, defendant Cardone Capital sent class members the following

14

text message:

> Important: If you received the "Cardone Equity Fund V & VI Class Action Notice" email, it is not spam.
>
> Your attention is required. You can either:
>
> Do Nothing and automatically be involved in the lawsuit.
>
> Opt-Out of the suit and NOT be involved: https://secure.cardoneclassaction.com/exclusion
>
> Thank you for your attention to this matter.
>
> Cardone Capital

McCollum Decl. ¶ 12. Defendants did not include the information the Court ordered for class notice in this message.

## LEGAL STANDARD

"[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). That includes protecting class members from communications that "give 'false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3).'" *Cnty. of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *3 (N.D. Cal. July 8, 2010) (citation omitted); *see also Estakhrian v. Obenstine*, 2017 WL 2661616, at *5 (C.D. Cal. June 20, 2017) ("Courts have 'imposed limitations on communications, and invalidated agreements obtained through those communications, based on findings that the communications were misleading, coercive, or omitted critical information.'" (citation omitted)).

Courts may order that Class Members receive curative notice to cure any harm caused by a defendant's statements or communications. *See Wright v. Adventures Rolling Cross Country, Inc.*, 2012 WL 2239797, at *4 (N.D. Cal. June 15, 2012)

15

(authorizing a curative notice to "correct any possible misunderstandings created by [defendants'] emails"); *see also Torres Romero v. May Trucking Co.*, 2018 WL 5905604, at *3-4 (C.D. Cal. Feb. 21, 2018) (ordering curative notice be sent to 25 Class Members after defendants sent letter that, in part, "impli[ed] that Plaintiff's counsel was motivated by monetary gain"); *Camp v. Alexander*, 300 F.R.D. 617, 619, 624 (N.D. Cal. 2014) (concluding that curative notice is warranted because of letter sent by defendants that omitted relevant information regarding plaintiffs' claims or contact information for plaintiffs' counsel, and stated that the lawsuit was motivated by greed).

Courts may also bar defendants from communicating with Class Members. *See, e.g.*, *Wright*, 2012 WL 2239797, at *5 (barring Defendants from "communicating with potential class members regarding this litigation," except for "purely business-related matters"); *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 757 (9th Cir. 2010), *judgment vacated for other reasons*, 565 U.S. 801 (2011) (noting that the "district court did not abuse its discretion in invalidating . . . opt outs and in restricting [defendant's] ability to communicate with class members"). "Courts have found abusive communications warranting [an order restricting communications] to include communications that affect Class Members' decisions regarding whether to participate in the litigation, communications that undermine Class Members' confidence in class counsel or the court, and communications that contain false or misleading statements about the litigation." *Romano v. SLS Residential Inc.*, 253 F.R.D. 292, 296 (S.D.N.Y. 2008).

Further, courts may invalidate opt-outs or releases that were improperly obtained by defendants. *See, e.g.*, *Cnty of Santa Clara*, 2010 WL 2724512, at *1, 5-6 (finding invalid releases that defendants obtained by sending refunds to putative Class Members without "provid[ing] a full, fair, and accurate explanation of putative Class Members' rights"); *Romano*, 253 F.R.D. at 294 (ordering that "all opt-outs from this class action are void and that corrective notices shall be sent asking those

16

class members who opted out to affirm that decision").

## ARGUMENT

### I. The Court Should Deem All Opt-Outs Withdrawn

The Court should deem all opt-outs withdrawn and issue corrective notice to the class disclosing Defendants' misconduct.

Defendants have engaged in a litany of misconduct—using social media, direct emails and texts, and mass emails to evade the Court's orders and communicate directly with Class Members about this litigation. None of their communications were presented to, let alone approved by, the Court. Through this conduct, Defendants have invariably tainted the Court-ordered class action notice period. Indeed, more than 500 class members (of about 3300) have opted out. That statistic would raise suspicion in any class action, but especially so here: if Plaintiff prevails at trial, no class member's investment would be affected unless he or she chooses to tender the investment and receive the statutory damages formula under 15 U.S.C. § 77*l*(a)(2). Put simply, an investor has *nothing* to lose by remaining in the class.

In *Romano*, for example, the Court voided all opt outs and ordered corrective notice "to remedy the effect of Defendants' insidious behavior," explaining that "[t]hose potential plaintiffs who opted out based on inaccurate information they received from the Defendants or as a result of the Defendants' coercion must be given an opportunity to make the decision again." 253 F.R.D. at 299. "Sending a corrective notice to all putative class members and voiding the opt-outs received to date will serve these purposes." *Id.* at 299–300; *see also Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 504–05 (E.D. Pa. 1995).

The same is true here. It is exceedingly difficult, if not impossible, at this juncture to disentangle informed opt-out decisions from those sullied by Defendants' misconduct. The Court should therefore deem all opt-outs withdrawn and issue notice to the Class to correct this issue. Within three days of this Court's order, Plaintiff can

17

submit a proposed corrective notice to the Court for review and approval,[6] which the class administrator can then distribute. After distribution of notice, if a Class Member wishes to opt out, he may do so. Defendants should bear any costs associated with the distribution of this corrective notice.

## II.  The Court Should Issue a Curative Notice Regarding the Buyout Offer

In addition, a curative notice should be issued, in the form proposed in Exhibit 1 to the McCollum Declaration, with any costs associated to be borne by Defendants. The proposed curative notice informs former and current class members who have discussed or received a buyout offer from Defendants, contacted Cardone Capital to discuss an "exchange of shares," or who may otherwise be planning to contact Cardone Capital to exchange their shares, that such offers are expressly prohibited by this Court's order.

Curative notice is further warranted to remedy the harm that Mr. Cardone's social-media posts—disseminated to his millions of online followers—about class actions and attorneys may have caused. Such statements, which were made during the opt-out period and which imply that Class Members will get nothing as a result of this lawsuit, are the kinds of inflammatory statements that courts have found are intended to encourage opt-outs, and for which curative notice is necessary. *Torres Romero*, 2018 WL 5905604, at *3 (noting that "[t]he Court . . . finds improper [Defendants'] Letter's implication that Plaintiff's counsel is motivated by monetary gain," because "Defendants' implication that the suit benefits 'only' the attorneys" may have a "chilling effect on participation in the class action" (citation omitted)); *see also Wright*, 2012 WL 2239797, at *5 (Defendants' comments that Plaintiffs' counsel is "interested solely in a payoff" is "no doubt intended to encourage Plaintiffs and/or potential class members not to participate in the lawsuit."). The proposed curative notice therefore also informs Class Members that they should not rely upon

---

[6] Plaintiff does not submit this corrective notice now because its contents will depend on the Court's order and, possibly, Defendants' conduct in the coming weeks.

18

Mr. Cardone's statements in making decisions about their participation in this lawsuit.

The Court should also provide an opportunity for Class Members who have opted out to rescind their opt out after receiving the curative notice. This is necessary to cure Defendants' serial misleading statements to Class Members. *Cf. Romano*, 253 F.R.D. at 294 (ordering that "corrective notices shall be sent asking those class members who opted out to affirm that decision"). "It is essential that the class members' decision to participate or to withdraw be made on the basis of independent analysis of [their] own self-interest," not on Mr. Cardone's self-interested representations. *See Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 723 (W.D. Ky. 1981). This relief is also necessary here because the opt-out period closes on July 14, 2026, prior to when this motion will be fully briefed and heard, *see* Dkt. 243. The proposed curative notice informs Class Members that they may rescind their opt-out and provides information about how to do so.

**III. The Court Should Also Bar Defendants from Communicating with the Class, Unless About Routine Business Matters, and from Publicly Posting About Class Actions and this Litigation**

Defendants, including their employees, should be ordered to cease all communications with Class Members, except for routine communications about the status of their investment and related issues, and barred from making any social media posts about this case or class actions generally.

The Eleventh Circuit's decision in *Kleiner v. First Nat. Bank of Atlanta* is instructive. 751 F.2d 1193 (11th Cir. 1985). There, the defendant concocted a plan to encourage opt-outs by having employees contact class members by telephone and giving them a one-sided spin about the litigation, all without supervision of the Court or class counsel. *Id.* at 1198. The district court barred the defendant from contacting class members, except for routine business communications, and the Eleventh Circuit affirmed. The Court of Appeals explained that "it is critical that the class receive

19

accurate and impartial information regarding the status, purposes and effects of the class action," and communications with "one-sided presentation[s] of the facts" can lead to "irreparable" damage. *Id.* at 1203. "[U]nilateral communications scheme[s]" cooked up by a defendant are "rife with potential for coercion," particularly because "it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests." *Id.* at 1202. The Eleventh Circuit also discussed the grave nature of "[d]isobedience of a court order," noting that such conduct "unequivocally merits punishment save in instances in which compliance would necessarily result in an irrevocable and permanent surrender of a constitutional right." *Id.* at 1208 (cleaned up).

So too here. Not only did Defendants violate this Court's order by communicating a buyout offer to a class member, but they also publicly misrepresented class actions and offered buyouts during the opt-out period to encourage exclusions. This motion thus presents the modern analogue to *Kleiner*: instead of individual telephone calls, Defendants here leveraged powerful social media platforms to exponentially amplify their one-sided messaging, conveying misrepresentations about class actions to Cardone's *millions* of followers on Facebook and X. These are the very platforms (among others) which Defendants used to solicit investments from Class Members in Funds V and VI. *See Pino v. Cardone Capital, LLC*, 55 F.4th 1253, 1260 (9th Cir. 2022) (noting that "the advertisements at issue in this case—Instagram posts and YouTube videos—are the types of potentially injurious solicitations that are intended to command attention and persuade potential purchasers to invest . . . ."). And as this Court noted, the Class here consists not of "sophisticated investors or financial professionals," but instead of "everyday retail investors," Dkt. No. 250 at 4 (citation omitted), who may particularly be at risk of being misled by Defendants' communications.

Nor are there any constitutional concerns in restricting Defendants' speech: "untruthful or misleading speech" like this "has no claim on [F]irst [A]mendment

immunity." *Kleiner*, 751 F.2d at 1204. The Court therefore should prevent Defendants from communicating with Class Members outside "routine business matters unrelated to the lawsuit," *id.* at 1206, and from posting on social media about this litigation or class actions.

## IV. The Court Should Order Defendants to Identify All Class Members With Whom They Have Had *Ex Parte* Conversations Since Class Certification and Produce Any Correspondence

The Class is also entitled to information about the full scope of Defendants' misconduct. Defendants should promptly produce (1) a list of all former or current Class Members with whom they have contacted regarding this litigation or discussed, offered, or provided a buyout offer (or helped facilitate an "exchange of shares") since this Court certified the class and (2) all communications they have had with those former or current Class Members, so that Plaintiff may seek any other relief that may be warranted. *See, e.g.*, *Wright*, 2012 WL 2239797, at *6 (requiring "Defendants to identify every potential class member to whom . . . a prior 'mass communication' was disseminated (including contact information)").[7]

### CONCLUSION

For the reasons stated, Plaintiff respectfully requests that the Court grant Class Plaintiff's Motion for Curative Notice and Related Relief and order all relief requested herein.

Dated: July 6, 2026

Respectfully submitted by:

**SUSMAN GODFREY L.L.P.**

*/s/    Morgan McCollum*

---

[7] Such communications are also responsive to a request for production propounded by the Class (Request for Production No. 97), which seeks "[a]ny notes, documents, or communications reflecting the conversations that Cardone Capital employees, personnel, or representatives had with investors in Cardone Equity Fund V or Cardone Equity Fund VI between October 22, 2025 and the present." Class Counsel has requested Defendants to produce communications with all class members through the present pursuant to this request, but Defendants have not yet done so.

MARC M. SELTZER (54534)
*mseltzer@susmangodfrey.com*
STEVEN SKLAVER (237612)
*ssklaver@susmangodfrey.com*
KRYSTA KAUBLE PACHMAN (280951)
*kpachman@susmangodfrey.com*
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Phone: (310) 789-3100
Fax:    (310) 789-3150

RAJ MATHUR (admitted *pro hac vice*)
*rmathur@susmangodfrey.com*
MORGAN MCCOLLUM (admitted *pro hac vice*)
*mmccollum@susmangodfrey.com*
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Fl.
New York, NY 10001
Phone: (212) 729-2051
Fax:    (212) 336-8340

***Attorneys for Lead Plaintiff and the Class***

22

## <u>CERTIFICATION REGARDING AI USE</u>

The undersigned, counsel of record for Plaintiff and the Class, certifies that no Artificial Intelligence was used in the preparation of this brief or in any corresponding materials.

*/s/ Raj Mathur*

Raj Mathur

## CERTIFICATION OF COMPLIANCE

The undersigned, counsel of record for Plaintiff and the Class, certifies that this brief contains 6,655 words, including words embedded in graphics, which complies with the word limit of L.R. 11-6.1.

*/s/ Raj Mathur*

Raj Mathur