JOSEPH N. AKROTIRIANAKIS (SBN 197971)
  *jakro@kslaw.com*
LISA BUGNI (SBN 323962)
  *lbugni@kslaw.com*
MATTHEW V.H. NOLLER (SBN 325180)
  *mnoller@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:   (213) 443-4355
Facsimile:   (213) 443-4310

BRANDON R. KEEL (admitted *pro hac vice*)
  *bkeel@kslaw.com*
CHERI GROSVENOR (admitted *pro hac vice*)
  *cgrosvenor@kslaw.com*
KING & SPALDING LLP
1180 Peachtree Street N.E., Suite 1700
Atlanta, Georgia 30309
Telephone:   (404) 572-4600
Facsimile:   (404) 572-5100

Attorneys for Defendants
CARDONE CAPITAL, LLC, GRANT
CARDONE, CARDONE EQUITY FUND V,
LLC, and CARDONE EQUITY FUND VI, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| CHRISTINE PINO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARDONE CAPITAL, LLC, GRANT CARDONE, CARDONE EQUITY FUND V, LLC, and CARDONE EQUITY FUND VI, LLC,<br><br>Defendants. | Case No. 2:20-cv-08499-JFW (KS)<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE AND RELATED RELIEF**<br><br>Motion Hearing Date: 8/3/2026<br>Discovery Cutoff Date: 11/16/2026<br>Pretrial Conference Date: 2/12/2027<br>Trial Date: 3/3/2027 |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 3

ARGUMENT .......................................................................................................... 9

    I.  Plaintiff Has Not Satisfied Her Burden Under Rule 23(d). ........................... 9

        A. Defendants' Communications with Mr. Lugo Do Not Violate the Court's May 15 Order. ..................................................................................... 9

        B. Defendants Did Not Improperly Encourage Opt-Outs. ........................... 11

        C. Mr. Cardone's Social Media Posts Do Not Invite Class Members to Seek Buyouts or Encourage Opt-Outs. .............................................................. 11

    II. Plaintiff's Request for Extraordinary Relief Is Unwarranted. ...................... 13

        A. There Is No Justification for Invalidating Opt-Outs or Issuing a Curative Notice. ................................................................................................... 13

        B. There Is No Justification for a Separate Notice "Regarding the Buyout Offer." ................................................................................................... 15

        C. Plaintiff's Proposed Gag Order Unduly Restricts Defendants' First Amendment Rights................................................................................ 16

        D. Plaintiff Has Not Demonstrated a Need for Additional Discovery. ......... 19

CONCLUSION....................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases** | **Page(s)**

*Camp v. Alexander,*
300 F.R.D. 617 (N.D. Cal. 2014) ...................................................................14, 15

*Domingo v. New England Fish Co.,*
727 F.2d 1429 (9th Cir. 1984) .............................................................................17

*Georgine v. Amchem Products,*
160 F.R.D. 478 (E.D. Pa. 1995) ....................................................................14, 15

*Gerlach v. Wells Fargo & Co.,*
2006 WL 824652 (N.D. Cal. Mar. 28, 2006) ...............................................15, 16

*Hernandez v. Best Buy Stores, L.P.,*
2015 WL 7176352 (S.D. Cal. Nov. 13, 2015) ......................................................2

*In re Katrina Canal Breaches Consolidated Litig.,*
2008 WL 4401970 (E.D. La. Sept. 22, 2008) ......................................................13

*Kelly v. Pac. Tel. Grp.,*
1999 WL 33227541 (N.D. Cal. Oct. 20, 1999) .....................................................9

*Kleiner v. First Nat. Bank of Atlanta,*
751 F.2d 1193 (11th Cir. 1985) ...........................................................................18

*Levine v. U.S. Dist. Court for Cent. Dist. of California,*
764 F.2d 590 (9th Cir. 1985) ...............................................................................18

*N.Y. Times Co. v. United States,*
403 U.S. 713 (1971) .............................................................................................18

*O'Connor v. Uber Techs., Inc.,*
2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ........................................................2

*Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.,*
2016 WL 4080294 (N.D. Cal. July 29, 2016) ......................................................18

*Rivera v. United States,*
2019 WL 4508501 (S.D. Cal. Sept. 17, 2019) .....................................................18

*Romano v. SLS Residential,*
253 F.R.D. 292 (S.D.N.Y. 2008) .........................................................................14

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

*Talamantes v. PPG Indus., Inc.,*
  2014 WL 4145405 (N.D. Cal. Aug. 21, 2014) .................................................... 15

*Torres Romero v. May Trucking,*
  2018 WL 5905604 (C.D. Cal. Feb. 21, 2018) .................................................... 16

*Wright v. Adventures Rolling Cross Country, Inc.,*
  2012 WL 2239797 (N.D. Cal. June 15, 2012) ............................................. 12, 16

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................*passim*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

**INTRODUCTION**

Given the financial success of Cardone Equity Funds V and VI (the "Funds"), many class members understandably do not want to participate in Plaintiff's lawsuit, which would require them to surrender their investments in the Funds to receive any recovery in this case (and in which case that recovery would be less than the value of their surrendered investments). Understanding these facts—and no doubt concerned about class members opting-out—Plaintiff tried to bury the class notice and make it unlikely that class members would even realize their options.

After the Court approved class notice, the parties agreed that Plaintiff would provide Defendants with a link to the class website *before it went live*, so that Defendants could ensure it fairly and easily informed class members of their rights. Keel Decl., Exh. A. But Plaintiff then repudiated that agreement, launched the website without allowing Defendants to review it, and sent out a single class notice by email at 11 p.m. on May 6, 2026, in the hopes no one would see it. *Id.* The unapproved website obscured the opt-out process, even making the ability to opt-out hidden from view in the mobile version of the site. *Id.* Only after Defendants threatened to involve the Court did Plaintiff fix these issues with the website. *Id.*

Despite Plaintiff's gamesmanship, hundreds of class members—representing roughly half of the remaining equity in the Funds—have opted out of the class. Upset with her shrinking damages pool (and, quite transparently, the accompanying decrease in potential attorneys' fees), Plaintiff now asks this Court to take unprecedented action, including invalidating all opt-outs, issuing a "curative" notice, and imposing a gag order restricting Defendants' First Amendment right to communicate with their own investors and the public. Plaintiff's extraordinary request is purportedly based on (i) an instance where a class member repeatedly reached out *to* Defendants *asking* to be bought out of Fund V for reasons wholly separate from this litigation, (ii) neutral communications to class members alerting them to the class notice, and (iii) a handful of benign and accurate social media posts from Grant Cardone discussing the success of his

1
DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

investment funds, ordinary-course transactions, and class actions in general.

Remedial action under Rule 23(d) is only appropriate where it is shown that a party's prior communications to the class were misleading, coercive, or otherwise improper. *See O'Connor v. Uber Techs., Inc.*, 2013 WL 6407583, at \*4 (N.D. Cal. Dec. 6, 2013); *see also Hernandez v. Best Buy Stores, L.P.*, 2015 WL 7176352, at \*15 (S.D. Cal. Nov. 13, 2015) (refusing to issue a Rule 23(d) order where the record was "insufficient for the Court to make any specific findings of abusive or unethical conduct"). That showing is completely absent here.

*First*, Defendants' communications with Roberto Lugo—which Mr. Lugo initiated—do not violate the Court's May 15, 2026, order. Although the Court denied Defendants' request to communicate proactively a specific buyout offer simultaneously to all class members, it did not prevent Defendants from engaging with investors in the ordinary course of business, as occurred with Mr. Lugo. Dkt. 250. Mr. Lugo repeatedly contacted Cardone Capital asking to be bought out of Fund V (even before the Court's order), and Cardone Capital responded with the same ordinary course offer it has made, over the years, to other investors wanting to be bought out of their investments. Dkt. 256-12. Mr. Lugo declined the offer and kept his investment. *Id.* Responding to investor requests—made in the ordinary course of business and consistent with past practice— is not a violation of this Court's order or Rule 23.

*Second*, Defendants' neutral communications alerting class members to Plaintiff's class notice were neither misleading nor coercive, and they did not encourage anyone to opt out. In response to investor inquiries, Defendants tried to ensure that class members were aware of the notice, their options, and had access to the class website. Again, this was all reactive. After Plaintiff directed a single class notice to be emailed in the middle of the night, several investors contacted Defendants, confused by the notice—they thought it was fake, or an attempted fraud, and did not understand it. Andres Fischborn Decl. ¶¶ 8-9. Other investors told Defendants they learned of the existence of a class notice communication, but had not received any notice at all. *Id*. In

2

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

light of this, Defendants communicated with their investors in an entirely neutral manner, clarifying that the notice was real, noting that investors had the option to stay in the class or opt out of it, and directing investors to the class action website—which contains the Court-approved notices (and Plaintiff's counsel's contact information). *Id.* ¶¶ 11-12. There was nothing improper about communicating with investors to ensure awareness of the notice and their rights.

*Third*, contrary to Plaintiff's arguments, Mr. Cardone's social media posts do not invite class members to seek buyouts, encourage opt-outs, or otherwise violate Rule 23. In a series of social media posts from May 2026, Mr. Cardone discussed the general success of the funds and, citing publicly available sources, noted a few common criticisms of the class action device. Then, in July, Mr. Cardone made a single post recognizing the milestone of Cardone Capital having provided monthly cash distributions to fund investors for 120 months. He further noted that certain investors who had opted out of the lawsuit were able to redeem their shares upon request. Again, there was nothing improper about any of this. Mr. Cardone has a right under the First Amendment to make public posts about his funds and class actions.

Not only has Plaintiff failed to establish that the challenged communications are misleading, coercive, or otherwise improper under the Rule 23(d) framework, but the relief she seeks is completely disproportionate to any possible harm. Indeed, the very cases Plaintiff cites in support of her motion undercut her position and involved communications that are nothing like what occurred here. Defendants request that the Court deny Plaintiff's motion accordingly.

## **BACKGROUND**

***Defendants' Buyout Motion and the Court's Ruling.*** Prior to this lawsuit, Defendants routinely allowed investors to exit the Funds for a variety of reasons, including general liquidity needs. Dkt. 195-1 ¶¶ 10, 12. Although Cardone Capital has no obligation to refund anyone who wants to exit their investment, Mr. Cardone does not want to force investors to remain invested in the Funds. Thus, over the years (for

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

these Funds and others), Mr. Cardone has granted investor requests for refunds, buying out investors' positions for a return of their invested capital, minus distributions already made. Dkt. 221-6 at 4 (providing list of investors in the Funds previously bought out).

Consistent with this prior practice, after the Court certified Plaintiff's class, Defendants requested permission from the Court to communicate proactively a neutral statement to all class members offering to purchase their shares in the Funds. Dkt. 233. As explained in Defendants' motion, that offer would have allowed class members to receive more money in exchange for their investments than they could ever receive in this lawsuit given the nature of the limited rescissory relief available under Section 12. *Id.* at 5. Although Defendants believed they had a right to communicate this offer without Court approval, they nonetheless requested the Court's permission to avoid unnecessary disputes over it. *Id.* at 6.

On May 15, 2026, the Court denied Defendants' motion. Dkt. 250. In doing so, the Court reasoned that Defendants' proposed proactive notice ran the risk of confusing class members, especially since they had just received class notice. *Id.* at 3-4. The Court further noted that Defendants' buyout offer was likely "unnecessary" given that trial was less than a year away. *Id.* at 4. The Court, however, did not accept Plaintiff's contention that it would be entirely inappropriate for Defendants to communicate with members of the certified class. *Id.* at 2. The Court in fact recognized Defendants' general ability to negotiate individual settlements. *Id*. And, importantly, the Court's order did not preclude or otherwise inhibit Defendants' ability to engage with investors in the ordinary course of Defendants' business or prohibit offering an ordinary-course buyout to an investor who requested it. *See generally id.*

***Defendants' Communications with Mr. Lugo.*** The communications with Fund V investor, Roberto Lugo, about which Plaintiff complains were, in fact, precisely the type of ordinary course communications that do not violate the Court's order. Indeed, this exchange pre-dates the Court's order. On April 15, 2026, Mr. Lugo emailed Defendants' investor relations team asking to "cash out" his investment in Fund V. Dkt.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

256-12 ¶ 3. A representative from Cardone Capital responded the next day, telling Mr. Lugo that Defendants could not process his request but that he had the option of independently selling his interest to another willing buyer. *Id.* ¶ 4. After multiple email exchanges, Mr. Lugo elevated his request to Andres Fischborn, Cardone Capital's Director of Investor Relations, on April 21. *Id.* ¶ 7; Dkt. 256-13. Over the next two weeks, Mr. Lugo repeatedly texted Mr. Fischborn asking for an update on his request to exit Fund V, offering to sell his investment at a "discount" to Cardone Capital. Dkts. 256-12 ¶ 10; 256-14. On May 8, Mr. Fischborn called Mr. Lugo and explained that Defendants had filed a motion with the Court requesting permission to communicate a specific buyout offer to all class members proactively. Dkt. 256-12 ¶ 11. Given that Defendants were awaiting the Court's ruling on their request to communicate the same offer—on the same terms—to all class members, Mr. Fischborn explained that Defendants were not acting on any individual buyout requests in the interim. Fischborn Decl. ¶ 6. During these discussions, Mr. Lugo not only offered to sell his position at a discount, but also explicitly stated that his redemption request had nothing to do with Plaintiff's lawsuit. *Id*.

On May 27, Mr. Lugo again reached out to Mr. Fischborn asking about the status of his request. Dkt. 256-12 ¶ 12. Mr. Fischborn called Mr. Lugo that same day and explained that the Court had denied Defendants' motion to communicate proactively the buyout offer to all class members, but given that Mr. Lugo had contacted Cardone Capital requesting a buyout, Cardone Capital could allow him to exit Fund V on terms consistent with its historical practice—refunding the initial capital, minus distributions. Fischborn Decl. ¶ 7. Mr. Lugo declined that offer. Dkt. 256-12 ¶ 15.

***Plaintiff's Attempts to Bury Class Notice.*** On April 24, this Court approved the manner and form of class notice. Dkt. 235. Pursuant to the parties' stipulated notice plan, Plaintiff was to direct the class administrator, JND, to establish a class notice website and email class notice to all class members by May 8. *Id.* As is common in these cases, the parties also reached an agreement whereby Plaintiff would allow

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

Defendants to review the class website prior to launch; that way, Defendants could ensure the opt-out selection and other information was appropriately displayed and communicated. Keel Decl., Exh. A. In violation of the parties' agreement, Plaintiff launched the class website without providing it to Defendants in advance and sent out class notice at 11 p.m. ET on Wednesday, May 6 (two days *before* the notice deadline). *Id.* The website, either by design or accident, made it extremely difficult for class members to opt out. The desktop version of the webpage buried the opt-out option in the top-right corner, instead of the middle of the page, and used confusingly different "opt out" language than what appeared elsewhere in the notice. *Id.* And in the mobile version, the opt-out selection was completely hidden from view. *Id.* The website also confusingly stated that the "opt-out" option was "UPCOMING," suggesting investors needed to wait until July 14, 2026 (the opt-out deadline), to opt-out. *Id.* Plaintiff ultimately fixed the website issues, but only after Defendants threatened to elevate the parties' dispute to the Court. *See id.*

In the days following the initial notice, many class members reached out to Defendants asking if the communication was genuine. Some thought it was spam or a phishing scheme to steal their interests, and others were confused as to why they received it or what they were supposed to do with it. Fischborn Decl. ¶¶ 8-10. Concerned that class members had either missed the class notice or were confused by it, Defendants sent neutral communications to class members to ensure they knew the notice was genuine, ensured they received it, and understood their options. Plaintiff's motion attaches two examples of these neutral communications. On July 1, Defendants sent an email to class members which flagged the notice email, informing them it was genuine and reminding class members of their options: (1) "If you do nothing, you will be involved in the class action, as discussed on the class action website"; and (2) "If you opt-out, you will not be involved in this lawsuit." Dkt. 256-11. The email also included hyperlinks to the class action website, www.cardoneclassaction.com, which contains the Court-approved notices. *Id*.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

Defendants have continued to receive outreach from confused investors during this time. Fischborn Decl. ¶¶ 8-10. On July 6, Defendants sent a similar communication by text message, again clarifying that the notice was genuine and reminding investors of their options. Dkt. 256-2 ¶ 12. Defendants did not encourage investors to opt out or take any specific course of action—they were clear it was up to class members to choose. *Id*.

***Mr. Cardone's Social Media Posts.*** Mr. Cardone often posts from his social media accounts on a variety of topics, as is his First Amendment right. His conduct during the six years of this lawsuit—and recently—has been no different. On May 21, 2026, Mr. Cardone posted on X (formerly Twitter) and Facebook stating that an investor in Fund V had purchased the shares of another investor facing liquidity needs. Dkt. 256-4. The purpose of this post was to demonstrate the quality of the assets held by Cardone Capital's Funds. The post in no way encouraged investors to contact Defendants to sell their shares, either to other investors or to Mr. Cardone himself. Indeed, Mr. Cardone explicitly stated in the post: "This is not an offer." *Id*.

Mr. Cardone also made two posts in May in which he commented on the American legal system. In the first post, Mr. Cardone copied and pasted a query made to "Claude," an AI assistant, in which he asked, "[D]o most class actions benefit plaintiffs?" Dkt. 256-7. Mr. Cardone posted Claude's answer to his query. Citing studies from the FTC and CFPB, Claude's answer noted, among other things, that "most class actions deliver no consumer benefit at all" and that "[a]ttorneys take a large cut off the top." *Id*. Mr. Cardone reacted to one of the comments on his post, which agreed with the Claude-generated answer, with a "100%" emoji. He then clarified in a comment of his own that "[t]his post was not about Fund V – but it would qualify." Dkt. 256-8. And in the second post, Mr. Cardone observed that the American legal system is flawed in that it often rewards lawyers instead of affected individuals. Dkt. 256-9.

On July 1, Mr. Cardone posted on X, recognizing that Defendants had made distributions for 120 months, which is accurate. Dkt. 256-10. The post further stated

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

that Defendants had redeemed the shares of certain Fund V investors who had opted out of Plaintiff's lawsuit (and thus clearly were not represented by Plaintiff's counsel—if they ever were). *Id*.

***Investor Opt-Outs***. Although Plaintiff claims she filed the present motion due to concerns about Defendants' conduct, the real reason is that investors have opted out of her class in droves. As of June 23, 2026, 519 investors, representing $25+ million in invested capital in Funds V and VI, had already opted out of the certified class. The number is no doubt much higher as of the filing of this opposition, but Defendants do not know the number because Plaintiff's counsel and the Court-appointed "neutral" third party administrator, JND, are now refusing to share opt-out data with Defendants.

***Plaintiff's Motion.*** Plaintiff initially filed this motion on June 15, requesting the Court issue a "curative" notice and grant other related relief. Dkt. 254.[1] Plaintiff's amended motion argues that Defendants' communications with Mr. Lugo violate the Court's May 15 order on the requested classwide buyout offer. Dkt. 256-1. Plaintiff also complains about Defendants' neutral communications to investors and Mr. Cardone's social media posts discussed above. *Id.*  In terms of relief, Plaintiff requests that the Court invalidate all opt-outs, despite these investors having gone to the Court-approved website, containing the Court-approved notices, and followed the Court-approved process to opt out of the class by their choice. Plaintiff next requests that the Court issue "curative" notice on the invalidated opt-outs plus another "curative" notice specific to "the buyout offer." Were that not enough, Plaintiff requests that the Court preclude Defendants from further communicating with investors and from making "any social media posts about this case or class actions generally," and compelling broad discovery

---

[1] Plaintiff filed the motion more than 35 days before the August 3 hearing date, despite this Court's explicit prohibition against doing so. *See* J. Walter Standing Order §5(a). On July 6, Plaintiff filed an amended version of the motion yet kept the August 3 hearing date and refused to provide additional time for Defendants' opposition, clearly trying to "jam" Defendants with a short turnaround time during the midst of several significant depositions. *See* Dkt. 256.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

into all post-certification communications with investors. *Id.* at 14-15.

As discussed below, there is no basis to Plaintiff's motion. Defendants have not violated Rule 23 or this Court's prior order, and the motion should be denied.

## ARGUMENT

### I.    Plaintiff Has Not Satisfied Her Burden Under Rule 23(d).

In *Gulf Oil*, the Supreme Court explicitly cautioned that a Rule 23(d) order can issue only after "a careful weighing of competing interests," and must be based on a "clear record and specific findings of need." 452 U.S. 89, 102-104 (1981). Before issuing the kind of relief Plaintiff requests, courts must "take care to ensure that the restraint on expression is 'justified by a likelihood of serious abuses' of the class action device," which requires a finding that a party has engaged, or is likely to be engaged, in misleading, coercive, or deceptive communications with class members. *Kelly v. Pac. Tel. Grp.*, 1999 WL 33227541, at *2 (N.D. Cal. Oct. 20, 1999). Having failed to submit any evidence that the communications at issue misled or coerced any class member, Plaintiff fails to meet this burden.

### A. Defendants' Communications with Mr. Lugo Do Not Violate the Court's May 15 Order.

Plaintiff readily acknowledges: (1) Mr. Lugo reached out to Defendants asking to be bought out of Fund V for reasons wholly separate from the litigation, including before the Court's May 15 order on the buyout motion; and (2) when the Court denied Defendants' motion, Defendants notified Mr. Lugo of the decision and explained that they could only purchase his shares because he reached out to Cardone Capital requesting the buyout and would only do so on terms consistent with prior practice— *i.e.*, a refund of his initial capital, adjusted for distributions. Dkts. 256-1 at 15-17; 256-12 ¶¶ 3, 12. Nevertheless, Plaintiff argues these isolated communications are a "blatant" violation of the Court's order. Dkt. 256-1 at 9. Plaintiff is wrong.

Out of an abundance of caution, Defendants asked for the Court's approval to communicate proactively to all class members an offer to purchase their interests in the

Funds if they wanted out for any reason. Dkt. 233. That offer, as Defendants explained, would have allowed class members to obtain a refund of their initial capital, minus distributions, plus interest, and to receive more now for their interests than they could ever receive in this case. *Id.* at 4-5. Although Defendants respectfully disagree with the Court's decision denying that motion, they have adhered to it. Defendants have not proactively communicated buyout offers to any class members since the Court's order. The Court's order, however, does not restrict Defendants' ability to communicate with class members in the ordinary course of business, including *responding* to requests from class members to exit the Funds due to personal emergencies or other reasons which have absolutely nothing to do with Plaintiff's lawsuit. *Id.*

That is what occurred in the communications that Plaintiff now complains about. Defendants did not proactively communicate a buyout offer to Mr. Lugo. To the contrary, he reached out to Defendants—before and after the Court's order—repeatedly asking to be bought out of Fund V, even offering to sell his interests back to Cardone Capital at a "discount." Dkt. 256-12 ¶ 3. During those conversations, Mr. Lugo represented to Defendants that his request had nothing to do with the pending lawsuit. Fischborn Decl. ¶ 6. Defendants could have proceeded with buying out Mr. Lugo per his requests at any time, but they chose to hold off on any individual buyout requests while awaiting the Court's ruling on the buyout motion. If Defendants were going to soon be communicating a buyout offer to all class members, they would have preferred to handle all buyouts on the same terms, as requested. But when the motion was denied, Defendants responded to Mr. Lugo's follow up requesting a buyout, explaining that the Court denied the motion but that they could offer the standard terms they had historically offered to other investors requesting buyouts—*i.e.*, a refund of his initial capital, adjusted for prior distributions, but without interest. *Id.*

Nothing in this Court's order prohibited these communications. Defendants did not prompt this offer. They responded to an investor who requested to be bought out for reasons unrelated to this lawsuit. That is an ordinary course communication that this

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

Court did not prohibit.

**B. Defendants Did Not Improperly Encourage Opt-Outs.**

There likewise was nothing improper about Defendants, in response to inquiries from confused investors, providing neutral communications to investors ensuring they were aware of the class notice, their rights, and directing them to the class notice website. Defendants made these communications only after Plaintiff launched its confusing website, without Defendants' approval, and issued class notice in the middle of the night, prompting class members to contact Cardone Capital wondering if the notice was spam or a fraud. Defendants never encouraged any investor to opt out or told any investor what to do. They merely communicated to investors to make sure they knew the notice was real, not fraud, that they had the choice of doing nothing and staying in the class or opting out, and then directing them to the class website (which Plaintiff eventually corrected at Defendants' requests). *See, e.g.*, Dkt. 256-11, 256-2 ¶ 12. All the information this Court deemed appropriate to inform class members of their rights is contained on that website, along with contact information for Plaintiff's counsel should any investor wish to talk to them. *See* www.cardoneclassaction.com.

This type of communication should be encouraged, not disfavored. In fact, it is ironic that Plaintiff's counsel—who drafted the class notice and had the website created—is complaining about Defendants directing investors to go to the website to learn about the case and their options. If Plaintiff's counsel had it their way, only one email would have gone out (in the middle of the night), to provide "notice" to class members. They would not have followed up, issued additional notices, or made any effort to make sure investors were truly aware of the notice and their rights. Plaintiff's counsel know this case is contrary to investors' interests and that anyone who knows the truth will opt out. That is why Plaintiff buried the class notice, and it is why she filed the instant motion.

**C. Mr. Cardone's Social Media Posts Do Not Invite Class Members to Seek Buyouts or Encourage Opt-Outs.**

The social posts at issue similarly lack misleading or coercive language that is "clearly intended to deter participation." *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 WL 2239797, at *5 (N.D. Cal. June 15, 2012). Plaintiff first complains about a post in which Mr. Cardone stated that an investor in Fund V purchased the shares of another investor facing liquidity needs. Dkt. 256-1 at 9-10. Contrary to Plaintiff's arguments, this post was not an "improper invitation" to class members to "contact Cardone Capital to find a match and sell their shares." *Id.* at 10. Rather, the post simply conveyed that, because of the success of Fund V, which has performed consistently with expectations, there is a market in which investors are willing to purchase additional shares from other investors facing liquidity needs. If the investments were worthless, that market would not exist, and investors certainly would not be looking to increase their positions. Mr. Cardone also cautioned: "This is not an offer." Dkt. 256-4.

Next, Plaintiff points to two posts where Mr. Cardone made general remarks about the American legal system. Dkt. 256-1 at 12-13. In the first, Mr. Cardone copied and pasted the answer to a query posed to Claude, an AI assistant. *Id.* at 12. Citing publicly available sources, including government studies, Claude's response noted that class actions often fail to deliver consumer benefits and that lawyers typically take a percentage of settlement amounts under contingency agreements (all of which is true). The post said nothing about this case, Plaintiff, or Plaintiff's counsel. Indeed, Mr. Cardone clarified in a comment that the post was not related to Fund V. In the second post, Mr. Cardone opined that "The legal system in America is garbage. It doesn't reward victims it rewards greedy lawyers." Dkt. 256-1 at 13. Again, the post says nothing about this specific case. Mr. Cardone was simply voicing a frustration about the system, a frustration shared by many.

Lastly, Plaintiff criticizes a July 1 post in which Mr. Cardone indicated Defendants had achieved "120 consecutive months without missing a distribution" and had "[r]edeemed some Fund V investors who opted out of [the] pino dispute and returned $459,000." Dkt. 256-1 at 5. This post accurately portrays Defendants'

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

distribution history and alludes to Defendants' willingness to assist investors facing liquidity needs. And while Plaintiff appears to take issue with Defendants' willingness to redeem the shares of certain investors who have opted out of the lawsuit, there is nothing wrong with this practice, which is consistent with Cardone Capital's ordinary-course conduct before this litigation. Moreover, although all class members are free to communicate and transact with Cardone Capital, surely Plaintiff cannot complain about those investors who have opted out of the class and whom Plaintiff's counsel clearly does not represent.[2]

## II.    Plaintiff's Request for Extraordinary Relief Is Unwarranted.

Based on the communications above, none of which were improper, Plaintiff asks the Court to: (1) invalidate all opt-outs and issue curative notice to former and current members of the class; (2) issue a separate curative notice specific to "the buyout offer"; (3) issue a gag-order restricting Defendants' ability to communicate with class members and the public; and (4) authorize broad discovery into communications with investors. Dkt. 256-1 at 14-15. But as Plaintiff's own cited cases demonstrate, the relief she seeks is reserved for shocking and egregious conduct that is not present here.

### A. There Is No Justification for Invalidating Opt-Outs or Issuing a Curative Notice.

Plaintiff first asks the Court to "deem all opt-outs withdrawn and issue corrective notice to the class." Dkt. 256-1 at 21. Plaintiff insists that such relief is necessary because Defendants have "invariably tainted the Court-ordered class action notice period," as demonstrated by the mere fact that more than 500 of 3,300 class members have already opted out. *Id*. Per Plaintiff, the high opt-out number "raise[s] suspicion" because class members have "nothing to lose by remaining in the case." *Id*. This is an absurd argument. Just because this is a Section 12 case does not mean that Plaintiff is

---

[2] Indeed, some courts have recognized that the attorney-client relationship is not established until after the opt-out period. *See, e.g., In re Katrina Canal Breaches Consolidated Litig*., 2008 WL 4401970, at *3 (E.D. La. Sept. 22, 2008).

entitled to hold class members hostage until the last possible moment they can exit the lawsuit. Plaintiff also ignores that the reason class members are opting out in droves is not because of any misleading or coercive behavior, but because the relief sought in this lawsuit would require investors to surrender interests in the Funds that are more valuable than the minimal rescissory relief they could receive. *Every* investor would be worse off financially from this lawsuit if they stayed in the class and Plaintiff prevailed.

In any event, the cases Plaintiff cites do not support her argument. If anything, they only highlight the flagrant behavior required to justify her request. For example, in *Romano v. SLS Residential*, therapists employed by the defendant mental-health provider called their former patients, who were putative class members in the suit, and falsely told them that if they remained in the class their mental health records would be disseminated to the public. 253 F.R.D. 292, 294-96 (S.D.N.Y. 2008). The *Romano* court concluded that defendant's employees had "severely abused the judicial process," *id.* at 297, and "that the Defendants have engaged in abusive, deliberate, and improper conduct during the opt-out period by communicating false and misleading information to the putative plaintiff class members and their parents and families, in a concerted attempt to scare them into opting out of this lawsuit[.]" *Id.* at 294. Here, Plaintiff does not allege or suggest that Defendants have spread false information or threatened investors—they have not.

In *Camp v. Alexander*, 300 F.R.D. 617, 620 (N.D. Cal. 2014), defendant sent a letter to employee class members which identified the plaintiff, stated that the lawsuit was "motivated by greed and other improper factors," and would "jeopardize the ongoing viability of the practice." *Id.* (emphasis omitted). In granting plaintiff's request for curative notice, the court emphasized that the "employer-employee contact is particularly prone to coercion." *Id.* at 624. And in *Georgine v. Amchem Products*, law firms sent solicitations to members of a potential settlement class, urging them to opt out or to object to the fairness of a proposed settlement. 160 F.R.D. 478, 490-97 (E.D. Pa. 1995). The court made detailed findings of misleading statements and particularly

disruptive behavior by outside counsel, including urging class members to opt out or object. *Id*.

Once again, the actions in *Camp* and *Amchem* bear no resemblance to Defendants' actions here. For one, there is no heightened sensitivity based on an employer-employee relationship. But more importantly, Defendants did not pressure class members to opt out. Nor did they criticize Plaintiff, her counsel, or their motives. To the contrary, Defendants issued (1) neutral communications informing class members that the notice was real, that they had a choice to stay in the class or opt out, and directing them to the class website, and (2) accurate and benign social media posts which discussed the success of the funds, ordinary-course transactions, and general criticisms of the class action mechanism. In short, because the communications at issue "did not mischaracterize the action, threaten retaliation, or otherwise undermine the Court-approved notice," Plaintiff's requested relief is completely unjustified. *Talamantes v. PPG Indus., Inc.*, 2014 WL 4145405, at *5 (N.D. Cal. Aug. 21, 2014); *Gerlach v. Wells Fargo & Co.*, 2006 WL 824652, at *7 (N.D. Cal. Mar. 28, 2006) (denying motion for curative notice where communications at issue were "not sufficiently misleading or coercive to justify the relief sought").

**B. There Is No Justification for a Separate Notice "Regarding the Buyout Offer."**

Plaintiff also asks the Court to issue a separate curative notice in the form of her Exhibit 1, which would give class members the option of rescinding their previous opt outs. Dkt. 256-1 at 22. It does not appear that this is an alternative request, and Plaintiff makes no effort to explain why two separate notices would be necessary. She only states that this second curative notice would "inform[]" class members who have discussed, or plan on discussing a buyout, that "such offers are expressly prohibited by this Court's order." *Id*. Setting aside the confusing nature of Plaintiff's demand, Defendants' ordinary course communications responding to investor inquiries requesting a buyout do not violate any Court order and do not justify the issuance of class-wide curative

notice, as Plaintiff's own cases demonstrate.

In *Torres Romero v. May Trucking*, the court granted plaintiff's request for curative notice after defendant sent a letter to 25 former employees in which defendant compared the present case to a previous class action against the company that resulted in "damages of $200 to one plaintiff, but attorneys' fees of over $40,000." 2018 WL 5905604, *2 (C.D. Cal. Feb. 21, 2018). The letter also specifically criticized class counsel, noting that "the only ones who will benefit by these new cases are the attorneys (both theirs and ours)." *Id*. at *3. The court further noted that because the recipients of the letter were former employees, there was a "particularly acute risk of coercion and abuse." *Id*. at *2. But the court also found that plaintiff's request to send curative notice to the entire class was overbroad and only allowed the notice to be sent to the 25 individuals who received the improper communications. *Id*. at *4.

And in *Wright*, the defendants, a tour company and its operators, sent several emails to former employees criticizing the plaintiffs' lawyers, describing them as "aggressive and possibly unethical," and went so far as to say that the lawsuit could "drive [defendant] and other similar organizations out of business." 2012 WL 2239797, at *1, *3. The communications further threatened that the class members' "past transgressions" would become public in the suit and that the plaintiffs' lawyers "risk nothing other than some hours in legal time. . . . Even if you win the case, they pocket the money and you are left with tattered reputations and substantial legal bills." *Id*. at *2.

The conduct at issue in *Torres* and *Wright* is entirely lacking here. Defendants did not send any communications that threatened or compelled class members to opt out of the class. Defendants' communications also do not reference plaintiff's counsel, let alone disparage them. Rather, Defendants responded to inquiries from an investor requesting a buyout of his shares—a request he made prior to the Court's order and for reasons unrelated to this case. This is no basis for ordering any relief.

**C. Plaintiff's Proposed Gag Order Unduly Restricts Defendants' First Amendment Rights.**

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

To withstand First Amendment scrutiny, an order limiting communications must be "based on a clear record and specific findings" reflecting "a likelihood of serious abuses," and any such order must be narrowly drawn to "limit[] speech as little as possible." *Gulf Oil*, 452 U.S. at 101-02, 104. Plaintiff presents no evidence of misconduct on the part of Defendants, let alone a "clear record and specific findings" required for a prior restraint of Defendants' speech. *Id.*

Plaintiff first requests that the Court order "Defendants, including their employees, . . . to cease all communications with Class members, except for routine communications about the status of their investment and related issues[.]" Dkt. 256-1 at 23. Although Plaintiff does not specify which communications would fall into the category of "routine communications," she suggests that such items would only include communications regarding "distribution payments and tax forms." *Id.* at 14. Setting aside the ambiguity of her own request, Plaintiff's requested relief would significantly disrupt Defendants' ability to run their business, which requires frequent communication with investors, including responding to investor questions or concerns. Investors routinely reach out to Defendants about various aspects of the Funds, including performance of the underlying properties, distribution expectations, sale scenarios, and more. Beyond that, Plaintiff's proposed restraint violates Defendants' First Amendment right by imposing an unconstitutional prior restraint. *See*, *e.g.*, *Gulf Oil*, 452 U.S. at 104 (order issued pursuant to Rule 23(d) "involved serious restraints on expression"); *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1440 n.9 (9th Cir. 1984) (same); *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) ("Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity.").

Plaintiff goes one step further, asking the Court to preclude Defendants from "making any social media posts about this case or class actions generally." Dkt. 256-1 at 23. The same reasoning above applies here, but with even greater force. For one, Defendants have not issued any social media posts that specifically discuss Plaintiff,

17

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

her case, or her counsel. Moreover, a prior restraint on Defendants' ability to generally comment on the American litigation system is completely unwarranted. Again, such posts say nothing about this case. Nor do they counsel class members to take any specific action pertaining to it. Even if the posts had discussed this case, they would remain protected by the First Amendment: Mr. Cardone has a right to speak publicly about this case should he choose to do so. *Rivera v. United States*, 2019 WL 4508501, at *2 (S.D. Cal. Sept. 17, 2019) (noting that individuals "do not lose their constitutional rights at the courthouse door") (quoting *Levine v. U.S. Dist. Court for Cent. Dist. of Calif.*, 764 F.2d 590, 595 (9th Cir. 1985)).

A prior restraint is an extreme remedy and should only be used as a last resort. *Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*, 2016 WL 4080294, at *9 (N.D. Cal. July 29, 2016) (refusing to impose prior restraints where less drastic remedies were available). And while Plaintiff paints this case as "modern analogue" to *Kleiner v. First Nat. Bank of Atlanta*, one look reveals it is anything but. 751 F.2d 1193 (11th Cir. 1985). In *Kleiner*, shortly before the class notice was issued, and while the judge was on vacation, defendant "seized upon the idea of soliciting class exclusion requests as a means to reduce its potential liability[.]" *Id.* at 1197. The bank's marketing director instructed "a force of 175 loan officers" to call customers to urge them to opt out by "do[ing] the best selling job they had ever done." *Id.* at 1197-98. After learning of defendant's actions, the district court imposed multiple sanctions, including restrictions on defendant's ability to communicate with class members moving forward. *Id.* In upholding the ruling, the Eleventh Circuit harped on the fact that defendant had ignored the district court's prior order "directing counsel for the Bank to refrain from contacting the plaintiff class." *Id.* at 1207. Defendants' communications do not resemble *Kleiner* in any way, shape, or form. Defendants did not embark on an orchestrated campaign to urge anyone in the class to opt out. And, as described above, Defendants have not purposefully violated any Court order.

*Wang v. Chinese Daily News, Inc.*, a case which the Supreme Court later

18

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

overturned, is equally unhelpful. 623 F.3d 743, 749 (9th Cir. 2010). In that case, the Ninth Circuit upheld restrictions on defendants' ability to communicate with class members, but only upon finding that there was sufficient evidence to conclude that "the opt out period was rife with instances of coercive conduct, including threats to employees' jobs, termination of an employee supporting the litigation, and the posting of signs urging individuals not to tear the company apart[.]" *Id.* There is no employer-employee relationship here, and Plaintiff has not alleged that Defendants are threatening class members, nor could she.

In sum, Defendants' communications do not warrant an order abridging free speech rights, either by limiting communications with their own investors or preventing them from speaking publicly about the general success of the Funds, the American litigation system, or anything else. *Gulf Oil Co.*, 452 U.S. at 102, 104 (holding that an order restricting parties' communications with class members involved "serious restraints on expression" and was not sufficiently supported by specific findings of abuse). Plaintiff's extreme request fails under *Gulf Oil* and should be denied.

**D. Plaintiff Has Not Demonstrated a Need for Additional Discovery.**

Finally, Plaintiff asks the Court to issue an order requiring Defendants to produce (1) a list of all Fund V and VI investors "they have contacted regarding this litigation or discussed, offered, or provided a buyout offer . . . since this Court certified the class and (2) all communications they have had with those" investors. Dkt. 256-1 at 25. For reasons explained above, Defendants' communications with Mr. Lugo, which he initiated, did not violate the Court's May 15 order and are not otherwise improper. Defendants also have not made proactive buyout offers to investors in the Funds. Rather, Defendants have only responded to requests from investors asking to exit the Funds, most of whom have already opted out of Plaintiff's lawsuit. Such communications, which were made in the ordinary course of business, are not misleading, coercive, or otherwise improper under Rule 23. Nor do they have anything to do with the merits of the actual claims and defenses at issue in this case. Indeed, to

the extent such communications have any relevance at all (they do not), such relevance is limited to this motion, which is entirely baseless, for reasons explained throughout. Defendants' neutral communications to class members, clarifying that the class notice was authentic and directing them to the Court-approved website containing the Court-approved notices, likewise do not provide a basis for any further discovery.

Defendants have already gone to great lengths to provide nearly 90,000 documents for merits discovery in this case—Plaintiff's dissatisfaction that those documents do not support her claims and that investors do not want to be part of her lawsuit, do not justify additional discovery, which would be irrelevant and disproportionate to the needs of this case.

## CONCLUSION

For these reasons, Plaintiff's motion for curative notice and related relief should be denied.

Dated: July 13, 2026                    KING & SPALDING LLP


                                        By:  /s/ Joseph N. Akrotirianakis
                                             JOSEPH N. AKROTIRIANAKIS
                                             LISA BUGNI
                                             MATTHEW V.H. NOLLER
                                             BRANDON R. KEEL
                                             CHERI GROSVENOR

                                             Attorneys for Defendants
                                             CARDONE CAPITAL, LLC, GRANT
                                             CARDONE, CARDONE EQUITY FUND
                                             V, LLC, and CARDONE EQUITY FUND
                                             VI, LLC

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

## CERTIFICATE REGARDING AI USE

The undersigned, counsel of record for Defendants, certifies that AI was not used in the preparation of this brief.

Dated: July 13, 2026                    KING & SPALDING LLP


                                        By: */s/ Joseph N. Akrotirianakis*
                                            JOSEPH N. AKROTIRIANAKIS

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,961 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 13, 2026                    KING & SPALDING LLP


                                        By: */s/ Joseph N. Akrotirianakis*
                                             JOSEPH N. AKROTIRIANAKIS

DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CURATIVE NOTICE