MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Phone: (310) 789-3100
Fax: (310) 789-3150

RAJ MATHUR (admitted *pro hac vice*)
rmathur@susmangodfrey.com
MORGAN MCCOLLUM (admitted *pro hac vice*)
mmccollum@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, Fl. 50
New York, NY 10001
Phone: (212) 729-2051
Fax: (212) 336-8340

Attorneys for Lead Plaintiff Christine Pino and the Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

CHRISTINE PINO, on behalf of herself and all others similarly situated,

Plaintiff,

v.

CARDONE CAPITAL, LLC, GRANT CARDONE, CARDONE EQUITY FUND V, LLC, and CARDONE EQUITY FUND VI, LLC,

Defendants.

Case No. 2:20-cv-08499-JFW (KS)

**CLASS ACTION**

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MEMORANDUM OF LAW SUPPORTING OBJECTIONS TO COMBINED STATEMENT OF FACTS**

Motion Hearing Date: 11/16/2026 at 1:30pm
Discovery Cutoff Date: 11/16/2026
Pretrial Conference Date: 2/12/2027
Trial Date: 3/9/2027

Plaintiff Christine Pino respectfully submits the following response to Defendants' memorandum of law supporting objections to the combined statement of facts (Dkt. No. 296). Each objection asserted by Defendants should be overruled.

<u>Combined SOF Paragraphs 25, 28, 33, 34, 39, 63, 154, 167</u>:

*Relevance and personal knowledge (Fed. R. Evid. 401, 402, 602).* Defendants argue that Adam Helmker, who joined Cardone Capital in October 2023 and worked as an acquisitions analyst, lacks personal knowledge and offers irrelevant testimony. Dkt. No. 296 at 1–2. But Plaintiff cites Helmker's testimony to describe Cardone Capital's underwriting process, about which Helmker has extensive personal knowledge: Helmker testified that he used the same underwriting model throughout his tenure, which was "similar" to the model used for earlier Cardone equity funds. Ex. 28 (Dkt. No. 299-32) at 26:16–34:2. The underwriting assumptions he used came in part from Ryan Tseko, *id.*, who also prepared underwriting for properties owned by Funds V and VI like Columbia Town Center, Ex. 19 (Dkt. No. 299-19) at 134:9–11, 135:11–13. Helmker thus has sufficient knowledge to testify about Cardone Capital's underwriting practices. The underwriting practices and models Helmker described, Ex. 28 at 26:16–34:2, are the same type of underwriting Defendants used to model the Funds and properties at issue in this case, *see, e.g.*, Dkt. No. 299-26 at 619–43 (Plaintiff's expert analyzing the same 10-year models Helmker testified about). In addition, Defendants rely extensively on the Funds' performance after 2023 (*see, e.g.*, CSOF ¶¶ 53–58), making Helmker's post-2023 knowledge separately relevant. At best, Defendants' argument about the extent of Helmker's knowledge goes to the weight of his testimony, not its admissibility.

Rule 406 provides that "[e]vidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice," and that such evidence may be admitted "regardless of whether it is corroborated or whether there was an eyewitness." Helmker's testimony is separately admissible under Rule 406.

*Improper lay opinion (Fed. R. Evid. 701).* Helmker's testimony that the exit cap rates he was instructed to use were not "appropriate" and were "unreasonable," Ex. 28 at 26:16–34:2, 96:12–16, is "rationally based on [his] perception," Fed. R. Evid. 701(a). He built the underwriting models, received the instructions, compared the instructed rate with third-party data, and observed the results: "[f]or deals that I underwrote where the IRR was a 15 percent with a 4 percent exit cap rate, if a 5 or 5 1/2 exit cap rate was used, it would result in more or less to an 8 to 11 percent IRR." Ex. 28 at 28:5–29:6, 30:15–31:4, 96:12–16. Rule 701 permits opinions based on "particularized knowledge" from the witness's "position in the business." Fed. R. Evid. 701, Advisory Committee's Note to 2000 Amendment.

*Leading (Fed. R. Evid. 611(c)) (CSOF ¶ 167).* Almost every question in the testimony cited by Plaintiff in support of CSOF ¶ 167 is not leading.[1] Defendants' blanket objection under Rule 611(c) appears to apply, at best, to two questions from an extensive colloquy.[2] The Court need not rule on this objection because Helmker's other testimony cited by Plaintiff in CSOF ¶ 167 amply supports the proposition. In addition, "[o]rdinarily, the court should allow leading questions . . . when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c)(2). Helmker is a former employee of Cardone Capital, and is therefore identified

---

[1] *See* Ex. 28 at 28:5–6 ("And did management instruct you to use a particular cap rate in the underwriting models?"), 28:8 ("Who gave you those instructions?"), 28:10–11 ("Who instructed you as to the particular cap rates used in the underwriting models?"), 28:13 ("What cap rate did they tell you to use?"), 28:15–16 ("Did you think that was a realistic cap rate?"), 28:19–21 ("Did you think the cap rates they were providing to you were overly aggressive?"), 29:1 ("Why is that?"), 30:15–18 ("Do you know how much lower the IRRs would have been had you used CoStar industry cap rate instead of the cap rate that management told you to use?"), 30:22–24 ("And what ballpark, how much lower would the IRRs have been had you used the CoStar or industry standard cap rates?").

[2] *Id.* at 29:23–25 ("And the cap rate that you used was below what CoStar or other industry experts suggested was appropriate, right?"), 96:12–16 ("In your experience, Cardone Capital used unreasonable cap rates in these models, right?").

with an adverse party for purposes of Plaintiff's questioning. *See also* Stryker Corp. v. *XL Ins. Am.*, 2020 WL 13441655, at *3 (W.D. Mich. July 29, 2020) ("A former employee of the defendant may be an adverse witness within the meaning of Rule 611(c)(2) . . . .").

In contrast, much of the questioning which Defendants rely upon to support their objections is leading and therefore inadmissible. *See* Dkt. No. 300-2 at 60:1–61:1 (all leading questions to which Plaintiff's counsel objected), 90:8–12 (same).

Combined SOF Paragraphs 33, 39, 92, 94–96, 169–72, 174: Defendants object to the testimony of Brian Robb, Cardone Capital's Chief Marketing Officer from 2019 to 2020, and to his March 16, 2020 email (Ex. 41, Dkt. No. 299-45). Each objection fails.

*Relevance and personal knowledge (Fed. R. Evid. 401, 402, 602).* Robb testified to what he personally did, saw, and heard: Executive Vice President Ryan Tseko gave Robb fabricated returns to publish to investors, Ex. 40 (Dkt. No. 299-44) at 23:9–24:3, 36:23–37:24; one property's advertised IRR moved from 18 to 15 percent and then had decimals added to appear more legitimate, *id.* at 23:9–24:3, 204:24–205:17; and Robb was told by the CFO and an acquisitions analyst that the advertised IRRs were fabricated, *id.* at 20:9–16, 28:13–30:1, 77:4–21. Robb also testified that he "regularly interacted with senior leadership." Ex. 18, Dkt. No. 299-18, at 31:3–8. Defendants do not dispute Robb's position as a C-Suite executive at the time they made the misleading statements at issue here. CSOF ¶ 169. Robb's testimony is directly relevant to issues in this case, including whether Grant Cardone subjectively believed his projections and whether Defendants had an objective factual basis for their projections.

*Hearsay (Fed. R. Evid. 801, 802).* The statements Robb recounts were made by Defendants' "agent or employee on a matter within the scope of that relationship and while it existed" and thus are not hearsay. Fed. R. Evid. 801(d)(2)(D); *Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002). Susan Schieman was Cardone Capital's CFO, "with primary responsibility for the company's overall financials," and "worked with Mr. Robb regularly." Ex. 23 (Dkt. No. 299-23) ¶¶ 1–2.

Lance Grisham was, by Defendants' own account, "an acquisition analyst at Cardone Capital," CSOF ¶ 94. Ryan Tseko is Cardone Capital's Executive Vice President. *See* Ex. 22, Dkt. No. 299-18, at 34:18–35:12; *see also* Dkt. No. 175-1 at ¶ 1.

Robb also wrote Exhibit 41, was examined about it, and can testify to its contents at trial, Ex. 40 at 227:8–228:3, 229:19–230:4, so its form is no bar at summary judgment. *See* Sandoval v. Cnty. of San Diego, 985 F.3d 657, 666 (9th Cir. 2021) ("If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment.").

*Improper lay opinion (Fed. R. Evid. 701).* Robb's testimony that the IRRs were "completely fabricated" was based on what he perceived: the shifting figures, the "decimal place" instruction, information from Ryan Tseko, and statements made by other executives and employees. *See* Ex. 40 at 20:9–16, 23:9–24:3, 24:5–16, 28:13–30:1, 36:23–37:24, 77:4–21, 203:5–14, 204:24–205:17. His testimony is thus "rationally based on [his] perception." Fed. R. Evid. 701(a). Rule 701 also permits opinions based on "particularized knowledge" from the witness's "position in the business." *Id.*, Advisory Committee's Note to 2000 Amendment. Robb was a senior executive at Cardone Capital and responsible for communications with potential investors. Ex. 40 at 6:21–23, 10:1–5, 36:23–37:24.

*Contrary testimony and relevance (Fed. R. Evid. 401, 402).* Defendants' contention that "Mr. Robb's purported sources contradict him," Dkt. No. 296 at 3, is not an evidentiary objection at all—it raises a genuine dispute of material fact about whether his testimony is true and his credibility, neither of which can be resolved on summary judgment via evidentiary objections.

*Leading (Fed. R. Evid. 611(c)) (CSOF ¶¶ 170–171).* Many of the questions in

the cited testimony are not leading.[3] In addition, "the court should allow leading questions . . . when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Rule 611(c)(2). Robb is a former senior executive of Cardone Capital—he was Chief Marketing Officer (Ex. 40 at 6:21–23, 10:1–5)—and is therefore identified with an adverse party. *See* Stryker, 2020 WL 13441655, at *3.

Combined SOF Paragraphs 35, 36, 38, 202–03: Defendants assert that the expert testimony of Cicely LaMothe, the former Acting Director and Deputy Director of the SEC's Division of Corporation Finance, is inadmissible. As an initial matter, Defendants did not file a *Daubert* motion properly noticed under the Local Rules, which is the proper procedural mechanism to seek exclusion of expert testimony.

In any event, LaMothe's expert testimony, which is at Dkt. No. 286-1, provides background about the applicable regulatory landscape, analyzes Defendants' exchange with the SEC in July 2018, and responds directly to Grant Cardone's deposition testimony that the SEC's instruction to remove a 15% return projection from Fund V's offering document was optional. For non-scientific testimony like this, reliability "depend[s] heavily on the knowledge and experience of the expert." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000). Defendants do not challenge LaMothe's (extensive) qualifications or experience. LaMothe provides relevant and permissible opinions, based on her experience, about the regulatory framework applicable to Defendants' offerings and Defendants' communications with the SEC. Her opinions are directly relevant to issues in this case, including whether Cardone could have qualified Fund V's offering without adequately resolving the SEC's comments.

*Legal conclusions.* Defendants mischaracterize LaMothe's opinions as proffering

---

[3] *E.g.*, Ex. 40 at 29:14–17 (Q. "And what was it about Susan Schieman's representation to you that led you to believe that all of the advertised IRRs were completely fabricated?"), 30:3–6 (Q. "And you also said that Ms. Schieman communicated to you that for investors who put in $5,000, they were going to lose money. Can you expand on that, please?").

impermissible legal opinions. But "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citation omitted). Courts routinely allow expert testimony on the regulatory context, customs, and practices of the securities industry. *See, e.g.*, *Roditi v. New River Invs. Inc.*, 2022 WL 7454539, at *2 (S.D. Cal. Oct. 13, 2022) (permitting "expert testimony on the 'regulatory and compliance umbrella under which Defendants operate' which includes regulation from the SEC and federal securities laws"); *SEC v. Ripple Labs, Inc.*, 2023 WL 5670711, at *6 (S.D.N.Y. Mar. 6, 2023) (admitting expert opinion "concerning general registration and disclosure requirements under securities laws," concerning IPO and fundraising procedures, and concerning the history of securities enforcement actions); *United States v. Eastern Mun. Water Dist.*, 2008 WL 4755425, at *2 (C.D. Cal. Apr. 8, 2008) (expert may testify as to "complex administrative processes"). "Testimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry." *SEC v. Spartan Sec. Group, LTD*, 2020 WL 7024884, at *7 (M.D. Fla. Nov. 30, 2020) (quoting *Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 509 (2d Cir. 1977)).[4]

---

[4] *Accord* *Giron v. Springboard Inc.*, 2019 WL 6310251, at *1–2 (D. Ariz. Nov. 25, 2019) (permitting securities and corporate law attorney to testify about securities industry because his testimony "would make the issues more approachable and assist the trier of fact in understanding the evidence"); *SEC v. U.S. Envtl., Inc.*, 2002 WL 31323832, at *2 (S.D.N.Y. Oct. 16, 2002) ("In securities cases, federal courts have admitted expert testimony to assist the trier of fact in understanding . . . securities industry regulations and complicated terms and concepts inherent in the practice of the securities industry") (citations omitted); *SEC v. Johnson*, 525 F. Supp. 2d 70, 77 (D.D.C. 2007) (same) (collecting cases); *Highland Cap. Mgmt. L.P. v. Schneider*, 551 F. Supp. 2d 173, 182 (S.D.N.Y. 2008) ("As with Duval's testimony on [securities] industry custom and practice, Guild . . . may testify as to the customs and practices of the industry. It is relevant . . . and may prove helpful to the jury.").

*Methodology and helpfulness (Fed. R. Evid. 702(a)).* LaMothe's method—applying specialized experience to SEC documents and testimony from Defendants about the SEC's regulatory process—is precisely what Rule 702 contemplates. Such testimony is helpful in securities cases so long as the expert does not opine that the defendant violated the law, and instead provides "the groundwork . . . to enable the jury to make its own informed determination." United States v. Russo, 74 F.3d 1383, 1395 (2d Cir. 1996) (affirming lower court's admission of securities regulation expert); *see also* United States v. Kuiken, 198 F. App'x 643, 646 (9th Cir. 2006) (expert testimony defining the term "security" and stating that specific transactions constituted sales of securities was permissible given that testimony did not opine on defendants' mens rea); Sharkey v. J.P. Morgan Chase & Co., 978 F. Supp. 2d 250, 254 (S.D.N.Y. 2013) (allowing expert testimony of accounting and Sarbanes-Oxley compliance expert regarding the types of financial transactions that are known as red flags and potentially indicative of Sarbanes-Oxley violations within the industry); Pereira v. Cogan, 281 B.R. 194, 200 (S.D.N.Y. 2002) (allowing expert testimony of corporate practices expert because it did not impermissibly embody legal conclusions, even though "custom assuredly is based in good part on what others believe the law to require"). LaMothe provides this kind of assistance to the jury. She does not opine that Defendants violated the securities laws or, as Defendants claim, offer testimony about the SEC's subjective beliefs. Instead, she offers helpful context on the existence and terms of regulatory requirements and on companies like the Funds operating under those requirements.

*Sufficient facts or data (Fed. R. Evid. 702(b)).* Defendants' claim that LaMothe's opinion "contradicts the document it interprets," Dkt. No. 296 at 6, is not only incorrect, but goes to the weight and not admissibility of her expert opinion. *See* *In re Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, --- F.4th ----, 2026 WL 3266788, at *2 (9th Cir. Oct. 30, 2026) (expert "opinions are neither unfounded nor unreliable merely because they are impeachable. Such opinions are for the jury to weigh at trial.").

Respectfully Submitted,

Dated: November 5, 2026

MARC M. SELTZER
STEVEN G. SKLAVER
KRYSTA KAUBLE PACHMAN
RAJ MATHUR
MORGAN MCCOLLUM
SUSMAN GODFREY L.L.P.

By *_/s/ Raj Mathur_*
Raj Mathur
Attorney for Lead Plaintiff and the Class

**Certification Regarding AI Use**

The undersigned, counsel of record for Plaintiff, certifies that AI was used only to assist in cite-checking this document and identify any potential typographical errors. I certify that I have personally reviewed and verified the accuracy of all legal citations, quotations, factual statements, and analyses contained in this document.

Dated: November 5, 2026

RAJ MATHUR
SUSMAN GODFREY L.L.P.

By *\/s/ Raj Mathur*
Raj Mathur
Attorney for Lead Plaintiff and the Class