MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Phone: (310) 789-3100
Fax: (310) 789-3150

RAJ MATHUR (admitted *pro hac vice*)
rmathur@susmangodfrey.com
MORGAN MCCOLLUM (admitted *pro hac vice*)
mmccollum@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, Fl. 50
New York, NY 10001
Phone: (212) 729-2051
Fax: (212) 336-8340

Attorneys for Lead Plaintiff Christine Pino and the Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CHRISTINE PINO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARDONE CAPITAL, LLC, GRANT CARDONE, CARDONE EQUITY FUND V, LLC, and CARDONE EQUITY FUND VI, LLC,<br><br>Defendants. | Case No. 2:20-cv-08499-JFW (KS)<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (DKT NOS. 281 AND 283)**<br><br>Motion Hearing Date: 12/07/2026 at 1:30pm<br>Discovery Cutoff Date: 11/16/2026<br>Pretrial Conference Date: 2/12/2027<br>Trial Date: 3/9/2027 |

**Table of Contents**

I. INTRODUCTION ........ 1

II. DEFENDANTS' STANDING AND LOSS ARGUMENTS FAIL ........ 2

A. This is a Rescission (Not a Damages) Case, and Plaintiff *Still Owns* the Securities, Is Therefore Eligible to Rescind, and Has Standing Based on Her Purchase of the Securities ........ 2

B. Plaintiff and Class Members Still Hold the Securities, so May Rescind, and the Statutory Rescission Formula Does Not Include Proof of Loss or Damage ........ 5

III. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER OMISSIONS THEORY ........ 6

IV. THERE IS NO DISPUTE DEFENDANTS ARE STATUTORY SELLERS ........ 11

V. ON THE UNDISPUTED RECORD, CARDONE'S DEBT STATEMENT IS FALSE ........ 11

VI. THERE IS NO DISPUTE ABOUT CONTROL PERSON LIABILITY UNDER SECTION 15 ........ 12

VII. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Casella v. Webb*,
883 F.2d 805 (9th Cir. 1989) ........................................ 1, 3, 5

*Caviness v. Derand Res. Corp.*,
983 F.2d 1295 (4th Cir. 1993) ........................................ 5

*Commercial Union Assurance Co. plc v. Milken*, 17 F.3d 608 (2d Cir. 1994) ........................................ 6

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) ........................................ 4

*Homyk v. ChemoCentryx, Inc.*,
2025 WL 4110430 (N.D. Cal. Aug. 15, 2025) ........................................ 9

*In re Amylin Pharm., Inc. Sec. Litig.*,
2003 WL 21500525 (S.D. Cal. May 1, 2003) ........................................ 9

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
381 F. Supp. 2d 192 (S.D.N.Y. 2004) ........................................ 4

*In re Broderbund/Learning Co. Sec. Litig.*,
294 F.3d 1201 (9th Cir. 2002) ........................................ 5, 6

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ........................................ 6

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010) ........................................ 1

*In re Perrigo Co. PLC Sec. Litig.*,
2021 WL 3005657 (S.D.N.Y. July 15, 2021) ........................................ 8

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ........................................ 3

*Merzin v. Provident Fin. Grp., Inc.*,
311 F. Supp. 2d 674 (S.D. Ohio 2004) ........................................ 6

*Miller v. Thane Int'l*,
519 F.3d 879 (9th Cir. 2008) .......... 10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) .......... *passim*

*Ong ex rel. Ong v. Sears, Roebuck & Co.*,
2005 WL 2284285 (N.D. Ill. Sept. 14, 2005) .......... 6

*Pino v. Cardone Cap., LLC*,
139 F.4th 1102 (9th Cir. 2025) .......... 7, 8, 12

*Pino v. Cardone Cap., LLC*,
55 F.4th 1253 (9th Cir. 2022) .......... 11, 12

*Pinter v. Dahl*,
486 U.S. 622 (1988) .......... 8

*Randall v. Loftsgaarden*,
478 U.S. 647 (1986) .......... 2, 3

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017) .......... 12

*Safeway Portland Employees' Fed. Credit Union v. C. H. Wagner & Co.*,
501 F.2d 1120 (9th Cir. 1974) .......... 12

*Siemers v. Wells Fargo & Co.*,
2007 WL 1456047 (N.D. Cal. May 17, 2007) .......... 6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 4

*Strezsak v. Ardelyx Inc.*,
2024 WL 1160900 (N.D. Cal. Mar. 18, 2024) .......... 9

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016) .......... 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3

*Twigg v. AbbVie Inc.*,
265 N.E.3d 955 (Ill. App. Ct. 2025) ........................................................ 6

*Van v. LLR, Inc.*,
61 F.4th 1053 (9th Cir. 2023) ........................................................ 2, 3

*Wigand v. Flo-Tek, Inc.*,
609 F.2d 1028 (2d Cir. 1979) ........................................................ 5

*Ylitalo v. Automatic Data Processing, Inc.*,
2026 WL 674423 (D.N.J. Mar. 10, 2026) ........................................................ 4

**Statutes**

15 U.S.C. § 77l(a)(2) ........................................................ *passim*

15 U.S.C. § 77k(e) ........................................................ 5

15 U.S.C. § 77n ........................................................ 11

**Treatises**

5D Arnold S. Jacobs, Disclosure & Remedies Under the Sec. Laws §
3:215 ........................................................ 5

## I. Introduction

Defendants' opposition is notable for what it does not contest:

- the SEC concluded that Fund V did not appear to have a basis to project a 15% return. Combined Statement of Facts ("CSOF") ¶ 33;
- the SEC did so after reviewing Grant Cardone and Cardone Capital's track record, including their three most recent offerings. *Id.* ¶¶ 26–30;
- Defendants could have, but did not, challenge the SEC's finding. *Id.* ¶ 37 ("Defendants' Response: Undisputed that Fund V could have provided additional information concerning the basis of the IRR target."); and
- Defendants nevertheless projected 15% returns and higher on social media without disclosing the SEC's contrary finding. *Id.* ¶¶ 48–53, 57–60.

These undisputed facts establish omissions liability under Section 12 as a matter of law: when projecting 15%+ returns, Defendants did not disclose that "the Federal Government was taking the opposite view," so Plaintiff and class members have "cause to complain" and the statutory "omissions clause creates liability." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188–89 (2015).[1]

Defendants first argue that Plaintiff cannot recover because the Funds' SEC filings report current share values above the purchase price. But as this Court held at class certification, rescission is the statutory remedy here, and is calculated by a statutory formula: consideration paid, plus interest, minus income received. Dkt. No. 229 at 10–11. The "Funds' performance today is irrelevant," *id.* at 6, and a Section 12(a)(2) plaintiff "need not even show that he has been damaged," *Casella v. Webb*, 883 F.2d 805, 808 (9th Cir. 1989) (cleaned up). The purpose of rescission under § 12(a)(2) is to restore a plaintiff to her position "prior to the fraud," to "deter"

[1] *Omnicare* addressed § 11, but its reasoning applies equally to § 12(a)(2)'s parallel omissions clause; these two statutory "siblings" are interpreted *in pari materia*. *See In re Morgan Stanley Info. Fund. Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010). Defendants do not contend otherwise.

misstatements, to "encourage full disclosure" and "to make investors whole." Randall v. Loftsgaarden, 478 U.S. 647, 659 (1986); *see* Dkt. No. 229 at 4, 14 (citing *Randall*). Investors thus may rescind "regardless of the Funds' actual performance." Dkt. No. 229 at 6. And Plaintiff, like class members, has had her money locked in the Funds for years. Even a "temporary loss of use of one's money constitutes an injury in fact for purposes of Article III." *Van v. LLR, Inc.*, 61 F.4th 1053, 1064 (9th Cir. 2023) (citation omitted).

Defendants devote much of their brief to their historical returns and investment strategy (Opp. 3–7, 14–16). They took the same approach with the SEC, which reviewed detailed disclosures about this same track record and strategy, CSOF ¶¶ 26–30, but still found no basis to project a 15% return, *id.* ¶ 33. Any reasonable investor would find it material that the agency charged with enforcing the securities laws determined that the "information in the issuer's possession at the time"—its prior performance and strategy—did not justify the projected returns. *Omnicare*, 575 U.S. at 189.

Finally, if the Court does not grant complete summary judgment on Plaintiff's omissions theory of liability (it should), Defendants do not seriously contest Plaintiff's three separate grounds for partial summary judgment:

- Cardone claimed to be "responsible" for the Funds' debt, but it is undisputed now that he "does not personally pay for the debt-service payments for the properties owned by" the Funds. CSOF ¶¶ 54–55. His statement is false.
- Cardone and Cardone Capital advertised the Funds online and were entitled to 35% of their profits, making them sellers under § 12(a)(2). *Id.* ¶ 9.
- Cardone and Cardone Capital control the Funds, satisfying Section 15's control element. *Id.* ¶¶ 11–12.

The Court should grant Plaintiff's motion.

## II. Defendants' Standing and Loss Arguments Fail

### A. This is a Rescission (Not a Damages) Case, and Plaintiff *Still Owns* the Securities, Is Therefore Eligible to Rescind, and Has Standing Based on Her Purchase of the Securities

Defendants claim that Plaintiff and class members lack Article III standing because they have not "suffered a loss on their investments." Opp. 9. This repackages the class-conflict argument the Court already rejected, and it fails for two independent reasons. *First*, the premise is wrong. Damage is not an element of a Section 12(a)(2) claim, *Casella*, 883 F.2d at 808, because the statute provides the remedy of rescission, not damages, for investors who still hold the security, Dkt. No. 229 at 10. Loss is not part of the "statutory formula" for rescission. *Id.* (citing 15 U.S.C. § 77*l*(a)). For good reason: rescission restores "the plaintiff to his position prior to the fraud," and serves the statute's other goals of "deterrence" and "full disclosure." *Randall*, 478 U.S. at 659. The wrong remedied is the sale of the security itself through misstatements—an injury Plaintiff unquestionably suffered.

*Second*, even if loss were required and part of the statutory formula, it exists in spades here. According to the Funds' offering documents, investors are stuck in a "highly illiquid" investment from which exit is "difficult, if not impossible," and "may never be able to liquidate" or "dispose of" their securities. *See* Dkt. No. 295-1 at ¶ 200 (Defendants do not dispute these facts); *see also id.* ¶ 201 (undisputed that these securities are not traded on any stock exchange).[2] Cardone testified that the investment "[c]ould be a 500 year investment . . . [c]ould be a thousand years." *Id.* ¶ 186 (undisputed). Any "temporary loss of use of one's money" (let alone a years-long loss) confers standing. *Van*, 61 F.4th at 1064; *accord Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (finding Article III standing, including for rescission, even though homeowner plaintiffs might "sell their homes for a profit at some point in the future").[3]

---

[2] *See also* CSOF ¶ 85 (response); Ex. 3 (Fund V circular); Ex. 4 (Fund VI circular).

[3] Defendants' reliance on *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), is misplaced. There, the Court held that inaccurate credit files maintained by TransUnion but shared with no potential creditors did not create injury, but class members "whose reports were disseminated to third-party businesses" suffered a concrete injury in fact under Article III. *Id.* at 432–35. This case is much stronger; here, there are "monetary

Defendants offer no evidence that any class member has ever liquidated securities at their claimed market value. The record shows the opposite: It is undisputed that Cardone has "sole discretion" to approve transfers, has denied withdrawal requests, and has repurchased securities from a few investors not at alleged market value but at the original purchase price, minus distributions and without interest. Dkt. No. 295-1 at ¶¶ 182–83, 191.[4] These are the only recorded exits from the Funds—and each had a net gain of *zero*. Defendants also argue that Plaintiff has "no evidence" that "investors may suffer a loss" (Opp. 12), but their Executive Vice President admitted as much (CSOF ¶ 131), the subscription agreements state that "a complete loss of this investment" is possible (*id.* ¶ 113), and the Funds' returns have declined for years (*id.* ¶¶ 124–25).

Defendants' cases confirm the point. The word rescission does not appear in *Ylitalo v. Automatic Data Processing, Inc.*; there, the court found no standing because the plaintiff made a 4% profit, did "not allege that he was guaranteed or promised a higher return than he made," and did not allege he was "legally entitled to disclosures" at issue. 2026 WL 674423, at **5–6 (D.N.J. Mar. 10, 2026). This case is the opposite: class members seek rescission, have proven they were entitled to the omitted disclosures, have not turned a profit, cannot exit, and at best are projected to earn far less than promised. *See* CSOF ¶¶ 124–25 (less than 15% returns). Defendants' other authorities are inapposite.[5] Nor can Defendants smuggle in a reliance requirement (Opp. 11); Section 12 requires no "proof of . . . reliance." *See* *Gustafson v. Alloyd Co.*, 513 U.S. 561, 578 (1995); Dkt. No. 229 at 9 (same). Plaintiff's injury is "fairly traceable," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), to Defendants' offering and marketing of securities with material misrepresentations and omissions.

---

harms" including loss of use of money that "readily qualify as concrete injuries under Article III." *Id.* at 425. *TransUnion*, of course, was also not a rescission case.

[4] *See* CSOF ¶¶ 135, 137 (responses); Dkt. No. 215-2 at 8 (summary table).

[5] *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 246–47 (S.D.N.Y. 2004) (plaintiff sought neither damages nor rescission).

B. Plaintiff and Class Members Still Hold the Securities, so May Rescind, and the Statutory Rescission Formula Does Not Include Proof of Loss or Damage

Unable to prevail on their Article III argument, Defendants repackage it under a new name. The result is the same. Defendants contend that Plaintiff has failed to establish loss, but the Ninth Circuit held in *Casella* that under § 12(a)(2), the buyer "need not even show that he has been damaged." 883 F.2d at 808 (cleaned up). *Casella* did reject a loss-causation defense for Section 12 claims (Opp. 9–10), but the court also went further: it rejected any "damage[]" requirement where the "defrauded purchaser" sought to render the "tainted transactions voidable," *i.e.*, rescission. 883 F.2d at 808–09. Whether the Casellas had suffered a loss was irrelevant to their right to rescind.

The statute's text, caselaw, and secondary sources confirm *Casella*'s rescission rule. Section 12(a)(2) says nothing about rescission or the rescissory formula being dependent on the market price of the security at issue. *See, e.g.,* Dkt. No. 229 at 10. Every circuit to consider the issue agrees. *See Caviness v. Derand Res. Corp.*, 983 F.2d 1295, 1305 (4th Cir. 1993) ("A claim under § 12(2) may be grounded on untrue statements and omissions . . . and may justify rescission, whether or not the plaintiff was damaged."); *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1036 (2d Cir. 1979) ("The value of the stock itself is irrelevant insofar as relief under section 12(2) is concerned."). Even the treatise on which Defendants rely (Opp. 25) explains that for rescission under § 12, "a court need not determine the fair value of the security." 5D Arnold S. Jacobs, Disclosure & Remedies Under the Sec. Laws § 3:215.

Defendants focus on two later Ninth Circuit decisions, neither of which overruled *Casella*. Both address a factually inapplicable circumstance: An investor cannot bring a § 12(a)(2) claim for *damages* if he *already sold* his securities at a profit in excess of what he would receive under the statutory formula. *See In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1205 (9th Cir. 2002) (where an investor "disposed of" the security *and* "did so for an amount greater than the purchase price . . . he has suffered no damages recoverable under § 12(2) of the Act" (cleaned up)); *accord In re Daou*

*Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005). Quoting § 12(a)(2), the Ninth Circuit in *Broderbund* stressed that "[c]ertainly, it cannot be said that [the plaintiff] 'owns the security' at this time." 294 F.3d at 1205.

In short, Section 12 does not require proving damages or loss to obtain rescission. Damages are only required for investors, unlike Plaintiff, who *sold* their security—and thus cannot rescind—to obtain a money judgment. As *Broderbund* shows, an investor who sold for more than he paid (plus interest, less distributions) may have no damages under the statutory formula. Here, there is no evidence any class member ever did so. Plaintiff and class members *still own* their securities, so they are entitled to rescission.

Even if this "loss" defense were part of the statutory formula for rescission (it is not), Defendants fail to carry their burden to prove a prerequisite for its application: a liquid market for these securities. In *Siemers v. Wells Fargo & Co.* (Opp. 10), for example, the court took "judicial notice of the Yahoo Finance quotes for the per share price of" the securities at issue, and then rejected rescission because the securities "could be sold at their present value for a profit." 2007 WL 1456047, at **2, 4 (N.D. Cal. May 17, 2007). Investments in the Funds are illiquid and cannot be sold. Defendants' remaining cases involve publicly traded securities in a liquid market.[6]

### III. Plaintiff is Entitled to Summary Judgment on Her Omissions Theory

Defendants do not dispute the factual prerequisites for omissions liability. *E.g.*, CSOF ¶ 49 ("Defendants' Response: Undisputed that the April 22, 2019 video does not reference the SEC's publicly available July 30, 2018 comment letter."). Their failure to disclose that "the Federal Government was taking the opposite view," 575 U.S. at 188–

[6] *Twigg v. AbbVie Inc.*, 265 N.E.3d 955, 968–69 (Ill. App. Ct. 2025) (publicly traded securities); *Ong ex rel. Ong v. Sears, Roebuck & Co.*, 2005 WL 2284285, at **14–16 (N.D. Ill. Sept. 14, 2005) (same); *Merzin v. Provident Fin. Grp., Inc.*, 311 F. Supp. 2d 674, 684 (S.D. Ohio 2004) (same). Defendants argue that this defense applies to illiquid securities by citing only *Com. Union Assur. Co. v. Milken* (Opp. 11), but the investors there had been "fully repaid, plus interest" (17 F.3d 608, 609 (2d Cir. 1994))—making this case, like *Broderbund* and *Daou*, inapplicable here.

89, establishes liability as a matter of law. Defendants' contrary arguments fail.

First, Defendants seek to escape *Omnicare*, arguing it has no application because they "did not offer a legal opinion" like the defendant there. Opp. 18. But the Ninth Circuit has applied *Omnicare*'s reasoning here; and the allegations it found plausible are now undisputed. *Pino v. Cardone Cap., LLC* ("*Pino II*"), 139 F.4th 1102, 1111–12 (9th Cir. 2025). To be sure, the SEC did not decide that "Fund V would *not* generate the targeted returns" (Opp. 18). But the SEC's finding of no basis to project a 15% return directly contradicts Defendants' later projections, so they had to disclose it.

Second, Defendants' arguments about Cardone and Cardone Capital's track record (Opp. 14–16) *support* omissions liability. The SEC reviewed extensive disclosures about that record, including financial data for Cardone Equity Funds I, II, and III, which the draft circular described as "similar" to Fund V. CSOF ¶¶ 26–30, 32. The draft offering circular also disclosed Defendants' "investment strategy" (Opp. 15–16).[7] The SEC considered all this information (CSOF ¶ 32)—and *then* determined that Cardone did not appear to have a basis for a 15% return.

This sequence confirms materiality: the SEC did not make an off-the-cuff determination, but reviewed and found insufficient the same data Defendants now invoke. *Compare* Opp. 15 (citing returns for Funds I, II, and III), *with* CSOF ¶¶ 27–30 (Fund V's draft offering circular, which SEC reviewed, disclosing these returns). Defendants' caselaw about historical earnings patterns (Opp. 15) makes their omission even more glaring, because the SEC found that their track record and strategy did not support such a projection. And Defendants could have presented more information to the SEC or defended their projection; instead, they "remov[ed] the projections without

[7] *Compare* Opp. 15 (touting Defendants' "rigorous underwriting process—including due diligence, market valuations, and total return analyses"), *with* Ex. 11 at 38 (Fund V "intends to employ a rigorous underwriting process including proper due diligence, market valuation studies, and total return analyses"); *see* Ex. 11 at 32–34, 39, 41, 56 (disclosing same property-selection, value-add, and exit strategy as noted at Opp. 6–7).

any rebuttal or comment." *Pino II*, 139 F.4th at 1110; *see* CSOF ¶ 37.[8]

Defendants try to cabin the SEC's finding to Fund V (Opp. 14)—but the comment letter was directed to Grant Cardone (CSOF ¶ 31), the prior investments reviewed by the SEC were made by Cardone and Cardone Capital (CSOF ¶¶ 26–30), and Funds V and VI are "very similar, almost identical" (CSOF ¶ 8). Defendants' omission is thus materially misleading as to any 15%+ return projections for either fund.

Third, even if Defendants believed the SEC was wrong or that their track record or strategy supported the projections, they still were obligated to "disclose that disagreement" (Opp. 14–16) to investors. Regulated parties often disagree when the government takes the opposite view; but if they make a contrary statement, they must disclose the Government's finding and then may explain their disagreement. That is the teaching of *In re Perrigo Co. PLC Sec. Litig.*, which Defendants distinguish on irrelevant facts (Opp. 19). The *Perrigo* defendant disagreed with the Government's finding (and, unlike Defendants, "intend[ed] to contest it"), yet the court held it "had a duty" to disclose the Government's contrary "position." 2021 WL 3005657, at **3, 6 (S.D.N.Y. July 15, 2021). So too here. Section 12 exists "to protect investors by requiring publication of material information thought necessary to allow them to make informed investment decisions." *Pinter v. Dahl*, 486 U.S. 622, 638 (1988).

Fourth, Defendants' FDA cases (Opp. 16–18) are inapt and, if anything, support omissions liability. Those cases hold that companies need not disclose every comment or concern in a "years-long iterative dialogue" with the FDA related to drug approval. *Strezsak v. Ardelyx Inc.*, 2024 WL 1160900, at *7 (N.D. Cal. Mar. 18, 2024). But

---

[8] Defendants contend for the first time that their former chief financial officer spoke with the SEC about its comment. *See* Opp. 14. Her account of what the SEC told her is inadmissible hearsay. *See* Plaintiff's Memorandum of Law Supporting Objections to Combined Statement of Facts. And her declaration merely confirms the SEC's first two findings—that Fund V had limited operations and had paid no distributions—but cannot refute the now undisputed facts that the SEC found, after reviewing Defendants' track record, that they did not have a basis to project a 15% return. CSOF ¶¶ 26–33.

consistent with *Omnicare*, they recognize that "Defendants would have a duty to disclose the FDA's feedback if it contradicted Defendants' statements, presented risks that were 'out of the ordinary,' or implicated a 'special challenge not of the kind normally confronted by pharmaceutical companies seeking FDA approval for their drugs.'" *Id.* at *6 (quoting *Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016)); *accord In re Amylin Pharm., Inc. Sec. Litig.*, 2003 WL 21500525, at *6 (S.D. Cal. May 1, 2003). That is what happened here. The SEC's comment directly "contradicted" Defendants' later statements and presented a "significant concern" from the agency. In contrast, in *Tongue*, there was no "conflict" between the Government's position and the issuer's claim. 816 F.3d at 211; *accord Homyk v. ChemoCentryx, Inc.*, 2025 WL 4110430, at *14 (N.D. Cal. Aug. 15, 2025) (absence of conflict). The investors in Defendants' cases were also "sophisticated investors" and not "layperson[s]," *Tongue*, 816 F.3d at 211, unlike the mostly non-accredited individual investors here, CSOF ¶ 23.

Defendants argue that they need not have disclosed the SEC's finding because their projections were reasonable (Opp. 17), but they rely on an inapplicable legal standard. *See Homyk*, 2025 WL 4110430, at *6 (applying "heightened standard" for FDA cases based on investor sophistication and unique regulatory framework). In any event, the SEC rejected the very "bases" Defendants now proffer (their history and strategy). Defendants' selective citation to internal underwriting (CSOF ¶ 154) is unavailing. They identify no financial analysis or underwriting showing that Fund investors would receive a 15% return (let alone more); *every* final underwriting for the nine properties projected well below 15% investor returns (*id.*). Nor does this argument reach Cardone's invocation of the SEC when projecting 15% returns: "You're going to walk away with a 15% annualized return . . . You can tell the SEC that's what I said it would be." *Id.* ¶¶ 48–49. A reasonable investor would find it material that Cardone *had told* the SEC 15%, and the SEC found no basis for that projection. Whatever basis Cardone claims, this statement was misleading.

Defendants' remaining arguments against omissions liability fare no better:

- Defendants bear the burden on their actual-knowledge defense, Dkt. No. 229 at 11–12, but still proffer no evidence that any investor actually saw the SEC's letter or their response before investing. *Cf.* Opp. 1, 14, 20. "[I]nvestors are not generally required to look beyond a given document to discover what is true and what is not." *Miller v. Thane Int'l*, 519 F.3d 879, 887 (9th Cir. 2008).
- Defendants dismiss Cardone's April 2019 YouTube video, CSOF ¶¶ 48–49, as merely an "instructional video on financial literacy," Opp. 19. But seconds before projecting 15% returns and claiming to predict the future, Cardone advertised his "non-accredited fund" (Fund V), and the video's caption mentions both "OUR CURRENT REGULATION A OFFERING" (Fund V) and "our anticipated Regulation A offering" (Fund VI).[9] In any event, Defendants do not extend this argument to their many other posts projecting 15%+ returns without disclosing the SEC's finding (CSOF ¶¶ 50, 52, 57, 59), each of which provides an independent basis for liability.
- Defendants contend that the SEC historically disfavors forecasts and value statements in proxy statements, Opp. 20, but no proxy statement is at issue. Nor is there any evidence that the SEC relied on a general presumption stated nowhere in its letter (or that any investor knew of this practice). The SEC, in fact, permitted Defendants to forecast a "positive annualized return on investment, net of expenses."[10] Forecasts were not the problem—the SEC objected *specifically* to Defendants' 15% forecast because it lacked any basis.
- Defendants invoke contractual disclaimers, Opp. 20, but the Act's strictures cannot be waived by contract, 15 U.S.C. § 77n. Besides, a generic warning that returns are "not guaranteed" does not disclose the SEC's specific finding.

Defendants do not contest Section 12(a)(2)'s other elements, like interstate

---

[9] *See* CSOF ¶ 48 (https://www.youtube.com/watch?v=OoeJkZZGa2c); Ex. 19 at 24:8–23; *see also* CSOF ¶ 83 (both Funds were Regulation A offerings).

[10] Ex. 3 at 17; Ex. 4 at 17; *see* CSOF ¶¶ 39, 42.

commerce or the seller requirement (*see infra* § IV). The Court should therefore grant Plaintiff summary judgment on her Section 12 claim.[11]

**IV. There is No Dispute Defendants Are Statutory Sellers**

Defendants do not contest that they are statutory sellers: Cardone and Cardone Capital posted social-media solicitations advertising the Funds, and "both Cardone and Cardone Capital had a financial interest in the sale of the securities," *Pino v. Cardone Cap., LLC* ("*Pino I*"), 55 F.4th 1253, 1260 (9th Cir. 2022); *see* CSOF ¶¶ 9, 12. Defendants argue only that Plaintiff's request for partial summary judgment on the seller element of Section 12 is "moot." Opp. 24. Not so. The Court should either grant Plaintiff complete judgment on her omissions claim, which requires ruling on the seller element, or grant partial summary judgment on this undisputed element to simplify trial.

**V. On the Undisputed Record, Cardone's Debt Statement is False**

The Court need go no further than Defendants' response to Fact No. 55 to resolve the falsity of Cardone's statement that he was "responsible" for the Funds' debt: It is now undisputed that "Cardone does not personally pay for the debt-service payments for the properties owned by Funds V and VI." CSOF ¶ 55. That admission suffices for this Court to find that Cardone's statement directly to the contrary (CSOF ¶ 54) was false and warrants partial summary judgment on this basis.

Defendants' arguments about whether other documents disclosed the truth and the effect (if any) of the subscription agreements, Opp. 22–23, are irrelevant to falsity. Defendants confuse falsity, on which Plaintiff seeks partial summary judgment, with materiality: their own authority (Opp. 22) confirms that "context more appropriately factors into the question of whether an alleged misrepresentation was material to investors, not into whether a statement itself could be a misrepresentation." *Retail*

---

[11] The Court should exercise its discretion to award interest at California's 7% rate, which is the forum state's rate for non-contract claims, and order compounding, which Defendants also do not dispute is economically appropriate. Mot. 18–19. If the Court grants summary judgment, it may also order further briefing or a hearing on this issue.

*Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276–77 (9th Cir. 2017). And a form attestation in a subscription agreement stating that the investor read a lengthy offering circular is at most evidence of constructive knowledge, which "does not bar recovery." *Pino II*, 139 F.4th at 1111.

Defendants also quibble with Plaintiff's evidence of investor confusion (Opp. 22). This too has nothing to do with falsity. And the argument backfires: in December 2018, after a potential investor attended a webinar hosted by Cardone, he asked Defendants how "Grant make[s] money on these deals when he has to pay towards the loan." CSOF ¶ 142. No one at Cardone Capital corrected him or told him that Cardone pays nothing towards the loan. This email confirms that Cardone repeated his false claim—in webinars and on social media—compounding its propensity to mislead.

**VI. There is No Dispute About Control Person Liability Under Section 15**

Plaintiff has established a predicate Section 12 violation. And Defendants do not dispute that Cardone controls Cardone Capital, which in turn controls the Funds. CSOF ¶¶ 11–12. These admissions establish Section 15 liability. *See Pino I*, 55 F.4th at 1257.

Defendants invoke Section 15's good-faith defense, Opp. 24, on which they bear the burden, *Safeway Portland Employees' Fed. Credit Union v. C. H. Wagner & Co.*, 501 F.2d 1120, 1124 (9th Cir. 1974). They again confuse two separate issues: Their subjective belief in the projections bears only on a prong of *Omnicare* on which Plaintiff does not seek summary judgment (Mot. 8). It is undisputed that Cardone and Cardone Capital knew of the SEC's July 2018 finding and then projected 15% and higher returns without disclosing that finding. Indeed, Cardone testified that two hours after receiving the SEC's letter, he was back on social media telling his "audience" he expected to "hit a 15" percent return. CSOF ¶ 45. The good-faith defense thus does not apply.

**VII. Conclusion**

The Court should grant Plaintiff judgment on her §§ 12(a)(2) and 15 claims.

Respectfully Submitted,

Dated: November 23, 2026

MARC M. SELTZER
STEVEN G. SKLAVER
KRYSTA KAUBLE PACHMAN
RAJ MATHUR
MORGAN MCCOLLUM
SUSMAN GODFREY L.L.P.

By *\/s/ Raj Mathur*
Raj Mathur
Attorney for Lead Plaintiff and the Class

## Certificate of Compliance

The undersigned, counsel of record for Plaintiff, certifies that this brief is no more than 12 pages long, which complies with the limit in the Court's Standing Order.

Dated: November 23, 2026

RAJ MATHUR
SUSMAN GODFREY L.L.P.

By *\/s/ Raj Mathur*
Raj Mathur
Attorneys for Lead Plaintiff and the Class

## Certification Regarding AI Use

The undersigned, counsel of record for Plaintiff, certifies that AI was used only to cite-check this document and correct typographical errors. I certify that I have personally reviewed and verified the accuracy of all legal citations, quotations, factual statements, and analyses contained in this document.

Dated: November 23, 2026

RAJ MATHUR
SUSMAN GODFREY L.L.P.

By *\/s/ Raj Mathur*
Raj Mathur
Attorneys for Lead Plaintiff and the Class